1

**GUTRIDE SAFIER LLP**
SETH A. SAFIER (State Bar No. 197427)

2

seth@gutridesafier.com
100 Pine Street, Suite 1250

3

San Francisco, CA 94111
Telephone: (415) 639-9090

4

Facsimile:  (415) 449-6469

5

6

Attorneys for Plaintiffs

7

UNITED STATES DISTRICT COURT

8

NORTHERN DISTRICT OF CALIFORNIA

9

10

TAMIKA MILLER and JULIANNE
CHUANROONG, on behalf of themselves, the

11

general public, and those similarly situated,

12

    Plaintiffs,

13

14

        v.

15

TRAVEL GUARD GROUP, INC., AIG
TRAVEL, INC., AMERICAN

16

INTERNATIONAL GROUP, INC. (d/b/a/ AIG),
and NATIONAL UNION FIRE INSURANCE

17

COMPANY OF PITTSBURGH, PA.,

18

    Defendants.

19

20

21

22

23

24

25

26

27

28

CASE NO.

**CLASS ACTION COMPLAINT FOR UNFAIR BUSINESS PRACTICES; FALSE ADVERTISING; AND FRAUD, DECEIT, AND/OR MISREPRESENTATION**

JURY TRIAL DEMANDED

-1-

Class Action Complaint

**INTRODUCTION**

1. Plaintiffs Tamika Miller and Julianne Chuanroong, by and through their counsel, bring this class action against Defendants Travel Guard Group, Inc. ("Travel Guard Group"), AIG Travel, Inc. ("AIG Travel"), American International Group, Inc. ("AIG"), and National Union Fire Insurance Company of Pittsburgh, PA ("NUFIC") (collectively, "Defendants") to seek redress for Defendants' unlawful, unfair, and deceptive online marketing and sale of insurance policies with a hidden charge for assistance services. Defendants sell the insurance and assistance services together under the brand name "Travel Guard."

2. On major travel websites, including united.com, expedia.com, travelocity.com, and orbitz.com, Defendants purport to make a straightforward offer to consumers: insurance for airfare and travel arrangements consumers purchase on those websites. However, Defendants secretly and unfairly charge unsuspecting consumers additional fees, *on top of the calculated premium*, without disclosing that they are charging those fees. In places other than the checkout screens where the transactions occur, Defendants try to justify those fees by representing that the fees are for a supposed assistance service. That service purports to allow insureds to spend time on the telephone with Defendants' customer service representatives to request information about various topics, such as directions, weather, restaurants, hotels, new travel arrangements, and possibly medical needs. But consumers are unaware of any such service and they do not want it; and they certainly do not want to pay what Defendants charge for it.

3. Under California law, Defendants are limited to charging an approved rate for travel insurance. Moreover, an appointed agent such as Travel Guard Group is not permitted to collect a fee for services constituting or arising out of the transaction of insurance. Here, Defendants' practice of charging an additional fee for a supposed non-insurance assistance service is substantially a sham and a pretext to collect illegal fees at the expense of millions of consumers.

4. Plaintiffs bring this action on behalf of themselves, the general public, and a class of similarly situated individuals, seeking a judgment against Defendants that would, among other things: (1) prohibit Defendants from charging mandatory and/or undisclosed fees (in addition to

premiums) for "assistance" services in connection with the insurance purchases; (2) require

Defendants to plainly and truthfully disclose all premiums, fees, and charges to consumers prior

to their online purchase of insurance; and (3) require Defendants to pay Plaintiffs and class

members restitution or damages.

## PARTIES

5.      Tamika Miller is, and at all times alleged herein was, an individual and a resident

of San Pablo, California.

6.      Julianne Chuanroong is, and at all times alleged herein was, an individual and a

resident of San Francisco, California.

7.      Defendant Travel Guard Group, Inc. ("Travel Guard Group") is a Wisconsin

corporation headquartered in Stevens Point, WI. Travel Guard Group maintains its principal place

of business at 3300 Business Park Drive, Stevens Point, WI 54482. Travel Guard Group is the

licensed insurance agent for NUFIC in California and markets and sells Travel Guard insurance

policies and assistance services to the public. Travel Guard Group has substantial contacts with

and receives substantial benefits and income from California and throughout the United States.

8.      Defendant AIG Travel, Inc. ("AIG Travel") is a Delaware corporation

headquartered in New York, NY. AIG Travel maintains its principal place of business at 1271

Avenue of the Americas, 37th Floor, New York, NY, United States, 10020. AIG Travel is the

parent company of Travel Guard Group and provides assistance services in connection with

Travel Guard policies. AIG Travel has substantial contacts with and receives substantial benefits

and income from California and throughout the United States.

9.      Defendant American International Group, Inc. ("AIG") is a Delaware corporation

headquartered in New York, NY. AIG maintains its principal place of business at 175 Water

Street, New York, NY 10038. AIG is the ultimate parent company of the other Defendants in this

lawsuit and is responsible for allocating and managing their roles in the Travel Guard business.

AIG markets Travel Guard travel insurance on its website

(https://www.aig.com/individual/insurance/travel-guard), where it refers to the insurance as "our

trip insurance plans." AIG also ensures that its logo is prominently included on Travel Guard

insurance plan documents and on webpages providing information about Travel Guard insurance, characterizes the underwriter NUFIC as "an AIG Company" in the policy documents, and the policies identify email addresses and webpages belonging to AIG for claims contacts (such as www.aig.com/travelclaims and claimsdoc1@aig.com). AIG, directly and through its agents, has substantial contacts with and receives substantial benefits and income from California and throughout the United States as a result of the sale of Travel Guard insurance and assistance.

10.     Defendant National Union Fire Insurance Company of Pittsburgh, PA ("NUFIC") is a Pennsylvania corporation headquartered in New York, NY. NUFIC maintains its principal place of business at 175 Water Street, FL 18, New York, NY 10038. NUFIC underwrites the insurance policies at issue in this lawsuit. NUFIC, directly and through its agents, has substantial contacts with and receives substantial benefits and income from California and throughout the United States.

11.     Travel Guard Group, AIG Travel, AIG, and NUFIC are referred to collectively herein as "Defendants."

12.     With respect to the allegations herein, Travel Guard Group acted as the agent of AIG Travel, AIG, and/or NUFIC and, in doing the things herein alleged, was acting within the scope and course of its authority as such agent.

13.     With respect to the allegations herein: (a) the acts and omissions of each Defendant concurred and contributed to the various acts and omissions of the other Defendants in proximately causing the injuries and damages as herein alleged; (b)  each Defendant aided and abetted the acts and omissions of the other Defendants in proximately causing the damages, and other injuries, as herein alleged; (c)  each Defendant ratified each and every act or omission complained of herein; and (d) Defendants were each a member of, and engaged in, a joint venture, partnership and common enterprise, and acting within the course and scope of, and in pursuance of, said joint venture, partnership and common enterprise.

