UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Vince Chhabria, Judge

```
MILLER, et al.,                )  No. C 21-09751-VC
                               )
          Plaintiffs,          )
                               )
vs.                            )
                               )
TRAVEL GUARD GROUP, INC.,      )
et al.,                        )
                               )
          Defendants.          )
_____)
```

San Francisco, California
Thursday, April 14, 2022

<u>TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
RECORDING 12:07 - 1:20 = 73 MINUTES</u>

<u>APPEARANCES</u>:

For Plaintiffs:

    Gutride Safier, LLP
    100 Pine Street, Suite 1250
    San Francisco, California
      94111
    BY:  STEPHEN RAAB, ESQ.

For Defendants:

    O'Melveny & Myers, LLP
    Two Embarcadero Center
    Suite 2800
    San Francisco, California
      94111
    BY:  MATTHEW POWERS, ESQ.

Transcribed by:

    Echo Reporting, Inc.
    Contracted Court Reporter/
    Transcriber
    echoreporting@yahoo.com

2

1 <u>Thursday, April 14, 2022</u>                                     <u>12:07 p.m.</u>

2                    P-R-O-C-E-E-D-I-N-G-S

3                         --oOo--

4         THE CLERK:  Calling case number 21-CV-9751,

5 Miller, et al. versus Travel Guard Group, Inc., et al.

6     Counsel, please state your appearances for the record,

7 starting with Plaintiffs first.

8         MR. RAAB (via Zoom):  Stephen Raab of Gutride

9 Safier for the Plaintiffs.  Good afternoon, your Honor.

10        THE COURT:  Afternoon.

11        MR. POWERS (via Zoom):  And good afternoon, your

12 Honor.  Matt Powers for Defendants.

13        THE COURT:  Afternoon.  Sorry to keep you all

14 waiting so long.  We've had kind of a busy calendar, and I

15 will say that because we've had a busy calendar, I may not

16 be as on top of things as I would like to be in this case.

17 I find it kind of challenging, and it's taking me more time

18 than I anticipated to wrap my brain around it.  So, I've

19 read the briefs.  I've read a couple of the cases, but there

20 are probably more cases that I'm going to need to read, and

21 I'm probably going to need to look more closely at the

22 exhibits after hearing from you and before deciding the

23 motions.

24     So, just to let you know -- and I'll be honest with you

25 if you start talking about a case and I haven't read it yet.

1    I just -- maybe a couple of preliminary questions just
2 out of curiosity.  There -- it sounds like the -- the
3 companies have assigned an amount of the total paid by the
4 customer to the insurance part of it, and they've assigned
5 an amount to the non-insurance part of it, the travel
6 assistance part of it or whatever, and I'm just curious.  I
7 didn't see any reference to what that amount was, and I'm
8 curious if we know what the -- what the amounts are.  Like,
9 if somebody ends up paying, you know, $183 for the bundle,
10 you know, is like $83 of it for insurance and $100 of it for
11 the -- for the travel assistance or like what is the -- you
12 know, what's the breakdown?

13          MR. POWERS:  So, your Honor, Matt Powers for
14 Defendants.  I don't know, honestly.  It's not pled, and I
15 genuinely don't know the answer to that question.

16          THE COURT:  You genuinely do not know the answer
17 to that question.

18          MR. POWERS:  Sorry.  I don't know, your Honor.

19          THE COURT:  Uh --

20          MR. POWERS:  I will say that's --

21          THE COURT:  Go ahead.

22          MR. POWERS:  Part of the work we're doing is to
23 figure that out, but it's a little more -- apparently a
24 little more complicated than simply assigning a number.  So,
25 I don't -- I don't know.

4

1          THE COURT:  Okay.

2          MR. POWERS:  I will say the -- just to -- just to

3  make one quick observation, the -- the portion of the -- the

4  quoted price that's attributable to insurance is not -- is

5  set by -- is set in the -- in the file briefs.  So, that's

6  -- we determined that based on the filings with the

7  Department of Insurance.  So, we don't -- it's not -- it's

8  not arbitrary.  The part of it that's insurance is

9  regulated.

10          THE COURT:  Okay.

11          MR. POWERS:  There's this additional part that --

12          THE COURT:  So, what's the portion that's

13  attributable to insurance?

14          MR. POWERS:  I'm -- your Honor, sitting here

15  today, I don't know what the percentage is.

16          THE COURT:  Because there's only two things,

17  right?  There's the insurance, and there's the travel

18  assistance, right?

19          MR. POWERS:  Correct.  Well, travel and medical

20  assistance, but correct, yes.

21          THE COURT:  And when you say "medical assistance"

22  it's just like telling people where a hospital is, right?

23  It's not actually --

24          MR. POWERS:  Well, no.  It's a little more

25  complicated than that.  So, there is a network of providers

5

1  around the world.  The -- the insured would have to pay for

2  the service, but if you are in, you know, a strange city or

3  if you're in, you know, a foreign country, you may not speak

4  the language.  You may not be able to sort of figure out

5  where you need to go to get medical care.  The company can

6  make sure you get somewhere that can, in fact, provide you

7  care.

8          THE COURT:  Okay.  But it's -- but care you have

9  to pay for?

10          MR. POWERS:  My understanding is that under most

11  circumstances, correct.  That's correct, your Honor.

12          THE COURT:  Okay.  So, you say the rates for the

13  insurance part of it are filed.

14          MR. POWERS:  Per the -- per our filings with the

15  Department of Insurance.

16          THE COURT:  Set per your filings with the

17  Department of Insurance.  Is the -- is the -- do you -- do

18  you submit the total price to the Department of Insurance,

19  the total price that you're charging for this package?

20          MR. POWERS:  It's set according to the -- the

21  standards that are set out and approved.  I'd have to review

22  those particular filings to -- to tell your Honor whether

23  the particular prices are -- I think -- my understanding

24  about how travel insurance works is that the insurance

25  itself is usually a percentage of the price of the travel

6

1 package, and, so, all of that -- the way that works is

2 disclosed and explained in the filings.  So, the -- I'm not

3 sure the price is explained, but the method for calculating

4 the premium is.

5          THE COURT:  And then is that -- is that something

6 that I can consider at the motion to dismiss stage?

7          MR. POWERS:  Yes, I think so.  It's a publically

8 filed document.  I don't see why not.  We've asked for the

9 Court to take judicial notice of it, and I think it is

10 subject to judicial notice.

11          THE COURT:  Okay.

12          MR. RAAB:  On that point, your Honor, I would just

13 like to note that they submitted one filing, and I don't

14 believe there's any representation that covers all the

15 insurance policies at issue in the case.

16          THE COURT:  Okay.  Let me -- I don't know.  I

17 mean, I guess let's start with the motion to compel

18 arbitration.  And this -- this seems to be the Defendants'

19 argument as far as I understand it.  So I guess, Mr. Powers,

20 I'm directing this at you probably.

21     You've got this description of the -- what's the -- I

22 can't remember.  You know, where you click to learn about

23 the -- what is it, the coverage and disclosures or what is

24 the phrase that's used there?

25          MR. POWERS:  Important disclosures.  There's --

7

1  you can get both the policy and you can -- or a model of the

2  policy, and then there's disclosures in there too that state

3  specific but then also describes the fact that these travel

4  assistance services are included.

5       THE COURT:  Yeah.  And I was looking at this one

6  document, right, and the one -- here.  Let me pull it up

7  just to make sure we're working off the same document. Just

8  has a -- this is -- I'm just using this as an exemplar,

9  right.  Your Exhibit 4 --

10      MR. POWERS:  Okay.

11      THE COURT:  -- which I think, you know, if you're

12  on Expedia --

13      MR. POWERS:  So, this would have been a policy,

14  your Honor, but yes.

15      THE COURT:  Right.  Okay.  So, this is a policy,

16  right, and -- and you -- you click on -- let me see if I

17  remember correctly.  So, there's an offer, right, to -- to

18  purchase coverage, right, where it says, you know, yes, I

19  want my cancellation protection plan for my flight.  That's

20  on, you know, the Expedia website.  And then you -- above it

21  there's a link that says "View insurance details and

22  disclosures," right?

23      MR. POWERS:  Correct.

24      THE COURT:  And, so, you -- if you click on that

25  link and you view insurance details and disclosures, you get

8

1  something along the lines of, I mean, maybe it depended on

2  the time that you were booking and stuff like that, but you

3  get something along the lines of your Exhibit 4, right?

