UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAMIKA MILLER, et al., | Case No. 21-cv-09751-VC |
| Plaintiffs, | |
| v. | **ORDER GRANTING MOTION TO COMPEL ARBITRATION AND GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS** |
| TRAVEL GUARD GROUP, INC., et al., | |
| Defendants. | Re: Dkt. Nos. 19, 20, 21 |

1. AIG is dismissed without prejudice for lack of personal jurisdiction. The complaint has not alleged that the Court has general jurisdiction over the company: AIG is incorporated in Delaware and has its principal place of business in New York. And there are no allegations that AIG took any action in or directed any action to the state of California relating to the plaintiffs' claims. But if discovery reveals new facts pertinent to this analysis, the plaintiffs may move to re-join AIG as a defendant in the case.

The remaining defendants contend that the plaintiffs lack Article III standing to bring this case in federal court. But that argument is foreclosed by Ninth Circuit precedent. A customer suffers an Article III injury when they would have paid less for a product than they did if they had not been misled about the nature of the transaction. *Hinojos v. Kohl's Corporation*, 718 F.3d 1098, 1104 n.3 (9th Cir. 2013). Whether the plaintiffs have statutory "standing," which appears to be the crux of the argument by the remaining defendants, is a 12(b)(6) matter not appropriate to resolve until the motion to compel is adjudicated.

2. The motion to compel Miller to arbitration against the remaining defendants is granted.

Miller agreed to Expedia's terms of service, which contains a valid arbitration provision.[1] Through that provision, Miller agreed to arbitrate with Expedia, along with "travel suppliers or any companies offering products or services through us (which are beneficiaries of this arbitration agreement)." The defendants are third-party beneficiaries of this provision, because they offered services to Miller through Expedia.

To be sure, there is a reasonable argument that the defendants forfeited the right to enforce the provision as third-party beneficiaries. Their separate contract with Miller (entered simultaneously) permits arbitration only if acceptable to both sides. Because this language preserves Miller's right to sue the defendants in court, it is best understood as conflicting with the language of Expedia's arbitration provision. *See Foundation Fitness Products, LLC v. Free Motion Fitness*, 121 F. Supp. 3d 1038, 1045–46 (D. Or. 2015). *But see Summa Humma Enterprises, LLC v. Fisher Engineering*, 2013 WL 57042, at *4–5 (D.N.H. Jan. 3, 2013); *Partners of Massachusetts, LLC v. Fantasia*, 2016 WL 7476355, at *3 (D.N.J. Dec. 28, 2016). Thus, by agreeing to preserve Miller's right to sue in court, the defendants may well have precluded themselves from enforcing Expedia's mandatory arbitration provision.

However, the Expedia provision clearly delegates questions of arbitrability to the arbitrator. The defendants' potential forfeiture of their right to invoke the Expedia provision is a question of arbitrability. *See Martin v. Yasuda*, 829 F.3d 1118, 1122–23 (9th Cir. 2016). Therefore, this question is for the arbitrator to decide.[2]

3. The motion to dismiss Chuanroong's claims is denied.

The defendants' statutory standing argument is squarely foreclosed by Ninth Circuit precedent. *Hinojos*, 718 F.3d at 1103–06; *Elgindy v. AGA Service Company*, 2021 WL 1176535, at *5 (N.D. Cal. Mar. 29, 2021). And even if the Court could apply California's doctrine of

---

[1] Miller also bought flights and insurance through Travelocity, which is owned by Expedia. In doing so, she agreed to the same arbitration agreement.

[2] If this Court were wrong about delegation, it would deny the motion to compel arbitration on the ground that the defendants forfeited the right to invoke Expedia's mandatory arbitration provision for the reasons discussed in the preceding paragraph.

equitable abstention despite the *Erie* issue raised in the briefing, it would decline to do so.

Chuanroong has stated a claim for unlawful practices under the UCL based on both the illegal agent and the illegal premium theories. Although Travel Guard characterizes the additional assistance fee as a service fee, the plaintiffs have plausibly alleged that it was, in actuality, an impermissible agent's fee. As alleged, the sole source of travel insurance on the United website was Travel Guard. And the value and cost of the assistance services did not, allegedly, justify the price Travel Guard charged. Together, those factors suggest that Travel Guard has mislabeled the fee to circumvent the prohibition on collecting agent's fees. *See Elgindy*, 2021 WL 1176535, at *7–8 (relying on *Friedman v. AARP*, 855 F.3d 1047 (9th Cir. 2017)). Chuanroong has also plausibly alleged that the fee is an unapproved premium either because it is actually an agent fee that should have been included in the rate application for pre-approval or because it was automatically included in the total price of insurance and she was not provided an opportunity to opt-out of paying it. *See id.* at *9–10 (relying on *Troyk v. Farmers Group, Inc.*, 171 Cal. App. 4th 1305 (Cal. Ct. App. 2009), and *Mercury Insurance Co. v. Lara*, 35 Cal. App. 5th 82 (Cal. Ct. App. 2019)).

Chuanroong's UCL unfair practices allegations also survive the motion to dismiss under both the balancing and tethering tests. *See id.* at *10–11. The complaint alleges that Travel Guard made it difficult for customers to discover the "hidden" fee for assistance services included in the price of insurance, which plausibly violates California's public policy that the costs of insurance be fair and transparent. And the allegedly nonexistent demand for additional assistance services balanced against the non-optional financial burden imposed on customers seeking travel insurance plausibly suggests that Travel Guard's practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to its customers.

Chuanroong has also stated a claim based on fraudulent practices under the UCL and the FAL. As alleged, Travel Guard's offer for flight insurance does not clearly state that an additional fee for assistance services is part of the overall purchase price. Only after navigating to the disclosures page do United customers discover that the offer price includes a separate fee

for travel assistance services. But even at that point, Travel Guard does not tell the customer how much those services cost. To find out the exact amount of the fee, the customer must send an email to Travel Guard. This lack of transparency plausibly crosses the line into fraud. Even though some clarifying facts about the assistance fee are later disclosed, it is at least plausible that a reasonable consumer would be misled by the information in the offer. *See Elgindy*, 2021 WL 1176535, at *12–13.

The common law fraud claim also survives the motion to dismiss. The complaint plausibly alleges that Travel Guard intentionally concealed information about the separate assistance fee by placing that information in their disclosures and requiring customers to email them to uncover the true price of the additional services.[3]

**IT IS SO ORDERED.**

Dated: July 13, 2022

VINCE CHHABRIA
United States District Judge

---

[3] The request for judicial notice is granted in part and denied in part. The Court did not consider Exhibits 1 and 9 to resolve the motion. Exhibits 2 through 8 are incorporated into the complaint by reference. And the Court may take notice of Exhibit 10 as a public record whose accuracy cannot reasonably be questioned. *See* Fed. R. Evid. 201(b)(2).