**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Rajiv V. Thairani (State Bar No. 344390)
rajiv@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile:  (415) 449-6469

Stephen M. Raab (*pro hac vice*)
stephen@gutridesafier.com
305 Broadway, 7th Floor
New York, NY 10007
Telephone: (415) 639-9090 x109

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAMIKA MILLER and JULIANNE CHUANROONG, on behalf of themselves, the general public, and those similarly situated,<br><br>        Plaintiffs,<br><br>   v.<br><br>TRAVEL GUARD GROUP, INC., AIG TRAVEL, INC., and NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,<br><br>        Defendants. | CASE NO. 3:21-cv-09751-TLT<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO EXCLUDE EXPERT TESTIMONY OF LORIN M. HITT**<br><br>Hearing Date: February 27, 2024<br>Time: 2:00 PM<br>Location: Courtroom 9, 19th Floor<br>Judge: Hon. Trina L. Thompson |

**TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION ............................................................................1

I.      INTRODUCTION ...............................................................................................1

II.     RELEVANT BACKGROUND ...........................................................................2

    A.      Dr. Hitt's Qualifications........................................................................2

    B.      Mr. Fanoe's Testimony.........................................................................3

    C.      Dr. Dennis' Testimony..........................................................................4

    D.      July 26, 2023 Hitt Report......................................................................4

    E.      October 10, 2023 Hitt Rebuttal.............................................................5

III.    LEGAL STANDARD..........................................................................................6

IV.     ARGUMENT.......................................................................................................7

    A.      Dr. Hitt Is Not Qualified As An Actuary, A Consumer Perception Expert, or As A Travel Insurance Expert. .................................................................7

        1.      Dr. Hitt is not qualified to rebut Mr. Fanoe's actuarial model. .......7

        2.      Dr. Hitt is not qualified to rebut Dr. Dennis' survey. ......................9

        3.      Dr. Hitt is not qualified to opine generally regarding travel insurance and travel insurance services. ..........................................9

    B.      Dr. Hitt's Testimony Will Not Assist the Trier of Fact. ............................10

    C.      Dr. Hitt's Criticisms of Mr. Fanoe's Model Are Not Based on Reliable Methods........................................................................................................11

    D.      Dr. Hitt Offers Improper Legal Opinions. .................................................15

V.      CONCLUSION..................................................................................................16

1

2

## **TABLE OF AUTHORITIES**

**Cases**

*Alto v. Sun Pharm. Indus.*,
  No. 1:19-cv-09758-GHW, 2021 U.S. Dist. LEXIS 198390 (S.D.N.Y. Oct. 13, 2021)........ 12

*Beech Aircraft Corp. v. United States*,
  51 F.3d 834 (9th Cir. 1995) ...................................................................................... 10

*BP Prods. N. Am. v. Grand Petroleum, Inc.*,
  No. 4:20-cv-0901-YGR, 2021 U.S. Dist. LEXIS 191360 (N.D. Cal. Sep. 30, 2021) .......... 16

*Cisco Sys. v. Arista Networks*,
  No. 14-cv-05344-BLF, 2016 U.S. Dist. LEXIS 203865 (N.D. Cal. Oct. 11, 2016)............ 12

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013)................................................................................................... 2

*Cooper v. Brown*,
  510 F.3d 870 (9th Cir. 2007) ..................................................................................... 10

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993)........................................................................................... passim

*Dolby Labs. Licensing Corp. v. Adobe Inc.*,
  No. 18-cv-01553-YGR, 2019 U.S. Dist. LEXIS 205488 (N.D. Cal. Nov. 26, 2019) .......... 16

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) ...................................................................................... 6

*Ellis v. Pa. Higher Educ. Assistance Agency*,
  No. CV 07-04498 DDP (CTx), 2008 U.S. Dist. LEXIS 112150 (C.D. Cal. Oct. 3, 2008) .... 7

*Gen. Elec. Co. v. Joiner*,
  522 U.S. 136 (1997)................................................................................................ 13

*Hangarter v. Provident Life & Acc. Ins. Co.*,
  373 F.3d 998 (9th Cir. 2004) .................................................................................... 13

*Hickman v. Sofamor-Danek Grp., Inc.*,
  No. C 95-01095 CW, 1999 U.S. Dist. LEXIS 4384 (N.D. Cal. Feb. 17, 1999) .................... 7

*In re Twitter, Inc. Sec. Litig.*,
  No. 16-cv-05314-JST, 2020 U.S. Dist. LEXIS 252718 (N.D. Cal. Apr. 20, 2020) ............ 11

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999)........................................................................................ i, 6, 13

*Maldonado v. Apple, Inc.*,
  No. 3:16-cv-04067-WHO, 2021 U.S. Dist. LEXIS 92483 (N.D. Cal. May 14, 2021).......... 7

*Murray v. S. Route Mar. SA*,
  870 F.3d 915 (9th Cir. 2017) ..................................................................................... 12

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*,
  No. 16-cv-01393-JST, 2018 U.S. Dist. LEXIS 208884 (N.D. Cal. Dec. 11, 2018) ............ 11

*Ortega v. Nat. Balance Inc.*,
  No. CV 13-05942-AB (Ex), 2014 U.S. Dist. LEXIS 190386 (C.D. Cal. Oct. 29, 2014) ..... 10

