1

**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
  seth@gutridesafier.com
Rajiv V. Thairani (State Bar No. 344390)
  rajiv@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile:  (415) 449-6469

Stephen M. Raab (*pro hac vice*)
  stephen@gutridesafier.com
305 Broadway, 7th Floor
New York, NY 10007
Telephone: (415) 639-9090 x109

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT FOR THE

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAMIKA MILLER and JULIANNE CHUANROONG, on behalf of themselves, the general public, and those similarly situated,<br><br>　　　　　　　　　　Plaintiffs,<br><br>　　v.<br><br>TRAVEL GUARD GROUP, INC., AIG TRAVEL, INC., and NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,<br><br>　　　　　　　　　　Defendants. | CASE NO. 3:21-cv-09751-TLT<br><br>**PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>MOTION HEARING<br><br>DATE:　　　February 27, 2024<br>TIME:　　　2:00 P.M.<br>CTRM:　　　9 (19th Floor)<br><br>Hon. Trina L. Thompson |

## **TABLE OF CONTENTS**

I.    INTRODUCTION ......................................................................................2

II.   STATEMENT OF UNDISPUTED FACTS ...............................................3

      A.    Travel Guard Group Is NUFIC's Agent in Selling Travel Insurance to California Consumers. ...................................................3

      B.    Defendants Uniformly Forced Class Members to Pay an Undisclosed Supposed "Non-Insurance" Fee by Bundling It With the Insurance Premium Into a Single Price. ...................................................4

      C.    Defendants Admit That the Total Price of Each Plan Is the Insurance Premium...........................................................4

      D.    Defendants Entered a Regulatory Settlement Agreement With the CDI, and Agreed to a Particular Definition of Assistance Services. ...............................5

      E.    Defendants' Assistance Services and Revenues Are Integrated With Defendants' Insurance Business in Violation of the RSA. .......................................6

III.  LEGAL STANDARD..............................................................................9

IV.   ARGUMENT ..........................................................................................10

      A.    Defendants Violated California Law By Selling Travel Insurance Plans for Total Prices Exceeding the Approved Rates for Those Policies. .....................10

            1.    There is no dispute that Defendants sold travel insurance plans for total prices exceeding the approved rates for those policies. .................11

            2.    There is no dispute that the total price for each Travel Guard plan was the insurance premium from the perspective of the insured...........................................11

            3.    There is no dispute that TGG, as NUFIC's agent, collected a mandatory fee as part of the price of each Travel Guard policy. ...............12

            4.    It is illegal to charge a premium that is inconsistent with the rate approved for that insurance policy. ............................13

      B.    Defendants Violated California Public Policy by Selling Travel Insurance Plans for Total Prices Exceeding the Approved Rates for Those Policies. ...................17

      C.    At Least Some, If Not Most, of Defendants' Assistance Services Were Related to the Travel Insurance and Had to Be Provided, If at All, Within the Approved Premium Rate....................................18

            1.    Pursuant to the RSA, any service related to travel insurance is part of the travel insurance. ..........................................18

            2.    The undisputed facts establish that most, or at least some, of the assistance service are related to the travel insurance....................................20

      D.    Defendants Acquired Class Members' Money By Means of an Illegal Practice............................................21

V.      CONCLUSION........................................................................................................21

PLS.' MOTION FOR PARTIAL SUMMARY JUDGMENT; CASE NO. 3:21-CV-09751-TLT

1

## **TABLE OF AUTHORITIES**

2

**CASES**

3

*Am. Civil Liberties Union of Nev. V. City of Las Vegas*, 333 F.3d 1092 (9th Cir. 2003) .................................................................................................................. 10

4

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ..................................... 9

5

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ................................................ 9

6

*Donabedian v. Mercury Ins. Co.*, 116 Cal. App. 4th 968 (Cal. Ct. App. 2004) ........................ 17

7

*Elgindy v. AGA Serv. Co.*, No. 20-cv-06304-JST, 2021 U.S. Dist. LEXIS 61269 (N.D. Cal. Mar. 29, 2021) ...................................................................... 13, 17

8

*Friedman v. AARP, Inc.*, 855 F.3d 1047 (9th Cir. 2017) .......................... 10, 19

9

*Groves v. Los Angeles*, 40 Cal. 2d 751 (Cal. 1953) ............................ 12, 13, 14

*Hodsdon v. Mars, Inc.*, 891 F.3d 857 (9th Cir. 2018) .................................... 17

10

*In re Tobacco II Cases*, 207 P.3d 20 (Cal. 2009) .......................................... 10

11

*Klein v. Chevron U.S.A., Inc.*, 137 Cal. Rptr. 3d 293 (Cal. Ct. App. 2012) ............ 10

12

*Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718 (9th Cir. 2007) ............... 10

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)............. 10

13

*Mercury Ins. Co. v. Lara*, 35 Cal. App. 5th 82 (Cal. Ct. App. 2019) ............... passim

14

*Olszewski v. Scripps Health*, 30 Cal. 4th 798 (Cal. 2003) ............................. 17

15

*Rovai v. Select Portfolio Servicing, Inc.*, No. 14-cv-1738-BAS-WVG, 2018 U.S. Dist. LEXIS 107764, 2018 WL 3140543 (S.D. Cal. June 27, 2018)................... 17

16

*State Farm Mut. Auto. Ins. Co. v. Garamendi*, 32 Cal. 4th 1029 (Cal. 2004) ............... 2, 16, 17

17

*Terry v. Wasatch Advantage Grp., LLC*, No. 2:15-cv-00799-KJM-DB, 2022 U.S. Dist. LEXIS 212591 (E.D. Cal. Nov. 23, 2022) ............................................ 19

