**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Rajiv V. Thairani (State Bar No. 344390)
rajiv@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

Stephen M. Raab (*pro hac vice*)
stephen@gutridesafier.com
305 Broadway, 7th Floor
New York, NY 10007
Telephone: (415) 639-9090 x109

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAMIKA MILLER, JULIANNE CHUANROONG, and STEPHANIE ALLEN on behalf of themselves, the general public, and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TRAVEL GUARD GROUP, INC., AIG TRAVEL, INC., and NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,<br><br>Defendants. | CASE NO. 3:21-cv-09751-TLT<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>MOTION HEARING<br>  DATE:     February 27, 2024<br>  TIME:     2:00 P.M.<br>  CTRM:    9 (19th Floor)<br><br>Honorable Trina L. Thompson |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **TABLE OF CONTENTS**

I.     INTRODUCTION OF ISSUES TO BE DECIDED ........................................................ 2

II.    PROCEDURAL HISTORY ........................................................................................... 4

    A.    The *Miller* Action. ......................................................................................... 4

    B.    The *Allen* Action. .......................................................................................... 5

    C.    Settlement Negotiations. ................................................................................. 5

    D.    Settlement Benefits. ........................................................................................ 6

III.   THE COURT SHOULD APPROVE THE SETTLEMENT. ...................................... 6

    A.    Legal Framework. ........................................................................................... 6

    B.    The Settlement Is Fair, Adequate, and Reasonable. ....................................... 7

        1.    Procedural concerns. .......................................................................... 7

        a)    Adequate representation of the Class. .................................... 8

        b)    Arm's length negotiations. ...................................................... 8

        2.    Substantive Issues. ............................................................................. 9

        a)    Class recovery and risks of continued litigation. (Rule 23(e)(2)(C)(i) and District Guidelines ¶ 1(c)) ................... 9

        b)    Effectiveness of distribution method; cy pres. (Rule 23(e)(2)(C)(ii) and District Guidelines ¶¶ 1(f), 1(g), 8) ... 13

        c)    Supplemental agreements. (Rule 23(e)(2)(C)(iv)) ................. 14

        d)    Allocation plan and equitable treatment of settlement class members. (Rule 23(e)(2)(D) and District Guidelines ¶ 1(e)) ................ 14

        3.    Differences between the Actions and the Settlement. (District Guidelines ¶ 1(a), 1(b)) .................................................... 15

        4.    Comparable class settlements. (District Guidelines ¶ 11) .............. 17

        5.    Relationship to other cases. (District Guidelines ¶ 1(d)) .............. 17

IV.    THE COURT SHOULD CERTIFY THE SETTLEMENT-NOTICE CLASS ........ 17

V.     THE PROPOSED NOTICE PLAN SHOULD BE APPROVED. (District Guidelines ¶¶ 3-5, 9-10) ..................................................................................... 19

VI.    THE COURT SHOULD APPROVE THE SETTLEMENT ADMINISTRATOR. (District Guidelines ¶ 2) ..................................................................................... 21

VII.   THE COURT SHOULD AWARD ATTORNEYS' FEES AND COSTS. (Rule 23(e)(2)(C)(iii) and District Guidelines ¶ 6) ........................................................ 21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

A.    Class Counsel's Requested Fee Is a Reasonable Percentage of the Total Benefit Made Available to the Class. ....................................21

B.    As a Cross-Check, Class Counsel's Requested Fee Is Also Reasonable When Using the Lodestar Approach. ....................................23

C.    Class Counsel Requests an Award of Its Expenses. ...........................28

VIII.  THE COURT SHOULD APPROVE INCENTIVE AWARDS. (District Guidelines ¶ 7) ...............................................................28

IX.   THE COURT SHOULD SET A FINAL APPROVAL SCHEDULE (District Guidelines ¶ 9) ...............................................................29

X.    CONCLUSION ..............................................................................30

1

## <u>TABLE OF AUTHORITIES</u>

2

### CASES

3
*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ...................................................... 19

*Baird v. Blackrock Institutional Tr. Co., N.A.*, No. 17-cv-01892-HSG, 2021 U.S.
4     Dist. LEXIS 244487 (N.D. Cal. July 12, 2021) ....................................................... 14

5
*Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ........................... 21

*Bolton v. U.S. Nursing Corp.*, No. 12-cv-4466-LB, U.S. Dist. LEXIS 150299
6     (N.D. Cal. Oct. 18, 2013 ......................................................................................... 23

7
*Cazares v. Saenz*, 256 Cal. Rptr. 209 (Cal. Ct. App. 1989) ............................................ 27

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1269 (9th Cir. 1992) ................................. 7
8

*Cunha v. Chico Produce*, No. 17-cv-00597-JST, 2021 U.S. Dist. LEXIS 148406
9     (N.D. Cal. Feb. 16, 2021) ........................................................................................ 28

*Curtis-Bauer v. Morgan Stanley & Co., Inc* No. 06-cv-3903-TEH, 2008 U.S. Dist.
10    LEXIS 85028 (N.D. Cal. Oct. 22, 2008) ................................................................. 13

11
*Davis v. Yelp, Inc.*, No. 18-cv-00400-EMC, 2022 U.S. Dist. LEXIS 131628
      (N.D. Cal. July 25, 2022) ........................................................................................ 12
12
*Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326 (N.D. Cal. 2014) ............................... 27
13
*Edenborough v. ADT, LLC*, No. 16-cv-02233-JST, 2017 U.S. Dist. LEXIS
14    170896 (N.D. Cal. Oct. 16, 2017) ............................................................................ 9

*Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15 (N.D. Cal. 1980) ................................ 10
15
*Farrell v. Bank of Am. Corp., N.A.*, 827 F. App'x 628 (9th Cir. 2020) .......................... 23
16
*Flores v. TFI Int'l, Inc.*, No. 12-cv-05790-JST, 2019 U.S. Dist. LEXIS 65754
      (N.D. Cal. Apr. 17, 2019) ........................................................................................ 14
17
*Garner v. State Farm. Mut. Auto. Ins. Co.*, No. 08-cv-01365, 2010 U.S. Dist.
18    LEXIS 49477 (N.D. Cal. Apr. 22, 2010) ................................................................. 10

*Glob. Indus. Inv. Ltd. v. 1955 Capital Fund I GP LLC*, No. 21-cv-08924-HSG,
19    2023 U.S. Dist. LEXIS 173343 (N.D. Cal. Sep. 27, 2023) ..................................... 26

20
*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .............................................. 7

*Harris v. Marhoefer*, 24 F.3d 16 (9th Cir. 1994) ........................................................... 28
21
*Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 U.S. Dist. LEXIS
      213045 (N.D. Cal. Dec. 17, 2018) ............................................................................ 7
22
*Hesse v. Sprint Corp.*, 598 F.3d 581 (9th Cir. 2010) ..................................................... 16
23
*Hessefort v. Super Micro Comput., Inc.*, No. 18-cv-00838-JST, 2023 U.S. Dist.
      LEXIS 198353 (N.D. Cal. May 5, 2023) ................................................................. 26
24
*In re Activision Sec. Litig.*, 723 F.Supp. 1373 (N.D. Cal. 1989) .................................. 23
25
*In re Animation Workers Antitrust Litig.*, No. 14-cv-4062-LHK, 2016 U.S.
      Dist. LEXIS 156720 (N.D. Cal. Nov. 11, 2016) ..................................................... 26
26
*In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299 (N.D. Cal. 2018) ..................... 16

27
*In re Macbook Keyboard Litig.*, No. 5:18-cv-02813-EJD, 2022 U.S. Dist. LEXIS
      214066 (N.D. Cal. Nov. 28, 2022) ........................................................................... 12
28
*In re MacBook Keyboard Litig.*, No. 5:18-cv-02813-EJD, 2023 U.S. Dist. LEXIS
      92063 (N.D. Cal. May 25, 2023) ................................................................. 21, 22, 28

*In re MyFord Touch Consumer Litig.*, No. 13-cv-03072-EMC, 2019 U.S. Dist.
  LEXIS 53356 (N.D. Cal. Mar. 28, 2019).................................................................. 13

*In re Netflix Privacy Litig.*, No. 5:11-CV-00379 EJD, 2013 U.S. Dist. LEXIS
  37286 (N.D. Cal. Mar. 18, 2013)............................................................................ 10

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
  No. 2672 CRB (JSC), 2017 U.S. Dist. LEXIS 39115, 2017 WL 1047834
  (N.D. Cal. Mar. 17, 2017)....................................................................................... 26

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291 (9th Cir. 1994).................. 26, 27

*Kang v. Wells Fargo Bank, N.A.*, No. 17-cv-06220-BLF, 2021 U.S. Dist. LEXIS
  235254 (N.D. Cal. Dec. 8, 2021)............................................................................ 10

*Kelly v. Wengler*, 822 F.3d 1085 (9th Cir. 2016)........................................................ 24

*Ketchum v. Moses*, 17 P.3d 735 (Cal. 2001) ............................................................. 27

*Klem v. Wash. Mut. Bank*, 176 Wash. 2d 771 (2013) ................................................. 18

*Laffitte v. Robert Half Internat'l Inc.*, 376 P.3d 672 (Cal. 2016) ........................................ 24, 27

*Lealao v. Beneficial Cal., Inc.*, 97 Cal. Rptr. 2d 797 (Cal. Ct. App. 2000) ............................. 24

*Martin v. Toyota Motor Credit Corp.*, No. 2:20-cv-10518 JVS (MRW), 2022 U.S.
  Dist. LEXIS 208358 (C.D. Cal. Nov. 15, 2022)........................................................ 28