14.     Each Defendant is jointly and/or vicariously liable for each other Defendant's wrongful conduct alleged herein.

1

**JURISDICTION AND VENUE**

2          15.     This Court has subject matter jurisdiction over this action pursuant to the Class

3     Action Fairness Act, 28 U.S.C. Section 1332(d)(2)(A) because: (i) there are 100 or more class

4     members, and (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of

5     interest and costs.

6          16.     This Court has supplemental jurisdiction over any state law claims pursuant to 28

7     U.S.C. Section 1367.

8          17.     The injuries, damages and/or harm upon which this action is based, occurred or

9     arose out of activities engaged in by Defendants within, affecting, and emanating from, the State

10    of California. Defendants regularly conduct and/or solicit business in, engage in other persistent

11    courses of conduct in, and/or derive substantial revenue from services provided to persons in the

12    State of California. Defendants have engaged, and continue to engage, in substantial and

13    continuous business practices in the State of California. Defendants' wrongful acts and omissions

14    occurred in California.

15         18.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a

16    substantial part of the events or omissions giving rise to the claims occurred in the state of

17    California, including within this District.

18         19.     Plaintiffs accordingly allege that jurisdiction and venue are proper in this Court.

19                              **DETAILED SUBSTANTIVE ALLEGATIONS**

20         20.     Insurance is a highly regulated service in every state. California requires insurers

21    and their agents to obtain approval for insurance rates prior to offering those policies and rates to

22    consumers, and to clearly identify the approved insurance premium to consumers. *See* Cal. Ins.

23    Code § 1861.01(c) ("insurance rates subject to this chapter must be approved by the

24    commissioner prior to their use"), § 1861.05 ("No rate shall be approved or remain in effect

25    which is excessive, inadequate, unfairly discriminatory or otherwise in violation of this

26    chapter."); *see also* Cal. Ins. Code § 381 (providing an insurance policy must specify a statement

27    of the premium). There are also strict requirements if an insurance producer (who may be an

28    agent, broker, or broker-agent) wishes to charge a fee for its services. Only brokers may charge a

broker's fee, and only after required disclosures are made. *See* Cal. Code Regs. tit. 10, §§ 2189.3 and 2189.5 (which authorize only brokers, not agents, to collect fees, and only pursuant to strict disclosure requirements). Accordingly, producers must identify any fees they charge separately from the premium and in sufficient detail for consumers to understand the fees and for there to be a determination that the fees are in compliance with the insurance laws and regulations.

21.     Reasonable consumers expect that insurers and their agents comply with all laws and regulations, that insurance premiums will be clearly identified prior to purchase, and that any separate or additional fee, whether to compensate an agent or for a non-insurance service or benefit, will also be clearly identified prior to any agreement to pay for such fee. Reasonable consumers who are quoted a single price for insurance reasonably assume that price is a lawful and approved premium and not a vehicle for hidden fees added to the insurance premium.

22.     Defendants market and sell the travel insurance policies at issue. Defendants are responsible for charging and collecting the premiums and fees at issue and are responsible for ensuring that the amounts they charge consumers are lawful, fair, and not deceptive. Defendants purport to provide a supposed "assistance service" for which they deceptively, unfairly, and unlawfully charge consumers. Defendants have been unjustly enriched by those unlawful, unfair, and undisclosed fees.

## I.     Defendants Charge Unsuspecting Consumers for Supposed "Non-Insurance" Assistance Services in Conjunction with Travel Insurance

23.     When purchasing airfare, hotel reservations, and similar travel fares or accommodations from online websites or mobile apps, consumers are often presented with the option to insure their purchase. Defendants contract with certain retailers who offer online bookings and travel arrangements (such as Travelocity, Expedia, Orbitz, and United Airlines) to present consumers with an offer to purchase Travel Guard insurance when completing their bookings. Defendants are, collectively, one of the largest providers of trip/travel insurance in California and the United States.

1

2

3

24.    When Defendants present an insurance offer during the checkout process of one of Defendants' retail partners, Defendants' Travel Guard insurance is the only available insurance option presented to consumers.

4

5

25.    A recent example of an offer made by Defendants on the website of United Airlines is below:

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



26.     A recent example of an insurance offer made by Defendants on the website of Travelocity is below:



27.     Recent examples of offers made by Defendants on the website of Expedia are below:

Class Action Complaint



## Protect your flight [Recommended]

ⓘ **Important:** Travel insurance may provide coverage for COVID-19 diagnosed illness. Trip cancellation due to government travel advisories or fear of travel is not covered. COVID-19 is a foreseen event and certain other coverages will not apply. Learn more

**Note:** If you are a resident of **Washington** state, please click here to view products that you are eligible to purchase.

Coverage includes trip cancellation, trip interruption, and much more. See top benefits: ⌄

1. Get up to 100% reimbursement if you need to cancel your flight for covered reasons such as loss of a long-term job
2. Up to 100% reimbursement for trip interruption if your trip is cut short due to a covered emergency such as a sickness or accident
3. Certain additional travel expenses to return home or continue your trip if it is interrupted by a covered sickness, injury or other covered reasons

View insurance details and disclosures 🗗

Select Yes or No to continue booking *

○ Yes, I want Cancellation Protection Plan for my flight.            **$19.00**
                                                                      per person

○ No, I'm willing to risk my $98.40 flight. I understand by declining this coverage that I may be responsible for cancellation fees and delay expenses personally or through alternate coverage.

Mary got $468 back when she cancelled her flight to … Read more

Get money back on future price drops ⌄



Special requests (optional) ⌄

**Important**
Travel insurance may provide coverage for COVID-19 diagnosed illness. Trip cancellation due to government travel advisories or fear of travel is not covered. COVID-19 is a foreseen event and certain other coverages will not apply.
Learn more

### Protect your hotel
Cover your stay against the unexpected:

1. Up to 100% hotel reimbursement if you're sick and have a late cancellation
2. Up to 100% reimbursement on unused hotel nights if you're sick and need to come home early
3. Up to $150 for a hotel or meals if your trip is delayed for covered reasons
4. Up to $150 for covered essentials if your bag is delayed

View insurance details and disclosures

Select Yes or No to continue booking

○ Yes, I want Booking Protection for my trip to San Francisco.    [Recommended] **$4.50**
                                                                     per person

○ No, I'm willing to risk my $68.58 trip.

💬 "Things happened outside of my control which caused the trip to be canceled. The Travel Protection was valuable in reducing the losses to me when we had to cancel the trip."
-Mr. Rodman

**Price details**

| 1 room x 1 night | $59.00 |
| Taxes | $9.58 |
| **Total** | **$68.58** |
| Pay now | $0.00 |
| Pay at property | $68.58 |

Not included in your total
Mandatory charge: Collected at property.
Details

**Earn 25,000 Expedia Rewards bonus points**
after qualifying purchases with the Expedia Rewards Voyager Card from Citi.
Learn more and apply

Class Action Complaint

28.     Expedia Group, Inc. owns Expedia, Travelocity, and Orbitz, so the Travel Guard insurance offers presented to consumers during the booking/checkout process on those three websites are the same.