4          MR. POWERS:  No.  I think there's an intermediate

5  screen that you would get.

6          THE COURT:  Okay.  What's the intermediate screen?

7          MR. POWERS:  It's not in our packet.  I think it's

8  described in the -- I believe it's described in the

9  declaration, but it would have had a link for each date and

10  then a -- an important disclosures link as well.

11          THE COURT:  Okay.

12          MR. POWERS:  These are two separate documents.

13          THE COURT:  Okay.  Link for each state.  And then,

14  so, if I clicked on my state, I would get (Zoom glitch)

15  something along the line -- for -- so, at any point -- I'm

16  looking at Exhibit 4 right now.  And if at any point it's

17  not appropriate for me to be looking at Exhibit 4 for

18  purposes of this discussion, you can let me know.  Okay.

19  But --

20          MR. RAAB:  What's the ECF number of this Exhibit

21  4?

22          THE COURT:  20-5.

23          MR. RAAB:  Thank you.

24          THE COURT:  The -- so, I go -- so, I go.  I'm

25  deciding whether I want the cancellation protection plan for

9

1  $50.44, right.  And so I clock on "View insurance details
2  and disclosures."  And then I click on the state that I'm
3  from, and I get a document like something along the lines of
4  Defendants' Exhibit 4, and it's a -- it says that there
5  -- you know, I'm getting two things, right.  I'm getting,
6  you know, the trip insurance, and then I'm getting these
7  non-insurance services provided by Travel Guard, right?
8         MR. POWERS:  Correct.  That's right.
9         THE COURT:  Okay.  And, so, this is the
10 explanation of what I'm going to get if I click yes, I want
11 cancellation protection plan for my flight for $59.44.  This
12 explains what I'm going to get for my $59.44, right?
13        MR. POWERS:  Correct.  The only caveat I'd give,
14 your Honor, is that the important disclosures document would
15 have also been available in that intermediate link.
16        THE COURT:  Yeah.
17        MR. POWERS:  And that also explains in more detail
18 many things, but one of them that these non-insurance
19 benefits -- non-insurance services are also part of the
20 package.
21        THE COURT:  Are also part of the package?
22        MR. POWERS:  Correct.
23        THE COURT:  Okay.  And, so, this tells me what I'm
24 -- what my package is, and sort of two different companies,
25 two different subsidiaries of AIG are going to provide me

10

1  these ser ices, and one subsidiary is going to provide me

2  with the insurance product, and another subsidiary is going

3  to provide me with the non-insurance services, the travel

4  assistance we'll call it for short, right?  And here's what

5  you're going to get, and there's some description of what

6  you're going to get by way of insurance and what you're

7  going to get by travel assistance, and that's what you're

8  going to get from these two companies for your $59.44, and

9  it's got -- it identifies the logo -- the logos of both

10 companies are on there, and it makes clear that you're

11 getting the non-insurance services, the travel assistance,

12 insurance -- travel assistance services from Travel Guard,

13 right?

14        MR. POWERS:  Yes.

15        THE COURT:  And this is -- this tells me what I'm

16 getting, and you're saying that the -- the arbitration

17 provision in this document -- so, let me put it this way.

18 You're saying that both of these companies got together to

19 create this arrangement and to provide jointly a package of

20 services to -- to the customer.  This is the document that

21 describes it.  This document that -- Travel Guard is going

22 to get paid as a result of somebody reading this document

23 and then clicking that they're willing to pay the $54.99 or

24 whatever it is.

25        This -- this document has the arbitration language on

1   it, but -- but the -- the customer cannot invoke that

2   arbitration language -- cannot invoke that language about

3   arbitration against Travel Guard because Travel Guard didn't

4   sign the document?  That's your argument for --

5           MR. POWERS:  No, I don't think so.

6           THE COURT:  -- why argument should be compelled --

7   arbitration should be compelled?

8           MR. POWERS:  No.  No, your Honor, I don't think

9   that's our argument.  Our argument is that the provision --

10  I believe it's in this document.  I'll have to check.  But

11  the provision in the document the Plaintiff cited is fully

12  consistent with the separate agreement that the Plaintiff

13  entered into with Expedia and Travelocity.

14          THE COURT:  It's -- I mean, but that's clearly

15  wrong.  I mean, it's -- it's not fully consistent.  I mean,

16  one document says you're required to arbitrate with third

17  parties who are offering services on our site, and this

18  document says you're not required to arbitrate with third

19  party -- with these particular third parties, you're not

20  required to arbitrate a dispute arising out of this

21  contract.

22          MR. POWERS:  I disagree, your Honor.  The argument

23  is that in this document, the Exhibit 4 document, that the

24  parties say that they may agree to arbitrate, that they --

25  they can do so.  And then the Plaintiff then agrees to

12

1  arbitrate these same claims when she accepts the terms of

2  service on Expedia.

3       And, so, our view is that those are fully consistent.

4  This doesn't say if -- if this document said the parties may

5  not arbitrate, I would agree with your Honor there'd be a

6  conflict, but the Exhibit 4 doesn't say that.  It says the

7  parties can agree to arbitrate.

8            THE COURT:  And you don't have to arbitrate if you

9  don't agree to it.

10           MR. POWERS:  But she agreed to it in a separate

11  document.

12           THE COURT:  But why would she conclude that that

13  document covers her notwithstanding the fact that she was

14  just told in this other document that she adopted that she

15  only has to arbitrate with these two companies if these two

16  companies if -- if both sides agree?

17           MR. POWERS:  Well, if we follow the sequence your

18  Honor is describing and she went and looked at this document

19  carefully, she would see this document, the Exhibit 4

20  document, says, "Look, you may agree to arbitrate if you

21  want to do so, if you agree to do so."  Then she then goes

22  to Expedia, reads their terms and conditions and reads that

23  I am agreeing to arbitrate claims against the providers like

24  -- like my clients that are selling services through

25  Expedia's website.  So, I think if we're in the scenario

1  where the person is carefully reading both of these, that

2  that person would readily conclude that that second

3  agreement is the agreement that was contemplated in this

4  first document.  It's fully consistent.  I understand your

5  Honor's view.  My view is that it's fully consistent.

6          THE COURT:  Okay.  I -- I understand what you're

7  saying.  But, I mean, why -- why -- you know, we have this

8  sort of general catch-all language from Travelocity or

9  Expedia or whoever it is.  I mean, it's all the same I

10  think, right, but for this general catch-all language about

11  agreements with third parties and essentially simultaneously

12  the -- the customer has entered into this arrangement with,

13  you know, the underwriter and with Travel Guard for the

14  provision of -- of insurance services and travel assistance

15  in which it says you get to decide whether you want to

16  arbitrate.

17      I mean, it's basically simultaneous, right?

18          MR. POWERS:  I mean, it is -- I think in the

19  scenario you provided, your Honor, the person would look at

20  our -- the policy, then look at the -- then look at the

21  terms of service.  But, I mean, I agree, it's all happening

22  about the same time.  That's certainly fair.

23          THE COURT:  So, if it's all happening at about the

24  same time, why -- why would a -- why would a reasonable

25  person believe that -- well, let me put it this way.  Why

14

1  wouldn't any reasonable person believe that they are covered

2  by the more specific -- that their dispute with these two

3  companies is covered by this more specific arbitration

4  language rather than the generic Expedia arbitration

5  language which doesn't mention the two companies?

6        MR. POWERS:  Well, I have -- I have to say I think

7  your Honor's question answers itself, which is that specific

8  language always controls over general language, and there's

9  specific language in the Expedia agreement that -- that says

10  very explicitly, like if you're buying something through our

11  site, you're agreeing that those people are third party

12  beneficiaries and that you're going to arbitrate all claims

13  against them, that you're agreeing to do that, whereas the

14  first document says, "Hey, if you want to arbitrate, you may

15  agree to do so."

16      So, again, I think a person like -- like you've

17  described parsing through these documents carefully would

18  look at that later specific language and say, even though it

19  doesn't say "Travel Guard" in that later document, it's very

20  clearly referring to the entity you're contracting with to

21  get this insurance and -- and these other services.

22      So, I think it's -- again, I think that specific -- a

23  reasonable read of that sequence is absolutely that that

24  specific language controls.

25        THE COURT:  Okay.  Mr. Raab, what's your response

15

1  to that?