*United States v. Amuso,*
    21 F.3d 1251 (2d Cir. 1994) ............................................................................ 11

*United States v. Chang,*
    207 F.3d 1169 (9th Cir. 2000) ........................................................................ 7

*United States v. Hankey,*
    203 F.3d 1160 (9th Cir. 2000) ........................................................................ 13

*United States v. Tamman,*
    782 F.3d 543 (9th Cir. 2015) .......................................................................... 15

*Wis. Alumni Research Found. v. Apple, Inc.,*
    No. 14-cv-062-wmc, 2015 U.S. Dist. LEXIS 129931 (W.D. Wis. Sep. 28, 2015) .......... 8, 10

**Rules**

Fed. R. Evid. 401 ..................................................................................................... i

Fed. R. Evid. 403 ..................................................................................................... i

Fed. R. Evid. 702 ................................................................................................. i, 6

Fed. R. Evid. 702(a) ............................................................................................. 13

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on February 27, 2024 at 2:00 p.m., or as soon thereafter as the matter may be heard by the Honorable Trina L. Thompson of the United States District Court for the Northern District of California, located in Courtroom 9 at 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiffs Tamika Miller and Julianne Chuanroong and the certified Class and Subclass, by and through their undersigned counsel of record, will and hereby do move this Court to exclude certain testimony and opinions by Defendants' expert, Dr. Lorin M. Hitt, on the grounds that they are inadmissible under Federal Rule of Evidence 702 as well as under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), and related authorities. This motion is based on this Notice and Motion, the following Memorandum of Points and Authorities, all accompanying Declarations and Exhibits, other documents on file in this or related actions, oral argument of counsel, witness testimony, and any other matters of which the Court may take judicial notice.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs allege that Defendants violated both the letter and the spirit of California's insurance laws by charging more than the approved rates for their policies. That is, Defendants charged premium in excess of the authorized rate. Plaintiffs contend the assistance services included in Defendants' insurance contracts are subject to California's rate regulations and to the public policies behind those regulations. Accordingly, Plaintiffs submitted a report from Gregory Fanoe, an ***actuary and insurance pricing expert***, to provide evidence regarding classwide damages and the actuarial value of any assistance services that the Court may find are not already covered by the approved insurance premium for the policies. Defendants—who are subsidiaries of AIG, one of the largest and most sophisticated insurance companies in the world—did *not* submit a report by a practicing actuary to rebut Mr. Fanoe's analysis (because there is no actuarial analysis in the world that would support the amounts they charge consumers for the policies). Instead, Defendants submitted two "rebuttal" reports by an

1  *economist*, Dr. Lorin M. Hitt, who admits he is not qualified to give any opinion on actuarial

2  analysis or pricing.

3  Dr. Hitt believes the proper way *for an economist* to measure the value of the assistance

4  services would be to apply an economic model to determine what consumers would have been

5  willing to pay the bundled services and whether Defendants and their partners would have been

6  willing to sell the combined insurance and assistance services at such prices. But Plaintiffs did

7  not submit a report from an economist, analyzing what consumers would have paid in the

8  absence of applicable price regulations, because the prices of Defendants' Travel Guard plans

9  are, in fact, strictly regulated by actuarial principles. Dr. Hitt admits that he did not consider

10  how California insurance regulations affect his analysis and that there could be other methods

11  for valuing the insurance contracts at issue. Because Dr. Hitt's opinions are almost exclusively

12  offered to rebut or criticize Plaintiffs' experts' methodology, but Dr. Hitt is not qualified to

13  rebut Plaintiffs' experts, almost all of Dr. Hitt's opinions (other than his uncontested opinion

14  that Mr. Fanoe did not, in fact, perform an economic analysis of the type within Dr. Hitt's area

15  of expertise) are inadmissible. Indeed, the primary purpose of Dr. Hitt's testimony is to argue

16  that economic analysis is *required* under California law to measure restitution and damages in

17  this case. This is improper because the Court does not need an economist to instruct it on the

18  law. Further, in its order granting certification of Plaintiffs' UCL unlawfulness and unfairness

19  claims, this Court already resolved the issue of whether Mr. Fanoe's model is legally consistent

20  with Plaintiffs' theory of liability under *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).

21  ECF No. 124 at 26–28.

22  **II.      RELEVANT BACKGROUND**

23  **A.      Dr. Hitt's Qualifications.**

24  Dr. Hitt received his Ph.D. in Management from the Massachusetts Institute of

25  Technology. He also has a Sc.B. and Sc.M. in electrical engineering. His Ph.D. coursework

26  focused on economics and statistics. ECF No. 98-4 (public) & 101-5 (under seal) ("Hitt

27  7/26/23 Rep.") ¶ 2. He teaches classes at the University of Pennsylvania regarding customer

28  pricing in a variety of commercial and consumer markets, especially as it relates to the

economics of electronic commerce, information good and services, information systems management, economics of technology, and data analysis. *Id.* ¶ 4. His research focuses on econometric and statistical commerce. *Id.* ¶ 5. Dr. Hitt does not "have any expertise as an actuary," "was never trained as an actuary" and has never worked as an actuary. Raab Decl. Ex. D ("Hitt Dep.") 15:2-3, 160:22–161:3.[1] Dr. Hitt confirmed that he does not "have an opinion one way or the other on the actuarial opinions" and that all of his analysis "is based on economic principles." *Id.* 161:4–22. Dr. Hitt is also not a survey expert, nor has he studied how consumers distinguish assistance services from travel insurance. *See* Hitt Rep., Appendix A.