18

*Troyk v. Farmers Grp., Inc.*, 171 Cal. App. 4th 1305 (Cal. Ct. App. 2009) ............... 12, 16, 19

19

**STATUTES**

Cal. Bus. & Prof. Code § 17200 .......................................................... passim

20

Cal. Bus. & Prof. Code § 17203 ................................................................ 21

21

Cal. Code Regs. tit. 10, § 2360.0 ................................................ 11, 14, 15

Cal. Code Regs. tit. 10, § 2360.1 ............................................................. 11

22

Cal. Code Regs. tit. 10, § 2360.3 ............................................................. 15

23

Cal. Code Regs. tit. 10, § 2360.6 ............................................................. 15

Cal. Code Regs. tit. 10, § 2643.3 ............................................................. 15

24

Cal. Code Regs. tit. 10, § 2644.1 ............................................................. 15

25

Cal. Code Regs. tit. 10, § 2644.2 ............................................................. 15

Cal. Code Regs. tit. 10, § 2644.12 ........................................................... 15

26

Cal. Ins. Code § 1851 ........................................................................... 11

27

Cal. Ins. Code § 1861.01 .................................................. 2, 10, 11, 15, 16

28

Cal. Ins. Code § 1861.05 ................................................................. passim

III

Cal. Ins. Code § 1861.13.................................................................................. 11

Cal. Ins. Code § 381(f)............................................................................... 11, 16

Cal. Ins. Code §12921................................................................................ 15, 19

Cal. Ins. Code §12926.................................................................................... 15

**Rules**

Fed. R. Civ. P. 30(b)(6)................................................................................... 22

Fed. R. Civ. P. 56...................................................................................... 1, 11

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE THAT** on February 27, 2024 at 2:00 pm, or as soon thereafter as the matter may be heard by the Honorable Trina L. Thompson of the United States District Court for the Northern District of California, located in Courtroom 9 at 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiffs Tamika Miller and Julianne Chuanroong and the certified Class and Subclass, by and through their undersigned counsel of record, will and hereby do move, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for an order and judgment that Defendants' conduct was unlawful and/or unfair under the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq ("UCL").

This Motion is based on Rule 56 of the Federal Rules of Civil Procedure, the supporting Memorandum of Points and Authorities herein, the previously filed Declaration of Rajiv V. Thairani and exhibits thereto (ECF Nos. 84-20—84-46, 86-3—86-27, 134-2—134-10, 135-1—135-4), the accompanying Declaration of Stephen M. Raab and exhibits thereto, the expert report of Joel Laucher, the expert report of Gregory Fanoe, the pleadings and papers on file in this action, and any other matter of which this Court may take notice.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

In California, insurers cannot legally charge more than the pre-approved insurance premium rate for their policies. Defendants all but admit that they broke that law. Defendants specifically admit that: (a) the total price for each of their Travel Guard plans is the insurance premium from the consumer's perspective and (b) the premium *exceeded the approved insurance rate*, because of the inclusion of an additional, undisclosed charge for "assistance services." Those undisputed facts establish Defendants' liability in this case.

In 1988, California voters enacted Proposition 103 (a series of laws substantially reducing and strictly regulating insurance rates) to protect consumers from "excessive, unjustified and arbitrary" insurance charges and "to ensure that insurance is fair, available, and affordable for all Californians." *State Farm Mut. Auto. Ins. Co. v. Garamendi*, 32 Cal. 4th 1029, 1041–42 (Cal. 2004). Insurance premiums must be approved by the California Department of Insurance ("CDI" or "Commissioner") and agents may not charge mandatory fees on top of the approved premium. In violation of these laws, and contrary to the clear public policies behind them, Defendants are deliberately making insurance transactions less affordable and more arbitrary by automatically bundling a so-called "assistance fee" in the single price they charge consumers for the insurance. Defendants are doing this for one reason: they want more money than they are allowed to charge through their approved insurance premiums.

Because Defendants' conduct violates both the letter and purpose of California's insurance rate regulations, they are liable under California's Unfair Competition Law ("UCL"), which provides a right of action to anyone harmed by unlawful or unfair conduct. In a last-ditch attempt to avoid liability, Defendants suggest that they are allowed to charge an insurance premium that exceeds the approved rate for their insurance, and that there is *no legal limit* on the total premium they can charge, so long as they disclose the price to consumers. Defendants' argument offends both California insurance law and common sense. Both courts and the Commissioner agree that if a fee is part of an insurance premium, it must be approved by the CDI under Sections 1861.01(c) and 1861.05 of the Insurance Code. Because Defendants'

practice of charging more than the approved rate is, in itself, a violation of the law and of the public policies behind Proposition 103, it is unnecessary to examine Defendants' rationalizations for their conduct or to determine whether their assistance services are truly separate from the insurance. Summary adjudication is warranted.

Even if a further inquiry into the nature of the assistance services were warranted, the undisputed facts would *still* establish Defendants' liability. In 2018, to resolve an investigation by state regulators, Defendants entered a Regulatory Settlement Agreement ("RSA"), in which they agreed that (a) "Assistance Services" are only those services that are *unrelated* to travel insurance (such as concierge services), but (b) services related to travel insurance would be part of the travel insurance and subject to (and included in) the approved rate for that insurance. Defendants admit—both in testimony and documents produced in this case—that their assistance services are directly correlated with their travel insurance. Such insurance-related services include: (1) arrangements for evacuations and repatriation of remains, where Defendants' insurance policies *expressly required* the involvement of the assistance center in order to obtain the insurance benefits; (2) medical monitoring to identify potential pre-existing conditions and to initiate claims procedures; (3) efforts to retrieve baggage to avoid or mitigate claims for lost or delayed baggage; and (4) other cost containment measures. Under the RSA, virtually all of the "assistance services" Defendants provided were indisputably insurance-related services and Defendants improperly exceeded the approved rate in charging extra, unapproved fees for them.