*Massey v. Star Nursing, Inc.*, No. 21-cv-01482-EJD, 2023 U.S. Dist. LEXIS
  30679 (N.D. Cal. Feb. 23, 2023)........................................................................ 28, 29

*May v. Honeywell Int'l, Inc.*, 331 F. App'x 526 (9th Cir. 2009) ........................................ 18

*McMorrow v. Mondelez Int'l, Inc.*, No. 17-cv-02327-BAS-JLB, 2022 U.S. Dist.
  LEXIS 66016 (S.D. Cal. Apr. 8, 2022)................................................................ 17, 18

*Miguel-Sanchez v. Mesa Packing, LLC*, No. 20-cv-00823-VKD, 2021 U.S. Dist.
  LEXIS 202330 (N.D. Cal. Oct. 20, 2021) ................................................................ 28

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523
  (C.D. Cal. 2004)...................................................................................................... 8

*Nevarez v. Forty Niners Football Co., LLC*, 474 F. Supp. 3d 1041
  (N.D. Cal. 2020)...................................................................................................... 29

*O'Connor v. Uber Techs., Inc.*, No. 13-cv-03826-EMC, 2019 U.S. Dist. LEXIS
  54608 (N.D. Cal. Mar. 29, 2019)............................................................................ 15

*Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010) ............................................. 24

*Rodman v. Safeway Inc.*, No. 11-cv-03003-JST, 2018 U.S. Dist. LEXIS 143867
  (N.D. Cal. Aug. 22, 2018)....................................................................................... 26

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 9448 (9th Cir. 2009) ................................. 8

*Satchell v. Fed. Express Corp.*, No. C03-2659 SI, 2007 U.S. Dist. LEXIS 99066
  (N.D. Cal. Apr. 13, 2007) ......................................................................................... 9

*Sypherd v. Lazy Dog Rests., LLC*, No. 5:20-cv-00921-FLA (KKx), 2023 U.S.
  Dist. LEXIS 23257 (C.D. Cal. Feb. 10, 2023)......................................................... 22

*Ten Bridges, LLC v. Midas Mulligan, LLC*, No. 19-cv-1237-JLR, 2021 U.S. Dist.
  LEXIS 193335 (W.D. Wash. Oct. 6, 2021)............................................................. 12

*United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403 (9th Cir. 1990)................. 26

*Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482 (E.D. Cal. 2010)................................ 21

*Vianu v. AT&T Mobility LLC*, No. 19-cv-03602-LB, 2022 U.S. Dist. LEXIS 203520 (N.D. Cal. Nov. 8, 2022) ............................................................ 13

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) .............................. 22, 24

**STATUTES, RULES, REGULATIONS**

28 U.S.C. § 1715 ............................................................................................ 20

Cal. Bus. & Prof. Code §§ 17200 *et seq.* ............................................................ 4

Cal. Bus. & Prof. Code §§ 17500 *et seq.* ............................................................ 4

RCW 19.86.010 ............................................................................................... 5

**SECONDARY SOURCES**

5 *Moore's Federal Practice* § 23.85[2][e] (3d ed.) ............................................... 8

*Manual for Complex Litigation (Fourth)* § 21.633 (2004) ................................ 19

*Manual for Complex Litigation (Third)* § 30.42 (1995) ..................................... 8

Theodore Eisenberg & Geoffrey P. Miller, Incentive Awards to Class Action Plaintiffs: An Empirical Study, 53 UCLA L. Rev. 1303 (2006) ......................... 29

**RULES**

Fed. R. Civ. P. 23 ................................................................................... 2, 3, 6, 7

Fed. R. Civ. P. 23(e)(2) .................................................................................... 7

Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment ............. 7, 9

Fed. R. Civ. P. 23(e)(2)(A) ............................................................................... 7

Fed. R. Civ. P. 23(e)(2)(B) ............................................................................... 7

Fed. R. Civ. P. 23(e)(2)(C) ............................................................................... 9

Fed. R. Civ. P. 23(e)(2)(C)(ii) ......................................................................... 13

Fed. R. Civ. P. 23(e)(2)(D) ............................................................................... 9

Fed. R. Civ. P. 23(e)(3) ................................................................................... 14

## NOTICE OF MOTION

**PLEASE TAKE NOTICE THAT** on February 27, 2024, or as soon thereafter as the matter may be heard by the Honorable Trina L. Thompson of the United States District Court for the Northern District of California, located in Courtroom 9 at 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiffs Tamika Miller, Julianne Chuanroong, and Stephanie Allen, by and through their undersigned counsel of record, will and hereby do move, for entry of an order (incorporating defined terms from the Settlement Agreement filed herewith as Exhibit 1 to the Declaration of Seth Safier):

(1)    granting preliminary approval to the Settlement;

(2)    certifying, for purposes of the Settlement, a class of Settlement-Notice Class Members,[1] defined, in substantial part, as: "all Persons, except Excluded Persons,[2] who purchased at least one Qualifying Travel Guard Plan[3] from December 17, 2017, through and including January 18, 2024;"

(3)    approving and ordering the implementation of the Notice Plan set forth in the accompanying Declaration of Steven Weisbrot; and

---

[1]    The "Settlement-Notice Class" is the proposed class subject to the Settlement and includes everyone entitled to notice of the Settlement upon preliminary approval. Safier Decl. Ex. 1 ("Agmt.") ¶¶ 2.38, 2.57. The ultimate "Settlement Class" will simply be the Settlement-Notice Class Members minus those persons who validly opt out from the Settlement. *Id.* ¶ 2.55. After final approval, the Settlement Class Members (together with those who may claim on their behalf) will be bound by the release of Released Claims. *Id.* ¶¶ 2.51, 13.2.

[2]    Excluded Persons are (a) each and every presiding District Judge and Magistrate Judge in the Actions, Judge Gandhi (Ret.), Robert A. Meyer, and their staff, and their immediate family members; (b) the officers, directors, agents, servants, and current and former employees of Defendants who were employed by Defendants at any time on or after the start of the Class Period, and the immediate family members of such Persons; and (c) any Person who received a complete refund for each and every Qualifying Travel Guard Plan purchased by that Person. *Id.* ¶ 2.27.

[3]    "Travel Guard Plans" are the travel insurance plans sold by Defendants. *Id.* ¶ 2.63. A "Qualifying Travel Guard Plan" is a Travel Guard Plan covered by the Settlement ("purchased during the Class Period by a Person who, for that purchase, was charged a single plan price that included Assistance Fees and who provided a billing address in the State of California or the State of Washington, or, where no billing address is identified in Travel Guard's records, the Travel Guard Plan identified the insured as having a California or Washington address"). *Id.* ¶ 2.47.

(4)    entering deadlines for submission of claims, exclusion requests, objections, reports, and replies related to the Settlement and setting a date for a Final Approval Hearing.

A copy of Plaintiffs' [Proposed] Order Granting Preliminary Approval of Class Action Settlement is submitted herewith.

**PLEASE ALSO TAKE NOTICE** that, after expiration of the time for Settlement-Notice Class Members to opt out or object, and upon the occurrence of the Final Approval Hearing, Plaintiffs request entry of a further order:

(1)    granting final approval to the Settlement and entering judgment thereon;

(2)    requiring the Settlement Administrator to pay all Valid Claims made by Authorized Claimants as set forth in the Settlement Agreement;

(3)    awarding an Incentive Award in the amount of $5,000 to each Plaintiff; and

(4)    awarding Attorneys' Fees and Expenses to Class Counsel.

This Motion is based on Federal Rule of Civil Procedure 23, this Notice of Motion, the supporting Memorandum of Points and Authorities, the Declarations of Seth Safier and Steven Weisbrot, and the pleadings and papers on file in this action, and any other matter of which this Court may take notice.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION OF ISSUES TO BE DECIDED

After extensive discovery, class certification, and multiple mediation sessions, Defendants agreed to settle Plaintiffs' claims in this case, as well as the claims in a similar case pending in the Western District of Washington,[4] by (1) paying $23,997,500 into a common fund for the benefit of Settlement-Notice Class Members, and (2) agreeing to clearly inform all purchasers of Travel Guard Plans in the future that the price for a Travel Guard Plan includes the travel insurance premium and an additional fee for non-insurance travel assistance services ("Assistance Fee"). This Settlement provides substantial benefits to the California and Washington consumers who purchased travel insurance from Defendants during the Class Period

---

[4]    *Allen v. Travel Guard Group, Inc. et al.*, No. 3:22-cv-06005 (W.D. Wa.).

(who are still unaware that they were charged more than the approved rates for Defendants' travel insurance), and to the many more millions of consumers nationwide who will purchase travel insurance from Defendants in the future, who will now be in a better position to decide whether to pay Assistance Fees.

Plaintiffs and Class Counsel believe the claims in the Actions are meritorious, but they also recognize the expense, effort, and time that it would take to prosecute the Actions against Defendants through trial and any subsequent appeals, and that continued litigation carries considerable risk of a lesser recovery or none at all. The Settlement Amount represents between ▆ and ▆ of the amount the Settlement-Notice Class Members could potentially recover at trial (depending on the resolution of expert disputes about calculations). In light of the risks of continued litigation, the Settlement is an excellent result for Settlement-Notice Class Members.

The Settlement was negotiated at arm's-length by experienced attorneys familiar with the legal and factual issues of this case; it treats all Settlement-Notice Class Members fairly; and it provides Settlement-Notice Class Members with the opportunity for a certain and substantial recovery. The Settlement meets all the criteria for approval under Rule 23 of the Federal Rules of Civil Procedure and the Northern District's Procedural Guidance for Class Action Settlement ("District Guidelines"). Accordingly, the Court should enter the proposed Order Granting Preliminary Approval.