29.     As indicated above, a single total price is identified for the offered insurance prior to purchase.

30.     Within these point-of-sale offers, Defendants do not identify assistance benefits (and certainly not as separate, non-insurance services) and Defendants do not identify any fee, price, or charge for any such assistance service or benefit, separate from or in addition to the premium.

31.     The hyperlink to "insurance details and disclosures" in the offers on Expedia, Travelocity, and Orbitz leads to a new page containing a menu that prompts residents of various states to "Click Here" for the policy for their state. The policy forms for California indicate that assistance benefits are included in the policy, but the forms do not disclose that there is a charge, on top of the insurance premium calculated by Defendants, for those benefits.

32.     The hyperlink to "Important Disclosures" in the offers on the United website currently leads to a lengthy pop-up that includes a disclosure, among numerous other disclosures, that "[t]he quoted price for the travel protection plan includes the travel insurance premium and a separate fee for non-insurance travel assistance services." The pop-up document also states that consumers "may obtain information on the pricing of the insurance and assistance services by emailing terms@travelguard.com." This lengthy pop-up document does not provide sufficient notice to consumers that they are being charged for supposed non-insurance services on top of the calculated premium for the insurance product. There is no indication within the actual offer that the price includes a fee for non-insurance services or that the "Important Disclosures" will reveal the existence of such a fee. Moreover, the pop-up still does not disclose the amount of the fee and requires consumers to send an email to ask Defendants to disclose the fee. Defendants know that, and have designed the checkout process such that, consumers are highly unlikely to discover the existence of the assistance fee or make an inquiry about it.

33.     After a consumer purchases Travel Guard insurance, Defendants (and some retail partners) send the customer a confirmation email that contains a link to information regarding their insurance policy. These confirmation emails do not contain any pricing information, do not identify assistance benefits, and do not identify any fee, price, or charge for any such assistance service or benefit, separate from or in addition to the premium. An example of a typical email confirmation is shown below:

Thank you for purchasing a travel insurance plan from Travel Guard.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*Your policy number is ███████████

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

\* Please review your Policy of Insurance by clicking on the "Policy of Insurance" link at the top of your policy summary page which can be accessed [1]here.

\* Need to file a claim? You can now file a claim online. Click here get started.

Enjoy your travel and thank you for choosing Travel Guard for your upcoming trip!

[1] Policy information is only accessible via the above link for one year past your travel return date.

34.     The link (if clicked) to the policy summary page leads to a webpage that displays certain information about the insurance. These insurance policy summary pages do not identify assistance benefits and do not identify any fee, price, or charge for any such assistance service or benefit, separate from or in addition to the premium. An example of an insurance policy summary page for one of Plaintiff Miller's policies is shown below:

Re-send Email Fulfillment | Printer Friendly | Policy of Insurance | Terms and Conditions | Privacy Notice | Alerts | Strike List

**TRAVEL GUARD**

Below is important information regarding your travel insurance plan for your upcoming trip. Please click the Policy of Insurance link above for the complete policy wording for the plan you purchased. If you have any questions, please contact our partner Aon Affinity at **1-855-400-2624 ESP: 1-855-334-3973 Intl: 1-516-342-4503.**

Have a safe and enjoyable trip!

| Travel Guard Policy # 1226335462 |
| --- |
| Booking # 72084513795456 |
| **Flight Protection Plan** |

| | |
| --- | --- |
| 009175  P7  7/2019 | |
| Coverage effective date | 04/13/2021 |

| Total cost | $35.00 |
| --- | --- |

| Trip details |
| --- |

| | |
| --- | --- |
| Departure date | 04/21/2021 |
| Return date | 04/22/2021 |
| Trip deposit date | |

| Contact Information |
| --- |

| Coverages & Benefit Limits | | |
| --- | --- | --- |
| **Standard Packages** | | |
| ACCIDENT AND SICKNESS MEDICAL EXPENSES | $5000.00 | Per Insured |
| ANCILLARY EVACUATION BENEFITS | $5000.00 | Per Insured |
| BAGGAGE AND PERSONAL EFFECTS | $1000.00 | Per Insured |
| EMERGENCY EVACUATION AND REPATRIATION OF REMAINS | $50000.00 | Per Insured |
| EMERGENCY TRAVEL ASSISTANCE | Included | Per Insured |
| FLIGHT ACCIDENT INSURANCE | $50000.00 | Per Insured |
| TRAVEL MEDICAL ASSISTANCE | Included | Per Insured |
| TRIP CANCELLATION | 100% Trip Cost | Per Insured |
| TRIP INTERRUPTION | 100% Trip Cost | Per Insured |
| WORLDWIDE TRAVEL ASSISTANCE | Included | Per Insured |

1

2      35.    Some versions of the policy summary pages include a hyperlink to "Important

3 Disclosures." That hyperlink (if clicked) leads to a lengthy document that includes a disclosure,

4 among numerous other disclosures, that "[t]he quoted price for the travel protection plan includes

5 the travel insurance premium and a separate fee for non-insurance travel assistance services." The

6 pop-up document also states that consumers "may obtain information on the pricing of the

7 insurance and assistance services by emailing terms@travelguard.com." This lengthy document

8 does not provide sufficient notice to consumers *prior to purchase* that they are being charged for

9 supposed non-insurance services on top of the calculated premium for the insurance product.

10 Moreover, the document still does not disclose the amount of the fee and requires consumers to

11 send an email to ask Defendants to disclose the fee. Defendants know that, and have designed the

12 purchase process such that, consumers are highly unlikely to discover the existence of the

13 assistance fee or make an inquiry about it.

14      36.    Consumers reasonably expect some amount of service and information (about the

15 insurance and potential claims) to be available to them when they purchase insurance and such

16 policy and claims administration costs are supposed to be included in the insurance premiums.

17 However, to the extent Defendants offer additional assistance benefits that are truly separate from

18 the insurance benefits and may be accurately described as non-insurance benefits, there is little

19 demand in the market for such assistance benefits at the prices Defendants charge and in the form

20 in which they are offered (requiring insureds to call a toll-free number to speak with customer

21 service representatives to obtain various types of information). This is especially true of concierge

22 services. Consumers who purchase airfare and hotels online and through mobile applications can

23 readily find much of the information encompassed within Defendants' assistance services for

24 *free*, and on demand, using the Internet and widely available applications (such as from Google,

25 Apple, Yelp, and many other service providers), or from more local or personalized sources than

26 Defendants can offer. Given that reality, and given that Defendants make no mention of any

27 separate charges for such services at the time they present their insurance offers to consumers,

28

consumers have no reason to suspect they are being charged for Defendants' non-insurance assistance service at the time they insure their travel purchases.