2          MR. RAAB:  A couple of points, your Honor.  One,

3  the sequencing is incorrect.  As your Honor noted, as far as

4  the actual agreement by the insured to sort of check out and

5  consummate the purchase, the -- from the consumer's side,

6  it's roughly simultaneous.  But, I think legally, the

7  purchase from Expedia or Travelocity has to be deemed prior

8  to the insurance purchase because the insurance has to cover

9  something.  And when you get a confirmation email from

10 Travel Guard, they only are able to generate that

11 confirmation and the premium and get your address and your

12 trip date after the purchase goes through Expedia or

13 Travelocity and then is sent to Defendant.  So, they

14 actually get the information and realize that they have a

15 transaction on their hands only after the checkout is -- is

16 confirmed through the website.  And then they automatically

17 start filling in information as to your name, your address,

18 the state where the insurance policy will apply based on

19 your residence, the premium, and your trip dates.

20     All of that information has to come after essentially

21 the -- the initial transaction.  So, to me, the insurance

22 policy is subsequent to the checkout from Expedia or

23 Travelocity.

24          THE COURT:  Well, you know --

25          MR. RAAB:  Also, the specific --

1          THE COURT:  -- I understand the idea that it's

2    simultaneous, but I guess I'm trying to understand your

3    argument that it's -- that it's subsequent.  I'm not sure I

4    understand your point in that regard.  I mean, when you

5    click, you know, when you -- when you -- hold on one second.

6    When you click to complete booking bar, right, that's when

7    -- and you've made clear that as part of your booking you

8    want the insurance.  So, I get your point -- in the

9    insurance and the travel assistance.  So, I get your point

10   that the sort of agreement to book the flight and the

11   agreement to purchase the insurance and the travel

12   assistance happens at the same time when you click that

13   button.  I get that.  But the -- the part -- the point you

14   were making about it -- the -- you purchasing the insurance

15   subsequently, I didn't -- I didn't get that.

16          MR. RAAB:  Well, the insurance has to cover a

17   trip.  And if -- if Defendants' position is that you'd

18   purchase the insurance and enter a contract with them before

19   you've entered a contract with --

20          THE COURT:  No.  I'm asking you -- I'm asking --

21   I'm not saying that they -- you're responding now to the

22   Defendants' argument that they did it before.  I'm saying I

23   agree with you that they didn't do it -- they don't do it

24   before.  I'm asking you -- you said that it's subsequent and

25   I should think of the insurance purchase as subsequent to

17

1 the booking of the trip, and I'm asking you why?  Why

2 shouldn't I think of it as simultaneous?

3           MR. RAAB:  Just in the sense that the purchase of

4 the trip has to exist for the insurance policy to have

5 effect.

6           THE COURT:  Right.  But --

7           MR. RAAB:  So --

8           THE COURT:  So, why doesn't it happen

9 simultaneously when you click the "Complete Booking" bar

10 because you've already said, "I'm buying this package of

11 things," right?  I'm buying the -- I'm buying the flight,

12 and I'm buying the insurance for the flight at the -- and

13 I'm getting them both as soon as I click "Complete Booking,"

14 right?

15           MR. RAAB:  From -- from a temporal point of view.

16 But the -- the point is more that you can purchase the trip

17 without the insurance, but you can't purchase the insurance

18 without the trip.

19           THE COURT:  Well, I guess not.

20           MR. RAAB:  So, to me the -- the trip is necessary,

21 a necessary --

22           THE COURT:  Right.

23           MR. RAAB:  -- premise --

24           THE COURT:  Okay.

25           MR. RAAB:  -- of the premise.

1          THE COURT:  And assuming that you're buying them

2 at the same time.  So, let's assume that you're buying them

3 at the same time.  Where -- what flows from that conclusion?

4          MR. RAAB:  And then if you look at the specific

5 language, the -- the point is the insurance policy is the

6 final contract between Plaintiff Miller and Defendants.  And

7 the parol evidence rule is concerned with the final

8 contract, not just integrated agreements but the final

9 expression of the agreement.  And this agreement is the

10 final expression between these parties, and it addresses

11 arbitration specifically.  And, so, in that sense, there's

12 no other document that it refers to or it incorporates or

13 needs to complete the arbitration agreement.

14     The specific language says if the parties mutually

15 agree as well, which mean that that's a voluntary

16 arbitration provision, meaning both parties have to mutually

17 agree to arbitrate.  The third party beneficiary argument,

18 one, is outside of this final agreement.  So, just based on

19 California rules about parol evidence, should not be

20 considered.  But, even if you do, it's not a mutual

21 agreement.  They're claiming it as a third party

22 beneficiary, which does not fit that specific language.

23          THE COURT:  Well, one thing I haven't focused on

24 is what there's -- so, I've pressed the "Complete Booking"

25 tab, and I've booked my flight, and I've got my insurance

19

1    for the flight and the travel assistance that comes along

2    with it, and I -- and then I get -- I receive a

3    communication from the Defendants after that, right?

4              MR. RAAB:  Right.

5              THE COURT:  And is that communication, does that

6    include, you know, sending me this document, this Exhibit 4,

7    or whatever version of Exhibit 4 happens to be in existence

8    at the time?  Like, does that get sent to me again?

9              MR. RAAB:  I believe the standard is to send a

10   short email confirming the purchase with a link to your

11   policy documents.  If you click on the policy of insurance

12   link, it takes you to a policy summary page with other

13   links, and that policy summary page has your name and

14   address, the date of your trip, all that information that

15   they've received from Travelocity and Expedia.  And then you

16   can find another link, and you can click on the policy of

17   insurance, and -- and you'll see that form that's similar to

18   Exhibit 4.

19             THE COURT:  And isn't that --

20             MR. RAAB:  And then there may be another link for

21   the disclosures.

22             THE COURT:  Doesn't that have the same -- wait.

23   You said the form that is similar to Exhibit 4.  But I guess

24   one question first is what you've just described to me, is

25   that all in the record?

1          MR. RAAB:  Since there are two motions, it's a

2   little confusing as to --

3          THE COURT:  Yes.

4          MR. RAAB:  -- which documents are in which motion,

5   but there are allegations about this, and there are

6   documents about this trail, yes.

7          THE COURT:  So, but -- right.  But what matters

8   for the motion to compel arbitration is what is the

9   evidence?  What is the evidence?  What is the actual factual

10  evidence, not what your allegations are?  So, I'm -- I mean,

11  I think it's going to be important for us to figure out like

12  what is in -- which of this stuff that you're talking about

13  is in the record on the motion to compel arbitration, but I

14  guess maybe my bigger question is you -- you just said

15  something to the effect of.  You know, you get the email,

16  and then you click on something, and you go to the summary,

17  and then from there you can -- it says "Here's your policy

18  document or something like that," and then you said then you

19  see something similar to Exhibit 4.

20      What I'm curious about is is that -- you know, are you

21  -- is it the same document that I -- you know, if I'm going

22  through this process and I click on view insurance details

23  and disclosures and then I click on my stay and I'm reading

24  Exhibit 4, is that same document made available to me after

25  the fact, you know, through the -- indirectly through that

1 email that is sent to me, and does it have the same language

2 about arbitration in it?

3          MR. RAAB:  It does have the same language about

4 arbitration, the policy that they send to you as the

5 confirmation of your policy.

6          THE COURT:  Okay.  And can you show me where in

7 the record I can -- show me where in the record I can

8 confirm that.

9          MR. RAAB:  The -- the policies are the ones that

10 Defendants -- well, there are two sources.  Defendants

11 attached what they have declared are Plaintiffs' policies

12 to --

13          THE COURT:  Okay.

14          MR. RAAB:  Let me just pull up the -- the

15 Gallagher declaration that they submitted in support of

16 their motion to dismiss attached all the policies.

17          THE COURT:  Okay.

18          MR. RAAB:  That's ECF 20 --

19          THE COURT:  Okay.  Which -- which is the policy --

20 you say that they -- they make the policy available to you

21 after the fact, after you've purchased the -- the bundle of

22 services, right?  And the -- and that that policy includes

23 the -- you know, the arbitration language that's favorable

24 to you, you know, the one that talks about mutual

25 arbitration.

22

1       Show me where that is.  I want to confirm that.

2               MR. RAAB:  Right.  So, there are four Miller

3  policies.  That's ECF 20-4, 20-5 --

4               THE COURT:  Tell me which exhibit -- tell me which

5  exhibit to which declaration.