## B. Mr. Fanoe's Testimony.

Mr. Fanoe is a fellow in the Society of Actuaries and a Member of the American Academy of Actuaries, has worked as an actuary for about 18 years, has participated in reviews of insurance rates, and was one of the lead actuaries in a multi-state examination of travel insurance companies that took place in 2016 and 2017. Fanoe Decl. ¶¶ 5–7 & Ex. A. He has expertise in insurance pricing and as a practicing actuary.

Mr. Fanoe submitted an expert report in support of class certification on June 23, 2023 (ECF No. 86-3 (under seal)) ("Fanoe 6/23/23 Rep."), a reply report on August 16, 2023 (ECF No. 108-1 (under seal)) ("Fanoe 8/16/23 Rep."), and a final opening report on September 18, 2023 (Raab Decl. Ex. I) ("Fanoe 9/18/23 Rep."). Mr. Fanoe applied his actuarial expertise, principles, and judgment to devise a restitution model that was consistent with Plaintiffs' theory of liability—i.e., that Defendants charged consumers excess premium for their insurance Products. He proposed a primary model where consumers would be refunded the total amount that they paid in excess of California's authorized rate for the transaction. *See* Final Fanoe Rep. ¶¶ 13–16. The secondary model proposes to refund the excess premium minus the value of the assistance services using an actuarially reasonable rate. Final Fanoe Rep. ¶¶ 17–60.

---

[1] "Raab Decl." cited herein refers to the Declaration of Stephen Raab in Support of Plaintiffs' Motion for Partial Summary Judgment, Plaintiffs' Motion to Exclude the Testimony and Opinions of Lorin Hitt on Certain Matters, and Plaintiffs' Motion to Exclude the Testimony and Opinions of Robert Hoyt on Certain Matters.

### C.       Dr. Dennis' Testimony.

Dr. Dennis is Senior Vice President of one of the premiere survey research organizations in the United States, NORC (formerly known as the National Opinion Research Center), which is affiliated with the University of Chicago. ECF No. 135-1 ("Dennis Rep.") ¶ 11.3. He has been a survey expert for more than 25 years. *Id.* ¶ 4.

Using methodologies well established in the published literature, Dr. Dennis designed and conducted a "consumer understanding" survey to test the hypothesis that "Defendants' use of the Challenged Advertising led reasonable consumers to perceive that they were paying for insurance, not non-insurance services." *Id.* ¶ 20. In other words, Dr. Dennis tested how reasonable consumers understand Defendants' travel insurance offers displayed through third-party partner websites such as United.com and Expedia.

### D.       July 26, 2023 Hitt Report.

In his initial report, Dr. Hitt explains that his assignment was "to review and respond to the expert reports and deposition testimony submitted by Plaintiffs' Experts and how they relate to Plaintiffs' allegations that putative Class members overpaid for non-insurance travel assistance services." Hitt 7/26/23 Rep. ¶ 41. He adds that he "was also asked to evaluate whether establishing harm or assessing damages (if any) for each putative Class member could be done reliably on a class-wide basis using a common method." *Id.*

Relying almost entirely on Defendants' documents and testimony, Dr. Hitt provided a description of the travel insurance industry and Defendants' products. *Id.* ¶¶ 44–73. However, this did not include any rigorous analysis or specialized knowledge. At points in his report, he simply quotes Defendants' fact witnesses to support his opinions about the competitiveness of the travel insurance market and the value of the Products. ████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████. Much of Dr. Hitt's testimony conflates the value of travel insurance with non-insurance services and is vague on

what value, if any, the non-insurance portion of the Product holds. *See*, *e.g.*, *id.* ¶ 12 ("Consumers derive economic value from purchasing a ***travel plan*** whether or not an adverse event occurs") (emphasis added). ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

Further, Dr. Hitt opined that there is heterogeneity among the types of people that purchase the plans and that the Products have varying economic value to different consumers. *Id.* ¶ 13 ("There is also heterogeneity in not only the types of consumers that purchase these plans, but also their reasons for purchasing these plans."). This opinion is not supported by any survey or objective methodology.

The bulk of Dr. Hitt's testimony criticizes Dr. Dennis and Mr. Fanoe's testimony because they did not conduct an economic analysis, arguing (1) because different consumers value the products different, it would take an individualized inquiry to determine how much each consumer valued the insurance services (*id.* ¶¶ 14–17, 74–102), (2) that Mr. Fanoe's primary model presumes a but-for world that does not exist—i.e., a world where non-assistance can be declined or where non-assistance is priced using actuarially reasonable methods (*id.* ¶¶ 18–20, 103, 105–119), (3) Plaintiffs' experts failed to analyze or measure how a change of the disclosure regarding Defendants' practices would change consumers' behavior or outcomes (*id.* ¶¶ 21, 104, 120–124); and (4) concludes by arguing that empirical evidence from Missouri shows that adding a disclosure to the Product offers did not change consumer behavior (*id.* ¶¶ 22, 125–136).