For these reasons, and as more fully discussed below, the Court should grant Plaintiffs' motion for partial summary judgment on Defendants' liability to the Class under the UCL's unlawful and unfairness prongs.

## II.    STATEMENT OF UNDISPUTED FACTS

### A.    Travel Guard Group Is NUFIC's Agent in Selling Travel Insurance to California Consumers.

Throughout the Class period, Travel Guard Group, Inc. ("TGG") was the general agent for National Union Fire Insurance Company of Pittsburgh, PA ("NUFIC") responsible for:

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████ Raab Decl. Ex.

A ¶¶ 1–6[1]; ECF No. 86-12 (under seal) ("Pls.' Ex. 8") at MILLER-0004567–69; ECF No. 86-13 (under seal) ("Pls.' Ex. 9") at MILLER-0003675–76; ECF Nos. 86-8 (under seal) & 134-3 (public) ("Gallagher Dep.") 10:10–22.[2]

**B.    Defendants Uniformly Forced Class Members to Pay an Undisclosed Supposed "Non-Insurance" Fee by Bundling It With the Insurance Premium Into a Single Price.**

For all the travel insurance sales at issue, Travel Guard ████████████████ ████████████████████████████████████████████████████████, and required every Class member to pay the entire amount for their Travel Guard plan—without full disclosure or any option to reject the additional services and pay only the authorized insurance premium. Gallagher Dep. 15:20–17:17, 23:9–24:5; ECF Nos. 86-9 (under seal) & 134-4 (public) ("Tritz Dep.") 56:2–7.

**C.    Defendants Admit That the Total Price of Each Plan Is the Insurance Premium.**

Defendants admit that they identified the premium for each purchased insurance plan on the policy summary page presented to the insured and that the premium identified by Travel Guard *includes the charge for assistance services*. Gallagher Dep. 127:13–128:25. In response to an interrogatory on this issue, Defendants explained:

> **All of Defendants' travel insurance policies sold to California consumers during the class period complied with Section 381(f) of the California Insurance Code by providing a "statement of the premium" in the policy declaration page**, among other places. As interpreted by California courts, the term "premium," as used in Section 381(f), "is the total amount the insureds were required to pay to obtain insurance coverage." *Troyk v. Farmers Grp., Inc.*, 171

---

[1] Exhibits to the accompanying Declaration of Stephen M. Raab are hereinafter referenced as "Pls.' Ex." and are lettered "A"–"R."

[2] Plaintiffs include the ECF docket citations in the first citation to previously filed exhibits. Subsequent citations to the same exhibit will omit the ECF docket citations.

Cal. App. 4th 1305, 1324 (2009). As the *Troyk* court recognized, the meaning of the term "premium" as used in Section 381(f) is distinct from the insurance rates that must be approved by California's insurance regulators. *Id.* at 1328 ("DOI rate approval . . . involves a different purpose than the consumer protection policy disclosures required by section 381."). Consequently, **the declaration pages for Defendants' travel protection packages displayed the total price charged, including both the insurance rate and non-insurance assistance service fee, as the statement of premium as required by California law**.

Pls.' Ex. B at 6–7 (emphasis added).

### D. Defendants Entered a Regulatory Settlement Agreement With the CDI, and Agreed to a Particular Definition of Assistance Services.

In 2018, NUFIC entered the RSA with multiple state insurance regulators regarding the sale of travel insurance. Pls.' Ex. A ¶ 7; Pls.' Ex. M. The RSA applied to NUFIC "and all affiliated entities including parents and subsidiaries, successors, assigns, officers, directors and employees." Pls.' Ex. M at MILLER-0012670. California signed the RSA as a "Participating State." Pls.' Ex. A ¶ 7; Pls.' Ex. N at MILLER-0061561.

The RSA defined "Travel Insurance" as "insurance coverage for personal risks incident to travel, including but not limited to: Interruption or cancellation of trip or event; Loss or delay of baggage or personal effects; . . . Sickness, accident, disability or death occurring during travel **and any related medical services**; Missed connection; Emergency evacuation and repatriation **and any related emergency services**;" and other coverages. Pls.' Ex. M at MILLER-0012673 (emphasis added). The RSA defined "Assistance Services" as "one or more of the following non-insurance services that may be distributed by Distribution Participants or other entities including, but not limited to: Multilingual Assistance that is not related to the purchase of Travel Insurance by the consumer nor related to the handling of Travel Insurance claim; Concierge Service, . . . ; Any other service that is furnished in connection with planned travel **and is not directly or indirectly related to Travel Insurance, the administration of Travel Insurance coverage or covered under a policy of Travel Insurance**." *Id.* at MILLER-0012669– MILLER-0012670 (emphasis added).

Pursuant to the RSA, Defendants agreed, among other things: (a) "that the cost of its Travel Insurance will be the filed rate" (*id.* at MILLER-0012678); (b) "that any premium or fees

charged to a consumer . . . for the Company's Travel Insurance coverage must relate directly back to an approved rate filing or a service provided" (*id.* at MILLER-0012680); (c) "to prohibit any Distribution Participant from charging a separate fee, including a producer service fee, for Travel Insurance in addition to the Travel Insurance premium or to add any charges or fees for any of the Company's Travel Insurance products or related insurance services without a separate written agreement with the insured, unless permitted by a Participating State under its Insurance Law" (*id.*); and (d) "where prohibited by law in a Participating State, Company agrees not to combine and package the cost of Assistance Services . . . with the cost of Travel Insurance in its rate filings and in the sale of its Travel Insurance to consumers, and will prohibit its Distribution Participants from combining and packaging the cost of Assistance Services . . . with the cost of Travel Insurance in the sale of its Travel Insurance to consumers" (*id.* at MILLER-0012683).