In connection with the Settlement, Plaintiffs and Class Counsel seek approval of an award of Attorneys' Fees equal to 30% of the Settlement Amount, actual costs incurred, and an Incentive Award of $5,000 for each Class Representative.[5]

---

[5] The Settlement would also provide payments (equal to the lowest Incentive Award approved for a Plaintiff) to two Proposed Intervenors who requested to intervene in the *Miller* Action to protect the interests of California purchasers of Travel Guard Plans and who produced documents and appeared for depositions in the *Miller* Action. Agmt. ¶ 11.6; Safier Decl. ¶¶ 16-17.

II.    **PROCEDURAL HISTORY**

   A.    The *Miller* Action.

   On December 17, 2021, Plaintiffs Miller and Chuanroong ("California Plaintiffs") filed this action (the "*Miller* Action"). ECF No. 1. California Plaintiffs allege that Defendants advertise and sell Travel Guard Plans for a total price that includes both (1) an insurance premium (reviewed and approved by an insurance regulator) and (2) an Assistance Fee (set at Defendants' discretion and automatically added to the regulated insurance premium). *Id.* The California Plaintiffs further allege that it was unlawful, unfair, and/or deceptive for Defendants to automatically include Assistance Fees in the plan price for the Travel Guard Plans. California Plaintiffs asserted three claims on behalf of themselves, those similarly situated, and the general public for violations of California's (a) Unfair Competition Law (the "UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*; and (b) False Advertising Law (the "FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq.*; and for (c) common law fraud. *Id.*

   On July 13, 2022, this Court denied Defendants' motion to dismiss California Plaintiffs' claims but granted, in part, Defendants' motion to compel arbitration of Plaintiff Miller's claims. ECF No. 46. Following that decision, California Plaintiffs conducted extensive discovery, served over 180 written discovery requests, secured production of hundreds of thousands of pages of documents, obtained important information pursuant to interrogatories and stipulations, conducted six depositions of Travel Guard employees, consulted with experts, deposed Defendants' three experts, responded to Defendants' discovery requests, appeared for depositions, defended expert depositions, and prevailed on multiple discovery disputes. Safier Decl. ¶¶ 12-18. Plaintiff Miller also prevailed in arbitration on the grounds that her claims were not arbitrable, and had that award confirmed by the Court. *Id.* ¶¶ 9-11. Recently, California Plaintiffs obtained class certification of their UCL claims (based on the unlawfulness and unfairness theories), filed a motion for partial summary judgment, and were preparing an opposition to Defendants' motion for summary judgment at the time of the Settlement. *Id.* ¶¶ 19-24. In addition, the Proposed Intervenors moved to intervene as additional class representatives in connection with the California's Plaintiffs' motion for class certification, and they produced

documents and appeared for depositions. *Id.* ¶¶ 16-17, 19. The Proposed Intervenors withdrew their request to intervene after the Court granted class certification. *Id.* ¶ 21. Defendants also filed an appeal to the Ninth Circuit Court of Appeals, which the California Plaintiffs prepared to oppose. *Id.* ¶ 11.

## B.    The *Allen* Action.

On December 23, 2022, Allen filed a class action complaint in the Western District of Washington against Defendants, entitled *Allen v. Travel Guard Group, Inc. et al.*, No. 3:22-cv-06005. *Id.* ¶ 25. In the *Allen* Action, Plaintiff Allen alleges that Defendants violate Washington law by unlawfully, unfairly, and/or deceptively requiring consumers to pay a fee for "non-insurance assistance services" on top of the authorized insurance premium to obtain the insurance they seek with each Travel Guard Plan. *Id.* In the *Allen* Action, Plaintiff Allen asserted two claims on behalf of herself, those similarly situated, and the general public: (a) for violation of Washington's Consumer Protection Act (the "CPA"), RCW 19.86.010 *et seq.*; and (b) for breach of Defendants' duty of good faith in insurance matters. *Id.* Defendants moved to compel arbitration of Allen's claims but that motion was denied. *Id.* ¶ 26; *Allen v. Travel Guard Grp. Inc.*, No. C22-6005 BHS, 2023 U.S. Dist. LEXIS 127183, at *17 (W.D. Wash. July 24, 2023). Defendants appealed that decision, and that appeal stayed district court proceedings in the *Allen* Action pending issuance of the mandate. Safier Decl. ¶ 27. After being informed of this Settlement, the Ninth Circuit administratively closed Defendants' appeal in *Allen* pending approval of the Settlement. *Id.*

Plaintiffs filed an Amended Complaint to add the plaintiff and claims from the *Allen* Action into this action (thereby creating a Consolidated Action) for settlement purposes only.

## C.    Settlement Negotiations.

The Parties also engaged in lengthy settlement discussions before reaching this Settlement. On February 27, 2023, the Parties attended an in-person mediation with Robert A. Meyer of JAMS. Safier Decl. ¶ 30. On July 28, 2023, the parties participated in a mediation by video conference with Hon. Jay C. Gandhi (Ret.) of JAMS. *Id.* A framework and certain of the material terms were reached after a further mediation effort, over multiple days in December

2023, with Mr. Meyer. *Id.* The Parties accepted Mr. Meyer's mediator's proposal on December 7, 2023. *Id.*

### D.     Settlement Benefits.

Defendants have agreed to establish a $23,997,500 settlement fund to provide monetary relief to Settlement Class Members and to pay Attorneys' Fees and Expenses, Incentive Awards, equivalent payments to the Proposed Intervenors, Notice and Administration Expenses, and Taxes and Tax Expenses. Agmt. ¶¶ 2.35, 2.54, 2.56, 6.1, 8.1-8.3. Settlement Class Members may file a simple Claim Form to obtain a Cash Payment. *Id.* ¶¶ 2.14, 7.3-7.6; Weisbrot Decl. ¶¶ 35-36. It can be completed quickly online or downloaded and submitted by mail, and will not require Settlement Class Members to provide any purchase details, as Defendants already have records of the purchases at issue. Weisbrot Decl. ¶¶ 35-36 & Ex. B; Agmt. ¶ 4.4.

The Net Settlement Fund will be allocated as Cash Payments to Authorized Claimants in proportion to the Assistance Fees they paid. Agmt. ¶ 6.1. Given typical claims rates (Weisbrot Decl. ¶ 44), it is possible that each Authorized Claimant will receive a Cash Payment that exceeds the Assistance Fees paid by that Authorized Claimant. Safier Decl. ¶ 44. Any funds remaining after the initial distribution of Cash Payments to Authorized Claimants, payment of Attorneys' Fees and Expenses, Incentive Awards, payments to Proposed Intervenors, Notice and Administration Expenses, and Taxes and Tax Expenses, will not revert to Defendants but will be paid to Authorized Claimants in a supplemental redistribution or donated *cy pres* to Travelers Aid International. Agmt. ¶ 8.3.

Defendants have also agreed to provide enhanced disclosures to all purchasers of Travel Guard Plans in the future, by informing consumers that the price for a Travel Guard Plan includes the travel insurance premium and an additional fee for non-insurance travel assistance services. Agmt. ¶¶ 9.1-9.3.

### III.     THE COURT SHOULD APPROVE THE SETTLEMENT.

### A.     Legal Framework.

Rule 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026

(9th Cir. 1998). Under Ninth Circuit precedent, the district court must balance a number of factors including:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Id.* Recent amendments to Rule 23 similarly require the district court to consider whether:

(A)   the class representatives and class counsel have adequately represented the class;

(B)   the proposal was negotiated at arm's length;

(C)   the relief provided for the class is adequate, taking into account:

(i)   the costs, risks, and delay of trial and appeal;

(ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)   the terms of any proposed award of attorney's fees, including timing of payment; and

(iv)   any agreement required to be identified under Rule 23(e)(3); and

(D)   the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The Court should apply "the framework set forth in Rule 23, while continuing to draw guidance from the Ninth Circuit's factors and relevant precedent." *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 U.S. Dist. LEXIS 213045, at *13-14 (N.D. Cal. Dec. 17, 2018). The Ninth Circuit has held that strong judicial policy favors the settlement of class actions. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1269, 1276 (9th Cir. 1992).

**B.     The Settlement Is Fair, Adequate, and Reasonable.**

**1.     Procedural concerns.**

The Court must consider whether "the class representatives and class counsel have adequately represented the class" and whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(A)-(B)). As the Advisory Committee notes suggest, these are "matters that might be described as 'procedural' concerns, looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment. These concerns implicate factors such as the non-

collusive nature of the negotiations, as well as the extent of discovery completed and stage of the proceedings. *See Hanlon*, 150 F.3d at 1026-27.

### a)    Adequate representation of the Class.

Consistent with the Court's previous determination of adequacy in certifying a class in the *Miller* Action, the Plaintiffs have no conflicts of interest with Settlement-Notice Class Members and have invested significant time and resources to the Actions. Safier Decl. ¶¶ 16-17, 70. Plaintiffs' counsel has successfully represented numerous certified classes, involving a variety of claims, in state and federal courts throughout the country, and has effectively represented the Settlement-Notice Class's interests in the Actions. *Id.* ¶¶ 2-33 & Ex. 2.

### b)    Arm's length negotiations.

In approving a class action settlement, the Ninth Circuit "put[s] a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). Class settlements are presumed fair when they are reached "following sufficient discovery and genuine arms-length negotiation," both of which occurred here. *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("*DIRECTV*"); 4 Newberg at § 11.24. "The extent of discovery [also] may be relevant in determining the adequacy of the parties' knowledge of the case." *DIRECTV*, 221 F.R.D. at 527 (quoting *Manual for Complex Litigation (Third)* § 30.42 (1995)). "A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." *DIRECTV*, 221 F.R.D. at 527 (quoting 5 *Moore's Federal Practice* § 23.85[2][e] (3d ed.)).