37.     In any event, most insureds are not aware of the availability of those services or that they have been charged for them. Consumers generally would not pay for the separate service if given a fair and informed choice whether to do so. On information and belief, the small percent of insureds who use the assistance services, and the relatively low costs Defendants' incur in providing such services, do not come close to justifying the price of the services and the total revenues Defendants collect for the assistance services.

38.     Moreover, there is no utility at all in *requiring* consumers to purchase Defendants' assistance service in conjunction with Defendants' insurance. Under California law, and under any balancing test of fairness, Defendants must provide consumers a choice as to whether to pay for services in addition to the insurance. If insurers and their agents can bundle any fee they want with insurance premiums, without adequately disclosing the fees to consumers and without giving them a fair and real choice whether to pay those fees, then the extensive, longstanding, and strict regulation of insurance premiums, commissions, and sales in California would become impotent.

39.     If Defendants were genuinely attempting to market an informational assistance service, they would likely offer it for free (using advertisements to cover costs) or they would charge a flat, attractive fee and highlight some competitive edge over the alternative sources of information available to consumers. Instead Defendants *hide* their assistance service fee from consumers at the point of purchase. Such practices imply that Defendants are using the assistance fees to subsidize marketing and operational costs that should properly be included in the insurance premiums, and thus that Defendants' characterization of the fees as non-insurance assistance fees is disingenuous, and an attempt to circumvent California's regulation of premiums and of agent compensation.

40.     Regardless of how Defendants' "assistance" fees are ultimately characterized— whether as an artifice to collect an unlawful agent's fee (or unauthorized premium) or as genuinely for non-insurance services (that no one has chosen and that few people would pay for if given the choice)—the result is the same: Defendants collect more from consumers than they

should. Defendants did not receive approval from the California Department of Insurance to charge these mandatory, hidden fees on top of the premium. If Defendants followed the laws and regulations, they would not be charging such fees. And if Defendants disclosed the fees to consumers prior to purchase, consumers would not pay for the fees. Defendants are continuing to charge and collect sums that they are not allowed to collect by law and which are more than consumers would pay if they understood Defendants' practices.

41.     In sum, Defendants' practice of charging consumers for supposed "assistance" in connection with trip/travel insurance is deceptive, unfair, and unlawful.

**II.     Plaintiff Tamika Miller's Experiences**

42.     On or about March 23, 2017, Plaintiff Miller visited the website of Travelocity.com or Expedia.com to purchase airfare. Plaintiff Miller purchased airfare on that occasion and was offered the option to insure her ticket purchase and purchased Travel Guard policy 921400795 during the checkout process.

43.     On or about June 23, 2017, Plaintiff Miller visited the website of Travelocity.com or Expedia.com to purchase airfare. Plaintiff Miller purchased airfare on that occasion and was offered the option to insure her ticket purchase and purchased Travel Guard policy 1200388461 during the checkout process.

44.     On or about April 13, 2021, Plaintiff Miller visited the website of Travelocity.com to purchase airfare. Plaintiff Miller purchased airfare on that occasion and was offered the option to insure her ticket purchase and purchased Travel Guard policy 1226335462 during the checkout process.

45.     On or about May 29, 2021, Plaintiff Miller visited the website of Expedia.com to purchase airfare. Plaintiff Miller purchased airfare on that occasion and was offered the option to insure her ticket purchase and purchased Travel Guard policy 1228400116 during the checkout process.

46.     During the checkout process for each of those purchases, Plaintiff Miller was presented with an offer from Defendants to purchase insurance for the airfare. The offer was presented in a manner substantially similar to the example set forth in paragraphs 26-27 herein.

There was a box/section on the checkout page presenting her with an option to insure her ticket purchase.

47.     Defendants designed, controlled, and possess the exact offer text presented to Plaintiff Miller on each of those occasions.

48.     Defendants' insurance offer was the only insurance option presented to Plaintiff Miller at those times. There was no choice of plans or insurers during the checkout process, and very limited information was provided regarding the insurance. A single price was stated as the price of the "insurance." There was no indication that any other fees other than an insurance premium was included in that price. There was no mention of "non-insurance assistance services" in the offer.

49.     Unbeknownst to Plaintiff Miller at the time she accepted the offers of insurance, the total amounts she was charged for the insurance included both an insurance premium and a mandatory fee that Defendants contend was for assistance services but that was, in effect, an unlawful agent's fee or unauthorized premium. At a minimum, it was an unfair charge and Defendants have no justification for bundling it with the premiums in the way they did.

50.     Neither the insurance offers nor any other portion of the checkout pages disclosed (a) a specific breakdown of the components of the price for the insurance; (b) that the price included an unlawful agent's fee and/or unlawful amount of premium; (c) the existence and amount of the fee for supposed non-insurance assistance benefits; and/or (d) any material facts about the nature of such "assistance" services or why the assistance fee was included.

51.     When accepting each of Defendants' insurance offers on the occasions referenced above, and on any other occasions that Plaintiff Miller purchased Travel Guard insurance, Plaintiff Miller was not aware of the existence of any assistance fee in addition to the insurance premium and was not aware of any of the foregoing facts at the time she purchased the insurance. As a result of Defendants' material misrepresentations and omissions, and Defendants' unlawful and unfair practices, Plaintiff Miller agreed to pay Defendants to insure her airfare purchases and believed, each time, that the amount she paid Defendants was for the insurance only and that the amount charged was determined by a regulated, lawful process. Plaintiff Miller was seeking only

lawful and proper insurance; she was not seeking separate non-insurance informational "assistance" services and would not have paid the price charged for such services by Defendants if given the choice. She was not aware of and did not agree to pay for any additional or unlawful agent's fee or any additional "assistance" service that Defendants purport to offer to their insureds.

52.     Following and on the same day as each of the aforementioned purchases, Plaintiff Miller received a confirmation email regarding her purchase of airfare insurance. Those emails did not identify either the insurance premium or the cost of any purported assistance benefits in the body of the email. The confirmation emails included a hyperlink to certain policy information, as described in paragraphs 34-35. However, Plaintiff Miller had no reason to believe that those documents would reveal a hidden charge for "assistance" services, and Plaintiff Miller did not review those documents during the cancellation period for each policy.

53.     Plaintiff Miller would have paid less than she did if Defendants had complied with California law and charged her only an approved premium, rather than unfairly, unlawfully, and deceptively including an undisclosed, additional fee in the cost of the insurance.

54.     Plaintiff Miller would have declined the fee for Defendants' supposed "assistance" service if Defendants had fully and fairly disclosed: (a) that Defendants were charging an unlawful agent's fee and/or unlawful amount of premium; or (b) the existence and amount of the fee/charge for supposed "assistance" services and basic, material, and truthful information about the supposed "assistance service," which would have allowed her to understand that she was being charged for something she did not want to pay for, and that the fee is a pretext for increasing Defendants' profits. Plaintiff Miller would not have purchased insurance from Defendants if she had doubts about their integrity and reliability, and she would have had such doubts if Defendants had fully and fairly disclosed the material information referenced in this complaint.