6               MR. RAAB:  It's Gallagher declaration, Exhibit 3,

7  Exhibit 4, Exhibit 7, and Exhibit 8.

8               THE COURT:  Which one do you want me to look at?

9               MR. RAAB:  Let's look at Exhibit 8.

10              THE COURT:  Okay.  And then you're saying that

11 this is the document that is made available to the customer

12 after the fact, after the transaction has been entered into?

13              MR. RAAB:  Correct.

14              THE COURT:  Okay.  And how do I confirm that that,

15 in fact, is the case?

16              MR. RAAB:  That is what Defendants state in their

17 declaration.

18              THE COURT:  Declaration.  Okay.  Let me look --

19 let me go to the declaration just so I can confirm that.

20              MR. RAAB:  Paragraph 10.

21              THE COURT:  Okay.  So, they say attached is the

22 travel insurance policy purchased by the Plaintiff.  How do

23 you pronounce her name?

24              MR. RAAB:  Tameka Miller.

25              THE COURT:  Well, this one is -- is not Miller.

23

1  It's the other Plaintiff, right?  Oh, I'm sorry.  Tameka

2  Miller, okay.  Got it.  I was looking at paragraph eight,

3  not Exhibit 8.

4           MR. RAAB:  Oh, yes.

5           THE COURT:  So -- okay.  So, this is -- okay.

6  They're saying this is the travel insurance policy purchased

7  by Tameka Miller, okay, and it's Exhibit 8.  All right.  And

8  this is something that does look similar to the -- you know,

9  what you get when you click on view insurance details and

10 disclosures on the Expedia website.  And, so, that has the

11 language.

12          MR. RAAB:  Right.

13          THE COURT:  Show me where that language is just so

14 I can make sure.

15          MR. RAAB:  It is ECF page 11 of 24, which is page

16 20 of the policy.

17          THE COURT:  Okay.  I got it.  Okay.  All right.  I

18 see.  So, your argument is, look, this is the final

19 agreement between the parties, and we know that this is the

20 final agreement between the parties because the companies or

21 the company, the -- the insurance provider, sent this --

22 represented to the customer that this is the final contract

23 between us?

24          MR. RAAB:  Correct.

25          THE COURT:  And, so, how -- how could you say

24

1  under those circumstances that this sort of more general,

2  you know, Expedia provision about third party providers

3  applies when you -- when the customer agreed to both of them

4  at the same time, was presented with -- at the time the

5  customer agreed to them, they were presented with this

6  contract that governed the relationship between the customer

7  and the provider of the insurance and the provider of the

8  travel assistance, and then they were, you know, provided

9  that same contract as confirmation that this is the -- this

10  is the contractual arrangement that governs the parties

11  after the fact?

12          MR. RAAB:  Right.

13          THE COURT:  How could -- how could -- under those

14  circumstances, how could you possibly conclude that the --

15  the sort of more general language about arbitration with --

16  with third party providers on Expedia could apply?

17          MR. RAAB:  Correct.

18          THE COURT:  Okay.  I understand -- I understand

19  the arguments.  Is it -- I mean --

20          MR. POWERS:  May I respond briefly, your Honor?

21          THE COURT:  But I have another question for Mr.

22  Raab.  So, you -- you know, you throw around a bunch of

23  theories for why, you know, this language governs.  You

24  know, you've got the equitable estoppel theory and all that.

25  I mean, the theory that I -- what I just described, under

25

1 what theory does that -- under what theory is -- what legal

2 theory is -- are the Defendants prevented -- is Travel Guard

3 prevented from invoking the -- the more general Expedia

4 third party contractual language?  Because your client did

5 agree to that, right?  I mean, it's not that your client

6 didn't accept that language.

7          MR. RAAB:  We dispute that.  We -- we do argue

8 that the Plaintiff did not agree to those --

9          THE COURT:  Okay.

10          MR. RAAB:  -- those two --

11          THE COURT:  Let's assuming the Plaintiff did agree

12 to those terms for the sake of discussion.  I understand

13 your argument about that, but let's assume the Plaintiff did

14 agree to those terms.

15          MR. RAAB:  Right.  Well, then, just under contract

16 principles, it -- under California law, this is the final

17 agreement by the parties.  The arbitration agreement should

18 be determined based on this language and this agreement, and

19 the parol evidence statute excludes the consideration of any

20 other agreement.

21          THE COURT:  Well, the parol evidence statute,

22 doesn't that exclude evidence of -- like oral agreements?  I

23 thought that's what the parol evidence statute excluded is

24 evidence of oral agreements to -- you know, to inform the

25 meaning of the written agreement.  But here we're talking

26

1  about like another -- another written agreement that's

2  entered into simultaneously.

3          MR. RAAB:  So, California Civil Procedural Code

4  1856 sets forth the parol evidence rule that says terms set

5  forth in writing intended by the parties as a final

6  expression of their agreement with respect to the terms

7  included therein may not be contradicted  by evidence of a

8  prior agreement or of a contemporaneous oral agreement.

9          THE COURT:  Okay.

10          MR. RAAB:  So --

11          THE COURT:  But this is like a contemporaneous --

12  so, your -- your argument is -- what I'm saying is it's sort

13  of a contemporaneous written agreement, and what you're

14  saying is that you -- we have to think of the -- we have to

15  think of the more specific agreement involving Travel Guard

16  and the insurance provider as the final agreement between

17  the parties because it's -- you know, they were entered into

18  at the same time, but it was presented as such by the

19  Defendants to the customer.

20          MR. RAAB:  Right.  And -- and I would say the

21  other agreement is a prior agreement in that sense for

22  purposes of this statute.  And then, in addition to that,

23  when you have two conflicting provisions, even if you were

24  to consider that and hold that, you know, I don't think the

25  parol evidence applies, you still have to resolve that

27

1  conflict, and they -- those provisions are directly in

2  conflict.  They -- they are not reconciled.  And -- and, so,

3  the agreement between the parties that's specific to these

4  parties should control over the more general language.

5          THE COURT:  So, what if -- okay.  So, let's --

6  let's strip away the facts of this case, and let's say you

7  and I are negotiating a contract, right, and we're

8  negotiating the contract and we include language that says

9  no arbitration unless both sides agree.  Okay.  And then I

10 say to you, look, this is a form contract, right?  This is

11 form language, this -- this contract that I enter into

12 people -- with people always says, you know, no arbitration

13 unless both sides agree.  But I got to tell you, Mr. Raab,

14 that you're a litigious fellow.  I know you to be a

15 litigious fellow.  And, so, with you I need you to agree

16 that we're going to go to arbitration.

17     So, I've got this sort of side agreement with you that

18 I'm going to ask you to sign at the same time, all right.

19 And it says I agree to go to arbitration with you for any

20 dispute arising under this contract, and you signed them

21 both at the same time.  All right.

22         Why -- why are the inconsistent?  There's -- there's a

23 -- there's a provision that says arbitration with mutual

24 agreement, and there's a separate contract which says

25 pursuant to that contract I agree to -- to arbitrate with

28

1  you.

2          MR. RAAB:  A couple of things, your Honor.  One is

3  the integration issue.  The policies are integrated

4  agreements, meaning we do not -- we expressly do not have

5  that situation where the parties are entering multiple

6  agreements.  On at least two of them there's an express

7  integration clause, and under California law, the other --

8  the earlier two agreements could also be determined as

9  integrated agreements based on the context and the overall

10 wording and treatment of -- of the terms.

11     And then, secondly, the -- so -- so, the integrated

12 agreement sort of excludes the idea of a secondary

13 agreement, but then even if there -- you were to consider a

14 second agreement, they would still have to be consistent.

15 And I think in the hypothetical, if you have one saying we

16 will only arbitrate if we mutually agree on it and the other

17 one says let's -- let's agree to arbitrate, that's only

18 effective if it truly is a subsequent agreement where you

19 have in mind the mutual agreement provision and say this is

20 the mutual agreement.  And that is not the situation here.

21          THE COURT:  Okay.  And, so, the -- your legal --

22 your theory for why -- your theory is basically that the --

23 or your primary theory, I guess, is that the -- the specific

24 agreement involving the insurance provider and Travel Guard

25 is the final agreement between the parties, and it's an

1 integrated agreement, and so it excludes any sort of side

2 agreement or other agreement that was entered into

3 simultaneously between the parties or prior to -- prior or

4 simultaneously.  And, so, it -- so, by definition, the --

5 the agreement that your client signed or consented to when,

6 you know, the -- the agreement about the -- the general

7 Expedia agreement does not apply to these two companies that

8 entered into this more specific integrated agreement with --

9 with your client.