### E.   October 10, 2023 Hitt Rebuttal.

Dr. Hitt's final report was offered to rebut Mr. Fanoe's actuarial calculations. Raab Decl. Ex. K ("Hitt 10/10/23 Rep."). Specifically, Dr. Hitt (1) argues that a refund of the non-insurance portion of the Product would be a windfall to consumers (*id.* ¶¶ 3, 70–73), (2) proposes adjustments that should be made to Mr. Fanoe's actuarial calculations (*id.* ¶¶ 4–7,

26–31), (3) argues that Mr. Fanoe includes a commission that is unreasonably low and would be unacceptable to third-party distributors (*id.* ¶¶ 8, 32–43), (4) that Mr. Fanoe inappropriately allocates costs (*id.* ¶¶ 9, 44–60), (5) that Mr. Fanoe incorrectly apportions expenses based on insurance premium revenue as opposed to non-insurance premium revenue (*id.* ¶¶ 10, 61–64), and he repeats the criticisms from his initial report (*id.* ¶¶ 11–14, 70–90).

When questioned regarding his rebuttal reports, Dr. Hitt admitted that he did not conduct an analysis that took into account California's insurance regulatory framework. Hitt Dep. 236:17–20.

## III.   LEGAL STANDARD

Federal Rule of Evidence 702 requires that experts be qualified "by knowledge, skill, expertise, training, or education" and that expert testimony be: (1) based on sufficient facts or data; (2) the product of reliable principles and methods; and (3) the result of applying the principles and methods reliably to the facts of the case. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591–92 (1993). Further, such testimony: (1) must be based on the special knowledge of the expert; and (2) must be *helpful* to the finder of fact. *Id.* at 589–91. The burden is on the party offering the proposed expert opinion testimony to prove by a preponderance of the evidence that the testimony satisfies these requirements. *Id.* at 592 n. 10.

Under *Daubert*, "the trial court must act as a 'gatekeeper' to exclude junk science that does not meet Federal Rule of Evidence 702's reliability standards by making a preliminary determination that the expert's testimony is reliable." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 145, 147–49 (1999)). "Daubert does not require a court to admit or to exclude evidence based on its persuasiveness; rather it requires a court to admit or exclude evidence based on its scientific reliability and relevance." *Id.* (citing *Kumho Tire Co.*, 526 U.S. at 589–90).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IV.    **ARGUMENT**

A.    **Dr. Hitt Is Not Qualified As An Actuary, A Consumer Perception Expert, or As A Travel Insurance Expert.**

When faced with a proffer of expert testimony, the Court must first determine whether the proposed expert is qualified by 'knowledge, skill, experience, training, or education.'" *Hickman v. Sofamor-Danek Grp., Inc.*, No. C 95-01095 CW, 1999 U.S. Dist. LEXIS 4384, at *21–22 (N.D. Cal. Feb. 17, 1999) (quoting Fed. R. Evid. 702). Whether an expert is qualified is judged with respect to the subject matter of the witness's testimony. *Ellis v. Pa. Higher Educ. Assistance Agency*, No. CV 07-04498 DDP (CTx), 2008 U.S. Dist. LEXIS 112150, at *14 (C.D. Cal. Oct. 3, 2008). Though Dr. Hitt has considerable education and experience as an economist, (1) he is not an actuary, (2) he does not have expertise in designing consumer perception surveys, (3) nor does he have expertise regarding the travel insurance industry. Despite this fact, most of his testimony is criticizing the methods of experts in fields other than his own. This alone is grounds for excluding most of Dr. Hitt's testimony. *See, e.g., United States v. Chang*, 207 F.3d 1169, 1173 (9th Cir. 2000) (holding that Court did not abuse its discretion to exclude expert testimony offered for rebuttal purposes where the rebutting expert was an international financial expert who "was not qualified . . . to dispute the techniques used" by a printing and manufacturing expert to determine whether a particular financial document was genuine); *Maldonado v. Apple, Inc.*, No. 3:16-cv-04067-WHO, 2021 U.S. Dist. LEXIS 92483, at *85 (N.D. Cal. May 14, 2021) (excluding portions of Sarah Butler's testimony criticizing economic expert because she was not qualified to offer opinions on economics), *Wis. Alumni Research Found. v. Apple, Inc.*, No. 14-cv-062-wmc, 2015 U.S. Dist. LEXIS 129931, at *62 (W.D. Wis. Sep. 28, 2015) (excluding Dr. Hitt's testimony because he was not qualified to testify outside his expertise as an economist).