The execution of the RSA by NUFIC and California constituted the entry of an order by the CDI. *Id.* at MILLER-0012686–MILLER-0012687.

E.    **Defendants' Assistance Services and Revenues Are Integrated With Defendants' Insurance Business in Violation of the RSA.**

Despite the RSA, ███████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████ ████ ████ ██████ ████ ████ ████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

1

2

Consistent with the RSA's definition of "Travel Insurance" as specifically including services related to emergency evacuations, repatriation, and other medical incidents that arise during travel, Travel Guard policies expressly *require* insureds to use Travel Guard's assistance service to obtain insurance benefits such as medical evacuations and repatriation of remains, and Pls. Ex. P at MILLER-0032194–97;

1 ████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████

3 ████████████████████████████████████████████████████

4 ████████████████████████████████████████████████████

5 ████████████████████████████████████████████████████

6 ████████████████████████████████████████████████████

7 ████████████████████████████████████████████████████

8 ████████████████████████████████████████████████████

9 ████████████████████████████████████████████████████

10 ████████████████████████████████████████████████████

11 ████████████████████████

12    Defendants' assistance with lost or delayed baggage is also, by definition, related to the

13 Travel Guard coverage for lost or delayed baggage and helps Defendants avoid or minimize

14 potential claim costs associated with such incidents. Pls.' Ex. P at MILLER-0032196, Pls.' Ex.

15 I at ¶¶ 19, 44.

16    Indeed, ██████████████████████████████████████████

17 ████████████████████████████████████████████████████

18 ████████████████████████████████████████████████████

19 ████████████████████████████████████████████████████

20 ████████████████████████████████████████████████████

21 ████████████████████████████████████████████████████

22 ████████████████████████████████████████████████████

23 ████████████████████████████████████████████████████

24 ████████████████████████████████████████

25 ████████████████████████████████████████████████████

26 ████████████████████████████████████████████████████

27 ████████████████████████████████████████████████████

28 ████████████████████████████████████████████████████

PLS.' MOTION FOR PARTIAL SUMMARY JUDGMENT; CASE NO. 3:21-CV-09751-TLT

1  ████████████████████████████████████████████████████

2  ████████████████████████████████████████████████████

3  ████████████████████████████████████████████████████

4  ████████████████████████████████████████████████████

5  ████████████████████████████████████████████████████

6  ████████████████████████████████████████████████████

7  ████████████████████████████████████████████████████

8  ████████████████████████████

Accordingly, if an increase in the price is needed to cover certain expenses, such as payments to ██████ and other retailers, ████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████

## III.    LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* The party moving for summary judgment has the burden of showing no material fact is in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). It can do so by showing the record establishes facts beyond genuine dispute, or it can show the adverse party "cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The nonmoving party must then "establish that there is a genuine issue of material fact." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

585 (1986). Both must cite "particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1). The court views the record in the light most favorable to the non-moving party and draws reasonable inferences in that party's favor. *Matsushita*, 475 U.S. at 587–88. Cross-motions for summary judgment are evaluated separately under the same standard, "giving the nonmoving party in each instance the benefit of all reasonable inferences." *Am. Civil Liberties Union of Nev. V. City of Las Vegas*, 333 F.3d 1092, 1097 (9th Cir. 2003).

## IV.    ARGUMENT

### A.    Defendants Violated California Law By Selling Travel Insurance Plans for Total Prices Exceeding the Approved Rates for Those Policies.

A UCL claim may be satisfied by "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200; *see also Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007) ("Each prong of the UCL is a separate and distinct theory of liability."). "Virtually any law or regulation—federal or state, statutory or common law—can serve as a predicate for a section 17200 'unlawful' violation." *Klein v. Chevron U.S.A., Inc.*, 137 Cal. Rptr. 3d 293, 326–27 (Cal. Ct. App. 2012) (internal quotation marks and ellipsis omitted); *see also Friedman v. AARP, Inc.*, 855 F.3d 1047, 1052 (9th Cir. 2017) (same). Reliance and materiality are *not* elements of a UCL unlawful claim. *See In re Tobacco II Cases*, 207 P.3d 20, 35 (Cal. 2009).[3]

Under California law, Defendants cannot legally charge insurance premium rates above the rates that were specifically approved for their travel insurance policies. Cal. Ins. Code § 1861.01(c) ("insurance rates subject to this chapter must be approved by the commissioner prior to their use"); Cal. Ins. Code § 1861.05(a) ("No rate shall be approved or remain in effect which is excessive, inadequate, unfairly discriminatory or otherwise in violation of this chapter."). Sections 1861.01 and 1861.05 are within Article 10 and Chapter 9 of the Insurance Code, both of which apply to all insurance in California, except certain specified lines. Cal. Ins. Code §§

---

[3] The named plaintiff in a class action must show a loss of money or property "as a result of" the unlawful action to have standing to bring suit, but that does not apply to absent class members. *Id.*

1851, 1861.13. Travel insurance is not one of the lines of insurance excepted from rate regulations. Cal. Ins. Code § 1851; *see also* Cal. Code Regs. tit. 10, § 2360.1 (confirming that the rate regulations "apply to all lines of insurance except those which are listed in California Insurance Code (CIC) Section 1851(a) through (h)"). The premiums Defendants charged Class members were thus "insurance rates subject to this chapter" within the meaning of Section 1861.01. Because those rates were not approved by the CDI, and thus were excessive and in violation of Chapter 9 of the Insurance Code, Defendants violated Sections 1861.01 and 1861.05 in charging those rates.