Before agreeing to the Settlement, the Parties vigorously litigated their positions in the Actions and conducted a thorough investigation of the facts and law relating to the matters in the Actions. Safier Decl. ¶¶ 2-35, 37-39. The Parties argued over fifteen motions and conducted extensive factual and expert discovery, with much of the discovery and rulings elicited in the *Miller* Action providing information as to the strengths and weaknesses of the claims and defenses in both Actions. *Id.*

Further, the Parties negotiated the proposed settlement in good faith over multiple sessions with two independent, experienced mediators, Robert Meyer and Judge Jay C. Gandhi (Ret.). Safier Decl. ¶ 30. "The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Satchell v. Fed. Express Corp.*, No. C03-2659 SI, 2007 U.S. Dist. LEXIS 99066, at *17 (N.D. Cal. Apr. 13, 2007); *see also Edenborough v. ADT, LLC*, No. 16-cv-02233-JST, 2017 U.S. Dist. LEXIS 170896, at *25 (N.D. Cal. Oct. 16, 2017) (settlement was non-collusive where it followed considerable discovery and two separate days of mediation before an experienced mediator).

### 2. Substantive Issues.

Rule 23(e)(2)(C) and (D) set forth factors for conducting "a 'substantive' review of the terms of the proposed settlement." Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment.. In determining whether "the relief provided for the class is adequate," the Court must consider "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). In addition, the Court must consider whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Plaintiffs also must identify and explain any differences between the class proposed in the complaint and the Settlement Class and between the claims in the complaint and the Released Claims, and discuss the effect of the Settlement on the *Allen* Action. District Guidelines ¶ 1(a), (b), (d).[6]

### a) Class recovery and risks of continued litigation. (Rule 23(e)(2)(C)(i) and District Guidelines ¶ 1(c))

In determining the likelihood of a plaintiff's success on the merits of a class action, "the district court's determination is nothing more than an amalgam of delicate balancing, gross

---

[6] Other sections of the District Guidelines overlap with the provisions of Rule 23(e). For the Court's reference, relevant District Guidelines sections are identified in the headings herein.

1  approximations and rough justice." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615,

2  625 (9th Cir. 1982) (internal quotation marks and citation omitted). The court may "presume that

3  through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of

4  settlement by considering Plaintiff's likelihood of recovery." *Garner v. State Farm. Mut. Auto.*

5  *Ins. Co.*, No. 08-cv-01365, 2010 U.S. Dist. LEXIS 49477, at *24 (N.D. Cal. Apr. 22, 2010).

6  Here, the Settlement was reached after hard-fought negotiations by counsel with extensive

7  experience in consumer class action litigation. *See* Safier Decl. ¶¶ 30-35, 37-38, & Ex. 2 (firm

8  resume); *Kang v. Wells Fargo Bank, N.A.*, No. 17-cv-06220-BLF, 2021 U.S. Dist. LEXIS

9  235254, at *44 (N.D. Cal. Dec. 8, 2021) ("[T]he fact that experienced counsel involved in the

10  case approved the settlement after hard-fought negotiations is entitled to considerable weight.")

11  (quoting *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) ).

12          Plaintiffs' counsel was thoroughly familiar with the applicable facts, legal theories, and

13  defenses on both sides. Safier Decl. ¶¶ 2-39. Although Plaintiffs and their counsel had confidence

14  in Plaintiffs' claims, a favorable outcome was not assured. Safier Decl. ¶¶ 37-38. Defendants

15  vigorously deny Plaintiffs' allegations and theories, have moved to partially decertify the

16  previously certified class in this Action,[7] have moved for summary judgment, and have already

17  filed two appeals. *Id.* ¶¶ 7-11, 23-24, 26-27. If litigation were to continue, there is no assurance

18  that the Plaintiffs would prevail, or, even if they did, that they would be able to obtain an award

19  of restitution significantly more than achieved here.

20          For example, Defendants argue that their assistance services provide valuable benefits to

21  consumers distinct from, but appropriately bundled with, travel insurance, and that the

22  Assistance Fees are not a sham, an agent's fee, or insurance premium (as Plaintiffs allege). ECF

23  No. 4-8, 16-25. Defendants further argue that California and Washington regulators are well

24  aware of Defendants' practice of bundling insurance and assistance services into a single product,

25  have approved the forms and filings by which Defendants do so, and have taken no regulatory

26

27  [7]   *See In re Netflix Privacy Litig.*, No. 5:11-CV-00379 EJD, 2013 U.S. Dist. LEXIS 37286, at
    *15-16 (N.D. Cal. Mar. 18, 2013) ("The notion that a district court could decertify a class at any

28  time is one that weighs in favor of settlement.") (internal citation omitted).

or legislative action indicating disapproval of such practices, while many states expressly approve the practice. *Id.* at 9-10, 18-19. Defendants argue that the Regulatory Settlement Agreement they entered with California, Washington, and other state insurance departments conclusively establishes that their practices are lawful and fair. *Id.* at 10-11, 19. And Defendants further argue that they are entitled to dismissal of or summary judgment in their favor on Plaintiffs' claims under the doctrine of equitable abstention or the primary jurisdiction doctrine, given the role and function of the state insurance departments in this area. *Id.* at 13-16. The outcome of these disputes is uncertain because there are few direct precedents on Plaintiffs' theories that the charges should be deemed unlawful agent's fees or an unfair practice in the transaction of insurance, under either California or Washington law. Finally, Defendants argue that a substantial portion of the Settlement-Notice Class must resolve their claims through arbitration. Plaintiffs could have lost this issue too, and a portion of the Settlement-Notice Class may not have been entitled to any recovery.

Even assuming Plaintiffs established Defendants' liability, the range of potential recovery at trial is sharply disputed. Defendants maintain that Plaintiffs do not have a viable restitution model, that any restitution must account for the value of Travel Guard's assistance services, and that even if the Court were to conduct the type of restitution analysis suggested by Plaintiffs' expert, Settlement-Notice Class Members would be entitled to little or *no* restitution. *See* ECF No. 167-5 ("Hitt Rep.") ¶¶ 2-14 (unredacted version filed under seal at ECF No. 158-8). ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████[8] Safier

---

[8] An award of treble damages under the Washington CPA, while possible, is not likely if: (1) the damages already provide full financial redress (here, Plaintiff Allen seeks full financial redress); (2) the enhanced damages would not encourage additional WCPA actions (here, a class action would resolve claims for all relevant Washington purchasers); and (3) an award of treble damages would not advance the goals of deterrence and punishment (a disputed matter here). *See*

Decl. ¶ 39. However, Defendants maintain that a full refund of Assistance Fees is not permissible under the law, and the Court agreed, at least with respect to California Plaintiffs' fraud theories. ECF No. 124 at 7-8. Plaintiffs' alternative restitution method (using one of Plaintiff Chuanroong's purchases as an example calculation) indicates that approximately ███████ of the Assistance Fees should be returned as restitution to Settlement-Notice Class Members. *See* ECF No. 167-4 ("Fanoe Rep.") ¶ 59 (unredacted version filed under seal at ECF No. 158-7). Defendants' expert maintains that Plaintiffs' alternative restitution model is fundamentally flawed and does not support any restitution award or, at best, must be corrected in a way that results in an ██████ reduction of Plaintiffs' restitution calculation (that is, Settlement-Notice Class Members should get, at most, a refund of about ████ of the Assistance Fees paid, even if the Court finds the alternative method valid). *See* Hitt Rep. ¶ 6 & Ex. 1.

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
█████████████████████████████████████ Most likely, the Settlement Amount is actually somewhere between ████ and ████ of the potential recovery. In any scenario, this is an excellent result given the risks of continued litigation, and it well exceeds results approved in other cases in this District. *See, e.g., In re Macbook Keyboard Litig.*, No. 5:18-cv-02813-EJD, 2022 U.S. Dist. LEXIS 214066, at *13-14 (N.D. Cal. Nov. 28, 2022) (finding a settlement representing approximately 9% to 28% of the total estimated damages "falls within the typical range of recovery in class action settlements"); *Davis v. Yelp, Inc.*, No. 18-cv-00400-EMC, 2022 U.S. Dist. LEXIS 131628, at *7 (N.D. Cal. July 25, 2022) (approving a $22.25 million proposed settlement that was 12.4% of maximum damages under plaintiff's estimate and 44.5% of maximum damages under defendants' estimate); *In re MyFord Touch Consumer Litig.*, No. 13-cv-03072-EMC, 2019 U.S. Dist. LEXIS 53356, at *31-32 (N.D. Cal.

---

*Ten Bridges, LLC v. Midas Mulligan, LLC*, No. 19-cv-1237-JLR, 2021 U.S. Dist. LEXIS 193335, at *16 (W.D. Wash. Oct. 6, 2021) (denying a request for treble damages).

Mar. 28, 2019) (approving settlement representing approximately 6% of maximum recovery). Moreover, as a result of the Settlement, Authorized Claimants may receive a multiple of the Assistance Fees they each paid. These substantial per-claimant benefits strongly support the reasonableness of the Settlement. *See Vianu v. AT&T Mobility LLC*, No. 19-cv-03602-LB, 2022 U.S. Dist. LEXIS 203520, at *15 (N.D. Cal. Nov. 8, 2022) (finding a common fund settlement provided "good value" where valid claimants received about eight or nine percent of the average total fees charged to their accounts over the class period).