**III.    Plaintiff Julie Chuanroong's Experience**

55.     On or about June 15, 2018, Plaintiff Chuanroong visited the website of United Airlines (www.united.com) to purchase a one-way flight.

56.     On or about March 13, 2020, Plaintiff Chuanroong visited the website of United Airlines (www.united.com) to purchase a roundtrip flight.

57.     After selecting her flights and during the checkout process for each of those purchases on the United website, Plaintiff Chuanroong was presented with an offer from Defendants to purchase insurance for the airfare. The offers were presented in a manner substantially similar to the example set forth in paragraph 25 herein. There was a box/section on the checkout pages presenting her with an option to insure her ticket purchases.

58.     Defendants designed, controlled, and possess the exact offer text presented to Plaintiff Chuanroong on each of those occasions.

59.     Defendants' insurance offer was the only insurance option presented to Plaintiff Chuanroong at those times. There was no choice of plans or insurers during the checkout process, and very limited information was provided regarding the insurance. A single price was stated as the price of the "insurance." There was no indication that any other fees other than an insurance premium was included in that price. In particular, there was no mention of "non-insurance assistance services" in the offer.

60.     Unbeknownst to Plaintiff Chuanroong at the time she accepted the offer of insurance, the total amount she was charged for the insurance included both an insurance premium and a mandatory fee that Defendants contend was for assistance services but that was, in effect, an unlawful agent's fee or unauthorized premium. At a minimum, it was an unfair charge and Defendants have no justification for bundling it with the premiums in the way they did.

61.     Neither the insurance offer nor any other portion of the checkout pages disclosed (a) a specific breakdown of the components of the price for the insurance; (b) that the price included an unlawful agent's fee and/or unlawful amount of premium; (c) the existence and amount of the fee for supposed non-insurance assistance benefits; and/or (d) any material facts about the nature of such "assistance" services or why the assistance fee was included.

62.     When accepting each of Defendants' insurance offers on the occasions referenced above, Plaintiff Chuanroong was not aware of the existence of any assistance fee in addition to the insurance premium and was not aware of any of the foregoing facts at the time she purchased

the insurance. As a result of Defendants' material misrepresentations and omissions, and Defendants' unlawful and unfair practices, Plaintiff Chuanroong agreed to pay Defendants to insure her airfare purchases and believed, each time, that the amount she paid Defendants was for the insurance only and that the amount charged was determined by a regulated, lawful process. Plaintiff Chuanroong was seeking only lawful and proper insurance; she was not seeking separate non-insurance informational "assistance" services and would not have paid the price charged for such services by Defendants if given the choice. She was not aware of and did not agree to pay for any additional or unlawful agent's fee or any additional "assistance" service that Defendants purport to offer to their insureds.

63.     Following each of the aforementioned purchases, Plaintiff Chuanroong received email confirmations regarding her purchases of airfare insurance. The emails did not identify either the insurance premium or the cost of any purported assistance benefits in the body of the email. The email confirmation included a hyperlink to certain policy information, as described in paragraphs 34-35. However, Plaintiff Chuanroong had no reason to believe that those documents would reveal a hidden charge for "assistance" services, and Plaintiff Chuanroong did not review those documents during the cancellation period for each policy.

64.     Plaintiff Chuanroong would have paid less than she did if Defendants had complied with California law and charged her only an approved premium, rather than unfairly, unlawfully, and deceptively including an undisclosed, additional fee in the cost of the insurance.

65.     Plaintiff Chuanroong would have declined the fee for Defendants' supposed "assistance" service if Defendants had fully and fairly disclosed: (a) that Defendants were charging an unlawful agent's fee and/or unlawful amount of premium; or (b) the existence and amount of the fee/charge for supposed "assistance" services and basic, material, and truthful information about the supposed "assistance service," which would have allowed her to understand that she was being charged for something she did not want to pay for, and that the fee is a pretext for increasing Defendants' profits. Plaintiff Chuanroong would not have purchased insurance from Defendants if she had doubts about their integrity and reliability, and she would have had

1    such doubts if Defendants had fully and fairly disclosed the material information referenced in

2    this complaint.

3    **IV.    Because Defendants Intend to Continue Their Deceptive and Unfair Conduct, a**
     **Public Injunction Is Needed to Protect the Public from Future Harm.**

4

5            66.    To protect the general public from the threat of future injury, Plaintiffs seek a

6    public injunction to prohibit Defendants from continuing the deceptive, unfair, and unlawful

7    practices alleged herein.

8            67.    To stop Defendants' deceptive, unfair, and unlawful conduct, Defendants should

9    be required to plainly and truthfully disclose all premiums, fees, and charges to consumers prior

10   to the sale of insurance; and Defendants should be prohibited from charging supposedly separate

11   fees for "assistance" services as a mandatory fee in connection with the sale of insurance policies

12   and from charging fees and/or premiums that have not been approved for sale in California.

13           68.    Plaintiffs will purchase airfare and travel in the future and will be presented with

14   the option to insure those purchases through Defendants. Plaintiffs desire to insure their airfare

15   purchases but, absent the injunctive relief sought, will not be able to determine whether they will

16   be charged a hidden fee or an unlawful mandatory agent's fee in addition to the insurance

17   premium. Plaintiffs have a right to know the insurance premiums and the additional fees for any

18   putative insurance transaction and Defendants are infringing those rights. Plaintiffs are unable,

19   and will continue to be unable, to rely on Defendants' representations regarding the price of their

20   insurance products, unless the injunctive relief requested in this Complaint is awarded. That

21   present and continuing uncertainty is an ongoing harm to them as consumers and infringes the

22   rights protected by the UCL, FAL, and insurance laws and regulations. Even if they were able to

23   determine that Defendants will impose an unlawful agent's fee in addition to charging a premium,

24   absent an injunction prohibiting Defendants from doing so, Plaintiffs will be forced to either

25   forgo the insurance they desire (and the only insurance available) or else pay an unlawful fee.

26           69.    Accordingly, there is a risk that Plaintiffs and those similarly situated will be

27   harmed by Defendants in the same manner, and will be deprived of the opportunity to purchase

28

1  lawfully and fairly priced insurance, which would be available on travel websites but for

2  Defendants' unlawful, deceptive, and unfair practices.

3  **CLASS ALLEGATIONS**

4       70.    Plaintiffs bring this class action lawsuit on behalf of the following proposed class

5  ("Class") of similarly situated persons, pursuant to Rule 23 of the Federal Rules of Civil

6  Procedure, defined as follows:

7
8         The Class: All natural persons who purchased Travel Guard insurance policies from
   Defendants while residing in California since December 17, 2017 but excluding those
   persons who used Defendants' assistance services in connection with their Travel Guard
9  insurance.