10          MR. RAAB:  Right.

11          THE COURT:  Okay.  I think I -- I think I -- so,

12 that's -- it's not a -- so, this issue of equitable estoppel

13 or third party beneficiary, I mean, none of that really

14 comes into play, right?  It's just that this is the

15 agreement that governs the relationship between these --

16 among these three parties and this agreement that says that

17 arbitration will only happen if it's mutually agreeable.

18          MR. RAAB:  I think the -- the one thing I would

19 add to that is equitable estoppel comes in to the extent one

20 of the Defendants benefitted, took money from this

21 agreement, say, for instance, profit from the assistance

22 fees and provided assistance service, but Plaintiffs' not a

23 signatory to the policy.

24          THE COURT:  Right.

25          MR. RAAB:  So, the policy states it's National

30

1  Union Fire Insurance as well as Travel Guard, which is sort

2  of a brand name and doesn't identify the company.  In the

3  complaint, we identify two companies as providing the

4  assistance services.  There's the Agent Travel Guard Group

5  which profits both as an agent, it get's compensation for

6  selling the insurance.  So, it profits and benefits directly

7  from the insurance contract.  And then AIG Travel and Travel

8  Guard Group, to the assistance fee, also directly benefit

9  from that contract.  So, even though it identifies National

10  Union, to the extent one or more Defendants did not consider

11  it a signatory, we would say equitable estoppel clearly

12  applies under the theory of direct benefit from the contract

13  with the arbitration agreement.

14          THE COURT:  Okay.  And -- and -- but isn't it -- I

15  mean, so, I am not very familiar with contract law, but are

16  there other doctrines you could have invoked to argue that

17  Travel Guard is bound by this language?  I mean, the -- the

18  -- so, for example, right, you've got the -- you got NUFIC,

19  and you've got Travel Guard or you've got these two

20  companies, AIG Travel and Travel Guard, right, and they're

21  all sort of, as far as I can tell and as far as the evidence

22  shows and as far as your allegations suggest, they're all

23  working together to create this arrangement whereby your

24  client will purchase this bundle of services from them,

25  right?  They've -- they're sort of creating this contractual

31

arrangement, and they're sort of mutually benefitting from
this contractual arrangement, and they're both -- you know,
they're related corporate entities.  They're both
subsidiaries of AIG, and they're obviously working together
on this or one could certainly infer from this -- at this
stage that they're working together on this, and they're
working together to get your client to purchase a bundle of
services and be contractually bound, you know, to -- bound
by contract in connection with that -- the purchase of that
bundle of services.

I mean, aren't they just acting as agents?  I mean,
aren't they acting as agents of one another such that
they're both bound by -- I mean, aren't there rules about,
you know, your agents are bound by this -- by contractual
arrangements that you enter into also?  I mean, again, I
don't know -- I'm not -- I'm far from an expert on this,
but --

MR. RAAB:  I think the two main theories are that
they are signatories because they all appear on the document
or to the extent that is not held to be the case, then
certainly equitable estoppel, for -- for the reasons you've
just suggested I think it's --

THE COURT:  Right.  But to the extent they're not
signatories, might they be bound as agents or might they be
bound under some other doctrine?  I mean, to the extent that

32

1 like equitable estoppel doesn't quite fit, is there any

2 other doctrines out there that you could have invoked but

3 didn't I'm trying to -- I guess I'm trying to ask.

4          MR. RAAB:  I think equitable estoppel and

5 signatory are the main -- are the main ones.  The agency --

6 usually an agent can buy into principal.  Here, we have

7 alleged in the complaint that they all act in joint

8 enterprise and as agents of each other.  So, we do allege

9 that they are agents of each other in -- in all of these

10 acts because they're so closely related and working together

11 and directed by --

12          THE COURT:  And it seems fairly obvious.  I mean,

13 I -- from all the documents that have been submitted and

14 stuff, I mean, that seems fairly obviously your allegation

15 is correct in that regard.

16     But why -- so, why didn't -- why didn't you press that

17 argument in support of, you know, the notion that this

18 language from this agreement is binding on Travel Guard as

19 well as the -- you know, as well as the insurance provider?

20 I'm just trying to figure out if it's missing something

21 about, you know, that -- why that -- I'm trying to figure

22 out does that concept not apply here for some reason?

23          MR. RAAB:  No, I think it -- I think it -- it

24 does.  I think we -- we were just emphasizing some of the

25 other theories, but that -- that is certainly in our

33

1  allegations, and I believe it may be referenced as well in

2  the papers, but I would have to double check where.

3          THE COURT:  Okay.  On the arbitration stuff --

4  and, by the way, I see -- well, I'll make an announcement to

5  the folks in criminal calendar which starts at 1:00 o'clock.

6      But, anyway, Mr. Powers, you want to respond on the

7  arbitration stuff, and then we'll have a brief discussion on

8  the merits?

9          MR. POWERS:  Yeah, let me respond in a couple of

10 different ways.  First of all, National Union is the only

11 signatory to that policy.

12         THE COURT:  Right.

13         MR. POWERS:  The -- the argument about agency,

14 there's a generic statement in the complaint that

15 everybody's an agent of one another.  There's no facts to

16 support that.  If -- if the argument is going to be that

17 agency principles allow the Plaintiffs to treat these other

18 entities as though they were signatories to this policy for

19 whatever -- for this particular purpose, I think we should

20 brief that because I'm -- whether they're agents or not, I'm

21 not sure I agree, and I -- I'm not sure I agree.  I suspect

22 that I will not -- that whatever agency principles do apply,

23 it would allow them to make the argument that they're making

24 about integrated agreements.

25     The one thing I would say before turning to the merits

34

1 is I would urge your Honor to read a couple of cases if --

2 if your Honor hasn't already, because there's law on the

3 things we've just been talking about.  These are all cited

4 in our -- our complaint.  There's a number of District Court

5 cases that have explicitly enforced these arbitration

6 provisions in very similar circumstances.  The In Re

7 Generale COVID-19 Travel Litigation decision out of the

8 Southern District of New York, basically the same clause,

9 basically the same circumstances, but enforces it -- allows

10 the insurer to enforce that agreement.  And, with respect to

11 this argument about integration, I would direct your Honor

12 to the Cione -- if I'm spelling (sic) that right -- v.

13 Foresters Equity case.  It's in our complaint -- or, sorry,

14 it's in our papers, 58 Cal.App. 4th at 625.  And that --

15 that also dealt with an argument that a later integrated

16 agreement prevented the Defendant from, as a third party

17 beneficiary, enforcing a prior form that the Plaintiff

18 filed.  And, so, the facts of that case are the Plaintiff

19 goes to work for this equity company called Fesco, F-E-S-C-

20 O.  And, as part of that, he has to register with NASD and

21 file a form that says I agree that any disputes with my

22 employer will be arbitrated.

23      So, then three years later, this Plaintiff and his

24 employer execute an employment agreement.  It is silent as

25 to arbitration.  It says nothing about it.  The Plaintiff

35

1 claimed that in this case that his second agreement

2 controlled and was integrated and, therefore, vacated this

3 prior agreement with -- in the form you file with NASD.  The

4 Court rejected -- the Court of Appeal rejected that

5 argument.  The Court there pointed out that the Defendant

6 wasn't trying to enforce the employment agreement.  It was

7 trying to enforce the NASD form as a third party

8 beneficiary, which is exactly what's happening here.  We are

9 trying to enforce the Expedia agreement as an express third

10 party beneficiary.

11      So, I would -- I would urge the Court to look at those

12 cases because I think they answer exactly the point that

13 we've been discussing.