1.    **Dr. Hitt is not qualified to rebut Mr. Fanoe's actuarial model.**

Dr. Hitt's testimony is offered to rebut Mr. Fanoe's proposed restitution model. *See* Hitt 7/26/23 Rep. ¶ 41 (describing assignment: "I was asked by counsel for Defendants to review and respond to the expert reports."), *see also* Hitt 10/10/23 Rep. ¶ 17 ("I was asked by counsel

for Defendants to evaluate and respond to the Fanoe Merits Report and offer an opinion as to the potential damages of the Class as they relate to Plaintiffs' allegations that Class members overpaid for non-insurance travel assistance services."). A rebuttal expert's role is limited, as the evidence must be "intended solely to contradict or rebut evidence on the same subject matter identified by another party." Fed. R. Civ. P. 26(a)(2)(D)(ii); *Clear-View Techs., Inc. v. Rasnick*, No. 13-cv-02744-BLF, 2015 U.S. Dist. LEXIS 72601, at *5 (N.D. Cal. June 3, 2015) ("[A] defendant's rebuttal expert is limited to offering opinions rebutting and refuting the theories set forth by plaintiff's expert(s).")

However, Dr. Hitt is not qualified to rebut an expert in another field. Plaintiffs' theory is that Defendants' travel insurance plans, including the bundled, insurance-related services included therein, are subject to California's rate regulations, which are based on actuarial pricing principles. Mr. Fanoe has extensive experience in the specialized fields of actuarial pricing and insurance rate regulations and is well-qualified to opine on how to price or value the travel insurance plans at issue using an actuarial methodology. Indeed, Dr. Hitt does not dispute that he is unqualified to opine on Mr. Fanoe's actuarial opinions. *See, e.g.*, Hitt Dep. 151:17–152:20 (admitting he was not asked to evaluate the actuarial side and does not have expertise regarding actuarial principles), 161:4–22 (stating that he does not "have an opinion one way or the other on the actuarial opinions"). Moreover, Dr. Hitt failed to identify any particular economic methodology in Mr. Fanoe's opinions which Dr. Hitt could criticize within Dr. Hitt's area of expertise, although Dr. Hitt opines that Mr. Fanoe incorrectly uses costs as an indication of value. *See* Hitt Dep. 242:13–244:13. Accordingly, Dr. Hitt is unqualified to offer opinions regarding the validity of Mr. Fanoe's cost allocation methods, his method of accounting for commissions, or any particular application of actuarial principles or judgment.

Aside from some of the details of Mr. Fanoe's calculations, which Dr. Hitt is unqualified to criticize, Dr. Hitt's overarching attack is that Fanoe did not use a method in *Hitt's* field to calculate damages on a classwide basis. But this is irrelevant because (a) Mr. Fanoe, has opined that, in the actuarial field, there is an appropriate method, and (b) Dr. Hitt acknowledges that value can mean of variety of things and could be calculated in different

ways and that it is not for him to decide whether an economic analysis is required in this case (Hitt Dep. 25:14-24, 153:9–155:11, 232:16-19, 244:14-17). In essence, Dr. Hitt's opinion amounts to a legal criticism that the actuarial method is not an appropriate measure of damages. As explained further in section IV.D, this is a question under *Comcast*, which was already resolved in the Court's order on class certification. ECF No. 124 at 26–28.

### 2.   Dr. Hitt is not qualified to rebut Dr. Dennis' survey.

Dr. Hitt also attacks Dr. Dennis' survey in his initial report. *See*, *e.g.*, Hitt 7/26/23 Rep. ¶¶ 89-90 & n.123. But, once again, Dr. Hitt is opining outside his field of his experience. For example, among other things, he opines that a fatal flaw in Dr. Dennis' survey is that it does "not account for this potential variation in consumer understanding of insurance vs. non-insurance benefits." *Id.* at 30 n.123. The question of whether to define this key term is appropriate for a survey design expert, not an economist. Dr. Hitt is undeterred by his lack of qualifications. Indeed, at one point in his testimony, Dr. Hitt opines that "Dr. Dennis' survey does not test whether any consumers were misled." *Id.* ¶ 90. Not only is this false, it is not clear how Dr. Hitt came to this conclusion. But, even if it were, Dr. Hitt is not qualified to provide this testimony.

### 3.   Dr. Hitt is not qualified to opine generally regarding travel insurance and travel insurance services.

A considerable amount of Dr. Hitt's testimony is regarding the insurance industry generally, untethered to his expertise as an economist. *See*, *e.g.*, *id* ¶¶ 44–50, 52–53, 56–57. However, he is not a travel insurance expert. Indeed, Dr. Hitt acknowledged his inexperience, stating "I mean I'm familiar with them generally. But the first time I spent a lot of time with either --- with travel assistance services other than you know, acknowledging that they were part of a set of services that were sold by online travel agents, so I did consider them in the past. But I didn't do a deep dive into the specifics of how these operate until this case." Hitt Dep. 201:9-16. Despite the fact that he had no expert knowledge regarding travel insurance or travel assistance services, he provides numerous opinions about the industry and the reasons

1    consumers value the Products. Most of these opinions simply parrot Defendants' legal and

2    factual positions.

3                    **B.    Dr. Hitt's Testimony Will Not Assist the Trier of Fact.**

4            Entire sections of Dr. Hitt's testimony are a restatement of Defendants' factual and

5    legal arguments supported by Defendants' fact witness testimony. This is improper.

6    Defendants cannot offer their legal and factual arguments through an expert to give them the

7    veneer of authority. Expert testimony must be relevant as well as reliable. *See Daubert*, 509

8    U.S. at 589. "[R]elevance means that the evidence will assist the trier of fact to understand or

9    determine a fact in issue." *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007); *see also Apple*,

10   2015 U.S. Dist. LEXIS 129931, at *62 (excluding Dr. Hitt's testimony where testimony did not

11   require scientific or technical expertise because it would be "prejudicial to allow the test to

12   come in cloaked as expert analysis").