### 1. There is no dispute that Defendants sold travel insurance plans for total prices exceeding the approved rates for those policies.

For all the travel insurance sales at issue, Travel Guard: ███████████████████
████████████████████████████████████████████████████████████████, and required every Class member to pay the entire amount for their Travel Guard plan, without disclosure or any option to pay only the authorized insurance premium. Gallagher Dep. 15:20–17:17, 23:9–24:5; Tritz Dep. 56:2–7. The Class is accordingly defined to include only those individuals who paid more than the approved rate for their Travel Guard plans.

### 2. There is no dispute that the total price for each Travel Guard plan was the insurance premium from the perspective of the insured.

California law requires every insurance policy to include a "statement of the premium." Cal. Ins. Code § 381(f). Under California law, "premium" means "the final amount charged to an insured for insurance after applying all applicable rates, factors, modifiers, credits, debits, discounts, surcharges, fees charged by the insurer and all other items which change the amount the insurer charges to the insured." Cal. Code Regs. tit. 10, § 2360.0(c).

Travel Guard admits that it "complied" with Section 381(f) as follows: "the declaration pages for Defendants' travel protection packages displayed the total price charged, including both the insurance rate and non-insurance assistance service fee, as the statement of premium as required by California law." Pls.' Ex. B at 6–7; *see also* Gallagher Dep. 127:13–128:25 (testifying, on behalf of Defendants, that Defendants' policy summary page identifies the "plan

premium" as the "total cost," which includes the assistance fee component). Defendants also acknowledge that "the term 'premium,' as used in Section 381(f), 'is the total amount the insureds were required to pay to obtain insurance coverage.'" Pls.' Ex. B at 7 (quoting *Troyk v. Farmers Grp., Inc.*, 171 Cal. App. 4th 1305, 1324 (Cal. Ct. App. 2009)).

### 3.    There is no dispute that TGG, as NUFIC's agent, collected a mandatory fee as part of the price of each Travel Guard policy.

There is no dispute that TGG is NUFIC's general agent, collected the total price as the required price for the insurance, and did so within the scope of its authority. Pls.' Ex. A ¶¶ 1–6; ████████████████████████████████████████; Gallagher Dep. 10:10–22, 15:20–17:12, 23:9–24:5. The fact that TGG kept some portion of the total price for itself as a so-called "assistance fee" does not change this analysis. *See Groves v. Los Angeles*, 40 Cal. 2d 751, 759–62 (Cal. 1953) (explaining that the total amount collected by an insurance agent for an insurance contract is the premium, even if the agent transmits only a portion to the insurer and keeps the remainder); *Mercury Ins. Co. v. Lara*, 35 Cal. App. 5th 82, 97 (Cal. Ct. App. 2019) (explaining that the total amount an insured is required to pay for insurance, including any amount paid to an insurance agent, is the premium). Consistent with first principles of agency law, the authorized actions of an agent are treated the same as actions by the principal. *See*, *e.g.*, *Dart Indus., Inc. v. Commercial Union Ins. Co.*, 28 Cal. 4th 1059, 1064 (Cal. 2002) ("Whatever is said by an agent in the making of a contract or accompanying the performance of an act within the scope of the agent's authority is in legal effect said by his or her principal."). Although a broker may charge an additional fee for services provided to a consumer, as long as the broker is not an appointed agent, "[t]here is no authority allowing an insurance agent to charge such a fee," separate from the premium. *Lara*, 35 Cal. App. 5th at 97.

In *Groves*, the City of Los Angeles sought to distinguish the amount retained by the agent from the amount transferred to the insurer. The city argued that only the latter amount was the premium, so it could tax the portion retained by the agent. 40 Cal. 2d at 759. The California Supreme Court rejected that argument, emphasizing that "the amount paid by the insured for the insurance is the premium" and noting that "[i]t is not significant how [the insurer and its agent]

choose to allocate that amount, such as for various services, premiums, etc.," and that "whether the amount charged . . . is broken down to specific items for [the agent's] convenience" is irrelevant. *Id.* at 760–61 ("What the agent receives, in legal effect the insurer receives. The so-called 'fees' received by the . . . agent do not result in a reduction of the cost to the insured.").

In *Lara*, the appellate court reversed a trial court's ruling that the fees at issue were "brokers' fees" and upheld the CDI's determination that the fees were actually agent fees. The court explained that agent fees are premium that must be reported to the CDI and reviewed and approved under applicable rate regulations. 35 Cal. App. 5th at 102.

In *Lara*, the insurer engaged in lengthy litigation in an attempt to avoid the determination that the entities collecting the fees at issue were the insurer's agents, because the insurer had not included the fees in its rate filings and had not received approval for them. Here, Defendants openly admit that TGG is NUFIC's agent. Thus, the conclusion that the total price charged for each Travel Guard policy is the premium was unavoidable, even if Defendants had not conceded that issue.

### 4.  It is illegal to charge a premium that is inconsistent with the rate approved for that insurance policy.

There is no dispute that Defendants failed to get approval from CDI for their "assistance fees," or that the fees were part of the premiums collected by an insurance agent in the sale of the Travel Guard insurance policies. Defendants dispute only the legal implication of those facts.