In sum, the proposed Settlement provides the Settlement-Notice Class with an outstanding opportunity to obtain significant relief at this stage in the litigation, while abrogating the risks that might prevent the Class from obtaining any relief. *See Curtis-Bauer v. Morgan Stanley & Co., Inc.*, No. 06-cv-3903-TEH, 2008 U.S. Dist. LEXIS 85028, at *13 (N.D. Cal. Oct. 22, 2008) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class.").

> **b)** **Effectiveness of distribution method; cy pres. (Rule 23(e)(2)(C)(ii) and District Guidelines ¶¶ 1(f), 1(g), 8)**

The Court must consider "the effectiveness of [the] proposed method of distributing relief to the class." Fed. R. Civ. P. 23(e)(2)(C)(ii). Settlement-Notice Class Members who seek a Cash Payment need only submit a relatively simple Claim Form, with their basic personal information, an election of payment method, information to allow for payment by that election, and a certification of the information included on the Claim Form. Weisbrot Decl. ¶¶ 35-36 & Ex. B; Agmt. ¶¶ 7.5, 7.6. It can be completed quickly online or downloaded and submitted by mail. Weisbrot Decl. ¶¶ 35-36. Payments will be made either electronically or by check and mailed at the Class Member's election. Settlement ¶¶ 6.2, 7.6. This procedure is claimant-friendly, efficient, cost-effective, proportional and reasonable. Pursuant to District Guidelines ¶1(f), Class Counsel estimate, based on their experiences with recent settlements in other cases and the input of the Settlement Administrator, that approximately 3-5% of Class Members will submit a Claim Form. Safier Decl. ¶ 74; Weisbrot Decl. ¶ 44.

Pursuant to District Guidelines ¶ 1(g), Plaintiffs note that no portion of the Settlement Amount will revert to any Defendant, except if the Settlement is terminated pursuant to Paragraphs 14.2 and/or 14.3 of the Agreement. After distributions of Cash Payments, Notice and Administration Expenses, Taxes and Tax Expenses, Awarded Attorneys' Fees and Expenses, and Incentive Awards, any money that remains in the Net Settlement Fund shall be redistributed equally among Authorized Claimants who received Cash Payments, or else donated to a *cy pres* recipient, Travelers Aid International, consistent with District Guidelines ¶ 8. Agmt. ¶ 8.3.

Travelers Aid International works "to ensure that people in transit receive assistance when and where it is needed in communities and travel hubs." *See* https://www.travelersaid.org/about-us/. An award to this cy pres recipient, if one results from the Settlement, would be guided by "(1) the objectives of the underlying statute(s) and (2) the interests of the silent class members," and would not benefit a group too remote from the Class. *See Flores v. TFI Int'l, Inc.*, No. 12-cv-05790-JST, 2019 U.S. Dist. LEXIS 65754, at *24-25 (N.D. Cal. Apr. 17, 2019) (internal quotation marks and citation omitted).

### c) Supplemental agreements. (Rule 23(e)(2)(C)(iv))

There is no applicable "agreement made in connection with the proposal" within the meaning of Rule 23(e)(3). Safier Decl. ¶ 36. However, in the interest of complete disclosure, Defendants have also agreed to a settlement with a Massachusetts resident with similar claims against Defendants based on Massachusetts law. That claimant is also represented by Gutride Safier LLP but it is not receiving any costs or attorneys' fees as part of that settlement. *Id.*

### d) Allocation plan and equitable treatment of settlement class members. (Rule 23(e)(2)(D) and District Guidelines ¶ 1(e))

Authorized Claimants (Settlement Class Member who submit Valid Claims) are entitled to obtain Cash Payments proportional to the Assistance Fees paid by the Authorized Claimants. This allocation plan treats all Settlement Class Members fairly based on the extent of their alleged harm. *See Baird v. Blackrock Institutional Tr. Co., N.A.*, No. 17-cv-01892-HSG, 2021 U.S. Dist. LEXIS 244487, at *16 (N.D. Cal. July 12, 2021) (approving a settlement providing for a distribution of payments in proportion to the size of class members' investments);

*O'Connor v. Uber Techs., Inc.*, No. 13-cv-03826-EMC, 2019 U.S. Dist. LEXIS 54608, at *43 (N.D. Cal. Mar. 29, 2019) (finding a settlement treated class members equitably where it distributed funds based on the number of miles class members drove for Uber).

### 3.    Differences between the Actions and the Settlement. (District Guidelines ¶ 1(a), 1(b))

In the *Miller* Action, the Court certified the following classes:

> All natural persons who, using a California address, purchased travel insurance from Defendants at any point from December 17, 2017, until the present, and who were charged a fee for Travel Guard's supposed assistance service on top of the applicable insurance premium rate Defendants were authorized to charge (the "Class").

> All Class members who purchased Defendants' travel insurance through a third-party travel retailer's online purchase path (the "Online Purchase Subclass" or "Subclass").

ECF No. 124 at 30.

In the *Allen* Action, Allen sought to represent a class of "All persons who purchased at least one travel insurance policy from Defendants at any point from December 23, 2018, until the present, and, for that purchase, provided a billing address in the State of Washington or where the travel insurance policy identified the plan owner as having a Washington address," but excluding "(a) Defendants and their officers, directors, employees, subsidiaries, and affiliates; (b) all judges assigned to this case and any members of their immediate families; and (c) any person for whom every travel insurance purchase satisfying the above criteria is disqualified because the person already received a complete refund for the travel insurance purchase or because Defendants opened and documented an assistance case in connection with the purchased insurance plan." Safier Decl. ¶ 25.

There are only minor differences between the above class definitions and the Settlement-Notice Class. The Settlement-Notice Class has an end date of January 18, 2024, combines California and Washington purchasers of Travel Guard Plans into a single group, and establishes combined exclusions for (a) each and every presiding District Judge and Magistrate Judge in the Actions, Judge Gandhi (Ret.), Robert A. Meyer, and their staff, and their immediate family members; (b) the officers, directors, agents, servants, and current and former employees of

Defendants who were employed by Defendants at any time on or after the start of the Class Period, and the immediate family members of such Persons; and (c) any Person who received a complete refund for each and every Qualifying Travel Guard Plan purchased by that Person.

The Released Claims are also consistent with the claims asserted in the Actions. The claims in the Actions are based on (a) Defendants' practice of automatically including Assistance Fees in the price of Travel Guard Plans, and/or (b) allegations that Defendants' offers were false or misleading with respect to the inclusion of Assistance Fees. *See* Agmt. ¶¶ 1.1-1.2, 1.4, 1.17. The Released Claims include all claims (under any theory or legal basis) "that arise out of or relate to the allegations that sales of Qualifying Travel Guard Plans were unlawful, unfair, falsely advertised, or deceptive with respect to the marketing, offering, solicitation, pricing, sale, accessibility, availability, and/or payment of Assistance Fees for the assistance services included in (a) the Qualifying Travel Guard Plans or (b) any regulatory filing seeking approval for the rates and forms for Qualifying Travel Guard Plans." *Id.* ¶ 2.48. The Released Claims expressly do not include any Settlement Class Member's (i) claim(s) for personal injury against Defendants or the Released Defendants; (ii) claim(s) for insurance coverage under any Travel Guard Plan or relating to Defendants' failure to properly provide insurance coverage, to properly provide particular assistance benefits in a particular case, or to comply with applicable law in administering claims for insurance coverage or benefits; (iii) claim(s) arising from the purchase of any Travel Guard Plan after January 18, 2024; or (iv) right(s) to enforce this Agreement. *Id.* The Released Claims are thus properly broad enough to provide Defendants peace from the issues raised in the Actions but do not inhibit Settlement Class Members from bringing claims against Defendants that were not at issue in the Actions. *See In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 327 (N.D. Cal. 2018) (approving the release of "not only those claims alleged in the complaint, but also claims 'based on the identical factual predicate as that underlying the claims in the settled class action.'") (quoting *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010)).

**4.    Comparable class settlements. (District Guidelines ¶ 11)**

The information requested by District Guidelines ¶ 11 regarding comparable class settlements is provided in the Safier Declaration, including, most notably, a similar settlement in *Elgindy et al. v. AGA Service Co. et al.*, Case No. 4:20-cv-06304-JST (N.D. Cal.). Safier Decl. Ex. 5.

**5.    Relationship to other cases. (District Guidelines ¶ 1(d))**

Pursuant to District Guidelines ¶ 1(d), Plaintiffs report that the Settlement resolves the claims asserted in the *Allen* Action, which will be dismissed after the Effective Date of the Settlement. Class Counsel represents the plaintiff in the *Allen* Action. In the *Allen* Action, Defendants are represented by the same counsel as in the *Miller* Action (together with additional Washington-based counsel). Counsel for the Parties negotiated the Settlement as a settlement of both Actions, given the substantial overlap of facts and legal issues. Pursuant to the Settlement, Plaintiffs filed an Amended Complaint, adding Allen and her claims to this Action for settlement purposes only.

## IV.    THE COURT SHOULD CERTIFY THE SETTLEMENT-NOTICE CLASS

The Court previously determined that a class of California purchasers satisfied the requirements of Rule 23, and certified a class of California purchasers of Travel Guard Plans. ECF No. 124. Because the Settlement-Notice Class simply adds Washington purchasers to the class definition (and those purchasers' claims are based on the same facts and legal theories), the Court's previous determinations (regarding numerosity, commonality, adequacy, typicality, predominance, and superiority) are applicable to the Settlement-Notice Class. *See McMorrow v. Mondelez Int'l, Inc.*, No. 17-cv-02327-BAS-JLB, 2022 U.S. Dist. LEXIS 66016, at *7-8 (S.D. Cal. Apr. 8, 2022) ("Expansion of the class to include all purchasers nationwide as well as purchasers of additional products does not change the class certification analysis.").