10       71.    The following persons and entities are excluded from the Class: Defendants and

11  their officers, directors, employees, subsidiaries, and affiliates; and all judges assigned to this case

12  and any members of their immediate families.

13       72.    Plaintiffs reserve the right to propose additional or alternative classes or

14  subclasses, or to narrow the above class definition. This reservation includes but is not limited to

15  classes or subclasses involving consumers in multiple states or involving particular issues.

16       73.    This action has been brought and may properly be maintained as a class action

17  against Defendants because there is a well-defined community of interest in the litigation and the

18  proposed class is easily ascertainable.

19       74.    Numerosity:  Plaintiffs do not know the exact size of the Class, but estimates it is

20  composed of more than 500 persons. At a minimum, there are tens of thousands of class members

21  in the Class but very likely many more. The persons in the Class are so numerous that the joinder

22  of all such persons is impracticable and the disposition of their claims in a class action rather than

23  in individual actions will benefit the parties and the courts.

24       75.    Common Questions Predominate:  This action involves common questions of law

25  and fact to the potential Class because each class member's claim derives from the same

26  deceptive, unlawful and/or unfair statements, omissions, and practices. The common questions of

27  law and fact predominate over individual questions, as proof of a common or single set of facts

28

will establish the right of each member of the Class to recover.  The questions of law and fact common to the Class include, but are not limited to, the following:

a.  whether Defendants have engaged, and continue to engage, in unfair or fraudulent practices by misrepresenting in insurance offers that the prices charged were solely for the insurance premium, and by failing to disclose that the amounts charged to Plaintiffs and class members included mandatory assistance fees;

b.  whether the fees Defendants charged for their supposed assistance services constitute unlawful agent's fees;

c.  whether Defendants have engaged, and continue to engage, in unfair practices by circumventing regulatory scrutiny, by charging unlawful and excessive agent fees and/or premium charges, and/or by requiring all consumers to pay assistance fees without a fair option to decline such fees, and thus charging consumers more than they are legally allowed to charge;

d.  whether the premium rates and the assistance fee rates at issue were approved for use in California;

e.  whether Defendants knew or should have known that reasonable consumers did not value the assistance services offered by Defendants;

f.  whether Defendants knew or should have known that reasonable consumers interpreted Defendants' insurance offers as a single premium and were unaware of any additional fee for Travel Guard assistance services;

g.  whether Defendants' conduct is unlawful, unfair, or fraudulent in violation of the Unfair Competition Law, California Business and Professions Code §17200, *et seq*.;

h.  whether Defendants' conduct constitutes untrue or misleading statements within the meaning of California Business and Professions Code § 17500, *et seq*.;

i.  whether Defendants engaged in the alleged conduct knowingly, recklessly, or negligently;

j.  the amount of profits and revenues earned by Defendants and/or the amount of monies or other obligations lost by class members as a result of the misconduct;

k.  whether Class Members are entitled to restitution, injunctive and other equitable relief and, if so, what is the nature (and amount) of such relief; and

l.  whether Class Members are entitled to payment of actual, incidental, consequential, exemplary and/or statutory damages plus interest thereon, and if so, what is the nature of such relief.

76.  Typicality:  Plaintiffs' claims are typical of the claims of other members of the Class because, among other things, all such claims arise out of the same wrongful course of conduct in which the Defendants engaged in violation of law as described herein. Further, the damages of each member of the Class were caused directly by Defendants' wrongful conduct in violation of the law as alleged herein. Plaintiffs and members of the Class have suffered injury in fact as a result of Defendants' misleading, deceptive, unfair, and unlawful conduct. Plaintiffs and members of the Class would not have paid the assistance fees but for Defendants' misconduct.

77.  Adequacy of Representation:  Plaintiffs will fairly and adequately protect the interests of all class members because it is in their best interests to prosecute the claims alleged herein to obtain full compensation due to them for the unfair and illegal conduct of which they complain. Plaintiffs also have no interests that are in conflict with, or antagonistic to, the interests of Class Members. Plaintiffs have retained highly competent and experienced class action attorneys to represent their interests and that of the Class. By prevailing on their own claims, Plaintiffs will establish Defendants' liability to all class members. Plaintiffs and their counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs and counsel are aware of their fiduciary responsibilities to the class members and are determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for class members.

78.  Superiority:  There is no plain, speedy, or adequate remedy other than by maintenance of this class action. The prosecution of individual remedies by members of the Class will tend to establish inconsistent standards of conduct for Defendants and result in the

impairment of class members' rights and the disposition of their interests through actions to which they were not parties. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Furthermore, as the damages suffered by each individual member of the Class may be relatively small, the expenses and burden of individual litigation would make it difficult or impossible for individual members of the Class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.

79.     Plaintiffs are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

### PLAINTIFFS' FIRST CAUSE OF ACTION
**(Unlawful, unfair, and fraudulent trade practices violation of Business and Professions Code § 17200, *et seq.* ("UCL"))**

80.     Plaintiffs reallege and incorporate by reference the paragraphs of this Class Action Complaint as set forth herein.

81.     Within at least four (4) years preceding the filing of this lawsuit, and at all times mentioned herein, Defendants have engaged, and continue to engage, in unlawful, unfair, and fraudulent trade practices in California by engaging in the unlawful, unfair, and fraudulent business practices outlined in this complaint.

82.     Defendants have engaged, and continue to engage, in unlawful practices by, without limitation, violating the following state laws: (i) section 17500, *et seq.* of the California Business and Professions Code (the "FAL"), as described herein; and/or (ii) the California Insurance Code and regulations, including without limitation Cal. Ins. Code § 332 (requiring disclosure of all facts material to the insurance contract), Cal. Ins. Code § 790.02 (prohibiting unfair and deceptive practices in the business of insurance), Cal. Ins. Code §§ 1861.01(c) and 1861.05 and applicable case law (insurance rates must be approved by the commissioner prior to their use); and Cal. Code Regs. tit. 10, §§ 2189.3 and 2189.5, and applicable case law (prohibiting appointed agents from charging fees). To the extent Defendants charge consumers for a non-

insurance service without properly disclosing that practice, Defendants violate the FAL and Cal. Ins. Code § 332 because they fail to disclose material facts regarding the price of the insurance and mislead consumers as a result. To the extent the supposed "assistance" fees are actually mandatory agent fees (or additional premium) and are determined by factors similar to those typically used to determine agent fees and premiums, then Defendants violate Cal. Ins. Code §§ 1861.01(c) and 1861.05 (because they did not get the required prior approval for those fees) and/or Cal. Code Regs. tit. 10, §§ 2189.3 and 2189.5 (which authorize only brokers, not agents, to collect fees, and only pursuant to strict disclosure requirements).