14           THE COURT:  Okay.  I haven't read those cases yet.

15 So, I will make sure to do so.

16      Okay.  On the -- on the merits, I mean, I guess -- I

17 guess, Mr. Powers, I'll just say why doesn't -- why doesn't

18 Judge Tiger have it exactly right?  It seems like at a

19 minimum, what -- what is being plausibly alleged here --

20 well, let me put it this way, right.  Let's -- let's change

21 the -- let's change the facts a little bit of this -- of

22 this case, okay.  Let's say -- let's say that I -- I'm

23 offered a travel protection package, okay, and I go and I

24 clock on the -- you know, if I were to click on the link

25 that describes the travel protection package, what I'm told

36

1 is that you get some -- you know, you get insurance.  You
2 get travel insurance, and we're going to send you a
3 toothpick, right.  And the -- the total cost of this
4 valuable package that we're providing to you, if it's travel
5 insurance plus the toothpick, is $183.  And, so, if you want
6 to pay $183 for the travel insurance and the toothpick, you,
7 you know, click here and you'll get it, and your trip will
8 be ensured, and you'll have a toothpick to bring along with
9 you.
10      And then -- and then I later find out that, you know,
11 the rates that the Insurance Commission approved was $83,
12 and what you were actually doing was bundling that $83
13 insurance with a $100 toothpick and selling that to me.
14 Wouldn't that be, you know, sort of unapproved insurance?
15 Wouldn't you be charging me an unapproved rate, and wouldn't
16 you be committing fraud against me by selling me that
17 package?
18           MR. POWERS:  So, I don't know, but I do think that
19 is exactly the -- the fact pattern that was alleged in the
20 -- in Judge Tiger's case, that there was no benefit to the
21 service, that it was a complete sham, and there were
22 basically no costs involved in providing it.  And, so, in
23 essence, it's like your toothpick example, right.  It's --
24 it's a complete scam.  There's nothing of value in the
25 toothpick, and on that basis, it's -- it is improper.

1    The Plaintiffs couldn't quite allege that here because

2 they know that's not true, that these services do have

3 value, that we do incur costs in providing them, and that

4 some people are very very happy to have them, particularly

5 if they're stuck in a travel situation, and, so --

6         THE COURT:  Well, wait a minute.  They didn't

7 allege that in their complaint, that some people are very

8 happy to have them if they're stuck in a travel situation.

9         MR. POWERS:  Well, that's fair enough.  They don't

10 say exactly that, but they exclude the people that use it

11 from their class because they know those people absolutely

12 got benefit from the -- from the services at issue here, but

13 they -- they definitely had to hedge, as opposed to the

14 other case, on -- that we incur cost to provide the services

15 and the services have some value.

16         THE COURT:  Okay.  But hold on a second.  I'm

17 going back to Judge Tiger's case now.

18         MR. POWERS:  Okay.  So --

19         THE COURT:  Where in his opinion does this

20 distinction appear that you're trying to create between his

21 case and your case?  I want to see where that is.

22         MR. POWERS:  So, I'm not sure that's in there.

23 I'm trying to explain the difference in the fact pattern.  I

24 do think --

25         THE COURT:  Okay.  I'm -- okay.  But I don't -- I

38

1 don't think that that's how Judge Tiger described the

2 allegations in the case.  I mean, hold on a second.  Let's

3 take a look at Judge Tiger's opinion, which I thought was

4 very helpful.

5      (Pause.)

6           THE COURT:  What he says, he describes the

7 assistance service, the travel assistance service, which

8 seems very similar to the travel assistance service that you

9 -- you provide.  And then he says:

10               "The Plaintiffs allege that there

11               is no significant demand for the

12               assistance benefits offered by AGA."

13      They contend that the services offered by -- the

14 "services offered by AGA," under the assistance service fee

15 is information that consumers can readily access for free on

16 the Internet.  Consumers would not pay or the assistance

17 service product of given a choice not to do so.

18      I mean, that's basic -- oh, and then they say -- I

19 don't know if there's -- if we have this allegation in this

20 case.  But he says:

21               "Additionally, Plaintiffs contend

22               that the fee charged by Defendants is

23               not actually used to invest in or

24               provide the informational service for

25               which it is supposedly charged."

39

1    But, other than that, it seems like it's basically the

2  same is what they're alleging here.

3          MR. POWERS:  So, I -- I think there's a bit of a

4  difference, your Honor.  And, to be clear, although that

5  case did involve travel insurance, it also focused almost --

6  well, mostly on event insurance, which is a --

7          THE COURT:  Right.

8          MR. POWERS:  -- a bit of a different animal.  I

9  will say I --

10          THE COURT:  The directions, nearby restaurants,

11  hotels, parking garages, weather forecasts.

12          MR. POWERS:  Right, as opposed to --

13          THE COURT:  Doctor -- information on doctors and

14  medical facilities, that's in Judge Tiger's case too.

15          MR. POWERS:  Fair enough.  I -- I respectfully

16  just disagree with Judge Tiger's opinion, and I think it's

17  wrong for several reasons, and I can walk through that.

18    So, we -- we're giving the Court some reasons why we

19  think there were some slight factual differences that --

20          THE COURT:  All right.  Let's get beyond that and

21  tell me why his decision is wrong.

22          MR. POWERS:  So, I want to focus on a couple of

23  things.  I want to talk about the deception piece, the fraud

24  piece, and then the -- there's a -- the standing piece,

25  which is separate.

40

1          THE COURT:  I don't really want to talk about the

2    standing piece.  I just want to talk about the merits.

3          MR. POWERS:  Okay.

4          THE COURT:  So, I want to hear why -- why it would

5    be wrong to conclude on these allegations that they've

6    plausibly alleged that this is, you know, unapproved

7    insurance, they're charging -- that you are charging an

8    unapproved rate, and why it would be -- why it's wrong -- it

9    would be wrong on these allegations to conclude that they've

10   plausibly alleged fraud.

11       I think probably also the unauthorized agent fee, but

12   I'm not even sure we need to get there.

13         THE COURT:  So, again, I -- I think your Honor

14   brought up things that relate to both fraud and standing,

15   and I'll talk about fraud.  I think I should talk about

16   standing in a second.  I understand your Honor may not want

17   to get into that, but for the fraud piece --

18         THE COURT:  Hold on.  Before you start, hold that

19   thought for a second.  And I just want to say it's -- it's a

20   little bit after 1:00 o'clock, and our criminal calendar was

21   scheduled to start at 1:00 o'clock.  So, I'll say to the

22   folks who are waiting to get on the criminal calendar, we

23   will probably go for about another 15 minutes here.  We'll

24   probably end at 1:15.  And then -- so, plan on, if you want

25   to step away from your computers for a little bit, you're --

41

1  you're free to do so until 1:15, and we'll plan on starting

2  the calendar around then.

3      Okay.  Sorry, Mr. Powers.  Continue.

4          MR. POWERS:  So, let me start with a couple of

5  cases.  I'll start with Davis v. HSBC, the Ninth Circuit

6  decision.  It's pretty similar circumstances, in fact,

7  circumstances that were arguably worse for the Defendant

8  than ours.  So, in that case, the Plaintiff signed up for a

9  credit card, didn't realize when he signed up that there was

10 also going to be a $59 annual fee charged on that card.

11 Because he didn't see those terms -- they were in the terms

12 of the --

13         THE COURT:  I haven't read that case yet.  So, I

14 -- I will read it.  I saw the --

15         MR. POWERS:  So, that was --

16         THE COURT:  -- it was --

17         MR. POWERS:  -- in the terms and conditions --

18         THE COURT:  -- prominent in the briefs, and I will

19 make sure to read that case, but --

20         MR. POWERS:  That was in the terms and conditions.

21 It wasn't in documents he saw when he signed up for the

22 card.

23         THE COURT:  So, the Ninth Circuit then rejected

24 his UCL false advertising law and common law fraud claims

25 because that was disclosed -- that fact was disclosed in the

1 terms and conditions documents, just as we think is the same

2 thing here.

3      Judge Koh also had another case involving a fee for

4 disposal of tires.  This is the <u>Williamson v. Renault Thomas</u>

5 case.  That's also in our papers.  A class action against

6 tire companies.  The claim was that the Plaintiffs were

7 charged an allegedly undisclosed service fee to dispose of

8 their old tires when they bought new ones.

9      Now, just like in our case, the Plaintiffs were told a

10 price.  It was like $212.  That was correct.  It wasn't an

11 additional fee.  It was included in it.  But it wasn't

12 called out, the disposal fee.  And the Plaintiff didn't find

13 out about it, he says, until he saw his receipt, which was

14 after the fact.

15      Judge Koh, again, rejected the claim that that was

16 fraudulent in any way, rejected the claims on the pleadings

17 and said no one would be misled by this conduct.