13           If "expert testimony is offered to explain an issue or fact that average jurors can

14   understand on their own, it may be deemed non-helpful, and inadmissible on that basis."

15   *Ortega v. Nat. Balance Inc.*, No. CV 13-05942-AB (Ex), 2014 U.S. Dist. LEXIS 190386, at *5

16   (C.D. Cal. Oct. 29, 2014) (citing *Beech Aircraft Corp. v. United States*, 51 F.3d 834, 842 (9th

17   Cir. 1995)) (affirming exclusion of expert offered to testify as to what could be heard in a

18   recorded conversation because "hearing is within the ability and experience of the trier of

19   fact"). Indeed, "[a]n expert witness may not usurp the function of the jury to weigh the

20   evidence and determine credibility." *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, No. 16-

21   cv-01393-JST, 2018 U.S. Dist. LEXIS 208884, at *18 (N.D. Cal. Dec. 11, 2018) (finding

22   "[t]hose portions of [an expert's] testimony in which he purports to state conclusions about

23   disputed issues of fact are inadmissible"); s*ee also In re Twitter, Inc. Sec. Litig.*, No. 16-cv-

24   05314-JST, 2020 U.S. Dist. LEXIS 252718, at *40 (N.D. Cal. Apr. 20, 2020) ("the

25   determination of whether a certain cleaning or retrieval process was in place for Twitter's

26   metrics is reserved exclusively for the jury."); *United States v. Amuso*, 21 F.3d 1251, 1263 (2d

27   Cir. 1994) ("A district court may commit manifest error by admitting expert testimony where

28

the evidence impermissibly mirrors the testimony offered by fact witnesses, or the subject matter of the expert's testimony is not beyond the ken of the average juror.").

The following table provides examples of some of Dr. Hitt's improper testimony:

| Overview of the Travel Insurance Market – Types of Travel Insurance (Hitt Rep. ¶¶ 44–50). | In the section marked "Types of Travel Insurance", Dr. Hitt describes Defendants' products almost exclusively relying on Defendants' documents and the testimony of Defendants' fact witnesses Joseph Tritz, Peter Kitt, and James Page. |
|---|---|
| Overview of the Travel Insurance Market - Travel Insurance Providers (Hitt Rep. ¶¶ 52–53, 56–57). | Cites entirely to Defendants' documents and presents them as expert testimony. |
| Economic Value of Travel Insurance Plans to Consumers (Hitt Rep. ¶¶ 58–72) | Explaining why consumers find insurance to be beneficial. |

Dr. Hitt's testimony in the sections above almost entirely mirror Defendants' legal and factual arguments and must be excluded. A simple narration of facts is "properly excluded" because its "usurp[s] the role of the fact finder . . . . [and] seeks to expertize what, at bottom, is a lay fact issue to be addressed by the fact finder." *Alto v. Sun Pharm. Indus.*, No. 1:19-cv-09758-GHW, 2021 U.S. Dist. LEXIS 198390, at *28 (S.D.N.Y. Oct. 13, 2021); *see also Cisco Sys. v. Arista Networks*, No. 14-cv-05344-BLF, 2016 U.S. Dist. LEXIS 203865, at *48 (N.D. Cal. Oct. 11, 2016) (allowing expert testimony only after concluding the proffered expert was not improperly recounting historical events or narrating facts).

**C.    Dr. Hitt's Criticisms of Mr. Fanoe's Model Are Not Based on Reliable Methods.**

The Hitt reports were offered to rebut Plaintiffs' restitution model, and thus are limited to criticizing Mr. Fanoe's methods rather than proposing an alternative method of calculation. *See Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*, 612 F. Supp. 3d 899, 911 (N.D. Cal. 2020) ("Defendants chose not to disclose an affirmative expert report on damages. . . . As a rebuttal witness, Dr. Saravia was not permitted to offer an affirmative opinion or her own

1   damages calculations."). However, not only is Dr. Hitt not an actuary, he did not apply any

2   sound economic or actuarial methodology in his rebuttal. Each of Dr. Hitt's opinions is

3   excludable because the methods applied are either unreliable or non-existent.

4     *Daubert* identified four main factors that may be relevant to evaluating the reliability of

5   expert testimony: "(1) whether the theory can be and has been tested, (2) whether the theory

6   has been peer reviewed and published, (3) what the theory's known or potential error rate is,

7   and (4) whether the theory enjoys general acceptance in the applicable scientific community."

8   *Murray v. S. Route Mar. SA*, 870 F.3d 915, 922 (9th Cir. 2017) (citing *Daubert*, 509 U.S. at

9   592–93). Where an expert offers non-scientific testimony, "reliability depends heavily on the

10  knowledge and experience of the expert, rather than the methodology or theory behind" the

11  testimony. *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004)

12  (quoting *United States v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2000)); *see also Kumho Tire*,

13  526 U.S. at 150 (explaining that the reliability inquiry "may focus upon personal knowledge or

14  experience" of the witness). But as the Supreme Court has explained, "conclusions and

15  methodology are not entirely distinct from one another," and a district court is not required to

16  "admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.