If the "assistance fee" is part of the insurance premium, it is "required to be approved by the California Insurance Commissioner under Sections 1861.01(c) and 1861.05 of the Insurance Code." *See Elgindy v. AGA Serv. Co.*, No. 20-cv-06304-JST, 2021 U.S. Dist. LEXIS 61269, at *30 (N.D. Cal. Mar. 29, 2021). And certainly, if the fee at issue is an agent's fee, "then, under *Lara*, it is 'part of premium and must be included in a rate application for prior approval.'" *Id.* (quoting *Lara*, 35 Cal. App. 5th at 99). Although Defendants ████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████ that internal division of the total premium *after* collecting it as a single price from consumers, does

not constitute compliance with the insurance laws. *Cf. Groves*, 40 Cal. 2d at 760 ("a mere bookkeeping method cannot thwart the law").

In *Lara*, the court upheld the CDI's determination that the fees at issue were agent fees, and thus were subject to rate filing requirements and prior approval. 35 Cal. App. 5th at 99. The court noted that the determination was consistent with an authoritative opinion by the CDI on the topic. *Id.* at 101 ("Bulletin No. 80-6, adopted in 1980 and about which the Commissioner's Decision found Mercury was aware, advised insurers fees charged by agents were premium and had to be nondiscriminatory and reported to CDI."); Pls. Ex. Q (Bulletin 80-6) ("Should an insurer authorize its agents to collect 'fees' such fees would have to be reported as premium by the insurer, and would, of course, have to comply with the anti-discrimination statutes. Therefore, an insurer cannot permit each of its agents to determine which fees that agent will charge because to do so would surely result in rate discrimination."). In *Lara*, the court explicitly and repeatedly connected the definition of "premium" with the rate approval statutes. *See, e.g., id.* at 102 ("[U]nder Bulletin No. 80-6 and 10 California Code of Regulations section 2360.0(c), [the fees] are premium and 'and must be reported in a rate application for prior approval.'"). The *Lara* court also noted that, in adopting an expansive definition of "premium" in Cal. Code Regs. tit. 10, § 2360.0(c), the Insurance Commissioner stated: "'For purposes [of Proposition 103], a rate is the price or premium that an insurer charges its insureds for insurance,'" and "Proposition 103 was not intended to allow insurers to get around the prohibition against unfairly discriminatory 'rates' by adding other unfairly discriminatory charges after a base rate is determined." *Id.* at 89. The *Lara* court further emphasized that a contrary interpretation "would lead to the absurd result of eviscerating the rate statutes' requirements by allowing insurance company agents to charge 'broker fees' without any CDI oversight or approval. That would mean insurance agents could charge unapproved and unfairly discriminatory fees for alleged separate services that would increase consumers' cost of insurance. This is contrary to the voters' intent as expressed in Proposition 103." *Id.* at 102.

While "rate" may, in some contexts, refer to the *formula* for calculating the "premium" on a particular policy and "premium" may, in some contexts, be used to refer to the *amount* of

money charged as a result of the applicable "rate" calculation, the terms are essentially interchangeable for purposes of Proposition 103. The statutory authority cited as the basis for the CDI's definition of "premium" shows that the CDI adopted a broad definition of "premium" *for purposes of rate regulation*. *See* Cal. Code Regs. tit. 10, §§ 2360.0 ("Authority cited: Sections 1861.05, 12921, and 12926, Insurance Code."); 1861.05 ("No rate shall be approved or remain in effect which is excessive, inadequate, unfairly discriminatory or otherwise in violation of this chapter."), 12921 (requiring the commissioner to enforce the insurance laws), 12926 ("The commissioner shall require from every insurer a full compliance with all the provisions of this code."). Moreover, the CDI's use of the term "premium" throughout the regulations used to implement its rate authority under Section 1861.05 further confirms that the terms are interchangeable under Proposition 103. *See, e.g.*, Cal. Code Regs. tit. 10, §§ 2360.3 (requiring insurers to charge each insured "the lowest Premium for which the insured qualifies"), 2360.6 (titled "Documentation Supporting Rates" and requiring insurers to keep documentation of the information considered "in determining the Premium charged to the insured"), 2643.3 (noting rate determinations are made "on the basis of the aggregate earned premiums the rates are expected to produce" and that "the proposed and approved rates are required to reflect the actual distribution of premiums"), 2644.1 ("No rate shall be approved or remain in effect that is above the maximum permitted earned premium . . .), 2644.2 (specifying the calculation for "maximum permitted earned premium"), 2644.12 (requiring the use of an "efficiency standard" expressed as "a maximum allowable ratio of historic underwriting expenses, including adjusting and other expenses, to historic earned premiums, which represents the fixed and variable cost for a reasonably efficient insurer to provide insurance and to render good service to its customers").

Accordingly, the premiums Defendants actually charged Class members were subject to Sections 1861.01(c) and 1861.05 of the Insurance Code, and their implementing regulations. Because Defendants have admitted that those premiums were not approved, and, in fact, exceeded the approved rates for the Travel Guard policies sold to Class members, Defendants violated California insurance law, and thus the UCL.

1    Defendants seek to complicate this straightforward analysis by arguing that the premiums

2    they charged Class members were not "insurance rates" for purposes of Sections 1861.01 and

3    1861.05. Defendants thereby suggest that, under California law, they can charge a "premium"

4    that is higher than the approved "rate," and that there is no statute or regulation requiring the

5    "premium" to equal the approved "rate" or otherwise limiting the "premium" in the same way

6    that the insurance "rate" is limited by a host of regulations. Defendants' argument is absurd, as

7    it would eviscerate the well-developed laws regulating insurance premiums and the CDI's

8    extensive efforts to enforce those laws. *Lara*, 35 Cal. App. 5th at 102; *also cf. State Farm*, 32

9    Cal. 4th at 1043 (a statute must be interpreted "with reference to the entire scheme of law of

10   which it is part so that the whole may be harmonized and retain effectiveness"). The only support

11   Defendants have cited for their position is a vague sentence they have pulled out of context from

12   the *Troyk* opinion.