Here, the Settlement-Notice Class is more numerous than the California-only class previously certified by the Court. *Compare* ECF No. 124 at 30 *and* Agmt. ¶ 2.57. Also, all of the Settlement-Notice Class Members' claims arise from the same common nucleus of facts and essentially the same legal theories that justified the Court's prior class certification order: that it

was unlawful, unfair, and/or deceptive for Defendants to include Assistance Fees (supposedly for a "non-insurance" assistance service) in the price offered and charged to Settlement-Notice Class Members for each Travel Guard Plan. Agmt. ¶¶ 1.1-1.2, 1.4, 1.17; ECF No. 172 ("Am. Compl."); ECF No. 124 at 16-17; *McMorrow*, 2022 U.S. Dist. LEXIS 66016, at *7 (noting "Defendant's alleged misconduct . . . appears to be uniform across the United States" and thus "the nationwide class presents the same common questions of fact and law").[9] These common issues predominate over any individual issues for the reasons already explained by the Court. ECF No. 124 at 17-25; *see also McMorrow*, 2022 U.S. Dist. LEXIS 66016, at *7 (noting "the common questions of law or fact predominate" for the nationwide settlement class just as they did for the previously certified class).

Plaintiffs, like all Settlement-Notice Class Members, were presented offers for Travel Guard Plans that identified a single price for each offered plan, which included both the allocable insurance premium amount and Assistance Fee amount. Agmt. ¶¶ 1.1, 1.2, 1.17; Am. Compl. ¶¶ 27-34, 46-81. The Plaintiffs and all Settlement-Notice Class Members have allegedly been injured in the same way by the same course of conduct. Plaintiffs have no conflict, let alone an irreconcilable conflict, with other Settlement-Notice Class Members. Rather, they stand in the same shoes as all other Settlement-Notice Class Members, assert the same claims as other Settlement-Notice Class Members, and have a common interest in proving a common course of conduct and obtaining relief from Defendants. Plaintiffs and Class Counsel have vigorously and competently pursued the Settlement-Notice Class Members' claims. Class Counsel have extensive experience and expertise in prosecuting complex class actions and in administering complex class action settlements. Safier Decl. Ex. 2. Accordingly, Plaintiffs and Class Counsel satisfy the requirements of typicality and adequacy. ECF No. 124 at 15-16.

---

[9]    Like California, Washington also prohibits insurers from charging premiums in excess of its filed rates. *See* RCW 48.19.040, 48.18.180. And, like California's UCL, Washington's consumer protection law ("CPA") also provides relief for unlawful, unfair, and deceptive practices. *See Klem v. Wash. Mut. Bank*, 176 Wash. 2d 771, 785-87, 295 P.3d 1179, 1186-87 (2013); *see also May v. Honeywell Int'l, Inc.*, 331 F. App'x 526, 529 (9th Cir. 2009) (noting that violations of Washington's Insurance Code constitute per se violations of the Washington CPA); RCW 19.86.170, 48.01.030.

The proposed class Settlement is superior to other available means for the fair and efficient resolution of the claims of the Settlement-Notice Class Members. Each individual Settlement-Notice Class Member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to show Defendants' liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Moreover, since the certification is to effectuate a settlement, the Court "need not inquire whether the case, if tried, would present intractable management problems." *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Accordingly, the Court should certify the Settlement-Notice Class.

## V. THE PROPOSED NOTICE PLAN SHOULD BE APPROVED. (District Guidelines ¶¶ 3-5, 9-10)

Upon preliminary approval, notice must be directed to Settlement-Notice Class Members. For class actions certified under Rule 23(b)(3), including settlement classes like this one, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). In addition, Rule 23(e)(1) applies to any class settlement and requires the Court to "direct notice in a reasonable manner to all class members who would be bound by a proposal." Fed. R. Civ. P. 23(e)(1).

When a court is presented with class notice pursuant to a settlement, both the class certification notice and notice of settlement may be combined in the same notice. *Manual for Complex Litigation (Fourth)* § 21.633 at 321-22 (2004) ("For economy, the notice under Rule 23(c)(2) and the Rule 23(e) notice are sometimes combined."). This notice allows class members to decide whether to opt out of or take part in the class and/or to object to the settlement and argue against final approval by the Court. *Id.*

The proposed Notice Plan here directly informs the Settlement-Notice Class of their rights and options, as well as the information necessary to exercise those rights and options. Notice of the Settlement will be provided by: (1) direct Email Notice to those Settlement-Notice

Class Members for whom an email address is available (estimated at more than 90% of the Settlement-Notice Class); (2) direct Postcard Notice mailed to those Settlement-Notice Class Members for whom a physical mailing address is available but an email address is not available or has been identified by Defendants as likely associated with an intermediary rather than the consumer; and (3) publication on a Settlement Website, located at www.TravelFeeSettlement.com. Weisbrot Decl. ¶¶ 22-39. All of the distributed notices will link or point to the Settlement Website, which will include: the Long-Form Notice (explaining the salient terms of the Settlement, the definitions of the Settlement-Notice Class and Settlement Class, the rights of all parties, including the rights of Settlement-Notice Class Members to file objections and to opt out of the Settlement Class, the procedures for Settlement-Notice Class Members to submit claims, exclude themselves, or object, information on how Settlement-Notice Class Members may access the case docket through the Court's Public Access to Court Electronic Records ("PACER"), and the date and location of the Final Approval Hearing), a contact information page that includes address and telephone numbers for the Settlement Administrator and the Parties, the Settlement Agreement, the signed Preliminary Approval Order, online and printable versions of the Claim Form and the opt out forms, and answers to frequently asked questions. *Id.* ¶ 35; Agmt. Exs. A-C. The Notice Plan will be administered by a well-known, independent claims administrator, Angeion Group. Agmt. ¶ 2.53; Weisbrot Decl. ¶¶ 1-12. The motion papers filed in connection with the Settlement and Plaintiffs' application for Attorneys' Fees and Expenses and Incentive Awards will be placed on the Settlement Website after they are filed. Weisbrot Decl. ¶ 35. The Settlement Administrator will also operate a toll-free number for Class Member inquiries. *Id.* ¶ 39.

In compliance with the Class Action Fairness Act (28 U.S.C. § 1715 (b)), the Settlement Administrator will give notice of the Settlement to appropriate state and federal officials within ten days after the Settlement Agreement is filed with the Court. Agmt. ¶ 4.3.

This Notice Plan constitutes the best notice practicable under the circumstances. *See* Weisbrot Decl. ¶ 47; Safier Decl. Ex. 4 (*Elgindy v. AGA Serv. Co.*, No. 4:20-cv-06304-JST (N.D. Cal.), ECF No. 122) (order approving a substantially similar notice plan for a settlement

involving a refund of assistance fees). Accordingly, Plaintiffs respectfully request that this Court approve the Notice Plan outlined in the Settlement Agreement.

## VI.    THE COURT SHOULD APPROVE THE SETTLEMENT ADMINISTRATOR. (District Guidelines ¶ 2)

The Settlement will be administered by a well-known, independent claims administrator, Angeion Group. The additional information required by District Guidelines ¶ 2 regarding the selection of Angeion and regarding Angeion's data policies and costs is provided in the accompanying declarations. *See* Safier Decl. ¶ 71; Weisbrot Decl. ¶¶ 13-16, 45-47. While the Agreement provides for an Initial Settlement Administration Payment to cover the anticipated costs of the Notice Plan (Agmt. ¶ 2.32), final Notice and Administration Expenses will be paid only after final approval. Agmt. ¶ 8.2.1.

## VII.    THE COURT SHOULD AWARD ATTORNEYS' FEES AND COSTS. (Rule 23(e)(2)(C)(iii) and District Guidelines ¶ 6)

Plaintiffs request, upon final approval, an award of attorneys' fees in the amount of 30% of the Settlement Amount (or $7,199,250). Under Ninth Circuit standards, it is appropriate for a District Court to analyze an attorneys' fee request and issue an award either (1) as a percentage of the total benefit made available to the settlement class or (2) using the "lodestar" method. *See e.g., Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). Plaintiffs' fee request is reasonable under either of these approaches. Further, Plaintiffs request, upon final approval, an award of costs through final approval.

### A.    Class Counsel's Requested Fee Is a Reasonable Percentage of the Total Benefit Made Available to the Class.

"The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark. However, . . . in 'most common fund cases, the award exceeds that benchmark." *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010); *see also In re MacBook Keyboard Litig.*, No. 5:18-cv-02813-EJD, 2023 U.S. Dist. LEXIS 92063, at *42-43 (N.D. Cal. May 25, 2023) (awarding fees equal to 30% of the fund and noting multiple courts have done the same); *In re Activision Sec.*

*Litig.*, 723 F. Supp. 1373, 1377 (N.D. Cal. 1989) (explaining that an attorney fee award of 30% is appropriate in most common fund settlements). In deciding on a fee award, the Court must consider "all of the circumstances of the case" such as the results achieved, the risk undertaken by Class Counsel, benefits obtained beyond the Settlement Amount, and whether Class Counsel declined other work to pursue the Actions. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-49 (9th Cir. 2002) (affirming a 28% fee award). The Court may also consider the skill required and quality of the work. *Sypherd v. Lazy Dog Rests., LLC*, No. 5:20-cv-00921-FLA (KKx), 2023 U.S. Dist. LEXIS 23257, at *12-15 (C.D. Cal. Feb. 10, 2023).