83.     Defendants have engaged, and continue to engage, in unfair and fraudulent practices by, without limitation: (a) misrepresenting in the relevant insurance offers that the prices charged were solely for the insurance premium, when they also included a hidden fee for a non-insurance service (if Defendants' characterization of the fees is proper), and failing to disclose that the amounts charged to Plaintiffs and class members included mandatory assistance fees, (b) circumventing regulatory scrutiny and charging unlawful and excessive agent fees and/or premium charges (to the extent Defendants' characterization of the fees as for non-insurance assistance services is improper), and/or (c) requiring all consumers to pay excessive fees for assistance fees by bundling them with highly regulated insurance sales, where the financial injury to consumers from being charged such fees for services they do not want, need, or use far outweighs any potential benefit of a bundled product in these circumstances.

84.     Plaintiffs and those similarly situated relied to their detriment on Defendants' unlawful, unfair, and fraudulent business practices. Had Defendants not violated California law as described herein, and/or if Plaintiffs and those similarly situated been adequately informed and not deceived by Defendants, Plaintiffs and those similarly situated would not have paid the assistance or agent fees charged by Defendants.

85.     Defendants' acts and omissions are likely to deceive the general public.

86.     Defendants engaged in these unfair, deceptive, and unlawful practices to increase their profits. Accordingly, Defendants have engaged in unlawful trade practices, as defined and prohibited by section 17200, *et seq.* of the California Business and Professions Code.

87.     The aforementioned practices, which Defendants have used to their significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendants' competitors as well as injury to the general public.

88.     As a direct and proximate result of such actions, Plaintiffs and the other class members, have suffered and continue to suffer injury in fact and have lost money and/or property as a result of such deceptive and/or unlawful trade practices and unfair competition in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court. Among other things, Plaintiffs and the class members lost the amount they paid for the supposed assistance services.

89.     As a direct and proximate result of such actions, Defendants have enjoyed, and continue to enjoy, significant financial gain in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

90.     Plaintiffs seek, on behalf of themselves and those similarly situated, equitable relief, including restitution for the premium and/or the full price that they and others paid to Defendants as result of Defendants' conduct. Plaintiffs and the Class lack an adequate remedy at law to obtain such relief with respect to their "unfairness" claims in this UCL cause of action, because there is no cause of action at law for "unfair" conduct. Plaintiffs and the Class similarly lack an adequate remedy at law to obtain such relief with respect to their "unlawfulness" claims in this UCL cause of action because the California Insurance Code and regulations do not provide a direct cause of action, so Plaintiffs and the Class must allege those violations as predicate acts under the UCL to obtain relief.

91.     Plaintiffs also seeks equitable relief, including restitution, with respect to their UCL unlawfulness claims for violations of the FAL and her UCL "fraudulent" claims.  Pursuant to Federal Rule of Civil Procedure 8(e)(2), Plaintiffs make the following allegations in this paragraph only hypothetically and as an alternative to any contrary allegations in their other causes of action, in the event that such causes of action do not succeed. Plaintiffs and the Class may be unable to obtain monetary, declaratory and/or injunctive relief directly under other causes of action and will lack an adequate remedy of law, if the Court requires them to show classwide

reliance and materiality beyond the objective reasonable consumer standard applied under the UCL, because Plaintiffs may not be able to establish each Class member's individualized understanding of Defendants' misleading representations as described in this Complaint, but the UCL does not require individualized proof of deception or injury by absent class members. *See, e.g., Stearns v Ticketmaster*, 655 F.3d 1013, 1020, 1023-25 (distinguishing, for purposes of CLRA claim, among class members for whom website representations may have been materially deficient, but requiring certification of UCL claim for entire class). In addition, Plaintiffs and the Class may be unable to obtain such relief under other causes of action and will lack an adequate remedy at law, if Plaintiffs are unable to demonstrate the requisite *mens rea* (intent, reckless, and/or negligence), because the UCL imposes no such *mens rea* requirement and liability exists even if Defendants acted in good faith.

92.     Plaintiffs seek, on behalf of those similarly situated, a declaration that the above-described trade practices are fraudulent, unfair, and/or unlawful.

93.     Plaintiffs seek, on behalf of those similarly situated, an injunction to prohibit Defendants from continuing to engage in the deceptive, unfair, and/or unlawful trade practices complained of herein. Such misconduct by Defendants, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendants will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendants to which they were not entitled.  Plaintiffs, those similarly situated, and the general public, have no other adequate remedy at law to ensure future compliance with the laws alleged to have been violated herein.

## PLAINTIFFS' SECOND CAUSE OF ACTION
### (False Advertising, Business and Professions Code § 17500, *et seq.* ("FAL"))

94.     Plaintiffs reallege and incorporate by reference the paragraphs of this Class Action Complaint as set forth herein.

95.     Beginning at an exact date unknown to Plaintiffs, but continually within three (3) years preceding the filing of the Class Action Complaint, Defendants made untrue, false,

deceptive and/or misleading statements in connection with the advertising, marketing, and sale of trip/travel insurance on third party websites.

96.     Defendants made representations and statements (by omission and commission) that led reasonable customers to believe that they were agreeing to pay approved and lawful premiums for trip/travel insurance policies, without hidden, unapproved fees being included within the supposed "premium" for the policies.

97.     Defendants knew or should have known that consumers did not demand or value the supposed "assistance" services they offered, that consumers would not pay for it, and that consumers did not know Defendants were charging them for it. Nevertheless, Defendants continued to advertise their insurance policies as part of a scheme with the intent not to sell the insurance as advertised and to mislead consumers regarding the nature and extent of the services they were obtaining from Defendants, and regarding the prices of those insurance and non-insurance services. Defendants knew or should have known that they misled consumers regarding: the nature of the price paid for the insurance, the existence of an additional fee for Defendants, and the existence of Defendants' assistance services.

98.     Defendants created a situation where they could charge for a service while hiding its existence to consumers they had charged, thus making it even more unlikely that insureds would use the service for which they had been charged (and thus making Defendants' performance of the supposed assistance services illusory).

99.     Plaintiffs and the class members relied to their detriment on Defendants' false, misleading and deceptive advertising and marketing practices, including each of the misrepresentations and omissions set forth above. Had Plaintiffs and those similarly situated been adequately informed and not misled by Defendants, they would have acted differently by, without limitation, declining the fee for assistance services and, if necessary, declining the entire insurance transaction.

100.    Defendants' acts and omissions are likely to deceive the general public.

101.    Defendants engaged in these false, misleading and deceptive advertising and marketing practices to increase their profits. Accordingly, Defendants have engaged in false

advertising, as defined and prohibited by section 17500, *et seq.* of the California Business and Professions Code.

102.    The aforementioned practices, which Defendants used, and continue to use, to their significant financial gain, also constitutes unlawful competition and provides an unlawful advantage over Defendants' competitors as well as injury to the general public.

103.    As a direct and proximate result of such actions, Plaintiffs and the class members have suffered, and continue to suffer, injury in fact and have lost money and/or property as a result of such false, deceptive and misleading advertising in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court. In particular, Plaintiffs and class members lost money or property as a result of Defendants' violations because they would not have paid for Defendants' supposed assistance fees absent Defendants' misleading, unfair, and unlawful conduct.