18      So, I urge the Court to read those two cases.

19           THE COURT:  Okay.  But -- but -- and I will, but I

20 wonder if one potential difference between this case and

21 those -- there may be others, but -- but I wonder if one

22 potential difference is that this is that, for the reasons

23 that Judge Tiger explained, this is sort of an active effort

24 on the part of the Defendants to kind of mislead as to, you

25 know, with respect to like the approved insurance rate.

43

1 Right?  I mean, you -- if you're buying insurance, right,

2 and -- that's why I used my toothpick example.  I think you

3 agreed with me on my toothpick example, that that -- that

4 that would constitute -- that -- that would be actionable,

5 right, and that would be actionable -- I think you agreed

6 with me that that would be actionable because your -- you're

7 sort of -- you're concealing an unapproved rate, right.

8 You're charging an unapproved rate, and you're engaging in

9 these machinations to sort of trick people into paying an

10 unapproved rate, right, and everything you say is designed

11 to make them think that they're buying insurance --

12           MR. POWERS:  Well, I --

13           THE COURT:  -- and you add the toothpick for $100

14 and you sort of slip that in, then that seems quite

15 deceptive.

16           MR. POWERS:  I didn't agree with your Honor.  I

17 think it depends what was told to people, right.  I mean, it

18 seems like a ludicrous transaction.  I certainly agree that

19 somebody wouldn't buy a toothpick for $100.

20           THE COURT:  Right.  But they are essentially

21 alleging in this case that this is a similarly ludicrous

22 transaction.  Now, maybe at the end of the day there --

23 there -- you know, they won't win on that, but that's --

24 that's what they are alleging, and it -- it sort of seems

25 plausible at least for the motion to dismiss stage.

44

1          MR. POWERS:  Well, but -- but, so, wait a second.

2    We do disclose that these services are included.  It -- it's

3    in the -- the documents we filed with the -- with the State,

4    with the Department of Insurance.  It's in the policy

5    document we just looked at.  At the end, there's a whole

6    section that he says this is --

7          THE COURT:  Yes.

8          MR. POWERS:  -- going to include services.  So, I

9    mean --

10         THE COURT:  What you disclosed to the State, I

11   mean, I'm still questioning whether I can consider it and,

12   if so -- I mean, it sounds like maybe you've only put in an

13   exemplar of that and whether it's appropriate for me to

14   consider that at the pleading stage, I'm not sure.

15         MR. POWERS:  My point is this is not a secret,

16   right.  This is explained to people in multiple locations,

17   at multiple times.  Anybody that clicks through when they're

18   buying this will see these -- can see these disclosures.

19   People -- you know, we talked about --

20         THE COURT:  And you know the total amount that

21   you're paying and you --

22         MR. POWERS:  Correct.

23         THE COURT:  -- the totality of what you get --

24         MR. POWERS:  Correct.

25         THE COURT:  -- what you're getting for what you're

45

1 paying.

2          MR. POWERS:  Correct.

3          THE COURT:  But, so, the question is, you know,

4 because this is an insurance matter and it's a highly

5 regulated thing where you're only allowed to charge approved

6 rates, I mean, if you're slipping the toothpick in for an

7 extra hundred bucks, I mean, it seems to me that you're --

8 you're effectively charging an unapproved rate for

9 insurance, and you're doing so fraudulently.

10     And, so, if we can analogize, you know, this case to

11 that -- that hypothetical, it seems like at the motion to

12 dismiss stage, you lose.  And then you go on to summary

13 judgment and you try to establish that no -- no jury could

14 treat this arrangement the same way that you could treat the

15 toothpick arrangement, right.

16          MR. POWERS:  Listen, I agree with your Honor the

17 toothpick sounds ridiculous.  I -- I understand that, but --

18 but to make that analogy really work, you've got to say and

19 people were told repeatedly, hey, all you're getting is a

20 toothpick, right.  All you're getting is a toothpick.

21     So, you know, that's -- here people are explicitly told

22 multiple times that this is part of the package.

23          THE COURT:  No.  What you would have to -- what

24 you would have to tell them is all you're getting is a

25 toothpick and because of this toothpick, the price is going

46

1  up by $100, right?

2              MR. POWERS:  No --

3              THE COURT:  That's what -- that's -- that would be

4  -- if you had said to people, you know, you say, as you sit

5  here today, you don't even know how much of the -- of the

6  cost is -- out of the bundle is allocated to the travel

7  assistance and how much is allocated to the insurance, but

8  if you -- if you -- if we were here on a case where the

9  disclosures said, you know, you got to pay $183 and $83 of

10 it is, you know, approved -- is for the insurance and it's a

11 rate that's approved by the Department of the Insurance

12 Commissioner and $100 of it is for this toothpick and that

13 is the bundle that we're offering you, and if you'd like to

14 pay $183, $83 for the insurance and $100 for the toothpick,

15 click here, then they would probably -- I assume they would

16 lose that case, right?

17             MR. POWERS:  I agree.  But, your Honor, the

18 toothpick isn't pled here, right.  The toothpick -- your

19 scenario that -- the allegation that this service is

20 worthless and is a big part of the charge, that's not pled.

21 There's no allegation of that.

22             THE COURT:  Well, they've certainly -- they've

23 adequately pled that it's not something that people

24 typically want and it's not something that is of value to

25 people, and they've -- that, you know, they've bundled these

47

1 things together, and there's an up charge -- there's an

2 insurance up charge as a result of including this, you know,

3 essentially worthless package, right?

4          MR. POWERS:  Well, they -- they don't say

5 essentially worthless because they can't here.  They have to

6 if there's some value.  And, again, your Honor,

7 respectfully, your -- your hypothetical that we're talking

8 about is based on an assumption that there's this ridiculous

9 delta between the amount that's being paid for the insurance

10 and the amount that's being paid for the travel assistance.

11 That's not pled.  It's just not pled.

12          THE COURT:  Yeah, but I mean, I --

13          MR. POWERS:  And I don't think they can plead

14 that.  But, again, I don't know.

15          THE COURT:  No, it's not pled, but you can't even

16 tell me what the delta is.

17          MR. POWERS:  Well, but --

18          THE COURT:  You're their lawyer, and you've been

19 working on this case for like you know, months presumably,

20 and you can't even tell me what the delta is.

21          MR. POWERS:  But, your Honor, if they're going to

22 proceed on that basis that they think that that's correct,

23 and if that's the basis for your Honor's ruling, then it

24 should be pled.  I don't think they can plead that.  I -- I

25 don't know exactly.  I don't know.  I'm not saying I know.

48

1  I don't think they can plead that.  And, so, if that's going

2  to be the basis of the Court's analysis here, I think it's a

3  fact that should be pled.

4            THE COURT:  But why wouldn't it -- why -- wouldn't

5  it make more -- given what is -- is pled and given, you

6  know, what we -- what apparently you don't even know, if

7  mean, if it's -- let's say that the product is $183 and it

8  turns out that only three dollars is for the travel

9  assistance, right, why can't you just tee up a quick summary

10 judgment motion and win on that?

11           MR. POWERS:  Well, maybe -- I mean, maybe we will

12 do that.  I mean, that -- I mean, if that's where we go.  I

13 do think that that --

14           THE COURT:  But right now --

15           MR. POWERS:  -- fact should be pled.

16           THE COURT:  -- as pled, it seems like what's --

17 what -- what they've pled, to be fair, right -- you're right

18 that they haven't pled how much the fee is, but not even the

19 company's own lawyer knows how much the fee is.

20           MR. POWERS:  Well, I don't want to say something

21 if it isn't correct, and I don't know for sure, your Honor.

22           THE COURT:  Okay.

23           MR. POWERS:  I just don't know.

24           THE COURT:  Fair enough.

25           MR. POWERS:  So --

1          THE COURT:  And -- and, so, what they've pled is

2    that they've -- you know, they've offered us insurance.  All

3    of the language is geared towards -- you know, all of the

4    front end language is geared towards telling us that we're

5    buying insurance.  Then if you go look at the fine print,

6    they're adding this non-insurance product.  It's not

7    something that is of value, and they're charging us extra

8    for it, and it's, therefore, an unapproved -- it's

9    essentially an unapproved rate, and it's -- and they've --

10   you know, they're sort of tricking us into agreeing to pay

11   this unapproved rate for this package of insurance and

12   essentially valueless add-on product.  I mean, I guess I

13   don't know why that doesn't state a claim at the pleading

14   stage.