17  A court may conclude that there is simply too great an analytical gap between the data and the

18  opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (citation omitted). Here,

19  Dr. Hitt's proposed criticisms of and adjustments to Mr. Fanoe's damage calculations are

20  unsupported by any reliable methodology and his entire rebuttal report is rife with

21  inconsistencies, which further weighs in favor of excluding it.

22    For example, Dr. Hitt argues that Mr. Fanoe inappropriately allocates costs by

23  considering a variety of potential indications, including the ratio of California assistance cases

24  relative to global assistance cases. Hitt Rebuttal ¶ 44. As set forth above, that criticism is not

25  based on any reliable actuarial principles. It is also not based on any reliable economics

26  method within Dr. Hitt's expertise. Hitt Dep. 158:14-23 ("I tried to stay as close to Mr. Fanoe's

27  methods on things where I don't have – I don't necessarily agree that they should be

28  apportioned based on cases, for example, but I don't have an alternative."), 171:11–172:22

(explaining he does not have a strong opinion on how to allocate costs). Even worse, Dr. Hitt's proposed alternative method of allocating costs makes no sense. He argues that Mr. Fanoe should have used the ratio of *California* service revenue to *United States* service revenue to allocate *global* assistance expense. *See* Hitt 10/10/23 Rep. ¶ 54 & Ex. 4. This is an objectively unreasonable way to allocate global assistance expense because it allocates a large part of the cost of Defendants' global operations to California assistance cases, ███████████████ ███████████████████████████████████████. ███████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████ This adjustment is not based on any logical economic or actuarial principles. Instead, the clear purpose of this calculation is to artificially inflate costs to reduce Defendants' exposure.

It is also telling that, after opining that it is improper for Mr. Fanoe to use the ratio of California assistance cases to total assistance cases in allocating assistance expenses to the Class (Hitt 10/10/23 Rep. ¶ 47), Dr. Hitt's proposed revised calculations allocate the costs of various service centers based on the proportion of assistance cases associated with those centers. *Id.*, Ex. 4. When questioned about this inconsistency, Dr. Hitt claimed he was just trying to adjust certain variables to show the sensitivity of Dr. Fanoe's calculations to assumptions. Hitt Dep. 177:11-179:11. In other words, he could not identify any scientific principle or methodology underlying his criticism or his proposed alternative allocation method.

Further, despite the fact that Dr. Hitt has never been involved in pricing of insurance or of assistance services, and does not know how any of the products in this matter were actually priced (Hitt Dep. 172:23–174:9, 202:18–24), he criticizes Mr. Fanoe's report for incorrectly allocating assistance expenses based on the percentage of the total insurance premium revenue attributed to the individual sale, as opposed to the percentage of total assistance services revenue attributed to the individual sale (Hitt Rebuttal ¶ 61). Dr. Hitt acknowledges that his proposed correction is, at best imperfect, and that he is not sure if assistance service revenues are proportional to costs. Hitt Dep. 173:25–174:9 ("So all of those are imperfect attempts to do

1    an allocation. I don't know exactly what the direct relationship is between the assistance center

2    cost and the revenues especially since a lot it is fixed cost.").

3         Finally, Dr. Hitt argues Mr. Fanoe's model should be modified so that the amount of

4    commission actually paid to third-party retailers on each past transaction remains "fixed," even

5    if that payment was based on an illegal price. Hitt 10/10/23 Rep. ¶ 38 & Ex. 3. As a result, on a

6    percentage basis, the commission paid to a partner such as ███████ on the assistance fee would

7    increase from the actual contract commission rate (██████ to ████████ of Hitt's alternative

8    (supposedly) reasonable actuarial price for the assistance services included in the Class

9    members' plans. *See* Hitt 10/10/23 Rep. Ex. 3 (comparing rows b and d). In providing this

10   alternative calculation, Hitt is applying neither an actuarial nor an economic pricing model.

11   This opinion is based not on the facts of this case or on Plaintiffs' actual claims but on a vague,

12   speculative, and objectionable theory that restitution to consumers under the UCL is limited by

13   the profit-taking power of participants in an illegal or unfair scheme to exploit those very

14   consumers. Hitt's basic theory is that, if Defendants do not continue to pay inflated

15   commissions to its third-party partners, those partners would turn to some other option to

16   replace those revenues and Defendants would not be able to sell their travel insurance through

17   those partners. Hitt 10/10/23 Rep. ¶¶ 39-40; Hitt Dep. 214:23-215:24, 218:9-25. In other

18   words, even if what Defendants are doing is illegal, the commission payments are locked in by

19   Hitt's suppositions, Defendants cannot be held liable for those amounts, and consumers are out

20   of luck.