13   In *Troyk*, the insurer did *not* include a service fee in its statement of the premium, and

14   argued that the fee was not part of the premium because it was for the benefit of paying the

15   premium in installments. The court acknowledged that there was case law holding that a service

16   fee for installment payments is not generally part of the premium for a policy (because it is an

17   optional benefit based on the time value of money) and noted that the insurer submitted evidence

18   that the CDI considered optional charges for installment payments to be distinct from the

19   premium subject to rate approval. 171 Cal. App. 4th at 1327–28. But those authorities did not

20   apply in *Troyk* because there was no installment payment option: the fee at issue was part of the

21   total cost the insured was *required* to pay for the one-month-term insurance and thus was part of

22   the premium for purposes of Section 381(f). *Id.* After explaining that the fee at issue was not an

23   installment payment and distinguishing the CDI's alleged policy as one concerned only with true

24   installment payments, the court also mentioned that the CDI's rate approval practices involve "a

25   different purpose than the consumer protection policy disclosures required by section 381." *Id.*

26   at 1328. But that statement was not the basis of the court's holdings, the court was not

27   considering whether the insurer had violated the rate statutes, and it provided no analysis or

28   explanation for that ambiguous bit of dicta.

16

1    The courts and the CDI have consistently connected the definition of premium to the

2    approved rate and to Proposition 103's policies of prohibiting excessive, arbitrary, and/or

3    discriminatory charges for insurance, as set forth above. This makes perfect sense. If insurers

4    and their agents could include any fee they wished into a single price that exceeds the approved

5    rate for the insurance, California's rate regulation scheme would be toothless. *See Lara*, 246 35

6    Cal. App. 5th at 102 (concluding it would be contrary to the intent of Proposition 103 to allow

7    agents to charge "unfairly discriminatory fees for alleged separate services that would increase

8    consumers' cost of insurance").

9
10    **B.    Defendants Violated California Public Policy by Selling Travel Insurance Plans for Total Prices Exceeding the Approved Rates for Those Policies.**

11    A practice is unfair under the UCL if it violates public policy tethered to underlying

12    constitutional, statutory, or regulatory provisions. *Elgindy*, 2021 U.S. Dist. LEXIS 61269, at

13    *31.[4] Under this test, "a business practice may be 'unfair . . . in violation of the UCL even if the

14    practice does not violate any law,'" if the practice offends an established public policy. *Rovai v.*

15    *Select Portfolio Servicing, Inc.*, No. 14-cv-1738-BAS-WVG, 2018 U.S. Dist. LEXIS 107764,

16    2018 WL 3140543, at *16 (S.D. Cal. June 27, 2018) (quoting *Olszewski v. Scripps Health*, 30

17    Cal. 4th 798, 827 (Cal. 2003)); *see also Hodsdon v. Mars, Inc.*, 891 F.3d 857, 866 (9th Cir. 2018)

18    (noting there must be "a close nexus between the challenged act and the legislative policy"). In

19    this case, Defendants' conduct violated California's long-standing public policy, enacted by

20    California voters into law through Proposition 103, "to protect consumers from arbitrary

21    insurance rates and practices . . . and to ensure that insurance is fair, available, and affordable

22    for all Californians." *See Lara*, 35 Cal. App. 5th at 103, 112 (internal quotation marks omitted)

23    (citing *Donabedian v. Mercury Ins. Co.*, 116 Cal. App. 4th 968, 981 (Cal. Ct. App. 2004)); *see*

24    *also State Farm*, 32 Cal. 4th at 1041–42, 88 P.3d at 77 (noting that Proposition 103's stated

25    purposes include "to protect consumers from arbitrary insurance rates and practices . . . and to

26
27
28    [4] The Court can use either the tethering test or balancing test to determine whether Defendants' practices are unfair under the UCL. *See Elgindy*, 2021 U.S. Dist. LEXIS 61269, at *31. On this motion, Plaintiffs are seeking partial summary judgment on the tethering test.

1  ensure that insurance is fair, available, and affordable for all Californians") (internal quotation

2  marks and citation omitted).

3        Even if the Court were to find that there is a technical ambiguity or gap in the law between

4  what insurers can charge as "premium" for a policy and the approved rate for that policy, actually

5  charging more than the approved rate would be contrary to the stated purpose of Proposition 103,

6  as set forth above, and "would lead to the absurd result of eviscerating the rate statutes'

7  requirements by allowing insurance company agents to charge [fees] without any CDI oversight

8  or approval." *Lara*, 35 Cal. App. 5th at 102; Ex. Q (Bulletin 80-6) ("[A]n insurer cannot permit

9  each of its agents to determine which fees that agent will charge because to do so would surely

10  result in rate discrimination."). "This is contrary to the voters' intent as expressed in Proposition

11  103." *Lara*, 35 Cal. App. 5th at 102.

12        **C.    At Least Some, If Not Most, of Defendants' Assistance Services Were
13             Related to the Travel Insurance and Had to Be Provided, If at All, Within
             the Approved Premium Rate.**

14        For the reasons set forth above, it is unnecessary for the Court to further evaluate the

15  relationship between Defendants' so-called assistance services and the travel insurance. But even

16  if the Court were inclined to look any further, the undisputed facts establish that at least some, if

17  not most, of Defendants' assistance services were related to travel insurance and had to be

18  provided, if at all, within the approved premium rate.