In *Sypherd*, the court found it was reasonable to award fees equal to 30% of the fund where: (1) the $2.15M fund provided a benefit class members could not have obtained individually, particularly because it was unlikely they would have even discovered the practices at issue; (2) there were significant litigation risks given the lack of on-point authority, unique legal questions, defendant's motion for summary judgment, and dueling expert reports; (3) class counsel was very experienced with class actions and skillfully and earnestly litigated the case through discovery and several motions; and (4) class counsel litigated the case on a contingent basis. *Id.* Similarly, in *MacBook Keyboard*, the court awarded fees of 30% where (1) class counsel "achieved excellent results" by obtaining a fund representing between 9% and 28% of total estimated damages; (2) the multi-year class action against a major corporation was risky, particularly in light of potential decertification, trial, a battle of experts, and appeals; (3) the class benefited from the experience and skill of class counsel, as evidenced by class counsel's ability to prevail on motions to dismiss and to certify a class while litigating against highly qualified and experienced defense counsel; and (4) class counsel took the case on a contingency fee basis. 2023 U.S. Dist. LEXIS 92063, at *39-43.

All of the above factors justify an award of 30% in this case. The $23,997,500 Settlement Amount represents ██ to ██ of the maximum potential recovery (depending on which expert calculations would be used), and it is highly unlikely that the Settlement-Notice Class Members would have even discovered Defendants' practice of embedding an unapproved Assistance Fee in the price of Travel Guard Plans. Second, this litigation had more risk than the litigations in

*Sypherd* and *Macbook Keyboard*, given: (a) the novel legal questions raised about the lawfulness, fairness, and deceptiveness of Defendants' practices; (b) Defendants' motions to dismiss, to compel arbitration in both Actions, to vacate an arbitration award, to stay the Actions pending appeals, to partially decertify the certified class; to exclude Plaintiffs' experts, and for summary judgment; (c) dueling expert reports on multiple fronts; (d) arbitration proceedings; and (e) multiple appeals. Third, Class Counsel is very experienced with class actions, has obtained many of the key precedents applicable in consumer cases in the Ninth Circuit (both at the trial-court and appellate levels), prevailed on almost all the motions in the Actions, obtained extensive discovery (including responses to over 180 written discovery requests, hundreds of thousands of pages of documents, and nine depositions), evaluated voluminous and complex insurance filings and financial records, consulted with experts, obtained class certification prior to settlement, and accomplished all of this while litigating against highly skilled and experienced defense counsel. Safier Decl. ¶¶ 2-34. Fourth, Class Counsel bore considerable risk in litigating this case wholly on a contingent basis and advancing all costs. *Id.* ¶¶ 49-50. Fifth, during the pendency of the Actions, Class Counsel turned away other work. *Id.*

### B.    As a Cross-Check, Class Counsel's Requested Fee Is Also Reasonable When Using the Lodestar Approach.

The Court is not obligated to perform a cross-check on Class Counsel's lodestar when evaluating the percentage of the fund to be awarded as fees. *Farrell v. Bank of Am. Corp., N.A.*, 827 F. App'x 628, 630 (9th Cir. 2020) (affirming district court's decision to use percentage-of-recovery to calculate fees without performing lodestar cross-check). Indeed, "[i]n a common fund case, a lodestar method does not necessarily achieve the stated purposes of proportionality, predictability and protection of the class and can encourage unjustified work and protracting the litigation." *Bolton v. U.S. Nursing Corp.*, No. 12-cv-4466-LB, 2013 U.S. Dist. LEXIS 150299, at *13 (N.D. Cal. Oct. 18, 2013) (citing *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989)). Nevertheless, should the Court elect to utilize a lodestar cross-check, Class Counsel's fee here is likewise eminently reasonable.

Under the lodestar approach, "[t]he lodestar (or touchstone) is produced by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate." *Lealao v. Beneficial Cal., Inc.*, 97 Cal. Rptr. 2d 797, 803 (Cal. Ct. App. 2000); *see also Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016) ("[A] court calculates the lodestar figure by multiplying the number of hours reasonably expended on a case by a reasonable hourly rate. A reasonable hourly rate is ordinarily the 'prevailing market rate [] in the relevant community.'") (alteration in original) (internal citation omitted) (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010)). Once the court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative "multiplier" to take into account a variety of other factors, "including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented." *Laffitte v. Robert Half Internat'l Inc.*, 376 P.3d 672, 677 (Cal. 2016); *see also Vizcaino*, 290 F.3d at 1051 n.6 (affirming a multiplier of 3.65 and noting that multipliers of one to four are frequently awarded).

Class Counsel's lodestar as of December 2023 is approximately $4.28 million. Safier Decl. ¶ 51. Class Counsel's efforts to date include, without limitation: (1) significant pre-filing investigation; (2) drafting and filing the class action complaints; (3) drafting and filing case management conference statements and case management stipulations; (4) drafting discovery requests and responses; (5) meeting-and-conferring with Defendants' counsel regarding the scope of discovery, the sufficiency of discovery responses and production, deposition notices, the retention of electronic documents, Defendants' searches for electronically stored information, the terms and scope of a stipulated protective order, the terms and scope of a stipulated electronically stored information order, and the timing of production; (6) reviewing voluminous documents produced by Defendants; (7) preparing Plaintiffs' and Proposed Intervenors' document productions; (8) preparing Plaintiffs and Proposed Intervenors for depositions and defending them at depositions; (9) conducting depositions of Defendants and their employees; (10) researching, engaging, and consulting with experts; (11) working with experts on their expert reports; (12) preparing Plaintiffs' experts for depositions and defending those depositions; (13) preparing oppositions to Defendants' motions to compel arbitrations in the Actions;

(14) participating in arbitration regarding the arbitrability of Plaintiff Miller's claims; (15) preparing multiple filings regarding the parties' cross-motions to confirm or vacate the arbitration award; (16) preparing Plaintiffs' motion for class certification and supporting documents and reply; (17) analyzing Defendants' expert reports; (18) deposing Defendants' experts; (19) preparing Plaintiffs' motion for partial summary judgment and supporting documents; (20) preparing motions to exclude certain testimony of Defendants' experts; (21) preparing oppositions to Defendants' motion for summary judgment and motion to exclude expert testimony; (22) analyzing Defendants' appellate briefs and beginning preparation of answering briefs; (23) drafting mediation statements and participating in three mediation sessions; (24) negotiating and drafting the Settlement Agreement and Notice Plan along with corresponding documents, including the notice forms; and (25) drafting this motion for approval and supporting documents, including a proposed preliminary approval order and a proposed final judgment. Safier Decl. ¶¶ 2-31. Before the Final Approval Hearing, Class Counsel's efforts will also include, without limitation: (26) reviewing and responding to correspondence from Settlement-Notice Class Members; (27) supervising the work of the Settlement Administrator; (28) researching and drafting a reply memorandum and opposing objections, if any; and (29) appearing at the Preliminary Approval Hearing and any further scheduled appearances. Safier Decl. ¶ 69.

Class Counsel calculated their lodestar using their regular billing rates, which for the attorneys involved range from $870 to $1410 per hour and for the paralegals range from $380 to $420 per hour. Safier Decl. ¶¶ 51-53. Class Counsel are graduates of top law schools (including Yale, Harvard, and NYU), and the principal work was performed by lawyers with 10 or more years of experience.[10] *Id.* ¶ 66 & Ex. 2. These hourly rates are below market rates in San Francisco for attorneys of Class Counsel's background and experience. *Id.* ¶ 67.[11] Additionally,

---

[10]    Some of Class Counsel also previously worked for top defense firms; had they remained at those firms their rates would be even higher than they are currently. Safier Decl. ¶ 67.

[11] "Affidavits of the plaintiff'[s] attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiff'[s] attorney, are satisfactory evidence of the prevailing market rate." *United*

the rates charged by Class Counsel have been deemed reasonable in connection with the approval of their fee applications in at least a dozen recent matters. Safier Decl. ¶¶ 53-65. Courts in other cases over the past several years have also approved similar fees charged by other firms. *See, e.g., Glob. Indus. Inv. Ltd. v. 1955 Capital Fund I GP LLC*, No. 21-cv-08924-HSG, 2023 U.S. Dist. LEXIS 173343, at *12 (N.D. Cal. Sep. 27, 2023) (granting fees, minus certain work, at hourly rates between $1,085 and $1,650 for counsel and partners and between $645 and $960 for associates); *Hessefort v. Super Micro Comput., Inc.*, No. 18-cv-00838-JST, 2023 U.S. Dist. LEXIS 198353, at *25 (N.D. Cal. May 5, 2023) (approving rates from $770 to $1,350 for partners or of counsel attorneys); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 2672 CRB (JSC), 2017 U.S. Dist. LEXIS 39115, 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (approving reasonable rates of up to $1600 for partners, $790 for associates, and $490 for paralegals); *In re Animation Workers Antitrust Litig.*, No. 14-cv-4062-LHK, 2016 U.S. Dist. LEXIS 156720, at *20-21 (N.D. Cal. Nov. 11, 2016) (approving hourly rates of senior attorneys of between $845 and $1,200).

These rates are the current rates charged by Class Counsel, which is appropriate given the deferred and contingent nature of counsel's compensation. *See In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1305 (9th Cir. 1994) ("The district court has discretion to compensate delay in payment in one of two ways: (1) by applying the attorneys' current rates to all hours billed during the course of litigation; or (2) by using the attorneys' historical rates and adding a prime rate enhancement.").