104.    Plaintiffs seek equitable relief, including restitution, with respect to their FAL claims. Pursuant to Federal Rule of Civil Procedure 8(e)(2), Plaintiffs makes the following allegations in this paragraph only hypothetically and as an alternative to any contrary allegations in their other causes of action, in the event that such causes of action will not succeed. Plaintiffs and the Class may be unable to obtain monetary, declaratory and/or injunctive relief directly under other causes of action and will lack an adequate remedy at law, if the Court requires them to show classwide reliance and materiality beyond the objective reasonable consumer standard applied under the FAL, because Plaintiffs may not be able to establish each Class member's individualized understanding of Defendants' misleading representations as described in this Complaint, but the FAL does not require individualize proof of deception or injury by absent class members. *See, e.g., Ries v. Ariz. Bevs. USA LLC*, 287 F.R.D. 523, 537 (N.D. Cal. 2012) ("restitutionary relief under the UCL and FAL 'is available without individualized proof of deception, reliance, and injury.'"). In addition, Plaintiffs and the Class may be unable to obtain such relief under other causes of action and will lack an adequate remedy at law, if Plaintiffs are unable to demonstrate the requisite *mens rea* (intent, reckless, and/or negligence), because the FAL imposes no such *mens rea* requirement and liability exists even if Defendants acted in good

faith.

105.    Plaintiffs seek, on behalf of themselves and the class members, a declaration that the above-described practices constitute false, misleading and deceptive advertising.

106.    Plaintiffs seek, on behalf of themselves and the class members, an injunction to prohibit Defendants from continuing to engage in the false, misleading and deceptive advertising and marketing practices complained of herein. Such misconduct by Defendants, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendants will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendants to which it is not entitled. Plaintiffs, those similarly situated and/or other consumers nationwide have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

### PLAINTIFFS' THIRD CAUSE OF ACTION
**(Common Law Fraud, Deceit and/or Misrepresentation)**

107.    Plaintiffs reallege and incorporate by reference the paragraphs of this Class Action Complaint as set forth herein.

108.    Defendants made representations and statements (by omission and commission) that led reasonable customers to believe that they were agreeing to pay approved and lawful premiums for trip/travel insurance policies, without hidden, unapproved fees being included within the supposed "premium" for the policies. Defendants represented that their offers were for "insurance," "coverage," "Cancellation Protection," and "Booking Protection." Accordingly, reasonable consumers understood the quoted price to fully equal the insurance premium.

109.    Defendants had duties under the Insurance Code and regulations, as well as the common law, to disclose material facts regarding their insurance offers. *See, e.g.*, Cal. Ins. Code §§ 332, 790.02, 1861.01, and Cal. Code Regs. tit. 10, §§ 2189.3 and 2189.5. Defendants knew that the additional cost of and the nature of the assistance service was material to consumers and that consumers, including Plaintiffs, would have declined to pay for the assistance service if

Defendants had disclosed that they were charging consumers for the assistance service and the nature of that service.

110.     Defendants knew or should have known that consumers did not demand or value the supposed "assistance" services they offered, that consumers would not pay for it if they had a choice, and that consumers did not know Defendants were charging them for it. Nevertheless, Defendants continued to advertise their insurance policies as part of a scheme with the intent not to sell the insurance as advertised and to mislead consumers regarding the nature and extent of the services they were obtaining from Defendants, and regarding the prices of those insurance and non-insurance services. Defendants knew or should have known that they misled consumers regarding: the nature of the price paid for the insurance, the existence of an additional fee for Defendants, and the existence of Defendants' assistance services.

111.     These misrepresentations and omissions were known exclusively to, and actively concealed by, Defendants, not reasonably known to Plaintiffs, and material at the time they were made. Defendants knew that their misrepresentations and omissions concerned material facts that were essential to the analysis undertaken by Plaintiffs as to whether to purchase insurance at the stated price, and intended for Plaintiffs and similarly situated consumers to rely on those misrepresentations and omissions in accepting Defendants' offers of insurance. In misleading Plaintiffs and not so informing Plaintiffs, Defendants breached their duties to them. Defendants also gained financially from, and as a result of, their misrepresentations and omissions.

112.     Plaintiffs and the class members relied to their detriment on Defendants' misrepresentations and fraudulent omissions. Had Plaintiffs and those similarly situated been adequately informed and not intentionally deceived by Defendants, they would have acted differently by, without limitation, declining the fee for assistance services and, if necessary, declining the entire insurance transaction.

113.     By and through such fraud, deceit, misrepresentations and/or omissions, Defendants intended to induce Plaintiffs and those similarly situated to alter their position to their detriment.  Specifically, Defendants fraudulently and deceptively induced Plaintiffs and those

1   similarly situated to, without limitation, purchase the supposed assistance services together with
2   the desired insurance.

3       114.    Plaintiffs and those similarly situated justifiably and reasonably relied on
4   Defendants' misrepresentations and omissions, and, accordingly, were damaged by Defendants.

5       115.    As a direct and proximate result of Defendants' misrepresentations and/or
6   omissions, Plaintiffs and those similarly situated have suffered damages, including, without
7   limitation, the amounts they paid for the assistance services.

8       116.    Defendants' conduct as described herein was wilful and malicious and was
9   designed to maximize Defendants' profits even though Defendants knew that it would cause loss
10  and harm to Plaintiffs and those similarly situated.

11                          **PRAYER FOR RELIEF**

12      WHEREFORE, Plaintiffs, on behalf of themselves, those similarly situated, and the
13  general public, respectfully requests that the Court enter judgment against Defendants as follows:

14      A.  Certification of the proposed Class, including appointment of Plaintiffs' counsel as
15          class counsel;

16      B.  An order temporarily and permanently enjoining Defendants from continuing the
17          unlawful, deceptive, fraudulent, and unfair business practices alleged in this
18          Complaint;

19      C.  An award of restitution in favor of Plaintiffs and class members in an amount to be
20          determined at trial;

21      D.  On Plaintiffs' third cause of action (for common law fraud, deceit and/or
22          misrepresentation), an award of compensatory damages, the amount of which is to be
23          determined at trial, and an award of punitive damages, also in an amount to be
24          determined at trial;

25      E.  An order requiring Defendants to pay both pre- and post-judgment interest on any
26          amounts awarded;

27      F.  For reasonable attorney's fees and the costs of suit incurred; and

28      G.  For such further relief as this Court may deem just and proper.

1

## JURY TRIAL DEMANDED

2    Plaintiffs hereby demand a trial by jury.

3    Dated:       December 17, 2021              **GUTRIDE SAFIER LLP**

4

5

6

7

8

9                                               Seth A. Safier, Esq.
                                                100 Pine Street, Suite 1250
10                                              San Francisco, CA 94111

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Class Action Complaint