15          MR. POWERS:  So, I disagree with your Honor for

16   the reasons I've explained.  I would like to briefly address

17   standing because I think that goes directly to some of the

18   issues you've raised.

19          THE COURT:  Go ahead.

20          MR. POWERS:  Which is that, you know, Judge Tiger

21   found the standing arguments in the other case compelling

22   except for his application of the Kohls case.  And we put

23   this in our papers.  The Kohls case, in our view, just

24   doesn't apply these circumstances because in Kohls, there

25   was a benefit that was promised that was not received,

1  right, that you're getting a sale price.  It's not received.

2      Here, the Plaintiffs literally got everything they were

3  promised.  They paid $183 or whatever the number was and got

4  travel insurance.  Their claim is (a) that there was a piece

5  of that that was illegal.  We'll talk about that in a

6  second.  But that (b) they got this other thing that they --

7  they didn't want to get, right, that they didn't expect to

8  get.  But they got everything they expected from the

9  product.  They got the benefit of their bargain.

10      I don't see how the -- the either Plaintiff or the

11  Court can conclude anything other than the fact that they

12  got the benefit of the bargain.

13          THE COURT:  What if the approved rate for the

14  insurance was five dollars and the -- the additional cost

15  that they paid for the non-insurance product was $182?

16          MR. POWERS:  They don't have standing, your Honor.

17  That's not the facts here I don't think, but they don't have

18  standing.  I'd direct your Court -- your Honor to a couple

19  of cases.  One is the Peterson v. Selco Partnership case

20  where the -- the Plaintiff claimed that Verizon was selling

21  illegal insurance because it wasn't licensed to do so in the

22  state.  They -- the court rejected under the UCL the idea

23  that that plaintiff had suffered any economic harm because

24  they got what they expected.  They got the product they

25  bargained for.  Even if it was illegal, that didn't mean

51

1 that they had -- they articulated an injury, in fact, for

2 purposes of UCL.  And I would direct your Honor to the

3 Supreme Court decision in the <u>TransUnion</u> case, <u>TransUnion v.</u>

4 <u>Ramirez</u>, from last year, 141 Supreme Court 2190, where the

5 Court held -- the Supreme Court held that even where a

6 statute creates a -- there's a violation --

7           THE COURT:  I know -- I know -- I'm familiar with

8 that case.

9           MR. POWERS:  So, the fact that there -- we don't

10 think that there's any violation of California law here.

11 This is not an unapproved broker fee.  You are allowed to

12 charge for services that are distinct from the insurance

13 itself, just like in the installment fee contract cases

14 which are described in our -- in our papers.  The cases the

15 Plaintiffs cite we think are in apposite.  This is clearly

16 for a separate service.  We're allowed to charge.  It's not

17 something that's an unapproved premium.  We -- to be clear,

18 that's our position.  But, even if there had been a

19 statutory violation, these particular Plaintiffs have no

20 standing under Article 3 or under the UCL because there is

21 no -- they got the benefit of their bargain.

22           THE COURT:  Okay.  Mr. Raab, do you want to just

23 take two minutes to respond on the merits stuff, and then I

24 really got to get to my criminal count?

25           MR. RAAB:  All right.  Your Honor, just on -- on

52

1  the standing point --

2         THE COURT:  No, no, no.  I'm talking about the

3  merits.  Talk to me about the merits.

4         MR. RAAB:  Okay.  On -- on the fraudulent or

5  deception claim, Defendants rely heavily on the <u>Davis</u> case.

6  I would just point out that in that case, the consumer

7  wanted a credit card.  There was an annual charge for that

8  card, and that was disclosed on the web page where the

9  person went to apply for the card, and they clicked that

10 they agreed to those terms, and those terms were right there

11 on that page.  The Plaintiff did have to scroll --

12        THE COURT:  Okay.  I'll --

13        MR. RAAB:  -- to view it.

14        THE COURT:  I'll read the case.  I'll look it --

15        MR. RAAB:  But, so, that is very different from

16 what we allege here in terms of the lack of information

17 about the assistance fee.  Defendants keep saying they

18 disclosed it many times, and we have contrary allegations

19 showing that it was far removed from the offer box.

20     But, more generally, Defendants want to emphasize the

21 deception piece and the fraud aspect of the case, I think

22 because they're trying to get away from the unfair and

23 unlawful claims, which are primary here.  And we believe

24 that just because Defendants call it an assistance fee and

25 claim that they provide it to -- to someone or to a few

53

1  people at some point and evidence will have to be developed
2  on that record, that that somehow eliminates all possibility
3  of liability, and we think that's just not --

4          THE COURT:  That raises a -- that raises a
5  question I often have in these UCL claims, these UCL cases,
6  is you have unlawful and unfair and fraudulent.  You know,
7  it's one cause of action.  You know, it's your UCL cause of
8  action.  And, you know, you proceed -- proceed on different
9  theories under the UCL, but it's one -- it's sort of one UCL
10 cause of action.  And if I conclude that you've adequately
11 pled unlawful and maybe unfair, it's contrary to the --
12 contrary to the -- the letter and the spirit of the
13 insurance laws, I mean, do I need to say anything else?  At
14 that point, I'd deny the motion to dismiss, and you go into
15 discovery, and you -- on your UCL claim, right --

16         MR. RAAB:  I think -- I think that's right, your
17 Honor.  I think courts sometimes do for -- for guidance.
18 But, if it's not necessary, it's not necessary.  I -- I do
19 agree that as long as you have a plausible theory to pursue
20 your claim, you can pursue the claim.

21         MR. POWERS:  If I may be heard briefly on that,
22 your Honor?

23         THE COURT:  Sure.  Briefly, and then we'll wrap
24 up.

25         MR. POWERS:  Sure.  So, courts pretty regularly

1 will strip out either the fraud claim or the unlawful --

2          THE COURT:  I -- I know -- I know they do it

3 pretty regularly.  I've always kind of wondered why.

4          MR. POWERS:  Well, because -- because whether it's

5 called one single cause of action, it's really three

6 separate claims, three -- I think it's three separate

7 theories and three separate claims.  You can --

8          THE COURT:  It's three separate theories, but I'm

9 not sure it's three separate claims, and there's a

10 difference, right?  I mean, you -- you -- we dismiss claims,

11 but we do not dismiss theories.

12          MR. POWERS:  But this --

13          THE COURT:  I mean, you can offer multiple

14 theories in support of a claim for violation of a statute.

15          MR. POWERS:  I agree, but the fact that Plaintiffs

16 just have it under one heading isn't also dispositive as to

17 whether --

18          THE COURT:  I agree with that.  But -- but why --

19 why should we think of it as -- as three different claims?

20          MR. POWERS:  Because they're different tests based

21 on different facts, based on different elements.  Each of

22 them has their own test and elements.  So, it's not just --

23 you know, it's not just that one statute means every claim

24 brought under the statute is -- is all one claim.  It has to

25 -- there are separate elements for each one and separate

55

1  requirements for each one.  They should be treated

2  separately.  The -- the final point I will make, which I've

3  now lost my train of thought.  So, maybe I don't have a

4  final point, your Honor.

5        THE COURT:  Okay.  That's -- that's okay.  I

6  probably wouldn't have remembered it anyway, because I'm

7  tired now.

8     Okay.  I will -- as I said at the outset I wasn't as

9  prepared for this as I like to be usually.  And, so, I'll go

10 back, and I'll read these cases that you're telling me about

11 and think about it further and then issue a ruling.

12        MR. POWERS:  Thank you, your Honor.

13        MR. RAAB:  Thank you, your Honor.

14     (Proceedings adjourned at 1:20 p.m.)

15

16

17

18

19

20

21

22

23

24

25

56

## CERTIFICATE OF TRANSCRIBER

 1

 2

 3      I certify that the foregoing is a true and correct

 4  transcript, to the best of my ability, of the above pages of

 5   the official electronic sound recording provided to me by

 6  the U.S. District Court, Northern District of California, of

 7  the proceedings taken on the date and time previously stated

 8                       in the above matter.

 9  I further certify that I am neither counsel for, related to,

10   nor employed by any of the parties to the action in which

11     this hearing was taken; and, further, that I am not

12   financially nor otherwise interested in the outcome of the

13    action.

14

15

16        Echo Reporting, Inc., Transcriber

17          Friday, May 27, 2022

18

19

20

21

22

23

24

25