21        There are a number of fatal flaws with this theory that render it inadmissible. First, it is

22   not based on any evidence relevant to this case, such as Defendants' actual contracts with their

23   partners. Hitt Dep. 213:13-214:19. Indeed, the opinion is directly contrary to Hitt's own

24   understanding that Defendants' partners are *not* paid a set amount for each sale but a

25   percentage of each sale, so that the total commission payment varies with the total price. *Id.*

26   Accordingly, in the real world, Defendants' partners *do* accept lower commission amounts on

27   sales involving lower prices. Second, this purported opinion is not based on any expertise

28   regarding commissions or any empirical studies about how percent-based commissions

respond to a change in a regulatory environment (particularly within the insurance realm). Hitt Dep. 212:23-213:12, 217:2-218:8. Third, Dr. Hitt incorrectly assumes that other insurers would not similarly have to reduce their assistance fees to comply with the law, and could take Travel Guard's place, or that each partner might have another, equally profitable alternative to selling travel insurance. *Id.* 218:9-25. In sum, Dr. Hitt conducted no analysis of the actual facts in this case or in the travel insurance market, he did not properly account for the implications of a finding of liability that would trigger a restitution analysis, and he continues to assume that, to calculate the restitution owed to the Class, Mr. Fanoe and the Court are required to speculate about countless variables and possibilities that could affect how Defendants, their partners, and consumers would have all behaved in alternate universes. His goal, of course, is to make a reasonable restitution calculation an impossible task. But the UCL does not require Plaintiffs or the Court to parse the multiverse, or to apply economic models at all. Mr. Fanoe has applied standard actuarial pricing principles that are actually applied in the real world, and under which many companies (including large insurance corporations and their agents and partners) operate profitably. Dr. Hitt has no scientific or reliable basis to recommend specific alterations in that actuarial model.

The arguments above are the core of Dr. Hitt's rebuttal, yet none of them is grounded in any reliable scientific methodology or discipline. Thus, they must be excluded.

### D.    Dr. Hitt Offers Improper Legal Opinions.

Dr. Hitt's criticisms of Mr. Fanoe's methodology are, in reality, a legal argument. Indeed, at certain points, Dr. Hitt's report more resembles a legal brief than an expert opinion: stating that "35 states expressly permit by statute the bundling of travel insurance with non-insurance travel assistance services, and until 2020 no state required the explicit disclosure of the travel assistance fee" to support his opinion that empirical evidence suggests that a disclosure would not change consumers' behavior. Hit Rep. ¶ 21. Defendants improperly use Dr. Hitt to argue that an economic analysis is *required* under California law to measure damages. However, "an expert cannot testify to a matter of law amounting to a legal conclusion." *United States v. Tamman*, 782 F.3d 543, 552–53 (9th Cir. 2015) (citing Fed. R.

1  Evid. 702(a)); *see also Dolby Labs. Licensing Corp. v. Adobe Inc.*, No. 18-cv-01553-YGR,

2  2019 U.S. Dist. LEXIS 205488, at *9 (N.D. Cal. Nov. 26, 2019) (excluding Dr. Hitt's

3  testimony to the extent he was improperly interpreting contract provisions). This is because

4  "[l]egal opinions [by experts] . . . usurp the role of the judge and jury." *BP Prods. N. Am. v.

5  Grand Petroleum, Inc.*, No. 4:20-cv-0901-YGR, 2021 U.S. Dist. LEXIS 191360, at *4 (N.D.

6  Cal. Sep. 30, 2021). This is especially true here because the Court has already ruled on the

7  issue of whether Plaintiffs' actuarial model is consistent with their theory of harm as required

8  by *Comcast*. ECF No. 124 at 28 (certifying the Cass and accepting Plaintiffs' damages model

9  as to their UCL unfairness and unlawful claims).

10  **V.      CONCLUSION**

11          For the foregoing reasons, Plaintiffs move to exclude the following categories of

12  statements and opinions by Dr. Hitt: (1) that the actuarial methods applied by Plaintiffs' expert

13  Mr. Fanoe are incorrect or improper or should be done in another way (*see, e.g.,* Hitt 10/10/23

14  Rep. ¶¶ 3-10, 26-64, 74-78); (2) that it is improper as a general matter to apply actuarial

15  principles to estimate the value of assistance services or to calculate restitution owed to Class

16  members, or that economic models are the only valid models (*see, e.g., id.* ¶¶ 1-2, 11-14, 65-

17  73, 79-82, 87-90; Hitt 7/26/23 Rep. ¶¶ 14-20, 73-88, 90-119); (3) that the survey conducted by

18  Plaintiffs' expert J. Michael Dennis is flawed (*see* Hitt 7/26/23 Rep. ¶¶ 79, n.123, 89, 123-24);

19  and (4) that simply restate documents and testimony produced by Defendants in this case (*see*

20  Hitt 7/26/23 Rep. ¶¶ 10-12, 44-72).

21          DATED: November 21, 2023

22                                            **GUTRIDE SAFIER LLP**

23

24                                            *s/ Rajiv V. Thairani*
                                              Seth A. Safier (State Bar No. 197427)
25                                            seth@gutridesafier.com
                                              Rajiv V. Thairani (State Bar No. 344390)
26                                            rajiv@gutridesafier.com
                                              100 Pine Street, Suite 1250
27                                            San Francisco, CA 94111
                                              Telephone: (415) 336-6545
28                                            Facsimile:  (415) 449-6469

Stephen M. Raab (*pro hac vice*)
stephen@gutridesafier.com
305 Broadway, 7th Floor
New York, NY 10007
Telephone: (415) 639-9090 x109

*Attorneys for Plaintiffs*