19        **1.    Pursuant to the RSA, any service related to travel insurance is part
20             of the travel insurance.**

21        In the RSA, the CDI did not express an opinion as to whether it would violate California

22  law to bundle defined "Assistance Services" (i.e., services *unrelated* to the travel insurance) with

23  travel insurance into a single plan price. Nor could the CDI change California law on that issue.

24  Accordingly, the RSA does not even purport to change the legal principles discussed in argument

25  sections A and B above. The RSA did, however, adopt clear positions on the definition of "Travel

26  Insurance," the definition of "Assistance Services," and the point that "the cost of [NUFIC's]

27  Travel Insurance will be the filed rate." Pls.' Ex. M at MILLER-0012669, MILLER-0012678.

28  According to those RSA provisions, if a service is "related, directly or indirectly," to the travel

18

insurance (particularly if it is a service related to emergency evacuation, repatriation, sickness, accident, disability, or death occurring during travel), then it is *not* an "Assistance Service" but is part of the travel insurance and is subject to the approved rate for that insurance. *Id.* at MILLER-0012670.

The execution of the RSA by NUFIC and California constituted the entry of an order by the CDI. *Id.* at MILLER-0012686–MILLER-0012687; *see also* Cal. Ins. Code § 12921 (obligating the commissioner to enforce the insurance laws and authorizing the commissioner to approve/enter settlements of administrative actions to enforce the insurance code). The RSA, as an administrative order pursuant to Section 12921, represents the CDI's interpretation of how California's rate statutes and regulations apply to the distinction between "Travel Insurance" and "Assistance Services." Under that authoritative interpretation, services that are related to travel insurance are part of the travel insurance and must be provided, if at all, within the approved rate for the travel insurance. *See Lara*, 35 Cal. App. 5th at 102–03 ("While courts are not bound by the Commissioner's interpretation of rate statutes, we do give great weight and respect to the administrative construction.") (internal quotation marks and citations omitted). Moreover, Defendants *agreed* to the RSA.

In considering whether the assistance services at issue are part of the travel insurance, the Court should not defer to Defendants' characterization of the services as "non-insurance." *See Friedman*, 855 F.3d at 1053 (plaintiff plausibly alleged the charge at issue was a commission, despite defendant's argument that it was a royalty); *Lara*, 35 Cal. App. 5th at 920–22 (reversing a finding that the fees at issue were "broker fees" for supposedly separate services rather than part of the premium); *Troyk*, 171 Cal. App. 4th at 1336 (fee for a supposedly separate service was actually part of the premium for the policy); *cf. Terry v. Wasatch Advantage Grp., LLC*, No. 2:15-cv-00799-KJM-DB, 2022 U.S. Dist. LEXIS 212591, at *15–23 (E.D. Cal. Nov. 23, 2022) (finding charges for supposedly additional services were actually "rent" in violation of federal law, and granting summary judgment to plaintiffs on their UCL claim).

**2.    The undisputed facts establish that most, or at least some, of the assistance service are related to the travel insurance.**

The RSA (a) expressly defined "Travel Insurance" to include services related to emergency evacuations, repatriation, and other medical incidents that arise during travel and (b) expressly defined "Assistance Services" as those services that are "not directly or indirectly related" to travel insurance. Pls.' Ex. M at §§ B(3), B(21), & C(9). The undisputed facts establish that many of Defendants' assistance services were related to the travel insurance, and thus subject to the filed rate for that insurance.

First, Defendants admit that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮.

Second, Travel Guard policies expressly *require* insureds to use Travel Guard's assistance service to obtain insurance benefits such as medical evacuations and repatriation of remains, and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

Third, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮.

Fourth, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

Fifth, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████ Under both the RSA and California law, Defendants were not allowed to charge more than the approved insurance premium rate for such services.

**D. Defendants Acquired Class Members' Money By Means of an Illegal Practice.**

The UCL empowers the court to award restitution "to any person in interest any money . . . which may have been acquired by means of" an unfair or unlawful business practice. Cal. Bus. & Prof. Code § 17203. There is no dispute that, if Defendants were not allowed to charge more than the approved rate for their assistance services, then Defendants acquired Plaintiffs and Class members' money by means of their unlawful and unfair practice of charging more than the approved rate for their travel insurance policies. *See* Pls.' Ex. R ¶¶ 7-9. Because Plaintiffs' theory of liability requires a finding that Defendants should have charged less than they did for their policies, entitlement to restitution is a given; only the amount of that the Defendant owes in restitution needs to be established at trial.

**V. CONCLUSION**

The undisputed facts in this case establish that Defendants charged insurance premiums above the price Defendants were allowed to charge and/or violated the public policy behind California's insurance rate regulation scheme. For the reasons set forth above, Plaintiffs respectfully request that the Court grant Plaintiffs' motion for partial summary judgment on Defendants' liability to the Class under the UCL.

1    DATED: November 21, 2023

2                                              **GUTRIDE SAFIER LLP**

3                                              *s/ Stephen M. Raab*

4                                              Seth A. Safier (State Bar No. 197427)
                                                 seth@gutridesafier.com
5                                              Rajiv V. Thairani (State Bar No. 344390)
                                                 raj@gutridesafier.com
6                                              100 Pine Street, Suite 1250
                                               San Francisco, CA 94111
7                                              Telephone: (415) 336-6545
                                               Facsimile:  (415) 449-6469
8

9                                              Stephen M. Raab (*pro hac vice*)
                                                 stephen@gutridesafier.com
10                                             305 Broadway, 7th Floor
                                               New York, NY 10007
11                                             Telephone: (415) 639-9090 x109

12                                             *Attorneys for Plaintiffs*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28