The requested fee currently equates to a modest 1.68 multiplier, and will be lower (likely around 1.5) once Class Counsel's additional work in conjunction with the Settlement and this motion through final approval is included. This is well within the normal range of multipliers in common fund cases; indeed, it is on the very low end for a common fund settlement of this magnitude. *See Rodman v. Safeway Inc.*, No. 11-cv-03003-JST, 2018 U.S. Dist. LEXIS 143867, at *16 (N.D. Cal. Aug. 22, 2018) (noting multipliers of one to four times the lodestar are common

---

*Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

and awarding fees equal to 28% of the common fund, which represented a multiplier of approximately 1.75 of the lodestar); *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 334 (N.D. Cal. 2014) ("A 2.83 multiplier falls within the Ninth Circuit's presumptively acceptable range of 1.0–4.0."). The multiplier is further justified by "the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented." *Laffitte*, 376 P.3d at 677. Each of these factors justifies a multiplier here.

As set forth above, Class Counsel has achieved an exceptional result, has provided an extremely high quality of legal representation to the Settlement-Notice Class, confronted and developed novel and complex legal and factual issues, and bore considerable risk in litigating this case wholly on a contingent basis and advancing all costs.

Since Class Counsel's work is primarily focused on contingent-fee class action cases, it does not get paid in every case. Frequently, it gets nothing or is awarded fees equal to only a small percentage of the amount it had worked. Where a plaintiff's firm does succeed, therefore, it is appropriate to award a multiplier, to compensate for the risks the firm regularly undertakes. As the California Supreme Court has explained:

> A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions. If he is paid no more, competent counsel will be reluctant to accept fee award cases.

*Ketchum v. Moses*, 17 P.3d 735, 742 (Cal. 2001) (internal quotation marks and citation omitted); *see also Cazares v. Saenz*, 256 Cal. Rptr. 209, 214 (Cal. Ct. App. 1989) ("[I]n theory, a contingent fee in a case with a 50 percent chance of success should be twice the amount of a non-contingent fee for the same case."); *In re: Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d at 1299 ("It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases.").

Finally, Class Counsel reached a settlement before class certification in the *Allen* Action and thus should be rewarded for its efficiency (and the concomitant savings to the judicial system). *See Martin v. Toyota Motor Credit Corp.*, No. 2:20-cv-10518 JVS (MRW), 2022 U.S.

- 27 -

Dist. LEXIS 208358, at *42 (C.D. Cal. Nov. 15, 2022) (awarding fees equivalent to a 6.33 multiplier and noting "Class Counsel should not be punished for efficiently litigating this action and achieving a settlement before billing more hours.") (internal quotation marks and citation omitted).

### C.    Class Counsel Requests an Award of Its Expenses.

Class Counsel requests that, in addition to reasonable attorneys' fees, the Court grant its application for reimbursement of out-of-pocket expenses incurred by Class Counsel in connection with the prosecution of this litigation ($236,475.58 recorded to date, plus any additional costs paid or incurred through Final Approval). Safier Decl. ¶ 68 & Ex. 3. An attorney is entitled to "recover as part of the award of attorney's fees those out-of-pocket that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal quotation marks and citation omitted). As required by the District Guidelines ¶ 6, the expenses incurred are itemized in counsel's declaration. Safier Decl. Ex. 3; *see also Miguel-Sanchez v. Mesa Packing, LLC*, No. 20-cv-00823-VKD, 2021 U.S. Dist. LEXIS 202330, at *33 (N.D. Cal. Oct. 20, 2021) (approving expenses identified in itemized list).

## VIII.    THE COURT SHOULD APPROVE INCENTIVE AWARDS. (District Guidelines ¶ 7)

"Because the laws are not self-enforcing, it is appropriate to give incentives to those who come forward with little to gain and at personal risk and who work to achieve a settlement that confers substantial benefits on others." *Massey v. Star Nursing, Inc.*, No. 21-cv-01482-EJD, 2023 U.S. Dist. LEXIS 30679, at *23 (N.D. Cal. Feb. 23, 2023). Accordingly, this Court should approve a $5,000 Incentive Award to each Plaintiff, which is a presumptively reasonable amount for a service award in the Ninth Circuit. *See In re MacBook Keyboard Litig.*, 2023 U.S. Dist. LEXIS 92063, at *47; *Cunha v. Chico Produce*, No. 17-cv-00597-JST, 2021 U.S. Dist. LEXIS 148406, at *13 (N.D. Cal. Feb. 16, 2021); *Dixon v. Cushman & Wakefield W., Inc.*, No. 18-cv-05813-JSC, 2022 U.S. Dist. LEXIS 73512, at *40 (N.D. Cal. Apr. 21, 2022). In deciding whether to approve such an award, a court may consider: the financial or reputational risk undertaken by Plaintiffs in bringing the action, the amount of time and effort Plaintiffs expended in pursuing

the litigation to protect the interests of the Settlement-Notice Class, and the degree to which the Settlement-Notice Class has benefitted from those actions. *Massey*, 2023 U.S. Dist. LEXIS 30679, at *22.

Plaintiffs took on substantial risk, most importantly the risk of publicity and notoriety. Safier Decl. ¶ 70. They also searched their personal records for responsive documents, assisted with responses to written discovery, and communicated many times with counsel, and the California Plaintiffs and Proposed Intervenors attended deposition preparation sessions and appeared for depositions. *Id.* ¶¶ 16-17, 70. Plaintiffs also remained actively involved in the Actions prior to and after settlement, even though their individual damages were relatively modest. *Id.* Plaintiffs and Proposed Intervenors are also agreeing to broader releases than other Settlement Class Members. Agmt. ¶¶ 2.3, 13.3; *Massey*, 2023 U.S. Dist. LEXIS 30679, at *23 ("Plaintiff entered into a global release broader than the release applicable to other class members.").

The proposed Incentive Awards are reasonable in light of the Plaintiffs' efforts in litigating the Actions and the relief made available to the Notice-Settlement Class as a result of this Settlement. *See* Theodore Eisenberg & Geoffrey P. Miller, Incentive Awards to Class Action Plaintiffs: An Empirical Study, 53 UCLA L. Rev. 1303, 1333 (2006) (an empirical study of incentive awards to class action plaintiffs has determined that the average aggregate incentive award within a consumer class action case is $29,055.20, and that the average individual award is $6,358.80.); *see also Nevarez v. Forty Niners Football Co., LLC*, 474 F. Supp. 3d 1041, 1048 (N.D. Cal. 2020) (approving service awards of $5,000 to three plaintiffs where the total of $15,000 was less than 1% of the $24 million settlement fund).

## IX.    THE COURT SHOULD SET A FINAL APPROVAL SCHEDULE (District Guidelines ¶ 9)

The last step in the settlement approval process is the Final Approval Hearing at which the Parties will seek final approval of the proposed Settlement, Attorneys' Fees and Expenses, and Incentive Awards. At the Final Approval Hearing, proponents of the Settlement may explain and describe its terms and conditions and offer argument in support of final approval of the

Settlement and the award of Attorneys' Fees and Expenses. Also, Settlement Class Members, or their counsel, may be heard in support of or in opposition to final approval of the Settlement and/or the request for Attorneys' Fees and Expenses. To ensure an orderly approval process, and as set forth in the schedule included in the accompanying proposed Order Granting Preliminary Approval, the Parties propose that the Court: (a) provide Angeion 30 days to begin the Notice Plan (Agmt. ¶ 2.37); (b) provide Settlement-Notice Class Members about 92 days from the Notice Date to submit claims, exclusion requests, and objections (*id.* ¶¶ 2.15, 2.28, 10.3); (c) provide a couple of weeks thereafter for the Parties to report on the information Defendants provided to Angeion, the list of exclusions, and any replies to objections or otherwise in support of final approval (*id.* ¶¶ 4.4.2, 7.16, 7.21); (d) provide an additional week for Angeion to report on the results of the Notice Plan and responses to the Settlement (*id.* ¶ 4.7); and (e) schedule the Final Approval Hearing about one week after Angeion's report (about 150 days after the Order Granting Preliminary Approval) (*id.* ¶ 10.3).

## X.    CONCLUSION

For the foregoing reasons, the Settlement is fair, reasonable, adequate, and in the best interests of the Settlement-Notice Class. Accordingly, Plaintiffs and Class Counsel respectfully request that the Court: (1) grant preliminary approval of the Settlement; (2) certify the Settlement-Notice Class for settlement purposes only, designate the Plaintiffs (Miller, Chuanroong, and Allen) as Class Representatives, and appoint Gutride Safier LLP as Class Counsel; (3) appoint Angeion Group as the Settlement Administrator; (4) approve the Notice Plan and the Long-Form Notice, Email Notice, and Postcard Notice to Class Members; (5) mandate procedures and deadlines for claims, exclusion requests, and objections; and (6) set a date, time and place for the Final Approval Hearing.

1    Dated: January 24, 2024

2                                              **GUTRIDE SAFIER LLP**

3                                              */s/ Stephen M. Raab*
                                               Seth A. Safier (State Bar No. 197427)
4                                                seth@gutridesafier.com
                                               Rajiv V. Thairani (State Bar No. 344390)
5                                                rajiv@gutridesafier.com
                                               100 Pine Street, Suite 1250
6                                              San Francisco, CA 94111
                                               Telephone: (415) 639-9090
7                                              Facsimile:  (415) 449-6469

8                                              **GUTRIDE SAFIER LLP**
                                               Stephen M. Raab (appearing *pro hac vice*)
9                                                stephen@gutridesafier.com
                                               305 Broadway, 7th Floor
10                                             New York, NY 10007
                                               Telephone: (415) 639-9090 x109

11
                                               *Attorneys for Plaintiffs*
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28