1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7   TAMIKA MILLER, et al.,                    Case No. 21-cv-09751-TLT

8                  Plaintiffs,

9          v.                                 **ORDER GRANTING MOTION FOR
                                              PRELIMINARY APPROVAL OF
10  TRAVEL GUARD GROUP, INC., et al.,          CLASS ACTION SETTLEMENT**

11                 Defendants.                 Re: Dkt. No. 138

12          The Court approves the Motion for Preliminary Approval of Class Action Settlement.

13  Hearing was held on February 27, 2024. Stephen Raab and Seth Safier appeared for plaintiff(s);

14  and Matthew Powers appeared for defendant(s).

15          Having considered the motion briefing, the arguments of counsel, the relevant law, the

16  terms of the settlement agreement and the class notice, as well as the record in this case, and based

17  on the reasons and terms set forth herein, the Court **GRANTS** the parties' motion for preliminary

18  approval of class action settlement.

19  **I.      BACKGROUND**

20          Plaintiff(s) filed the putative class action complaint on December 17, 2021, against

21  defendants Travel Guard Group, Inc., AIG Travel, Inc., American International Group, Inc.

22  ("AIG"), and National Union Fire Insurance Company of Pittsburg, Pennsylvania. The pleadings

23  allege that defendants included a discretionary "Assistance Fee" in addition to the regulated

24  insurance premium as part of the total cost of Travel Guard insurance plans.  Plaintiff's amended

25  complaint alleges claims for unfair business practices under California Business and Professions

26  Code § 17200 *et seq.* ("UCL"); false advertising under California Business and Professions code §

27  17500 *et seq.* ("FAL"); fraud/deceit/misrepresentation; violation of Washington's Consumer

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Protection Act under Revised Code of Washington 19.86.010 *et seq.* ("CPA"); and breach of the

2    duty of good faith.

3           The parties reached a settlement prior to class certification with the assistance of an

4    experienced mediator Robert A. Meyer.

5           **B.     Terms of the Settlement Agreement**

6           Under the terms of the Settlement Agreement, defendant will pay $23,997,500.00 into a

7    common settlement fund, without admitting liability. This amount includes attorneys' fees and costs,

8    the cost of class notice and settlement administration, the class representative's service award, and

9    taxes and tax expenses.

10          ***1.     Attorneys' Fees and Costs***

11          Under the Settlement Agreement, Plaintiff's counsel agreed to seek up to $7,199,250.00 in

12   attorneys' fees and no more than $236,475.58 in litigation costs.  The common settlement fund also

13   includes a provision for $450,000.00 in initial settlement administration costs; and up to $5,000 to be

14   paid to plaintiff(s) Tamika Miller, Julianne Chuanroong, and Stephanie Allen as an incentive award

15   in exchange for a general release of all claims against defendant.

16          ***2.     Class Relief***

17          After deductions from the common fund for fees, costs, and service incentive awards,

18   approximately $16,096,774.40 will remain to be distributed among the participating class members.

19   Class members will be paid in proportion to the Assistance Fees they paid.  Dividing this amount

20   across the approximately 750,000–1,250,000 participating class members yields an average recovery

21   of approximately $12.88–$21.46 per class member; however, class members are to be paid in

22   proportion with the amount of Assistance Fees they paid.  The Agreement provides that no amount

23   will revert to defendant. Additionally, Travel Guard will disclose to prospective purchasers that the

24   price of the travel plan includes both the regulated insurance premium and an additional fee for

25   "noninsurance travel related services."

26          ***3.     Cy Pres/Remainder***

27          The Settlement Agreement provides that after claims submission and distribution of fees,

28   expenses, and awards, the Net Settlement Fund will be distributed to class members who received

2

cash payments in an amount to be determined. However, any funding left over will be paid to the *cy pres* recipient, Travelers Aid International.

## II.   PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

### A.   Legal Standard

A court may approve a proposed class action settlement of a certified class only "after a hearing and on finding that it is fair, reasonable, and adequate," and that it meets the requirements for class certification.  Fed. R. Civ. P. 23(e)(2).  In reviewing the proposed settlement, a court need not address whether the settlement is ideal or the best outcome, but only whether the settlement is fair, free of collusion, and consistent with plaintiff's fiduciary obligations to the class.  *See Hanlon v. Chrysler Corp.*, 150 F.3d at 1027.  The *Hanlon* court identified the following factors relevant to assessing a settlement proposal: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceeding; (6) the experience and views of counsel; (7) the presence of a government participant; and (8) the reaction of class members to the proposed settlement.  *Id.* at 1026 (citation omitted); *see also Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

Settlements that occur before formal class certification also "require a higher standard of fairness."  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000).  In reviewing such settlements, in addition to considering the above factors, a court also must ensure that "the settlement is not the product of collusion among the negotiating parties."  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011).

### B.   Class Definition and Basis for Conditional Certification

The Settlement Agreement, attached hereto as **Exhibit A**, defines the class as:

3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

"[A]ll persons, except Excluded Persons,[1] who purchased at least one Qualifying Travel Guard Plan[2] from December 17, 2017, through and including January 18, 2024 [who do not timely and properly exclude themselves from the Settlement Class]" ("the Settlement Class").  The proposed class here combines the classes from *Miller v. Travel Guard Grp.*, 21-cv-09751 (N.D. Cal.) and *Allen v. Travel Guard Grp.*, 22-cv-06005 (W.D. Wash.).

The Court finds that, for purposes of settlement, plaintiff(s) have satisfied the requirements of Rule 23(a) as well as the requirements for certification under one or more subsections of Rule 23(b).  With respect to numerosity under Rule 23(a)(1), the Settlement Class includes up to 25 million members,[3] making it so numerous that joinder of all members is impracticable.

Rule 23(a)(2) commonality requires "questions of fact or law common to the class," though all questions of fact and law need not be in common.  *Hanlon*, 150 F.3d at 1026.  The focus of this action – the unlawful, unfair, and/or deceptive nature of the Assistance Fees – is common to all class members.

Rule 23(a)(3) requires that the plaintiff show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Plaintiff and members of the Settlement Class have all purchased Travel Guard plans and paid Assistance Fees during the relevant period, making plaintiff's claims typical of class members.

With respect to Rule 23(a)(4), the Court finds the representative parties and class counsel have fairly and adequately represented the interests of the Class.  No conflicts of interest appear as between plaintiff and the members of the Settlement Class.  Class Counsel have demonstrated that

---

[1] "[E]ach and every presiding District Judge and Magistrate Judge in the Actions . . . and their staff, and their immediate family members . . . the officers, directors, agents, servants, and current and former employees of Defendants who were employed by Defendants at any time on or after the start of the Class Period, and the immediate family members of such Persons . . . [and] any Person who received a complete refund for each and every Qualifying Travel Guard Plan purchased by that Person." Stip. of Class Action Settlement, ECF 173-2, Ex. 1, § 2.27, at 12.
[2] "[A]ny travel or event protection plan that included insurance coverage and noninsurance assistance services, that was sold by Travel Guard, and where the plan price, according to Travel Guard's records, included Assistance Fees and insurance premium. Stip. of Class Action Settlement, ECF 173-2, Ex. 1, § 2.63, at 20.
[3] The parties, however, estimate that only 3%–5% will file a claim, *i.e.*, 750,000–1,250,000 members. Nevertheless, numerosity is satisfied.

United States District Court
Northern District of California

1   they are highly experienced, with a history of recovering settlements in nationwide class action

2   litigation and are therefore adequate to represent the Settlement Class as well.

3           The Settlement Class further satisfies Rule 23(b)(3) in that common issues predominate and

4   "a class action is superior to other available methods for fairly and efficiently adjudicating" the

5   claims here.  Members of the class here will recover a cash payment in proportion to the Assistance

6   Fees paid for.

7           Based on the foregoing, the proposed class is conditionally certified pursuant to Rule

8   23(c).

9           **C.      Settlement Agreement Appears Fair and Reasonable**

10          The settlement agreement, a copy of which is attached hereto as **Exhibit A** ("Settlement

11  Agreement"), is granted preliminary approval pursuant to Rule 23(e)(2).  Based upon the

12  information before the Court, the Settlement Agreement falls within the range of possible approval

13  as fair, adequate, and reasonable, and there is a sufficient basis for notifying the Class and for

14  setting a Fairness and Final Approval Hearing.

15          As to the *Hanlon* factors, the Court finds that they indicate the settlement here is fair and

16  reasonable.  There are several underlying disputes surrounding the amount of Assistance Fees paid

17  by the class and their business legitimacy. Proceeding to trial would have been costly; recovery

18  was not guaranteed; and there was the possibility of protracted appeals.  Even if plaintiff

19  prevailed, the best-case recovery after trial was less than the amount offered in settlement because

20  the Court has ruled that full recovery is impermissible under the plaintiffs' fraud theory.

21          The settlement occurred only after extensive discovery (over 180 requests) and litigation

22  since the action commenced on December 17, 2021, including: production of hundreds of

23  thousands of documents, interrogatories and stipulations, depositions, expert calculations, expert

24  depositions, *Daubert* motions, and class certification in the *Miller* action. Counsel for both parties

25  are highly experienced.  The record does not indicate collusion or self-dealing.  *See In re*

26  *Bluetooth*, 654 F.3d at 946-47.

27          The Settlement Agreement appears to have been the product of arm's length and informed

28  negotiations.  The relief provided for the Class appears to be adequate, taking into account:

5

1    (i) the costs, risks, and delay of trial and appeal;

2    (ii) the effectiveness of any proposed method of distributing relief to the class, including the

3    method of processing class-member claims;

4    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

5    (iv) any agreements required to be identified under Rule 23(e)(3), including the Settlement

6    Agreement. Stip. of Class Action Settlement, ECF 173-2, Ex. 1.

7    Moreover, the Settlement Agreement appears to treat Class members equitably relative to

8    each other.

9    As discussed during the hearing, the Court has concerns regarding the estimated response

10   rate of only 3%–5%, the method of notice, the amount of recovery per class member, and the

11   expansion of the class; however, the answers provided in supplemental briefing provided

12   additional context. Further, the Court will evaluate the Settlement Agreement fully at the hearing

13   for final approval.

14   Based on the foregoing, the Court conditionally certifies the class and provisionally

15   appoints Gutride Safier LLP as Class Counsel and plaintiffs Tamika Miller, Julianne Chuanroong,

16   and Stephanie Allen as class representative(s).

17   III.   PLAN OF NOTICE, ALLOCATION, AND ADMINISTRATION

18         A.   Notice Plan

19   A court must "direct notice [of a proposed class settlement] in a reasonable manner to all

20   class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1). "The class must be

21   notified of a proposed settlement in a manner that does not systematically leave any group without

22   notice." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982).  Adequate

23   notice requires: (i) the best notice practicable; (ii) reasonably calculated, under the circumstances, to

24   apprise the Class members of the proposed settlement and of their right to object or to exclude

25   themselves as provided in the settlement agreement; (iii) reasonable and constitute due, adequate,

26   and sufficient notice to all persons entitled to receive notice; and (iv) meet all applicable

27   requirements of due process and any other applicable requirements under federal law. Phillips

28   Petroleum Co. v. Shutts, 472 U.S. 797, 812 (1985). Due process requires "notice reasonably

United States District Court
Northern District of California

1   calculated, under all the circumstances, to apprise interested parties of the pendency of the action

2   and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr.*

3   *Co.*, 339 U.S. 306, 314 (1950).

4       The parties' proposed notice plan appears to be constitutionally sound in that plaintiffs

5   have made a sufficient showing that it is: (i) the best notice practicable; (ii) reasonably calculated,

6   under the circumstances, to apprise the Class members of the proposed settlement and of their

7   right to object or to exclude themselves as provided in the settlement agreement; (iii) reasonable

8   and constitute due, adequate, and sufficient notice to all persons entitled to receive notice; and (iv)

9   meet all applicable requirements of due process and any other applicable requirements under

10  federal law[4]. The Court encourages the parties to consider additional forms of notice, including but

11  not limited to, social media, text messages, email, and postal mail.

12      The Court approves of the long form Notice of Proposed Class Action Settlement attached

13  as **Exhibit B** to this Order.  The Court also approves the e-mail Notice, **Exhibit C**, and Short-

14  Form Notice (postcard) attached hereto as **Exhibit D**. Taken together these notices are sufficient

15  to inform Class members of the terms of the Settlement Agreement, their rights under the

16  Settlement Agreement, their rights to object to or comment on the Settlement Agreement, their

17  right to receive a payment or opt out of the Settlement Agreement, the process for doing so, and

18  the date and location of the Fairness and Final Approval hearing.  The forms of plan of notice are

19  therefore **APPROVED**.

20      **B.      Plan of Allocation**

21      The Court preliminarily approves the proposed plan of allocation set forth in the Motion

22  and the class notices.

23      In connection therewith, the Court approves the method of claim submission, detailed in

24  the Notices, vis-à-vis the Settlement Website or through U.S. Mail.

25  ───────────────

26  [4] It is of utmost important to consider the demographic of the class and adjust the level of
    readability/comprehensibility of the language used, the size of the font, and presentations in

27  languages other than English. *See Procedural Guidance for Class Action Settlements*, CAND,
    https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/ (rule 3,

28  "NOTICE").

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

### C.     Settlement Administrator

Angeion Group LLC is appointed to act as the Settlement Administrator, pursuant to the terms set forth in the Settlement Agreement.

The Settlement Administrator shall distribute the Class Notice according to the notice plan described in the Settlement Agreement and substantially in the form approved herein, no later than May 7, 2024 ("Notice Date").  Proof of distribution of the Class Notice shall be filed by the parties in conjunction with the motion for final approval.

Defendant directed to provide to the Settlement Administrator the Class members' contact data as specified by the Settlement Agreement no later than April 23, 2024.

### D.     Exclusion/Opt-Out

Any Class Member shall have the right to be excluded from the Class by mailing a request for exclusion to the Settlement Administrator no later than August 13, 2024.  Requests for exclusion must be in writing and set forth the name and address of the person who wishes to be excluded and must be signed by the class member seeking exclusion.  No later than September 17, 2024, Class Counsel shall file with the Court a list of all persons or entities who have timely requested exclusion from the Class as provided in the Settlement Agreement.

Any Class Member who does not request exclusion from the settlement class as provided above shall be bound by the terms and provisions of the Settlement Agreement upon its final approval, including but not limited to the releases, waivers, and covenants described in the Settlement Agreement, whether or not such person or entity objected to the Settlement Agreement and whether or not such person or entity makes a claim upon the settlement funds.

### E.     Objections

Any Class Member who has not submitted a timely request for exclusion from the Settlement Agreement shall have the right to object to (1) the Settlement Agreement, (2) the plan of allocation; and/or Class Counsel's motion for attorneys' fees and Class Representative Awards by mailing to the Settlement Administrator a written objection and stating whether they intend to appear at the Fairness Hearing, as set forth in the Class Notice, no later than August 13, 2024.

Failure to submit a timely written objection will preclude consideration of the Class Member's later objection at the time of the Fairness Hearing.

### F.   Attorneys' Fees and Class Representative Awards

Plaintiff(s) and their counsel shall file their motion for attorneys' fees and for Class Representative awards no later than July 9, 2024. Each settlement class member shall have the right to object to the motion for attorneys' fees and Class Representative awards by filing a written objection with the Court no later than August 13, 2024.

Plaintiffs shall file a reply brief responding to any timely objection no later than September 17, 2024.

### G.   Fairness and Final Approval Hearing

All briefs, memoranda, and papers in support of final approval of the settlement shall be filed no later than July 9, 2024.

The Court will conduct a Fairness and Final Approval Hearing on Tuesday, October 1 at 2:00 p.m., to determine whether the Settlement Agreement should be granted final approval as fair, reasonable, and adequate as to the Class.  The Court will hear all evidence and argument necessary to evaluate the Settlement Agreement and will consider Class Counsel's motion for attorneys' fees and for Class Representative awards.

Class members may appear, by counsel or on their own behalf, to be heard in support of or opposition to the Settlement Agreement and Class Counsel's Motion for attorneys' fees and Class Representative awards by filing a Notice of Intention to Appear no later than September 17, 2024.

The Court reserves the right to continue the date of the final approval hearing without further notice to Class members.

The Court retains jurisdiction to consider all further applications arising out of or in connection with the Settlement.

### H.   Post-Distribution Accounting

If final approval is granted, the parties will be required to file a Post-Distribution Accounting in accordance with this District's Procedural Guidance for Class Action Settlements

and at a date set by the Court at the time of the final approval hearing.  Counsel should prepare accordingly.

| Summary of Key Dates | |
|---|---|
| **Event** | **Date** |
| Class data to be provided to Settlement Administrator | April 23, 2024 |
| Class Notice to be sent by | May 7, 2024 |
| Class Counsel to file their motion for fees and costs and Class Representative awards | July 9, 2024 |
| Motion for Final Approval to be filed by | July 9, 2024 |
| Postmark deadline to submit objection or request for exclusion | August 13, 2024 |
| Class counsel and settlement administrator to submit supplemental statements regarding status of notice program, objections, opt-outs | September 17, 2024 |
| Fairness and Final Approval Hearing | October 1, 2024<br><br>NOTE: Subject to change without further notice to the Class. |

This order resolves 173 and renders ECF 141, 152, 153, 155, 156,  and 157 moot.

**IT IS SO ORDERED.**

Dated: April 9, 2024

TRINA L. THOMPSON
United States District Judge

United States District Court
Northern District of California

# Exhibit A

## Stipulation of Class Action Settlement

This Stipulation of Class Action Settlement ("Agreement") is entered into by and among (a) plaintiffs Tamika Miller, Julianne Chuanroong, and Stephanie Allen (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, (b) claimants Michael Martin and Robert Lawton (collectively, "Proposed Intervenors"), and (c) defendants Travel Guard Group, Inc. ("TGG"), AIG Travel Inc. ("AIG Travel"), and National Union Fire Insurance Company of Pittsburgh, PA ("NUFIC") (each a "Defendant" and collectively, the "Defendants" or "Travel Guard"), by and through their respective undersigned counsel.[1] The Plaintiffs and Defendants are collectively "the Parties" to this Agreement and each is a "Party." Subject to the Court's approval, the Parties hereby stipulate and agree that, in consideration for the promises and covenants set forth in this Agreement, and upon the occurrence of the Effective Date, the Consolidated Action, *Miller* Action, *Allen* Action, and all Claims (all as defined below) shall be fully and finally resolved, settled, and compromised on the terms and conditions set forth below.

## I.      INTRODUCTION

1.1.     Travel Guard sells Travel Guard Plans through multiple channels. Each Travel Guard Plan is sold for a single price that includes both insurance premium and an Assistance Fee.

1.2.     In each of the below Actions, Plaintiffs allege that Defendants violate California or Washington state law by unlawfully, unfairly, and/or deceptively requiring consumers to pay a fee for "non-insurance assistance services" on top of the authorized insurance premium to obtain the insurance they seek with each Travel Guard Plan.

---

[1] All capitalized terms not otherwise separately defined shall have the meaning set forth in Section II.

1.3.     Defendants dispute Plaintiffs' allegations and contend that their conduct was not wrongful in any way and does not give rise to any liability.

**A.     The *Miller* Action.**

1.4.     On December 17, 2021, Plaintiffs Tamika Miller and Julianne Chuanroong filed a class action complaint in the Northern District of California against Defendants (as well as an additional initial defendant, American International Group, Inc.), entitled *Miller et al. v. Travel Guard Group, Inc. et al.*, 3:21-cv-09751. In the *Miller* Action, the California Plaintiffs allege that Defendants violate California law by unlawfully, unfairly, and/or deceptively requiring consumers to pay a fee for "non-insurance assistance services" on top of the authorized insurance premium to obtain the insurance they seek with each Travel Guard Plan. The California Plaintiffs asserted three claims on behalf of themselves, those similarly situated, and the general public: (a) for violations of California's Unfair Competition Law (the "UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*; (b) for violations of California's False Advertising Law (the "FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq.*; and (c) for common law fraud.

1.5.     On July 13, 2022, Judge Vince Chhabria denied Defendants' motion to dismiss the California Plaintiffs' claims but granted Defendants' motion to dismiss American International Group, Inc. for lack of personal jurisdiction. Judge Chhabria also granted Defendants' motion to compel arbitration of the arbitrability of Plaintiff Miller's claims.

1.6.     Following that decision, the *Miller* Action was reassigned from Judge Chhabria to Judge Trina L. Thompson.

1.7.     On July 14, 2022, Plaintiff Miller initiated an arbitration in San Francisco with the American Arbitration Association. Arbitrator Peter Kagel was assigned as the arbitrator. After

receiving briefing, the Arbitrator decided that Miller's claims were not arbitrable. The award finding that Miller's claims were not arbitrable was confirmed by Judge Thompson on June 6, 2023. Defendants appealed the confirmation of the arbitration award in Miller's favor. Defendants' appeal of that confirmation was pending as case number 23-15935 in the Ninth Circuit Court of Appeals but has been administratively closed (subject to reopening) pending this Settlement.

1.8.    In the *Miller* Action, the Parties conducted extensive discovery, secured production of hundreds of thousands of pages of documents and spreadsheets, obtained critical and voluminous information pursuant to interrogatories and stipulations, conducted fifteen depositions, and consulted with experts.

1.9.    Fact discovery closed in the *Miller* Action on September 12, 2023. Expert discovery closed on November 13, 2023. Plaintiffs produced reports from three experts: (a) Gregory Fanoe; (b) Joel Laucher; and (c) J. Michael Dennis. Defendants produced reports from three experts: (a) Lorin Hitt; (b) Robert Hoyt; and (c) Sarah Butler.

1.10.    Plaintiffs Miller and Chuanroong filed a motion for class certification on June 23, 2023. At the same time, Proposed Intervenors Lawton and Martin filed a motion to intervene to be added as plaintiffs and class representatives. Defendants obtained discovery from and took the depositions of California Plaintiffs and Proposed Intervenors. Defendants opposed California Plaintiffs' motion for class certification and filed motions to exclude Plaintiffs' experts Fanoe and Dennis.

1.11.    After briefing and oral argument, Judge Thompson partially granted Plaintiffs' motion for class certification, for the UCL claims only, and denied Defendants' motions to exclude, on September 15, 2023. In its order, the Court certified the following classes:

- 3 -

All natural persons who, using a California address, purchased travel insurance from Defendants at any point from December 17, 2017, until the present, and who were charged a fee for Travel Guard's supposed assistance service on top of the applicable insurance premium rate Defendants were authorized to charge (the "Class").

All Class members who purchased Defendants' travel insurance through a third-party travel retailer's online purchase path (the "Online Purchase Subclass" or "Subclass").

1.12.    The Proposed Intervenors then withdrew their motion to intervene.

1.13.    On October 17, 2023, the California Plaintiffs filed a motion to set an end date for the class period and to approve a class notice plan. On October 18, 2023, Defendants filed a motion to confirm the scope of the class as excluding purchasers subject to Expedia's arbitration agreement or, in the alternative, to decertify that portion of the class. Those motions were fully briefed and the Court determined they were suitable for disposition without oral argument.

1.14.    On November 21, 2023, California Plaintiffs filed a motion for partial summary judgment on Defendants' liability under the UCL's unlawfulness and unfairness prongs and motions to exclude certain testimony and opinions by Defendants' experts Hitt and Hoyt. That same day, Defendants filed a motion for summary judgment and a motion to exclude Plaintiffs' expert Laucher.

1.15.    On December 7, 2023, the California Plaintiffs and Defendants notified the Court that they had accepted a mediator's proposal for a class settlement and would file a motion for preliminary approval.

1.16.    Oral argument on the dispositive motions and *Daubert* motions is scheduled for February 27, 2024, and trial is scheduled for May 28, 2024.

**B.     The *Allen* Action.**

1.17.    On December 23, 2022, Stephanie Allen filed a class action complaint in the Western District of Washington against Defendants, entitled *Allen v. Travel Guard Group Inc. et al.*, No. 3:22-cv-06005. In the *Allen* Action, Plaintiff Allen alleges that Defendants violate Washington law by unlawfully, unfairly, and/or deceptively requiring consumers to pay a fee for "non-insurance assistance services" on top of the authorized insurance premium to obtain the insurance they seek with each Travel Guard Plan. In the *Allen* Action, Plaintiff Allen asserted two claims on behalf of herself, those similarly situated, and the general public: (a) for violation of Washington's Consumer Protection Act (the "CPA"), RCW 19.86.010 *et seq.*; and (b) for breach of Defendants' duty of good faith in insurance matters.

1.18.    On February 2, 2023, Defendants filed a motion to compel arbitration of Plaintiff Allen's claims, which Plaintiff Allen opposed. The Washington Court denied Defendants' motion to compel arbitration of Plaintiff Allen's claims on July 24, 2023.

1.19.    Defendants appealed the denial of their motion to compel arbitration. Defendants' appeal of that order was pending as case number 23-35513 in the Ninth Circuit Court of Appeals, but has been administratively closed (subject to reopening) pending this Settlement. The proceedings in the Washington Court were automatically stayed as a result of Defendants' appeal, and remain stayed.

**C.     Settlement Negotiations.**

1.20.    Throughout the pendency of the Actions, the Parties have zealously litigated their positions. Before entering into this Settlement, the Parties in the *Miller* Action engaged in extensive fact discovery, with much of the discovery elicited in the *Miller* Action providing

information that informed Plaintiffs and their counsel as to the strengths and weaknesses of the claims in the Actions.

1.21.   The Parties also engaged in lengthy settlement discussions before reaching this Settlement. On February 27, 2023, the parties participated in an in-person mediation with Robert A. Meyer of JAMS.  On July 28, 2023, the parties participated in a second mediation by video conference with Hon. Jay C. Gandhi (Ret.) of JAMS. A framework and certain of the material terms were reached on December 7, 2023, after a third mediation effort facilitated by mediator Robert A. Meyer over multiple days.

1.22.   Plaintiffs and Class Counsel have thoroughly investigated the facts and law relating to the class claims and Defendants' defenses in each of the Actions. While Plaintiffs and Class Counsel believe the class claims in the Actions are meritorious, they also recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Consolidated Action and the Actions against Defendants through trial and through appeals. Plaintiffs and Class Counsel also have taken into account the uncertain outcome and risk of any litigation, especially in complex actions such as this Consolidated Action and the Actions, as well as the difficulties and delays inherent in such litigation. Plaintiffs and Class Counsel also considered complexities, weaknesses, and possible defenses to the claims asserted in the Consolidated Action and in the Actions, including but not limited to Defendants' arguments that: certain purchasers of the Travel Guard Plans are subject to arbitration agreements; there is no law, statute or regulation in California or Washington that expressly prohibits the bundling of insurance and non-insurance assistance services; regulators in the applicable regulatory schemes approved Defendants' rates and forms after being informed that the products included bundled assistance

services; courts should defer to the California Department of Insurance and the Washington State Office of the Insurance Commissioner under doctrines such as equitable abstention and primary jurisdiction; class certification cannot be maintained; Defendants provided disclosures to consumers in conjunction with their purchases; Defendants' assistance services are distinct from their insurance coverage(s); there is evidence of customer satisfaction with assistance services contained within Defendants' records; actuarial principles do not govern the pricing of assistance services and Plaintiffs cannot establish a reliable measure of damages or restitution; and there is a longstanding industry-wide practice of bundling of insurance and non-insurance services. Plaintiffs and Class Counsel dispute each of those arguments but recognize that each presents a risk that members of the Settlement Class would obtain no relief or only limited relief in the Actions. Plaintiffs and Class Counsel also recognize there are limited legal precedents regarding their theories that the Assistance Fees should be deemed unlawful agent's fees, unlawful premium, or an unfair practice in the transaction of insurance, and that it is also unclear how a court would resolve significant disputes regarding the proper model of restitution in these circumstances. With all of these factors in mind, Plaintiffs and Class Counsel are confident that the Settlement is fair, reasonable, adequate, and in the best interests of the Settlement Class.

1.23.   The Defendants deny all of the Plaintiffs' claims and theories in the Actions and the Consolidated Action and each Defendant denies any wrongdoing, any liability to the Plaintiff(s) that sued the Defendants or any Settlement Class Member, including any alleged wrongdoing or liability arising out of or relating to any of the conduct, statements, acts, or omissions alleged in the Consolidated Action or in the Action(s) filed against each Defendant. Each Defendant believes there are meritorious defenses and legal challenges to the claims asserted

by the Plaintiffs that sued each Defendant, both in regard to certification as a litigation class and their underlying merits including but not limited to the codification of industry practices of bundling in the Travel Insurance Model Act drafted by the National Association of Insurance Commissioners, the approval of filings with applicable regulators advising of bundled products, the disclosures and information available to customers at the point of sale and thereafter, and the individualized knowledge and experience of consumers purchasing the Travel Guard Plans, among other factors. Each Defendant further denies that it committed any wrongful act or violated any law or duty alleged in the Consolidated Action or in the Action(s) against the Defendant, and contends that it acted in full compliance with the law in connection with each Plaintiff and the Settlement Class. Taking into account the costs, burden, and uncertainty inherent in any litigation, however, each Defendant has concluded that it is desirable and beneficial that the Actions and Consolidated Action be fully and finally settled and terminated in the manner and upon the terms and conditions set forth in this Agreement.

     1.24.   Without any admission or concession on the part of the Plaintiffs as to the lack of merit of the Consolidated Action or the Actions whatsoever and without any admission or concession of liability or wrongdoing or the lack of merit of any defense whatsoever, by any of the Defendants, it is hereby stipulated and agreed by the undersigned, on behalf of Plaintiffs and the Settlement Class, and Defendants, that the Consolidated Action be settled, compromised, released, and dismissed on the merits and with prejudice, subject to the Court's approval as required by Rule 23 of the Federal Rules of Civil Procedure on the following terms and conditions:

## II.   DEFINITIONS

2.1.    As used in this Agreement, including all the attached Exhibits, the terms defined in this Agreement have the meanings below, unless the Agreement expressly provides otherwise. All capitalized terms include the plural as well as the singular. The word "including" has the same meaning as the phrase "including, without limitation" and other similar phrases.

2.2.    "Actions" means the *Miller* Action and *Allen* Action.

2.3.    "Additional Released Claims" means any and all claims, liens, demands, actions, causes of action, rights, duties, obligations, damages or liabilities of any nature whatsoever, whether legal or equitable or otherwise, known or unknown, that actually were, or could have been, asserted in the Actions or the Consolidated Action, whether based upon any violation of any state or federal statute or common law or regulation or otherwise, or arise directly or indirectly out of, or in any way relate to, allegations (a) that Plaintiffs and/or Proposed Intervenors have had in the past or now have against Released Defendants, whether or not related to the Released Claims, on the one hand, and (b) that Released Defendants could have alleged against Plaintiffs and/or Proposed Intervenors in relation to the Actions or the Consolidated Action, on the other hand.

2.4.    "Agreement" means this Stipulation of Class Action Settlement, including all the attached Exhibits, which are an integral part of the Agreement and incorporated in their entirety by reference.

2.5.    "AIG Travel" means AIG Travel, Inc.

2.6.    "*Allen* Action" means the proceedings in *Allen v. Travel Guard Group Inc. et al.*, No. 3:22-cv-06005 (W.D. Wash.) and No. 23-35513 (9th Cir.).

2.7.    "Assistance Fee" means the portion of the total price of a Travel Guard Plan that, according to Travel Guard's records, was charged for the assistance services included with the Travel Guard Plan.

2.8.    "Attorneys' Fees and Expenses" means the attorneys' fees incurred by Class Counsel for their representation of Plaintiffs and the Settlement Class in the Actions and Consolidated Action and the litigation expenses and charges incurred by Class Counsel in connection with the Actions and the Consolidated Action.

2.9.    "Authorized Claimant" means any member of the Settlement Class who submits a timely and valid Claim Form and whose Submitted Claim for recovery has been deemed a Valid Claim pursuant to the terms of the Agreement.

2.10.    "Awarded Attorneys' Fees and Expenses" means the amount of Attorneys' Fees and Expenses awarded by the Court to Class Counsel in connection with the Actions and the Consolidated Action.

2.11.    "CAFA Notice" means the notice of the Settlement to the appropriate federal and state officials, as provided by the Class Action Fairness Act, 28 U.S.C. §1715, *et seq.* ("CAFA").

2.12.     "California Plaintiffs" means Plaintiffs Miller and Chuanroong, collectively.

2.13.    "Cash Payment" means payment made in the form of a paper check, or an electronic payment, including but not exclusive of such methods as Zelle, Paypal, Venmo, or virtual Prepaid Mastercard, from the Net Settlement Fund to an Authorized Claimant pursuant to the procedures set forth herein and/or approved by the Court, if the Settlement receives final approval from the Court and becomes effective as set forth in this Agreement.

2.14.   "Claim Form" means the form, to be prepared by Class Counsel in consultation with the Settlement Administrator and submitted in proposed form to the Court with the proposed Notice Plan, to be completed by a Settlement Class Member and submitted to the Settlement Administrator to seek a Cash Payment.

2.15.   "Claims Deadline" means the date, on or before which a Settlement Class Member must submit a Claim Form to the Settlement Administrator to be considered for a Cash Payment, and which shall be twenty-eight (28) days prior to the initially scheduled Final Approval Hearing or such date otherwise ordered by the Court.

2.16.   "Class Counsel" means attorneys at the law firm Gutride Safier LLP.

2.17.   "Class Period" means from December 17, 2017, through and including January 18, 2024.

2.18.   "Class Representatives" means Plaintiffs.

2.19.   "Consolidated Action" means the action as it will exist upon the contingent filing of a consolidated complaint for settlement purposes only to be filed in the *Miller* Action pending in the United States District Court for the Northern District of California.

2.20.   "Court" means the United States District Court for the Northern District of California, the Honorable Trina L. Thompson presiding over the *Miller* Action.

2.21.   "Defendants" and "Travel Guard" mean, collectively, TGG, AIG Travel, and NUFIC.

2.22.   "Defendants' Counsel" shall mean the following counsel of record for Defendants: O'Melveny & Myers LLP (for all Defendants in the Actions).

2.23.    "Effective Date," or the date upon which this Settlement becomes "effective," means the later of: (i) the expiration date of the time for filing a notice of appeal from the Final Approval Order, if no notice of appeal of the Final Approval Order is filed by that date; or (ii) if a notice of appeal is filed, but the Final Approval Order is affirmed or the appeal is dismissed, the date upon which the Court of Appeals issues the mandate.

2.24.    "Email Notice" means a notice by email of the Settlement, substantially in the form attached hereto as Exhibit B, to be sent to Settlement-Notice Class Members as set forth in the Notice Plan, with such modifications as the Court may order or to which the Parties may agree consistent with the Order Granting Preliminary Approval.

2.25.    "Escrow Account" means an interest-bearing account into which the Settlement Amount shall be transferred that is subject to the oversight and control of the Settlement Administrator.

2.26.    "Exhibits" means the exhibits attached to this Agreement.

2.27.    "Excluded Persons" means (a) each and every presiding District Judge and Magistrate Judge in the Actions, Judge Gandhi (Ret.), Robert A. Meyer, and their staff, and their immediate family members; (b) the officers, directors, agents, servants, and current and former employees of Defendants who were employed by Defendants at any time on or after the start of the Class Period, and the immediate family members of such Persons; and (c) any Person who received a complete refund for each and every Qualifying Travel Guard Plan purchased by that Person.

2.28.    "Exclusion/Objection Deadline" means the deadline by which Settlement-Notice Class Members must submit objections to the Settlement or requests to be excluded from the

Settlement, subject to the terms set forth in the Preliminary Approval Order, and which shall be twenty-eight (28) days prior to the initially scheduled Final Approval Hearing or such date otherwise ordered by the Court.

2.29. "Final Approval Hearing" means the hearing held by the Court to determine whether to finally approve this Agreement as fair, reasonable, and adequate.

2.30. "Final Approval Order" means the order granting final approval of the Settlement, which the Parties shall ask the Court to enter at the Final Approval Hearing.

2.31. "Incentive Awards" means the Court-approved awards to Plaintiffs in recognition of their time and effort in pursuing the Consolidated Action, fulfilling their obligations and responsibilities as class representatives, and agreeing to the Additional Releases.

2.32. "Initial Settlement Administration Payment" means the initial payment of Notice and Administration Expenses that can be paid from the Settlement Fund prior to the Effective Date and without further order of the Court in the amount of $450,000.00, which can be modified by agreement of Class Counsel and Defendants' Counsel if necessary to successfully effect the Notice Plan or by Court order. The Initial Settlement Payment shall be increased or supplemented prior to the Effective Date to cover the cost of postage for mailed Postcard Notices to the extent those costs exceed $110,000.00.

2.33. "Long-Form Notice" means the notice of the Settlement, substantially in the form attached hereto as Exhibit A, that the Settlement Administrator shall make available on the Settlement Website, with such modifications as the Court may order or to which the Parties may agree consistent with the Order Granting Preliminary Approval.

2.34.    "*Miller* Action" means the proceedings in *Miller et al. v. Travel Guard Group, Inc. et al.*, 3:21-cv-09751 (N.D. Cal.) and No. 23-15935 (9th Cir.).

2.35.    "Net Settlement Fund" means the Settlement Fund less all Notice and Administration Expenses (inclusive of the expenses incurred and a reserve of the estimated expenses the Settlement Administrator expects to incur to complete its duties under this Settlement Agreement), Taxes and Tax Expenses (inclusive of a reserve of the estimated Taxes and Tax Expenses the Settlement Administrator expects to incur), Awarded Attorneys' Fees and Expenses, Incentive Awards, payments to Proposed Intervenors, and any other Court-approved deductions.

2.36.    "Notice and Administration Expenses" means the actual and direct costs reasonably charged by the Settlement Administrator for its services as provided for in this Agreement.

2.37.    "Notice Date" means the deadline by which the Settlement Administrator must begin sending Email Notices and Postcard Notices (with the distribution of Email Notices and Postcard Notices to be conducted as provided in the Notice Plan), and launch the Settlement Website. The Parties shall request that the Court set the Notice Date to be the later of twenty-one (21) calendar days from Defendants' delivery of the data referenced in Paragraph 4.4.1 or thirty (30) calendar days after entry of the Order Granting Preliminary Approval.

2.38.    "Notice Plan" means the plan of notice, approved by the Court, for notifying members of the Settlement-Notice Class of their rights under this Settlement.

2.39.    "NUFIC" means National Union Fire Insurance Company of Pittsburgh, PA.

2.40.    "Order Granting Preliminary Approval" or "Preliminary Approval Order" means the order to be entered by the Court directing notice of the Settlement to Settlement-Notice Class Members and preliminarily approving this Settlement, among other things.

2.41.   "Parties" means the Plaintiffs, Proposed Intervenors, and Defendants, collectively, as each of those terms is defined in this Agreement. "Party" means any one of Plaintiffs, Proposed Intervenors, or Defendants.

2.42.   "Person" means an individual, corporation, limited liability corporation, professional corporation, partnership, limited partnership, limited liability partnership, association, joint stock company, joint venture, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity, and including any of their heirs, successors, representatives, or assignees.

2.43.   "Plaintiffs" means Tamika Miller, Julianne Chuanroong, and Stephanie Allen, who shall seek to be appointed class representatives of the Settlement-Notice Class and Settlement Class.

2.44.   "Postcard Notice" means the notice of the Settlement, substantially in the form attached as Exhibit C to this Agreement, to be sent to some Settlement-Notice Class Members as set forth in the Notice Plan, with such modifications as the Court may order or to which the Parties may agree consistent with the Order Granting Preliminary Approval.

2.45.   "Preliminary Approval Hearing" means the hearing held by the Court to determine whether to preliminarily approve this Agreement as likely to be found as fair, reasonable, and adequate at Final Approval and to direct notice of the Settlement to Settlement-Notice Class Members.

2.46.   "Proposed Intervenors" means Michael Martin and Robert Lawton.

2.47.   "Qualifying Travel Guard Plan" means any Travel Guard Plan purchased during the Class Period by a Person who, for that purchase, was charged a single plan price that included

Assistance Fees and who provided a billing address in the State of California or the State of Washington, or, where no billing address is identified in Travel Guard's records, the Travel Guard Plan identified the insured as having a California or Washington address.

2.48.   "Released Claims" means any and all claims and causes of action of every nature and description, whether known or unknown, whether arising under federal, state, common, or foreign law, based in law or equity, that have been brought or that could have been brought in the Consolidated Action and each Action and that arise out of or relate to the allegations that sales of Qualifying Travel Guard Plans were unlawful, unfair, falsely advertised, or deceptive with respect to the marketing, offering, solicitation, pricing, sale, accessibility, availability, and/or payment of Assistance Fees for the assistance services included in (a) the Qualifying Travel Guard Plans or (b) any regulatory filing seeking approval for the rates and forms for Qualifying Travel Guard Plans. The Released Claims include without limitation claims under the unlawful, unfair, and fraudulent prongs of California's Unfair Competition Law ("UCL"), including UCL "unlawful" claims based on alleged violations of Cal. Ins. Code § 1861.01(c), Cal. Ins. Code § 1861.05, Cal. Ins. Code § 381, Cal. Ins. Code § 332, Cal. Ins. Code § 790.02, Cal. Code Regs. Tit. 10, §§ 2189.3 and 2189.5, or any other California insurance statute or regulation; Business and Professions Code § 17200, *et seq.*; claims under California's False Advertising Law ("FAL"), Business and Professions Code § 17500, *et seq.*; and common law fraud, deceit, or misrepresentation. The Released Claims include a waiver, to the fullest extent permitted by law, of the provisions, rights, and benefits of California Civil Code § 1542, and any similar state, federal or foreign law or principle of common law, at law or in equity, which may have the effect of limiting the Released Claims. The Released Claims shall not release any Settlement Class Member's: (i) claim(s) for

personal injury against Defendants or the Released Defendants; (ii) claim(s) for insurance coverage under any Travel Guard Plan or relating to Defendants' failure to properly provide insurance coverage, to properly provide particular assistance benefits in a particular case, or to comply with applicable law in administering claims for insurance coverage or benefits; (iii) claim(s) arising from the purchase of any Travel Guard Plan after January 18, 2024; or (iv) right(s) to enforce this Agreement.

2.49.   "Released Defendants" means each and all of the Defendants and Defendants' Counsel, and, to the fullest extent permissible under law, each of their assignees, successors, predecessors, direct or indirect subsidiaries, direct or indirect parent companies, divisions, or affiliates, and all of their respective current and former officers, directors, controlled Person(s), attorneys, employees, agents, servants, insurers or underwriters.

2.50.   "Releasing Plaintiffs" means Plaintiffs and Proposed Intervenors, and any Person claiming derivative rights of a Plaintiff or Proposed Intervenor as such Plaintiff's or Proposed Intervenor's spouse, parent, child, family member, heir, guardian, attorney, agent, administrator, executor, trust, estate, devisee, predecessor, successor, assignee, assigns, representative of any kind or anyone claiming injury on a Plaintiff's or Proposed Intervenor's behalf.

2.51.   "Releasing Settlement Class Members" means Settlement Class Members, any Person claiming derivative rights of any Settlement Class Member as such Settlement Class Member's spouse, parent, child, family member, heir, guardian, attorney, agent, administrator, executor, trust, estate, devisee, predecessor, successor, assignee, assigns, representative of any kind, or anyone claiming injury on any Settlement Class Member's behalf.

2.52.   "Settlement" means the terms embodied by this Agreement.

DocuSign Envelope ID: 98B007B7-3C97-4C2A-8B3F-75A358500464

2.53.   "Settlement Administrator" means Angeion Group, subject to approval by the Court, a third-party agent that will provide services in the administration of this Settlement, including providing notice to Class Members, the processing and evaluation of Submitted Claims, and the processing of other documents or tasks as provided for in this Agreement or as otherwise agreed to by the Parties or as ordered by the Court.

2.54.   "Settlement Amount" means the total amount of twenty-three million nine hundred ninety-seven thousand five hundred dollars ($23,997,500.00), to be paid by Defendants as set forth in Section VIII.A of this Agreement.

2.55.   "Settlement Class" and "Settlement Class Members" mean Settlement-Notice Class Members who do not timely and properly exclude themselves from the Settlement Class as provided in Section VII.C of this Agreement.

2.56.   "Settlement Fund" means the Settlement Amount, plus all accrued interest, which may be reduced by payments or deductions as provided in this Agreement or by Court order. The Settlement Fund is intended to be a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1, to the fullest extent possible.

2.57.   "Settlement-Notice Class Member(s)" means all Persons, except Excluded Persons, who purchased at least one Qualifying Travel Guard Plan from December 17, 2017, through and including January 18, 2024. If Travel Guard's records contain contact information for an insured under a Qualifying Travel Guard Plan and do not contain separate contact information for any purchaser distinct from the insured for that Qualifying Travel Guard Plan, and if the Settlement Administrator does not receive information prior to the Claims Deadline identifying an actual purchaser different from the insured Person whose contact information is identified in Travel

Guard's records for the Qualifying Travel Guard Plan, then the insured is the Settlement-Notice Class Member for that Qualifying Travel Guard Plan.

2.58.   "Settlement Website" means an internet website created and maintained by the Settlement Administrator consistent with the entry of the Preliminary Approval Order to provide information regarding the Settlement and where Settlement-Notice Class Members can obtain information concerning requesting exclusion from or objecting to the Settlement and/or can submit a Claim Form.

2.59.   "Submitted Claim" means a request for a Cash Payment pursuant to this Settlement submitted on a Claim Form by a Settlement Class Member to the Settlement Administrator in accordance with the terms of this Settlement.

2.60.   "Tax" or "Taxes" mean any and all taxes, fees, levies, duties, tariffs, imposts, and other charges of any kind (together with any and all interest, penalties, additions to tax and additional amounts imposed with respect thereto) imposed by any governmental authority with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon Released Defendants and Settlement Class Members or their respective counsel with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes.

2.61.   "Tax Expenses" means reasonable expenses and costs incurred by the Settlement Administrator in connection with the calculation of Taxes, filing and handling of Tax returns, and payment of Taxes pursuant to Section VIII.D of this Agreement, including, without limitation,

expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing, or failing to file, Tax returns by the Settlement Administrator.

2.62.    "TGG" means Travel Guard Group, Inc.

2.63.    "Travel Guard Plan(s)" means any travel or event protection plan that included insurance coverage and non-insurance assistance services, that was sold by Travel Guard, and where the plan price, according to Travel Guard's records, included Assistance Fees and insurance premium.

2.64.    "Unknown Claims" means any of the Released Claims that any Plaintiff or Settlement Class Member does not know or suspect to exist in his or her favor at the time of the Effective Date, which, if known by him or her, might have affected his or her settlement with and release of the Released Defendants, or might have affected his or her decision not to object to this Settlement or seek exclusion from this Settlement. This Release of Unknown Claims includes a waiver, to the fullest extent permitted by law, of the provisions, rights, and benefits of California Civil Code § 1542, and any similar state, federal or foreign law or principle of common law, at law or in equity, which may have the effect of limiting the releases.

2.65.    "Valid Claim" means a Submitted Claim submitted by a Settlement Class Member in compliance with Section VII of this Agreement and approved by the Settlement Administrator.

2.66.    "Washington Court" means the United States District Court for the Western District of Washington the Honorable Benjamin H. Settle presiding, or whomever may be subsequently assigned to the *Allen* Action.

## III.  CONDITIONAL AGREEMENT FOR SETTLEMENT PURPOSES ONLY

3.1.   This Agreement is for settlement purposes only, and neither the fact of, nor any provision contained in, this Agreement, nor any action taken hereunder, shall constitute, be construed as, or be admissible in evidence as an admission of: (1) the validity of any claim or allegation by Plaintiffs, or any Settlement Class Member, or of any defense asserted by Defendants, in the Consolidated Action, the Actions, or any other action or proceeding; (2) any wrongdoing, fault, violation of law, or liability of any kind on the part of any Party, Settlement Class Member or their respective counsel; or (3) the propriety of class certification in the Actions, or any other action or proceeding other than a conditional settlement class in the Consolidated Action.

3.2.   All terms set forth in the Settlement Agreement are subject to Court approval. The Parties stipulate to certification of the Settlement-Notice Class and Settlement Class only for purposes of the Settlement. The parties have stipulated to allow Plaintiffs to file a consolidated complaint in the Consolidated Action and to request approval of the Settlement Agreement and for conditional class certification solely for purposes of effectuating the Settlement. If, for any reason, the Settlement is not approved, or is modified as addressed in Section XIV, the Stipulation for Settlement and conditional certification will be void or voidable as expressly set forth in Section XIV. Defendants' agreement to conditional certification of the Settlement Class for settlement purposes only (and any statements or submissions made by the Parties in connection with seeking the Court's approval of this Settlement) is not an admission that class certification is proper under the standard applied to contested certification motions and the Parties agree that the Settlement, Plaintiffs' application to the Court for approval of the Settlement and for conditional class

certification, and any other related court filings by any Party, will not be admissible in the *Miller* Action or *Allen* Action, or any other legal proceeding, as evidence that: (i) a class should be certified or maintained; (ii) representative treatment is appropriate; (iii) venue is appropriate in this jurisdiction as to all Defendants; (iv) the exercise of personal jurisdiction by this Court over the claims asserted against all Defendants is appropriate; or (v) any of the Defendants are liable to any of the Plaintiffs or any of the Settlement-Notice Class Members.

3.3.    For purposes of settlement approval, the Parties agree that, pursuant to a stipulation of the Parties: Plaintiffs will file an amended, consolidated complaint in the *Miller* Action  adding Plaintiff Allen's claims to the *Miller* Action for settlement purposes only.

## IV.    NOTICE OF THE SETTLEMENT

4.1.    The Parties have filed a Notice of Settlement in the *Miller* Action. Class Counsel shall file a motion for approval of this Settlement along with this Agreement and its Exhibits seeking a Preliminary Approval Order.

4.2.    The Parties acknowledge and agree that the proposed Notice Plan set forth in the motion for approval of the Settlement is the best notice practicable under the circumstances of this case and that the Notice Plan comports with the requirements of due process.

4.3.    **CAFA Notice.** Not later than ten (10) calendar days after the filing of this Agreement and the motion for approval of the Settlement with the Court, the Settlement Administrator on behalf of Defendants' Counsel shall serve notice of the proposed Settlement upon the appropriate federal and state officials, as provided by CAFA. The Parties agree that, pursuant to CAFA, the CAFA Notice shall be served on the Attorneys General and Insurance Commissioners for California and for Washington.

4.4.    For purposes of effectuating the Notice Plan and the administration of Submitted Claims, Travel Guard shall provide data regarding Settlement-Notice Class Members to the Settlement Administrator as follows:

4.4.1.    Within thirty (30) calendar days after the filing of this Agreement and the motion for approval of the Settlement with the Court, or on such date otherwise ordered by the Court, Travel Guard shall provide the Settlement Administrator with an electronic list that includes the following information with respect to each Settlement-Notice Class Member: (i) first and last name; (ii) email address; (iii) mailing address; and (iv) the date(s) that the Settlement-Notice Class Member purchased each Qualifying Travel Guard Plan; and (v) the amount the Settlement-Notice Class Member paid in Assistance Fees in connection with each Qualifying Travel Guard Plan.

4.4.2.    Travel Guard agrees to utilize reasonable efforts to provide accurate data to the Settlement Administrator pursuant to Paragraphs 4.4.1 and 7.8, which the Settlement Administrator will rely upon in administering the Notice Plan, validating Submitted Claims, and making Cash Payments pursuant to this Agreement. No later than fourteen (14) calendar days before the Final Approval Hearing, Travel Guard will file a sworn declaration summarizing the types of data Travel Guard provided to the Settlement Administrator and the efforts Travel Guard made to provide accurate data to the Settlement Administrator.

4.5.    **Settlement Administrator Duties Regarding Class Notice.** Class Counsel and the Settlement Administrator shall propose a Notice Plan with the motion for approval of the Settlement. The Settlement Administrator shall: disseminate the Email Notice and Postcard

Notice; disseminate any further notices or reminders deemed to be appropriate or necessary in the judgment of the Administrator, after consultation with Class Counsel and Defendants' Counsel; establish the Settlement Website; establish a post-office box for the receipt of any Settlement-related correspondence; establish a toll-free telephone number that will provide automated Settlement-related information to Settlement-Notice Class Members; respond to inquiries or requests from Settlement-Notice Class Members; and respond to inquiries or requests from Class Counsel, Defendants' Counsel, and the Court. The Notice Plan shall be implemented in accordance with all the terms of the Court's Order granting Preliminary Approval.

4.6.    If any of the Defendants receive inquiries by telephone or email from their customers about the Settlement, they shall engage in reasonable efforts to direct customers to the Settlement Website and the toll-free telephone number that will provide automated Settlement-related information.

4.7.    No later than seven (7) calendar days before the Final Approval Hearing, or by any deadline set by the Court, the Settlement Administrator shall certify to the Court that it has complied with the Notice Plan approved by the Court and shall provide a declaration which includes the following information: sample copies of the Long Form Notice, Email Notice, and Postcard Notice; the number of delivered and undeliverable Email Notices and Postcard Notices; the number of Authorized Claimants that submitted Valid Claims; the number of Settlement-Notice Class Members who elected to opt out of the Settlement Class; and the number of Settlement Class Members who objected to the Settlement.

4.8.    Counsel for the Parties shall supervise the Settlement Administrator in the performance of the notice functions set forth in this Section.

4.9.    The Settlement Administrator shall have the responsibility to receive and maintain any Settlement-Notice Class Member correspondence, including inquiries, Claim Forms, requests for exclusion, and/or objections to the Settlement. The Settlement Administrator shall also forward written inquiries to Class Counsel or its designee for a response, if warranted, and shall simultaneously provide copies of all such documents to Defendants' Counsel.

## V.    POST-DISTRIBUTION ACCOUNTING

5.1.    Upon completion of the implementation and administration of the Settlement, the Settlement Administrator shall provide a declaration for filing with the Court containing the post-distribution information identified in the Court's Procedural Guidance for Class Action Settlements regarding "Post-Distribution Accounting."

## VI.    CASH PAYMENTS TO SETTLEMENT CLASS MEMBERS

6.1.    The Net Settlement Fund shall be distributed, as Cash Payments, among all Authorized Claimants in proportion to the amount of Assistance Fees paid by each Authorized Claimant for Qualifying Travel Guard Plans, as reflected in Travel Guard's records provided to the Settlement Administrator, relative to the total amount of Assistance Fees paid by all Authorized Claimants.

6.2.    Cash Payments for all Valid Claims will be sent to Authorized Claimants within forty-five (45) calendar days after the Effective Date or as otherwise agreed by the Parties or ordered by the Court. Cash Payments shall be distributed electronically/digitally or by checks mailed to the Authorized Claimants, in accordance with Paragraph 7.6. Checks must be negotiated within 120 days of issuance or they shall be void.

- 25 -

## VII.   CLAIMS PROCESS AND ADMINISTRATION

7.1.     Subject to the supervision and direction of the Court, the Settlement Administrator will process Submitted Claims, including: (a) calculation of Cash Payments to be paid for Valid Claims based on Travel Guard's records; (b) validation of Claim Forms and approval of payment of Cash Payments; (c) distribution of Cash Payments from the Net Settlement Fund; (d) calculation and distribution of any residual to Authorized Claimants or to the *cy pres* recipient, if necessary, in accordance with Paragraph 8.3; and (e) preparation and dissemination of reports, on a monthly or other periodic basis and as requested, to Class Counsel and Defendants' Counsel regarding the status of the processing of Submitted Claims and of Cash Payments.

7.2.     The Settlement Administrator shall provide reports to Class Counsel or Defendants' Counsel, upon request, with respect to Notice Plan implementation, CAFA Notice, opt-outs, objections, Submitted Claims, Valid Claims, inquiries from Settlement-Notice Class Members, and costs incurred by the Settlement Administrator.

### A.     Submitting and Validating Claims.

7.3.     Every Settlement Class Member shall have the right to submit a Claim Form to obtain a Cash Payment. A Submitted Claim shall be a Valid Claim only if submitted on the Claim Form pursuant to, and in compliance with, the procedures set forth herein. Each Settlement Class Member who wishes to submit a claim shall individually submit a claim using the procedures specified in the Long-Form Notice. Other than a guardian acting on behalf of another individual, or a duly authorized legal representative, no Person may submit a claim on behalf of any other Person. For clarity, claims submitted by third-party claims aggregators shall not be accepted by the Settlement Administrator.

7.4.     At the election of the Settlement Class Member, Claim Forms may be submitted on paper via first class mail or online at the Settlement Website. For Claim Forms that are submitted online, the Settlement Class Member shall be sent an email confirmation of the Submitted Claim that shows the information entered and the date and time the Claim Form was submitted. Claim Forms must be postmarked or submitted online no later than the Claims Deadline, and Claim Forms submitted or postmarked after that date will not be Valid Claims, unless (a) the Claim Form is received within ten (10) days of the Claims Deadline and (b) Class Counsel and the Settlement Administrator agree that it is clear the Settlement Class Member made a reasonably diligent effort to submit a timely Claim Form but encountered a technical obstacle.

7.5.     On the Claim Form, the Settlement Class Member must certify the truth and accuracy of the following under the penalty of perjury, including by signing the Claim Form physically or by e-signature, or the Submitted Claim will not be considered a Valid Claim: (a) the Settlement Class Member's name; (b) the Settlement Class Member's mailing address (if included); (c) the Settlement Class Member's email address (if included); (c) certification that the Settlement Class Member is not an Excluded Person; and (d) any additional information provided by the Settlement Class Member for purposes of electronic payment (if included).

7.6.     Settlement Class Members shall have the option to designate the manner of distribution of their Cash Payments by selecting payment by paper check or electronic/digital payment (such as by prepaid virtual credit card, Zelle, PayPal, or other electronic means). If no specific payment method is selected on the Claim Form, the Settlement Class Member shall be paid by check.  If selecting payment method by electronic/digital means, the Settlement Class Member must provide complete information to allow payment to be made by that electronic/digital

DocuSign Envelope ID: 98B007B7-3C97-4C2A-8B3F-75A358500451

means and if not provided or incomplete, the Settlement Administrator may seek additional payment information from the Authorized Claimant or payment will be made by check.

7.7. After the Claims Deadline, the Settlement Administrator shall identify all Valid Claims pursuant to Paragraphs 7.3 to 7.11 herein. In administering the claims process, the Settlement Administrator shall act in good faith and make reasonable efforts to determine whether a Submitted Claim is a Valid Claim and payable in accordance with this Agreement and any Court order, and shall promptly seek any supplemental data needed from Travel Guard to validate Claim Forms received and to identify the amount each Settlement Class Member paid for Assistance Fees in connection with each Qualifying Travel Guard Plan. The Settlement Administrator's determination shall be based on: (a) the information provided on the Claim Form; and (b) the records provided by Travel Guard. The validity of a Claim Form and amount of any Cash Payment will be assessed by the Settlement Administrator based on the totality of the information and documentation.

7.8. Immediately following the expiration of the Claims Deadline, the Settlement Administrator shall submit any request for supplemental data to Travel Guard (if not already provided) needed by the Settlement Administrator to validate Claim Forms received and to identify the amount each Settlement Class Member paid for Assistance Fees in connection with each Qualifying Travel Guard Plan. Within fourteen (14) calendar days of the Claims Deadline, Travel Guard shall provide any such supplemental data.

7.9. The Settlement Administrator shall have the right to contact Settlement Class Members to complete or validate their Claim Forms. If a timely Claim Form is rejected by the Settlement Administrator as deficient or invalid (for example, the Settlement Class Member failed

- 28 -

to fill out portions of the Claim Form, failed to sign or electronically sign the Claim Form, or is not eligible for some or all of the amounts claimed), the Settlement Administrator shall notify the relevant Settlement Class Member by email or, if only a mailing address is available for a Settlement Class Member, by mail. Such Settlement Class Members shall be permitted to try to cure any deficiencies with their Submitted Claims, or to produce any supporting information or documentation requested by the Settlement Administrator or that the Settlement Class Member believes will establish the validity of a Submitted Claim, on or before the deadline identified in the deficiency/rejection notice sent by the Settlement Administrator, which shall not be later than fourteen (14) days from the later of the Claims Deadline or the date of the deficiency/rejection notice.

7.10.   The Settlement Administrator will evaluate any additional information or documentation submitted by the Settlement Class Member, consult with Class Counsel, and then decide whether the Claim Form should be accepted and/or if the amount of any Cash Payment should be adjusted.

7.11.   The determination by the Settlement Administrator will be final and binding, and the Settlement Administrator will notify the Settlement Class Member of the final determination as to his or her dispute.

7.12.   Any Settlement Class Member who fails to timely submit a Valid Claim by the Claims Deadline or by the additional timelines allowed for curing deficiency or objecting to the decision of the Settlement Administrator shall be forever barred from receiving any Cash Payment, payment, or other monetary relief pursuant to this Agreement, but will in all other respects be

subject to and bound by the provisions of this Agreement, the releases (as described in Section XIII in this Agreement), and the Final Approval Order.

7.13.   No Person shall have any claim against Plaintiffs, Class Counsel, Defendants, Defendants' Counsel, or the Settlement Administrator, or any other Person designated by Class Counsel, based on the amount of a Cash Payment, or the determination, calculation, or distribution of a Cash Payment, made substantially in accordance with this Agreement and the Settlement set forth in this Agreement or further order(s) of the Court.

7.14.   Released Defendants and their counsel shall have no responsibility for, interest in, or liability whatsoever with respect to the amount or calculation of any Cash Payment, the determination, distribution, or administration of any Cash Payment, or the Settlement Fund, the payment or withholding of Taxes or Tax Expenses, any claims or losses incurred in connection with such matters, or the handling, use, or security of Settlement Class Member data following delivery of the data to the Settlement Administrator. Plaintiffs, Settlement Class Members, Class Counsel, and the Settlement Administrator, hereby release Released Defendants from any and all liability and claims arising from or with respect to the administration, investment, or distribution of the Settlement Fund, and the handling, use or security of Settlement Class Member data following delivery of the data to the Settlement Administrator. Notwithstanding the foregoing, Defendants shall reasonably cooperate in providing records in its possession necessary to: (a) ascertain Settlement-Notice Class Members' email addresses and mailing addresses; and (b) calculate the amount of Cash Payments.

**B.     Objections.**

7.15.    If any Settlement Class Member wishes to object to the Settlement and/or to be heard at the Final Approval hearing, the Settlement Class Member must submit a written notice of objections, in compliance with the requirements set forth in the Long Form Notice and the Preliminary Approval Order. Written notices of objections may be submitted by filing them electronically, by mailing them to the Clerk of Court, United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94102, or by filing them in person at any location of the United States District Court for the Northern District of California

7.16.    If any objection is received by the Settlement Administrator, the Settlement Administrator shall forward the objection and all supporting documentation to counsel for the Parties. At least fourteen (14) days prior to the Final Approval Hearing or by any alternative deadline set by the Court, Class Counsel shall file with the Court all such objections and supporting documentation that were postmarked or submitted by the Exclusion/Objection Deadline.

7.17.    Objections must be postmarked or filed with the Court by the Exclusion/Objection Deadline. The failure of the Settlement Class Member to satisfy the Exclusion/Objection Deadline or to comply with the requirements for objections set forth in the Long Form Notice and the Preliminary Approval Order shall be grounds for striking and/or overruling the objection.

7.18.    A Settlement Class Member who objects to the Settlement may also submit a Claim Form on or before the Claims Deadline, which shall be processed in the same way as all other Claim Forms. A Settlement Class Member shall not be entitled to an extension to the Claims Deadline merely because the Settlement Class Member has also submitted an objection.

## C. Exclusions.

7.19.    If any Settlement-Notice Class Member wishes to be excluded from this Settlement and the Settlement Class, the Settlement-Notice Class Member may do so by completing and submitting the online form at the Settlement Website or by mailing a valid request to opt out, as described in the Long Form Notice, to the Settlement Administrator. Requests to exclude must be submitted online or postmarked by the Exclusion/Objection Deadline, or they shall not be valid. For exclusion requests that are submitted online, the Settlement-Notice Class Member shall have the opportunity to print a page immediately after submission showing the information entered and the date and time the request for exclusion was received. A Settlement-Notice Class Member who elects to opt out of this Settlement and the Settlement Class shall not be permitted to object to this Settlement or receive any of the benefits of the Settlement. Settlement-Notice Class Members shall be encouraged, but not required, to provide their email addresses in their requests for exclusion.

7.20.    If a Settlement-Notice Class Member submits both a Claim Form and an exclusion request, the Claim Form shall take precedence and be considered valid and binding, and the exclusion request shall be deemed to have been sent by mistake and rejected.

7.21.    At least fourteen (14) days prior to the Final Approval Hearing or by any alternative deadline set by the Court, the Settlement Administrator shall prepare a list of the names of the Persons who have excluded themselves from the Settlement Class in a valid and timely manner, and Class Counsel shall file that list with the Court with service on Defendants' Counsel.

7.22.    The Court retains the ongoing and exclusive jurisdiction and independent case management authority regarding the general operation of the Settlement Administration and those appointed to implement and oversee it.

## VIII.  SETTLEMENT FUND

### A.  The Settlement Amount and the Escrow Account.

8.1.    Travel Guard Group, Inc. shall pay, deposit, or otherwise transfer into the Escrow Account the full Settlement Amount, Twenty-Three Million Nine Hundred Ninety-Seven Thousand Five Hundred Dollars ($23,997,500.00) (USD) within twenty-one (21) calendar days after the entry of the Preliminary Approval Order. Class Counsel or the Settlement Administrator shall provide Defendants' Counsel with complete wiring instructions to make the payment and an executed for W-9 to the payee of the Settlement Amount by the date of the hearing for Preliminary Approval to allow Travel Guard Group, Inc. to make the necessary transfers under the time period above.

### B.  Payment Priority.

8.2.    The Settlement Fund shall be applied as follows:

8.2.1.    The Settlement Administrator shall pay the Initial Settlement Administration Payment to itself and, for purposes of calculating or estimating the Net Settlement Fund and Cash Payments, shall reserve an amount sufficient to pay further reasonably expected Notice and Administration Expenses. After the Effective Date, Class Counsel may direct payment of all further Notice and Administration Expenses, regardless of amount, from the Settlement Fund without further order of the Court. In the event this Agreement is terminated or approval of the Settlement is not granted, the Settlement Administrator shall be entitled to retain and/or recover from the Settlement Fund, either upon application

to the Court or with informed, written approval by Travel Guard, its actual incurred Notice and Administration Expenses only, even if in excess of the Initial Settlement Administration Payment. All remaining funds shall revert to Travel Guard, as set forth in Paragraph 14.3(j). This includes any interest accrued and any amounts that the Settlement Administrator was reserving or designating for costs of administration not actually incurred. Any tax obligations for funds returned would be the obligation of the Settlement Administrator.

8.2.2.   The Settlement Administrator shall reserve an amount sufficient to pay Taxes and Tax Expenses, and shall pay Taxes and Tax Expenses at appropriate times thereafter, as described below in Section VIII.D.

8.2.3.   The Settlement Administrator shall pay to Class Counsel, pursuant to payment instructions provided by Class Counsel, Awarded Attorneys' Fees and Expenses, Incentive Awards, and the payments to Proposed Intervenors Lawton and Martin (pursuant to paragraph 11.6), no later than five (5) calendar days after the Effective Date.

8.2.4.   Within forty-five (45) calendar days after the Effective Date, or as otherwise agreed by the Parties or as otherwise ordered by the Court, the Settlement Administrator shall pay Cash Payments due to Authorized Claimants.

8.2.5.   The balance of the Settlement Fund shall be distributed as described in Paragraph 8.3.

### C.    Residual Distribution.

8.3.    If, 121 days after the date of the last Cash Payment, there is a balance in the Net Settlement Fund after payment of all items listed in Paragraphs 8.2.1 through 8.2.4, including balances left from reserves pursuant to Paragraph 8.2.1 after payment of all Notice and Administration Expenses and from reserves pursuant to Paragraph 8.3.2 after payment of all Taxes and Tax Expenses, then the Settlement Administrator shall distribute the remaining amount in the Net Settlement Fund in equal amounts to all Class Member who cashed their original paper check or received payment through electronic means provided that the amount remaining in the Net Settlement Fund is sufficient to pay for the costs of the redistribution and to ensure that all Class Members receiving a redistribution would receive at least five dollars ($5.00) after accounting for such costs. Such redistribution payments will be made using the same method used to distribute Cash Payments to these Settlement Class Members. Should the amounts remaining in the Net Settlement Fund be insufficient to satisfy the above criteria, or should amounts remain in the Net Settlement Fund even after redistribution, the Settlement Administrator shall donate any residual amounts left in the Net Settlement Fund to the *cy pres* recipient, Travelers Aid International. The Parties agree that the Court shall retain jurisdiction over the distribution of any balance in the Net Settlement Fund described in this paragraph and that any exercise of the Court's discretion with regard to the distribution of such balance pursuant to this provision shall not constitute a material alteration of the Settlement for purposes of Section XIV relating to termination.

### D.    Taxes.

8.4.    The Settlement Fund shall be maintained as a qualified settlement fund pursuant to 26 CFR 1.468B-1 *et seq.,* in an interest-bearing account at a financial institution approved by

Plaintiffs' Counsel and subject to the oversight of the Settlement Administrator. It is intended that all transfers by Travel Guard, on behalf of itself and all Defendants, to the Settlement Fund will satisfy the "all events test" and the "economic performance" requirement of § 461(h)(1) of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, and Treas. Reg. § 1.461-1(a)(2). As such, Travel Guard shall not be taxed on the income of the Settlement Fund.

8.5.    Defendants make no representations or warranties regarding the legal effect or tax consequences of this Agreement, or any such filing or reporting by Travel Guard. Plaintiffs and Class Counsel further expressly acknowledge that they neither received nor relied upon any tax advice from Defendants, or their representatives or attorneys. Plaintiffs agree that if it is later determined by the Internal Revenue Service or any other taxing body that taxes of any type should have been paid in connection with any benefit they receive pursuant to this Agreement, Defendants will not be responsible for paying such taxes.

8.6.    The Settlement Administrator shall timely and properly file all informational and other tax returns as are necessary or advisable with respect to the Settlement Fund.

8.7.    The Settlement Administrator shall be empowered to take all such actions as it deems necessary to ensure that the Settlement Fund is treated as a "qualified settlement fund" under Treas. Reg. § 1.468B-1. The Settlement Administrator may petition the Court to amend, either in whole or in part, any administrative provision of this Agreement that causes unanticipated tax consequences or liabilities inconsistent with the foregoing.

8.8.    All Taxes and Tax Expenses shall be paid out of the Settlement Fund. In all events, Released Defendants and their counsel shall have no liability or responsibility for the Taxes or the

Tax Expenses. Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid by the Settlement Administrator out of the Settlement Fund without prior order from the Court, and the Settlement Administrator shall be authorized (notwithstanding anything in this Agreement to the contrary) to withhold from distribution to Settlement Class Members any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(l)(2)). The Parties agree to cooperate with the Settlement Administrator, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this paragraph of the Agreement.

8.9.    **Tax Payments**. Released Defendants are not and shall not be obligated to compute, estimate, or pay any taxes on behalf of any Plaintiff, any Settlement Class Member, Class Counsel, and/or the Settlement Administrator. Released Defendants do not make and have not made any representations regarding the taxability of any Cash Payments or any other payments made pursuant to this Agreement or the Settlement. Any income or other tax, including any interest, penalties, or other payment obligations ultimately determined to be payable from or with respect to any payments made pursuant to the Agreement or the Settlement, as well as any state or federal reporting obligations imposed on Plaintiffs, Settlement Class Members, Class Counsel or the Settlement Administrator arising from the Settlement, shall not be Defendants' responsibility, and Defendants shall have no liability with respect to any such matters.

## IX.    ENHANCED DISCLOSURES

9.1.    Defendants will use commercially reasonable best efforts to implement the following practices:

- 37 -

9.2.    Within each online travel protection plan offer that includes assistance services that Defendants present to consumers through Defendants' proprietary websites or through offer boxes presented on checkout pages of Defendants' third-party partners, Defendants will include a statement, in proximity to the quoted price, that informs consumers that the quoted price for the travel protection plan includes the travel insurance premium and an additional fee for non-insurance travel assistance services.

9.3.    In the policy materials transmitted to all customers following purchase of Defendants' travel protection plans, Defendants will include a statement that informs the insured that the price paid for the travel protection plan includes the travel insurance premium and an additional fee for non-insurance travel assistance services and that the insured may cancel their travel protection plan consistent with any refund policy Defendants may have in place at the time.

9.4.    In the event a conflict or inconsistency exists or arises between this Settlement Agreement and any law or legal guidance regarding the travel protection plans or above practices, such laws or legal guidance shall supersede this Settlement Agreement.

9.5.    Plaintiffs agree, for the purposes of this Settlement, that the enhanced disclosures described in Paragraphs 9.2 and 9.3 above are sufficient to inform consumers that the total price of Defendants' travel protection plans includes both the insurance premium as well as an additional fee for non-insurance assistance services.

## X.    COURT APPROVAL OF THE SETTLEMENT

10.1.    The Parties and their respective counsel agree to cooperate fully with one another and to take all actions and steps reasonably necessary in seeking and obtaining Court approval of

DocuSign Envelope ID: 98B007B7-3C97-4C2A-8B3F-75A3E8500454

the Settlement and in the execution of such documents as are reasonably necessary and appropriate to obtain approval of and to implement the Agreement.

10.2.    The Parties reached this Agreement before Plaintiffs filed a motion for class certification in the *Allen* Action and while a motion for partial decertification was pending in the *Miller* Action. Accordingly, Plaintiffs shall include a request for conditional certification as part of their motion for approval of the Settlement that seeks certification of the Settlement-Notice Class for settlement purposes only. As a material part of this Settlement, Defendants, while reserving all defenses if this Agreement is not finally approved, hereby stipulate and consent, solely for purposes of and in consideration of the Settlement, to provisional certification of the Settlement-Notice Class. Defendants' stipulation and consent to class certification is expressly conditioned upon the entry of a Preliminary Approval Order, a Final Approval Order, and as otherwise set forth in this Agreement. As part of its provisional stipulation, Defendants further consent to the appointment of Class Counsel and the Class Representatives to represent the Settlement-Notice Class. The provisional certification of the Settlement-Notice Class, the appointment of the Class Representatives, and the appointment of Class Counsel shall be binding only with respect to this Settlement and this Agreement. If the Court fails to enter a Preliminary Approval Order or a Final Approval Order, or if this Agreement and the Settlement proposed herein is terminated, canceled, or fails to become effective for any reason whatsoever, or the Court enters any order that increases the cost or burden of the Settlement on Defendants beyond what is set forth in this Agreement, the class certification to which the Parties have stipulated solely for the purposes of this Settlement, this Agreement, and all of the provisions of any Preliminary Approval Order or any Final Approval Order shall be vacated by their own terms and the Actions

will revert to their statuses as they existed prior to the date of this Agreement with respect to consolidation of the claims and class certification, the appointment of the Class Representatives, and the appointment of Class Counsel, including by striking the amended complaint in the Consolidated Action in favor of the original complaints in the Actions. In that event, Defendants shall retain all rights they had immediately preceding the execution of this Agreement to object to the maintenance of the Actions as class actions, the appointment of the Class Representatives, and the appointment of Class Counsel and, in that event, nothing in this Agreement or other papers or proceedings related to this Settlement shall be used as evidence or argument by any of the Parties concerning whether the claims have merit, whether the Actions may properly be maintained as a class action under applicable law, whether the Class Representatives are adequate or typical class representatives, or whether Class Counsel is adequate or may be appointed to represent a class.

10.3.    The Parties shall request that the Final Approval Hearing be set at least one hundred fifty (150) days after the Court's Order Granting Preliminary Approval is entered. The Parties agree that the Final Approval Hearing may be rescheduled, postponed, or held telephonically without resending the Notices.

## XI.    ATTORNEYS' FEES AND EXPENSES AND INCENTIVE AWARDS

11.1.    Any award of Attorneys' Fees and Expenses must be approved by the Court, and the Awarded Attorneys' Fees and Expenses shall be paid in full from the Settlement Fund thirty (30) calendar days after the Effective Date in accordance with the terms of any Court order.

11.2.    Incentive Awards must be approved by the Court, and shall be paid from the Settlement Fund thirty (30) calendar days after the Effective Date and are in addition to any Cash Payments for which Plaintiffs may be eligible under this Agreement.

DocuSign Envelope ID: 98B007B7-3C97-4C2A-8B3F-75A3585004E4

11.3.   The Court's determinations of Attorneys' Fees and Expenses and/or Incentive Awards shall not be grounds to terminate the Settlement.

11.4.   Plaintiffs and Class Counsel shall have the right to appeal the Court's determination as to the amount of any Awarded Attorneys' Fees and Expenses and of any Incentive Awards.

11.5.   Other than as stated in this Settlement with respect to establishing the Settlement Fund, Plaintiffs release the Released Defendants (as defined below) and the Released Defendants shall have no responsibility for and no liability with respect to any Incentive Awards, Awarded Attorneys' Fee and Expenses, or the allocation of any Awarded Attorneys' Fees and Expenses among Class Counsel and/or any other Person who may assert a claim to an Incentive Award or to Attorneys' Fees and Expenses.

11.6.   Proposed Intervenors Lawton and Martin shall each receive an amount equal to the lowest Incentive Award approved for a Plaintiff (whichever is less), to be paid from the Settlement Fund thirty (30) calendar days after the Effective Date and are in addition to any Cash Payments for which Proposed Intervenors may be eligible under this Agreement.

## XII.   RELEASED DEFENDANTS' DENIALS OF WRONGDOING AND LIABILITY

12.1.   Each of the Released Defendants has: (a) denied, and continues to deny, that it has committed any act or omission giving rise to any liability or violation of law; (b) expressly denied, and continues to deny, each of the claims alleged by Plaintiffs in the Consolidated Action and in the Action(s) against it, along with all of the charges of wrongdoing or liability against the Released Defendant arising out of any of the conduct, statements, acts, or omissions that were alleged, or that could have been alleged, in the Consolidated Action and in the Action(s) against it and deny that the claims, or any of them, could be maintained as classwide claims; (c) denied, and

continues to deny, among other allegations, the allegations that Plaintiffs or the Settlement Class have suffered any damage, that Plaintiffs or the Settlement Class are entitled to refunds or restitution of any portion of their purchases of Travel Guard Plans, that Plaintiffs or the Settlement Class were harmed by any conduct alleged in the Consolidated Action and in the Action(s) against it or that could have been alleged in the Consolidated Action and in the Action(s); (d) asserted, and continues to assert, that its conduct was at all times proper, and believes that the evidence developed to date supports each Released Defendant's position that it acted properly at all times and that the Consolidated Action and the Action(s) against it are without merit; (e) maintained that it has meritorious defenses to all claims alleged in the Consolidated Action and in the Action(s) against it; and (f) has entered into this Agreement subject to and without waiving defenses including any personal jurisdiction defenses asserted in the Consolidated Action or in the Action(s).

12.2.    As set forth below, neither the Settlement nor any of the terms of this Agreement shall constitute an admission or finding of any fault, liability, wrongdoing, or damage whatsoever or any infirmity in the defenses that Released Defendants have, or could have, asserted. Released Defendants are entering into this Agreement solely to eliminate the burden and expense of further litigation.

## XIII.   RELEASES

13.1.    Within five (5) business days after the Effective Date, the Parties shall file (a) a stipulation of voluntary dismissal of the *Allen* Action (including the pending appeal) with prejudice, with each party bearing its own fees and costs and (b) a stipulation of voluntary dismissal of the Consolidated (or *Miller*) Action (including the pending appeal) with prejudice,

with each party bearing its own fees and costs. The Parties shall not need to file such a stipulation in the Consolidated Action if the Court enters a Final Approval Order providing for dismissal of the Consolidated Action pursuant to this Settlement.

13.2.   **Releases By Settlement Class Members of Released Defendants**. As of the Effective Date, Releasing Plaintiffs and Releasing Settlement Class Members shall have unconditionally, completely, and irrevocably released and discharged the Released Defendants from the Released Claims. This release shall include the release of Unknown Claims. For avoidance of doubt, the Released Claims shall not include the right to enforce the terms of their protections plans, the Settlement or this Agreement, Order Directing Notice, Final Approval Order, and other orders or judgments issued by the Court relating to Notice or the Settlement.

13.3.   **Additional Releases Regarding Plaintiffs and Released Defendants.** In addition to the releases granted by Releasing Plaintiffs in the prior section, upon the Effective Date, Releasing Plaintiffs, on the one hand, and Released Defendants, on the other hand, shall have unconditionally, completely, and irrevocably released and forever discharged each other from and shall be forever barred from instituting, maintaining, or prosecuting any and all Additional Released Claims as defined in Section 2.3. For avoidance of doubt, these additional releases are not made on behalf of and do not extend to Settlement Class Members.

13.4.   Releasing Plaintiffs and Defendants shall, upon the Effective Date, waive and relinquish and, by operation of Final Approval, be deemed to have expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits of California Civil Code § 1542, and any similar state, federal or foreign law or principle of common law, at law or in equity, which may have the effect of limiting the releases of the Additional Released

Claims. In addition, with respect to any and all Released Claims, the Parties stipulate and agree

that, upon the Effective Date, Plaintiffs shall expressly waive and relinquish, and each of the

Settlement Class Members shall be deemed to have, and by operation of the Final Approval Order

shall have, expressly waived and relinquished, to the fullest extent permitted by law, the

provisions, rights, and benefits of California Civil Code § 1542, and any similar state, federal or

foreign law or principle of common law, at law or in equity, which may have the effect of limiting

the Released Claims set forth in Sections 2.49 and 13.2 herein. Section 1542 of the California Civil

Code provides:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

13.5.    Plaintiffs, Settlement Class Members, and/or Defendants may hereafter discover

facts in addition to or different from those which they now know or believe to be true with respect

to the subject matter of the releases set forth in Sections 13.2 and 13.3 herein, but those releases

shall be fully, finally, and forever effective upon the Effective Date, by operation of the Final

Approval Order, without regard to the subsequent discovery or existence of such different or

additional facts. Plaintiffs and Defendants acknowledge, and the Settlement Class Members shall

be deemed by operation of the Final Approval Order to have acknowledged, that the waiver in

Section 13.4 is a material element of the Settlement.

13.6.    Upon the Effective Date, the Agreement shall be the sole and exclusive remedy for

any and all Released Claims, including Unknown Claims, by any and all of the Releasing Plaintiffs

and the Releasing Settlement Class Members against any and all of the Released Defendants. Upon

the Effective Date, the Agreement shall be the sole and exclusive remedy for any and all Additional Released Claims (a) by any and all of the Releasing Plaintiffs against any and all of the Released Defendants and (b) by any and all of the Released Defendants against any and all of the Releasing Plaintiffs. Upon the Effective Date, no Released Defendant shall be subject to liability of any kind to any Plaintiff or Settlement Class Member with respect to any of the Released Claims. Upon the Effective Date, and subject to fulfillment of all of the terms of this Agreement, each and every Plaintiff and Settlement Class Member shall be permanently barred and enjoined from initiating, asserting and/or prosecuting any of the Released Claims, including any Unknown Claims, against the Released Defendants in any court or any forum. Upon the Effective Date, and subject to fulfillment of all of the terms of this Agreement, each and every Plaintiff and Defendant shall be permanently barred and enjoined from initiating, asserting and/or prosecuting any of the Additional Released Claims in any court or any forum.

13.7.    The Parties agree that the Court shall retain exclusive and continuing jurisdiction over all Parties, the Consolidated Action, and this Agreement to resolve any dispute that may arise regarding this Agreement or in relation to this Consolidated Action, including any dispute regarding validity, performance, interpretation, administration, enforcement, enforceability, or termination of the Agreement.

## XIV.   MODIFICATION OR TERMINATION OF THIS AGREEMENT

14.1.    The terms and provisions of this Agreement may be amended, modified, or expanded by written agreement of all the Parties and approval of the Court; *provided, however,* that after entry of the Preliminary Approval Order or Final Approval Order, the Parties may by written agreement effect such amendments, modifications, or expansions of this Agreement and

its implementing documents (including exhibits hereto) without further notice to the Settlement-Notice Class or approval by the Court if such changes are: (1) for the purposes of addressing typographical or formatting issues in any proposed or approved notice, the Settlement Website, Claim Form, or other document under the Notice Plan; or (2) are consistent with the Court's Preliminary Approval Order and/or Final Approval Order and are for the purposes of benefiting Settlement Class Members.

14.2.   This Agreement shall terminate at the discretion of any of the Defendants or Plaintiffs, if: (a) the Court, or any appellate court(s), rejects, modifies, or denies approval of any portion of the proposed Settlement that the terminating Party in its (or their) judgment reasonably determine(s) is material, including, without limitation, the terms of relief, the findings, or conclusions of the Court, the provisions relating to the Notice Plan, the definition of the Settlement Class, and/or the terms of the releases; (b) if the Settlement-Notice Class Members that timely and validly submit requests for exclusion from the Settlement Class, thereby opting out of the Settlement, exceed 750 total Settlement-Notice Class Members; or (c) the Court, or any appellate court(s), does not enter or completely affirm, or alters, narrows or expands, any portion of the Final Approval Order, that the terminating Party in its (or their) judgment reasonably determine(s) is material. The terminating Party must exercise the option to withdraw from and terminate this Agreement, as provided in this Section, by a signed writing served on the other Parties no later than thirty (30) calendar days after receiving notice of the event prompting the termination. For purposes of this Paragraph, opt-outs shall not include (i) individuals who are specifically excluded from the Settlement Class under Paragraph 2.27 of the Settlement Agreement; or (ii) opt-outs who elect to timely withdraw their request for exclusion. In the event of a dispute with respect to the

- 46 -

effectiveness of any Party's exercise of the option to terminate this Agreement, the Settlement Administrator shall not disburse any funds from the Settlement Fund until such time as the dispute is resolved by written agreement of all of the Parties or by order of the Court entered subsequent to the dispute becomes final including the exhaustion of any right to appeal.

14.3.    If an option to terminate this Agreement arises under Paragraph 14.1 or 14.2 above, neither Released Defendants nor Plaintiffs are required for any reason or under any circumstance to exercise that option. If, but only if, this Agreement is terminated pursuant to Paragraph 14.1 or 14.2, then:

(a)    This Agreement shall be null and void and shall have no force or effect, and no Party shall be bound by any of its terms, except for the terms of this Paragraph 14.3;

(b)    Any Party may petition the court in any of the Actions to have any stay orders lifted in any of the Actions;

(c)    All of the provisions of this Agreement, and all negotiations, statements, and proceedings relating to it, shall be without prejudice to the rights of Defendants, Plaintiffs, or any Settlement-Notice Class Member, all of whom shall be restored to their respective positions existing immediately before the execution of this Agreement, and, consistent with the applicable evidentiary rules, neither this Agreement, the fact of its having been entered into, nor the negotiations leading to it shall be offered into evidence for any purpose other than with respect to disputes about the terms of the Agreement or with respect to explanations of procedural histories of the Actions in connection with scheduling matters;

(d)     The Parties shall cause to be filed a stipulation to strike the amended complaint in the Consolidated Action without prejudice, and to request that the original complaint in the *Miller* Action be deemed the operative complaint in that action, with Plaintiffs Miller and Chuanroong as the only named plaintiffs, and Plaintiff Allen shall cooperate in requesting that the district and/or appellate court in the *Allen* Action set a new scheduling order such that no Party's substantive or procedural rights in any of the Actions are prejudiced by the settlement negotiations and proceedings;

(e)     The Parties expressly and affirmatively reserve all claims, defenses, arguments, and motions as to all claims that have been or might later be asserted in the Actions;

(f)     Plaintiffs and all other Settlement-Notice Class Members expressly and affirmatively reserve and do not waive all motions as to, and arguments in support of, all claims, causes of action or remedies that have been or might later be asserted in the Actions;

(g)     Defendants expressly and affirmatively reserve and do not waive all motions as to, and arguments in support of, opposition to class certification, any defense to all claims, causes of action or remedies that have been or might later be asserted in the Actions;

(h)     If it has not yet been publicly filed with a Motion for Approval of Settlement, the Agreement as well as all of its terms and conditions shall remain Confidential;

DocuSign Envelope ID: 98B007B7-3C97-4C2A-8B3F-75A3585004B4

(i)     Any settlement-related order(s) or judgment(s) entered in this Consolidated Action after the date of execution of this Agreement shall be deemed vacated and shall be without any force or effect; and,

(j)     Within ten (10) business days of such termination, any funds in the Escrow Account, including any interest accrued, shall revert to Travel Guard, minus incurred Notice and Administration Expenses, Taxes and Tax Expenses.

## XV.   REPRESENTATIONS AND WARRANTIES

15.1.   Plaintiffs shall remain and serve as Class Representatives of the Settlement-Notice Class and Settlement Class until the terms of this Agreement are effectuated, this Agreement is terminated in accordance with its terms, or the Court at any time determines that said Plaintiffs cannot represent the Settlement-Notice Class and Settlement Class.

15.2.   Each Defendant warrants and represents that the individual signing this Agreement on its behalf is authorized to enter into and sign the Agreement on behalf of that Defendant.

15.3.   The Parties acknowledge and agree that they have not given and will not give any opinion concerning the tax consequences of the proposed Settlement to Settlement-Notice Class Members, nor are any representations or warranties in this regard made by virtue of this Agreement. Each Settlement-Notice Class Member's tax obligations, and the determination thereof, are the sole responsibility of the Settlement-Notice Class Member, and it is understood that the tax consequences may vary depending on the particular circumstances of each individual Settlement-Notice Class Member.

15.4.   Within thirty (30) calendar days after the Effective Date, the Parties will return or destroy (and certify in writing that they have destroyed) any confidential documents and deposition

- 49 -

materials and media, in accordance with the provisions of the Stipulated Protective Order entered in the *Miller* Action.

## XVI.   MEDIA COMMUNICATIONS

16.1.    Plaintiffs, Class Counsel, Defendants, and Defendants' Counsel shall not cause any aspect of the Consolidated Action, Actions, or the Settlement that is not available in the public record to be reported to the media or news reporting service; nor will the Parties issue a press release or cause any other public disclosures that disclose pre-settlement negotiations, unless prior written consent is obtained from all Parties. Notwithstanding, Released Defendants may disclose information about the Settlement internally to their respective parent companies, employees, officers, directors and consultants; and Released Defendants may make such disclosures regarding the terms of the Settlement as may be deemed necessary by them with respect to obligations regarding their auditors, their regulators, their insurers, insurance brokers, or as otherwise required by state or federal law.

16.2.    The Parties and their counsel agree that any publicity about the Settlement toward which the Parties are working and statements or communications with the media or the press, on the internet, or in any public forum, orally or in writing, that relate to this Settlement or the Actions will be limited to a statement to which all Parties will jointly agree. Nothing in the Settlement Agreement contemplated by the Parties will preclude a Party from making a statement as required by a court of law, and Class Counsel also may make any statements necessary to give non-public, individual advice to Settlement-Notice Class Members regarding their options under the Settlement.

## XVII. GENERAL MATTERS AND RESERVATIONS

17.1    The Parties and their respective counsel agree to use their best efforts to have any collateral attack upon this Agreement or the Settlement promptly dismissed or rejected.

17.2    The Parties and their respective counsel shall cooperate with each other, act in good faith, and use reasonable efforts to ensure the timely and expeditious administration and implementation of the Agreement and to minimize the costs and expenses incurred therewith. The Parties agree to reasonably cooperate to submit required forms or implement the Agreement.

17.3    The Parties further agree, subject to Court approval as needed, to reasonable extensions of time to conduct any of the provisions of the Agreement. Subject to Section XIV, in the event the Parties are unable to reach agreement on the form or content of any document needed to implement the Agreement, the Parties may seek the assistance of the Court to resolve such disagreement.

17.4    Except for Travel Guard's obligation to pay, deposit, or otherwise transfer into the Escrow Account the full Settlement Amount, as provided under Paragraph 8.1, Defendants' obligation to implement the Settlement described in this Agreement is and shall be contingent upon each of the following:

> (a) Entry by the Court of the Final Approval Order approving the Settlement;
>
> (b) The occurrence of the Effective Date; and
>
> (c) The satisfaction of any other conditions set forth in this Agreement.

17.5    The Parties and their counsel agree to keep the contents of this Agreement confidential until the date on which the Motion for Approval of Settlement is filed; *provided, however*, that this Section shall not prevent Released Defendants from disclosing such information,

prior to the date on which the Motion for Approval of Settlement is filed, to state and federal agencies, parent companies, independent accountants, actuaries, advisors, financial analysts, consultants, insurers, insurance brokers, or lawyers. The Parties and their counsel may also disclose the existence and contents of this Agreement to Persons (such as experts, courts, and/or administrators) to whom the Parties agree disclosure must be made in order to effectuate the terms and conditions of this Agreement.

17.6    This Agreement, complete with its Exhibits and any subsequent amendments thereto filed with the Court, sets forth the entire agreement among the Parties with respect to its subject matter, and it may not be altered, amended, or modified except by written instrument executed by Plaintiffs and Defendants' Counsel. The Parties expressly acknowledge that this Agreement shall supersede any previous agreements, representations, communications, and understandings among the Parties with respect to the subject matter of this Agreement. The Parties acknowledge, stipulate, and agree that no covenant, obligation, condition, representation, warranty, inducement, negotiation, or undertaking concerning any part or all of the subject matter of the Agreement has been made or relied upon except as expressly set forth herein, and that in deciding to enter into this Agreement, they have relied solely upon their own judgment and knowledge and advice of counsel.

17.7    The determination of the terms of, and the drafting of, this Agreement, has been by mutual agreement after negotiation, with consideration by and participation of all Parties hereto, and their counsel. Accordingly, the rule of construction that any ambiguities are to be construed against the drafter shall have no application. All Parties agree that this Agreement was drafted by Class Counsel and Defendants' counsel at arms' length.

DocuSign Envelope ID: 98B007B7-3C97-4C2A-8B3F-75A3F8500451

17.8    Any effort to enforce this Agreement shall be filed in the Consolidated Action or in any Action.

17.9    Whenever this Agreement requires or contemplates that one of the Parties shall or may give notice to the other, notice shall be provided by e-mail and next-day (excluding Saturdays, Sundays, and federal holidays) express delivery service as follows:

If to Defendants, then to:

**_Defendants' Counsel_**

Matt Powers
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
Telephone: (415) 984-8898
Email: mpowers@omm.com

If to Plaintiffs and/or the Settlement Class, then to:

Seth A. Safier
GUTRIDE SAFIER LLP
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 336-6545
Email: seth@gutridesafier.com

17.10   All time periods in this Agreement shall be computed in calendar days unless otherwise expressly provided. In computing any period of time in this Agreement or by order of the Court, the day of the act or event shall not be included. The last day of the period shall be included, unless it is a Saturday, a Sunday, or a federal holiday, or, when the act to be done is the filing of a paper in court, a day on which the Court is closed, in which case the period shall run until the end of the next day that is not one of the aforementioned days. As used in this Agreement, "federal holiday" includes holidays designated in Fed. R. Civ. P. 6(a) or by the clerk of the Court.

17.11   The Parties expressly acknowledge and agree that this Agreement and its Exhibits, along with all related drafts, motions, pleadings, conversations, negotiations, related notes, and correspondence, constitute an offer of compromise and a compromise within the meaning of Federal Rule of Evidence 408 and any equivalent rule of evidence in any state, territory or country.

17.12   Plaintiffs expressly affirm that the allegations contained in each of their Complaints were made in good faith, but consider it desirable for the Actions and Consolidated Action to be settled and dismissed because of the benefits that the Settlement will provide to Settlement-Notice Class Members balanced against the risks and uncertainty of continued litigation.

17.13   The Parties agree that the Agreement was reached voluntarily after consultation with competent legal counsel.

17.14   Neither this Agreement, nor any act performed or document executed pursuant to or in furtherance of this Agreement, is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any of the Released Claims or of any of the Additional Released Claims, or of any wrongdoing or liability of any Party; or is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any Released Defendant, Plaintiff, or Settlement-Notice Class Member in any civil, criminal, regulatory, or administrative proceeding in any court, administrative agency or other tribunal. Nor shall this Agreement be deemed an admission by any Party as to the merits of any claim or defense. However, for purposes of clarity, the Agreement is a complete defense to any attempt to assert any Released Claims or Additional Released Claims.

17.15   This Agreement shall be binding upon, and inure to the benefit of, the successors, transferees, and assigns of Defendants, Plaintiffs, and Settlement-Notice Class Members.

DocuSign Envelope ID: 98B007B7-3C97-4C2A-8B3F-75A3585004B1

17.16   The Parties, their successors and assigns, and their counsel undertake to implement the terms of this Agreement in good faith, and to use good faith in resolving any disputes that may arise in the implementation of the terms of this Agreement.

17.17   The waiver by one Party of any breach of this Agreement by another Party shall not be deemed a waiver of any prior or subsequent breach of this Agreement.

17.18   If one Party to this Agreement considers another Party to be in breach of its obligations under this Agreement, that Party must provide the breaching Party with written notice of the alleged breach and 30 days to cure the breach, but if the alleged breaching Party is making good faith efforts to cure and reasonably needs longer than 30 days, then the Parties may agree to a longer period of time to accomplish the cure, which such agreement the non-breaching Party shall not unreasonably withhold. If such breach and cure impacts deadlines provided in this Agreement, the deadlines set forth in the Agreement shall be extended by a commensurate amount of time and the Parties will jointly endeavor to mitigate the impact on Settlement-Notice Class Members and Authorized Claimants.

17.19   This Agreement may be signed with an electronic or facsimile signature and in counterparts, each of which shall constitute a duplicate original.

17.20   In the event any one or more of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision if Defendants' Counsel and Class Counsel mutually agree in writing to proceed as if such invalid, illegal, or unenforceable provision had never been included in this Agreement. Any such mutually agreed-upon in writing decision to proceed shall be reviewed and approved by the Court before it becomes effective.

- 55 -

**SIGNED**:

**Travel Guard Group, Inc.**

_____

**Tamika Miller**

By:    Jeffrey Rutledge

Its:    President & CEO

_____

**Julianne Chuanroong**

**and**

_____

**Stephanie Allen**

By:    Tanya Kent

Its:    Assistant Secretary

_____

**Michael Martin (as to Paragraphs 2.3, 2.46, 2.48, 2.49, 2.50, 8.2.3, 11.6 through 14.1, 17.5 through 17.11, and 17.13 through 17.20)**

**AIG Travel, Inc.**

By:    Jeffrey Rutledge / Tanya Kent

Its:    President & CEO / Assistant Secretary

_____

**Robert Lawton (as to Paragraphs 2.3, 2.46, 2.48, 2.49, 2.50, 8.2.3, 11.6 through 14.1, 17.5 through 17.11, and 17.13 through 17.20)**

**National Union Fire Insurance Company of Pittsburgh, PA**

By:    Jeffrey Rutledge / Tanya Kent

Its:    Senior Vice President / Secretary

**SIGNED**:

_[signature]_
Tamika Miller

**Tamika Miller**

_[signature]_
Julianne Chuanroong

**Julianne Chuanroong**

_[signature]_
Stephanie Allen

**Stephanie Allen**

_[signature]_
Michael Martin

**Michael Martin (as to Paragraphs 2.3, 2.46, 2.48, 2.49, 2.50, 8.2.3, 11.6 through 14.1, 17.5 through 17.11, and 17.13 through 17.20)**

_[signature]_
Robert Lawton

**Robert Lawton (as to Paragraphs 2.3, 2.46, 2.48, 2.49, 2.50, 8.2.3, 11.6 through 14.1, 17.5 through 17.11, and 17.13 through 17.20)**

**Travel Guard Group, Inc.**

_____

By: _____

Its: _____

**and**

_____

By: _____

Its: _____

**AIG Travel, Inc.**

_____

By: _____

Its: _____

**National Union Fire Insurance Company of Pittsburgh, PA**

_____

By: _____

Its: _____

**Approved as to form only:**

**Attorneys for Plaintiffs and Proposed Intervenors; Class Counsel**



_____

Seth A. Safier
GUTRIDE SAFIER LLP
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 336-6545
Email: seth@gutridesafier.com

GUTRIDE SAFIER LLP
Stephen M. Raab
113 Cherry Street, #55150, Seattle, WA 98140
305 Broadway, 7th Floor, New York, NY 10007
Email: stephen@gutridesafier.com

**Attorneys for Defendants**

_____

Matthew D. Powers
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111-3823
Tel: (415) 984-8700
Email: mpowers@omm.com

DocuSign Envelope ID: 98B907B7-3C97-4C2A-8B3F-75A3E8500454

**Approved as to form only:**

**Attorneys for Plaintiffs and Proposed**          **Attorneys for Defendants**
**Intervenors; Class Counsel**

Matthew D. Powers
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111-3823
Tel: (415) 984-8700
Email: mpowers@omm.com

Seth A. Safier
GUTRIDE SAFIER LLP
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 336-6545
Email: seth@gutridesafier.com

GUTRIDE SAFIER LLP
Stephen M. Raab
113 Cherry Street, #55150, Seattle, WA 98140
305 Broadway, 7th Floor, New York, NY 10007
Email: stephen@gutridesafier.com

- 57 -

# Exhibit B

**EXHIBIT B**



United States District Court for the
Northern District of California

*Miller et al. v. Travel Guard Group, Inc. et al.*,
Case No. 21-cv-09751-TLT

# Class Action Settlement Notice Re: Travel Guard Insurance

## *Authorized by the U.S. District Court*

---

**Did you buy a Travel Guard travel insurance plan between December 17, 2017, and January 18, 2024?**

*Travel Guard insurance is sold through Expedia, United Airlines, and other channels.*

You may be eligible to receive a payment from a $23,997,500 Settlement.

*The Settlement may affect your rights.*

---

**Your options:**

1. **Make a claim.** *Get a payment.*

2. **Do nothing.** *You will get no payment and be bound by the Settlement.*

3. **Opt out of the Settlement.**

4. **Object to the Settlement.**

---

**You are not being sued.**

This notice explains the Actions, the Settlement, and your legal rights and options.

Please read the entire notice carefully.

*This is not a solicitation from a lawyer.*

---

**You need to make a decision about the Settlement.**

**To make the best decision for you, read on.**

**EXHIBIT B**

## WHAT THIS NOTICE CONTAINS

What Is This Notice About? .............................................................................. 2

What Are My Options? ..................................................................................... 3

What Are the Actions About? ......................................................................... 4

What Has Happened in the Actions? .............................................................. 4

Am I a Class Member? ..................................................................................... 5

What Can I Get from the Settlement? ............................................................ 5

How Do I Request a Cash Payment? .............................................................. 6

When Do I Get My Cash Payment? ................................................................ 6

What Do Plaintiffs, Proposed Intervenors, and Class Counsel Get? ......... 6

What Happens if I Do Not Opt Out of the Settlement? ............................... 7

Does This Settlement Affect Insurance Claims Under Travel Guard Policies? ....... 8

How Do I Opt Out of the Settlement? ............................................................ 8

How Do I Object to the Settlement? .............................................................. 9

When Will the Court Decide If the Settlement Is Approved? ..................... 10

How Do I Get More Information? .................................................................. 11

Questions? Visit www.TravelFeeSettlement.com or call [phone number].

1

**EXHIBIT B**

## What Is This Notice About?

This notice concerns the cases *Miller v. Travel Guard Group, Inc. et al.*, No. 21-cv-09751 (U.S. District Court, Northern District of California) (the "*Miller* Action") and *Allen v. Travel Guard Group, Inc. et al.*, No. 22-cv-06005 (U.S. District Court, Western District of Washington) (the "*Allen* Action") (collectively, the "Actions").

This settlement (the "Settlement") will resolve the Actions against Travel Guard Group, Inc., AIG Travel, Inc., and National Union Fire Insurance Company of Pittsburgh, PA (collectively, "Defendants" or "Travel Guard").

In the Actions, Plaintiffs allege that Travel Guard charges more than it is legally or fairly allowed to charge for its travel insurance plans and includes unauthorized, hidden fees as part of the total price of its travel insurance plans. Travel Guard disputes that the practice of charging a fee for non-insurance assistance services provided to travelers violates California or Washington law or that the fees or assistance services are unfair or hidden from consumers.

Travel Guard has agreed to pay $23,997,500 to settle the claims against it in the Actions. The group of people who are affected by the Settlement is called the "Settlement-Notice Class." If you are in this group and want to get paid, you must file a claim on the settlement website at **www.TravelFeeSettlement.com** or by returning a claim form. If you are in the Settlement-Notice Class and do not opt out, you will be part of the Settlement Class and bound by the Settlement.

Your legal rights may be affected whether or not you act. Read this notice carefully.

This notice summarizes the proposed Settlement. For the precise terms and conditions of the Settlement, please see the Settlement Agreement available at **www.TravelFeeSettlement.com**, or contact the Settlement Administrator at Travel Guard Settlement Administrator, 1650 Arch Street, Suite 2210, Philadelphia, PA 19103 or by email info@travelfeesettlement.com or by telephone at [phone number].

**PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT OR THE CLAIM PROCESS.**

Questions? Visit **www.TravelFeeSettlement.com** or call [phone number].

2

| What Are My Options? | |
|---|---|
| **Submit a Claim Form** | To receive a **Cash Payment** from the Settlement, <u>you must make a claim</u>.<br><br>You can make a claim at **www.TravelFeeSettlement.com** or return a claim form by mail.<br><br>Your Claim Form must be submitted online or postmarked by **[DATE]**. |
| **Do Nothing** | If you do nothing, you will remain in the Settlement Class and be bound by the Settlement, but you will not get any money from the Settlement. You will have no right to sue Defendants later for the Released Claims. |
| **Opt Out** | You can opt out of the Settlement Class (also known as excluding yourself) if you want to separately bring the kinds of claims against Defendants that are in these Actions. You will receive no Cash Payment from this Settlement and will be excluded from the Settlement.<br><br>More detail on opting yourself out can be found below.<br><br>The deadline to opt out is **[DATE]**. |
| **File an Objection** | If you are a member of the Settlement Class (that is, you do not opt out of the Settlement), you can write to the Court about any aspect of the Settlement you don't like.<br><br>More detail on objecting to the Settlement can be found below.<br><br>The deadline to object is **[DATE]**. |

The Court still has to decide whether to approve the Settlement. Cash Payments will be provided to Class Members only if the Court finally approves the Settlement. If there are appeals, these benefits will not be provided until the appeals are resolved and the Settlement becomes effective. Please be patient.

Questions? Visit **www.TravelFeeSettlement.com** or call [phone number].

3

| What Are the Actions About? |
| --- |

The Actions are about the prices Travel Guard[1] charges for its travel insurance plans.

The California and Washington insurance departments approved particular prices for Travel Guard to sell travel insurance. Travel Guard packaged its travel insurance policies with what it contends are non-insurance assistance services, such as assistance with flight delays or cancellations, delayed or mishandled luggage, and medical emergencies, and sold the combined product for a higher price than the amount approved for the sale of travel insurance. Plaintiffs contend that such services were covered by the insurance contracts and that it was illegal and unfair for Travel Guard to add the additional fees to the approved prices for travel insurance.

A copy of Plaintiffs' complaint is available at **www.TravelFeeSettlement.com**.

Defendants deny any wrongdoing. They contend that they have complied with the law in all respects and at all times and properly informed customers of the travel insurance plan price, coverages and benefits, including the assistance services included with the Travel Guard travel insurance plans.

The Court has not determined whether Plaintiffs or Defendants are correct.

| What Has Happened in the Actions? |
| --- |

The Actions were brought as proposed class actions. A class action is a lawsuit in which the claims and rights of many people can be decided in a single court proceeding, rather than in many separate lawsuits. One or more people—called "plaintiffs" or "class representatives"—sue on behalf of people who made similar purchases. All of these people form a proposed "class" and are potential "class members." When a court "certifies" a class for particular claims (which means it decides that a plaintiff shall represent a group of people for purposes of those claims), then a judgment in the class action resolves those claims for all class members, except those who choose to exclude themselves from the class.

In the *Miller* Action, the Court certified a California class for purposes of **two** of Plaintiffs' theories: (1) that Travel Guard's conduct is **unlawful** and (2) that Travel Guard's conduct is **unfair**. The Court did not certify any class for purposes of Plaintiffs' theory that Travel Guard's conduct was deceptive or fraudulent.

In the *Miller* Action, the Court also confirmed an arbitration award finding that Plaintiff Miller's claims were not subject to arbitration. Travel Guard appealed that decision. That appeal has been stayed pending this Settlement.

---

[1] Defendants in the Actions are related entities within the AIG organization: Travel Guard Group, Inc. ("TGG") is the insurance agent for the insurance sales at issue; AIG Travel, Inc. ("AIG Travel") is TGG's parent; and National Union Fire Insurance Company of Pittsburgh, PA ("NUFIC") is the insurance company for the policies at issue. Defendants are collectively referred to as "Travel Guard" in this Notice and in the Actions.

Questions? Visit **www.TravelFeeSettlement.com** or call [phone number].

**EXHIBIT B**

In the *Allen* Action, the Court denied Travel Guard's motion to compel arbitration. Travel Guard appealed that decision. The *Allen* Action is stayed pending Travel Guard's appeal. The appeal in the *Allen* Action has been stayed pending this Settlement.

More information about the Actions can be found through the Public Access to Court Electronic Records (PACER) system at https://pacer.uscourts.gov.

# Am I a Class Member?

The Settlement-Notice Class includes all Persons, except Excluded Persons, who purchased at least one Qualifying Travel Guard Plan from December 17, 2017, through and including January 18, 2024. A Travel Guard Plan qualifies for this Settlement if the purchaser (a) was charged a single plan price that included an Assistance Fee and (b) provided a billing address in the State of California or Washington or, where no billing address is identified in Travel Guard's records, the Travel Guard Plan identified the insured as having a California or Washington address.

The following Excluded Persons are not included in the Settlement-Notice Class: (a) each and every presiding District Judge and Magistrate Judge in the Actions, Judge Gandhi (Ret.), Robert A. Meyer, and their staff, and their immediate family members; (b) the officers, directors, agents, servants, and current and former employees of Defendants who were employed by Defendants at any time on or after the start of the Class Period, and the immediate family members of such Persons; and (c) any Person who received a complete refund for each and every Qualifying Travel Guard Plan purchased by that Person.

Notices were emailed or mailed to each Settlement-Notice Class Member for whom Travel Guard has contact information. Please check your email and mail to see if you received such a notice.

Most Travel Guard purchasers purchased their insurance through an Expedia website (such as Expedia.com, Travelocity.com, or Orbitz.com) or through United Airlines. However, Travel Guard also sells travel insurance through other channels, including other airlines, websites, and various travel agents, as well as directly to consumers through www.travelguard.com and through its call center. You can check your travel insurance plan documents to see if it is a Travel Guard plan.

If you are not sure if you are a member of the Settlement-Notice Class, you may email the Settlement Administrator at info@travelfeesettlement.com or call the Settlement Administrator at [phone number].

# What Can I Get from the Settlement?

If you are a member of the Settlement-Notice Class and submit a valid Claim Form, you will receive a Cash Payment as an Authorized Claimant.  Your Cash Payment will depend on the amount of the Assistance Fees included in the Qualifying Travel Guard Plans you purchased. The Assistance Fees included in Travel Guard Plans varied but are recorded in Travel Guard's records.

After payments for Notice and Administration Expenses, Taxes and Tax Expenses, Awarded Attorneys' Fees and Expenses, Incentive Awards, payments to Proposed Intervenors, and any other Court-approved deductions, the remainder of the $23,997,500 Settlement Amount ("Net Settlement Fund") shall be

Questions? Visit www.TravelFeeSettlement.com or call [phone number].

5

distributed, as Cash Payments, among all Authorized Claimants in proportion to the amount of Assistance Fees paid by each Authorized Claimant for Qualifying Travel Guard Plans, as reflected in Travel Guard's records provided to the Settlement Administrator.

You will not receive a Cash Payment for any Qualifying Travel Guard Plan you purchased if you already received a complete refund for that Qualifying Travel Guard Plan.

## How Do I Request a Cash Payment?

To request a Cash Payment, you must fill out the Claim Form available on this Settlement Website, **www.TravelFeeSettlement.com**. You can submit the Claim Form online, or you can print it and mail it to the Settlement Administrator at: Travel Guard Settlement Administrator, 1650 Arch Street, Suite 2210, Philadelphia, PA 19103. Claim Forms must be **postmarked or submitted online** to the Settlement Administrator on or before 11:59 p.m. Pacific Time on **[DATE]**.

Please note that a Claim Form that is not properly filled out and signed or that is not submitted or postmarked by the deadline or is determined to be fraudulent will be invalid and disregarded by the Settlement Administrator.

## When Do I Get My Cash Payment?

Timely submitting a Claim Form does not guarantee a Cash Payment. A Final Approval Hearing is scheduled for [DATE] at [TIME]. If the Court approves the Settlement and there are no appeals, then the Cash Payments will be distributed within 45 days after the Effective Date of the Settlement, unless otherwise ordered by the Court. If the Court does not approve the Settlement, or if the Settlement is overturned on appeal, no Cash Payments will be issued.

## What Do Plaintiffs, Proposed Intervenors, and Class Counsel Get?

The Court has appointed Gutride Safier LLP as Class Counsel for the Settlement-Notice Class. Class Counsel has experience in handling class actions.

To date, Class Counsel has not been compensated for any of their work on this case. As part of the Settlement, Class Counsel has requested that the Court approve their Attorneys' Fees and Expenses to be paid from the Settlement Fund: for reimbursement of their out-of-pocket expenses and up to 30% of the Settlement Amount in attorneys' fees.

In addition, the Plaintiffs (who brought the Actions) have requested that the Court approve Incentive Awards to them of $5,000 each, and the Proposed Intervenors (who sought to become plaintiffs in the *Miller* Action and who provided documents and testimony to Defendants) have agreed to settle their claims against Defendants for equal amounts. These payments will compensate the Plaintiffs for the time,

Questions? Visit **www.TravelFeeSettlement.com** or call [phone number].

6

effort, and risks they undertook in pursuing the Actions to benefit the Settlement-Notice Class, and will resolve the claims of the Proposed Intervenors.

Copies of the papers filed in support of Class Counsel's motion seeking an award for Attorneys' Fees and Expenses and for Plaintiffs' Incentive Awards are available on the Settlement Website. The Court will determine the amount of Attorneys' Fees and Expenses, as well as the amounts of Incentive Awards, consistent with the standards for similar settlements in the Ninth Circuit based on Class Counsel's labor, risk, and the complexity of the work that was done to obtain the Settlement for the Settlement-Notice Class.

# What Happens if I Do Not Opt Out of the Settlement?

If you are a Settlement-Notice Class Member and you do not request to be excluded (that is, "opt out") from the Settlement, you will be legally bound by all orders and judgments of the Court with respect to the Settlement, and you will also be legally bound to the release of Released Claims as set forth in the Settlement Agreement. This means that in exchange for being a Settlement Class Member and being eligible for Cash Payments, you will not be able to sue, continue to sue, or be part of any other lawsuit against Travel Guard and/or any of the Released Defendants that involves similar factual allegations or legal claims as those resolved through this Settlement.

The "Released Claims," which are more fully defined in the Settlement Agreement, are any and all claims and causes of action of every nature and description, whether known or unknown, whether arising under federal, state, common, or foreign law, based in law or equity, that have been brought or that could have been brought in the Consolidated Action and each Action and that arise out of or relate to the allegations that sales of Travel Guard Plans purchased prior to the date of entry of the Order Granting Preliminary Approval were unlawful, unfair, falsely advertised, or deceptive with respect to the marketing, offering, solicitation, pricing, sale, accessibility, availability, and/or payment of Assistance Fees for the assistance services included in (a) the Travel Guard Plans or (b) any regulatory filing related thereto. The Released Claims include without limitation claims under the unlawful, unfair, and fraudulent prongs of California's Unfair Competition Law ("UCL"), including UCL "unlawful" claims based on alleged violations of Cal. Ins. Code § 1861.01(c), Cal. Ins. Code § 1861.05, Cal. Ins. Code § 381, Cal. Ins. Code § 332, Cal. Ins. Code § 790.02, Cal. Code Regs. Tit. 10, §§ 2189.3 and 2189.5, or any other California insurance statute or regulation; Business and Professions Code § 17200, *et seq.*; claims under California's False Advertising Law ("FAL"), Business and Professions Code § 17500, *et seq.*; and common law fraud, deceit, or misrepresentation. The Released Claims do not include: (i) claim(s) for personal injury against Defendants or the Released Defendants; (ii) claim(s) for insurance coverage under any Travel Guard Plan or relating to Defendants' failure to properly provide insurance coverage, to properly provide particular assistance benefits in a particular case, or to comply with applicable law in administering claims for insurance coverage or benefits; (iii) claim(s) arising from the purchase of any Travel Guard Plan after the date of entry of the Order Granting Preliminary Approval; or (iv) right(s) to enforce this Agreement.

**You will not be responsible for any out-of-pocket costs or attorneys' fees concerning the Actions if you stay in the Settlement Class.**

The full text of the Settlement Agreement, which includes all of the provisions about settled claims and releases, is available at **www.TravelFeeSettlement.com**.

Questions? Visit **www.TravelFeeSettlement.com** or call [phone number].

## Does This Settlement Affect Insurance Claims Under Travel Guard Policies?

This Settlement does **not** involve claims about insurance coverage disputes or about the denial of insurance benefits. This Settlement relates to the <u>Assistance Fees</u> Travel Guard included in Qualifying Travel Guard Plans. This Settlement does **not** affect or change the insurance coverage or any insurance benefits you may be owed in connection with your previous, planned, or upcoming trips. Whether you participate in this Settlement or decide to opt out of the Settlement, you can still pursue insurance claims against Defendants under applicable law (subject to statute of limitations or any other laws that may prevent you from bringing such a claim).

## How Do I Opt Out of the Settlement?

You can opt out from the Settlement Class—that is, be excluded from the Settlement Class—if you wish to retain the right to sue Defendants separately for the Released Claims. If you opt out, you cannot obtain a Cash Payment from the Settlement. In addition, if you opt out, you cannot submit an objection to the Settlement.

Each Settlement-Notice Class Member who wishes to be excluded from the Settlement must submit to the Settlement Administrator a written statement requesting exclusion from the Settlement. Such requests for exclusion must be made by submitting the online form on the Settlement Website or by mailing a valid exclusion request by First Class U.S. Mail to the Settlement Administrator at Travel Guard Settlement Administrator, Attn: Exclusion Request, P.O. Box 58220, Philadelphia, PA 19102. To be effective, the request for exclusion must:

    a. include the Settlement-Notice Class Member's full name and address;

    b. include a statement that the Settlement-Notice Class Member wishes to be excluded from the Settlement Class in *Miller v. Travel Guard Group, Inc.*, No. 21-cv-09751 (N.D. Cal.); and

    c. be individually and personally signed by the Settlement-Notice Class Member (if the Settlement-Notice Class Member is represented by counsel, it must also be signed by such counsel).

**To be valid, the opt-out request must be postmarked or submitted online by the Exclusion/Objection Deadline, which is [DATE].**

Questions? Visit **www.TravelFeeSettlement.com** or call [phone number].

8

**EXHIBIT B**

# How Do I Object to the Settlement?

You can ask the Court to deny approval of the Settlement by submitting a written objection to the Settlement Administrator, as set forth below. The Settlement Agreement does not provide discretion for the Court to order a different or larger Settlement; the Court can only approve or disallow the Settlement. If the Court denies approval to the entire Settlement, no Cash Payments will be sent out, and the Actions will continue. If that is what you want to happen, you must object.

Any Settlement Class Member (that is, any Settlement-Notice Class Member who does not submit a valid and timely request for exclusion) may submit an objection to the Settlement Agreement. Any Settlement Class Member who intends to object to the Settlement or the Settlement Agreement (including Class Counsel's requested Attorney's Fees and Expense application) must submit a written notice of objections by filing them electronically, by mailing them to the Clerk of Court, United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94102, or by filing them in person at any location of the United States District Court for the Northern District of California. The objections must be filed or postmarked no later than twenty-eight (28) calendar days prior to the Final Approval Hearing (i.e., filed or postmarked by **[DATE]**). The objections must include:

    a. the case name and number (*Miller v. Travel Guard Group, Inc. et al.*, No. 21-cv-09751 (N.D. Cal.);

    b. the objecting Settlement Class Member's full name and address;

    c. either the Claimant Identification Number included in the Email Notice or Postcard Notice directed to the objecting Settlement Class Member or documents or testimony sufficient to establish that the objector is a member of the Settlement Class;

    d. a statement of each of the Settlement Class Member's objections;

    e. the name, address, email address, and telephone number of every attorney representing the objector;

    f. a statement indicating whether the objector and/or his or her counsel intends to appear at the Final Approval Hearing.

By filing an objection, you consent to the jurisdiction of the Court, including to any order of the Court to produce documents or provide testimony prior to the Final Approval Hearing.

If you file an objection to the Settlement but still want to receive a Cash Payment in the event the Court approves the Settlement, you must still timely submit a Claim Form according to the instructions described above.

Questions? Visit www.TravelFeeSettlement.com or call [phone number].

9

## When Will the Court Decide If the Settlement Is Approved?

Pursuant to Rule 23(e)(2) and 28 U.S.C. § 1715(d), the Court will hold a Final Approval Hearing on [DATE], at [TIME], at [LOCATION or ZOOM LINK], for the purpose of finally determining whether (a) this action meets each of the prerequisites for class certification set forth in Federal Rule of Civil Procedure 23(a) and may properly be maintained as a class action on behalf of the Settlement Class under Federal Rule of Civil Procedure 23(b)(3); (b) the Settlement Agreement should receive final approval as fair, reasonable, adequate, and is in the best interests of the Settlement Class in light of any objections presented by Class Members and the Parties' responses to any such objections; (c) the Court should grant final approval of the Settlement Agreement, dismissing Plaintiffs' claims, as provided in the Settlement Agreement; and (d) the request of Class Counsel for the payment of Attorney's Fees and Expenses to Class Counsel and the payment of an Incentive Award to each Plaintiff are reasonable and should be approved. The Final Approval Hearing may be postponed, adjourned, or continued by further order of this Court, without further notice to the Parties or the members of the Settlement Class other than entry of an order on the Court's docket. Class Members should consult the Settlement Website at **www.TravelFeeSettlement.com** or the Court's Public Access to Court Electronic Records (PACER) system at https://pacer.uscourts.gov or https://ecf.cand.uscourts.gov, or visit the office of the Clerk of Court for the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94102, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays, to determine whether the Final Approval Hearing date has changed. The Court may conduct the hearing by Zoom or other remote technology, with the link available at [LINK].

After final approval, the Settlement Amount of $23,997,500 will be used to pay Valid Claims, Awarded Attorneys' Fees and Expenses, Incentive Awards, payments to Proposed Intervenors, Taxes and Tax Expenses, and Notice and Administration Expenses.

Questions? Visit **www.TravelFeeSettlement.com** or call [phone number].

10

**EXHIBIT B**

## How Do I Get More Information?

You can inspect many of the court documents connected with the Settlement on the Settlement Website. Other papers filed in the *Miller* Action are available by accessing the Court's Public Access to Court Electronic Records (PACER) system at https://pacer.uscourts.gov or https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of Court for the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94102, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

You can contact the Settlement Administrator at Travel Guard Settlement Administrator, 1650 Arch Street, Suite 2210, Philadelphia, PA or by email at info@travelfeesettlement.com or by telephone at [phone number].

You can also obtain additional information by contacting Class Counsel:

> Seth Safier, Esq.
> GUTRIDE SAFIER LLP
> 100 Pine Street, Suite 1250
> San Francisco, CA 94111
> Tel: 415-639-9090
> seth@gutridesafier.com
> www.gutridesafier.com

**PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT OR THE CLAIM PROCESS.**

Questions? Visit **www.TravelFeeSettlement.com** or call [phone number].

11

# Exhibit C

**EXHIBIT C**

| | |
|---|---|
| To: | [Customer email address] |
| From: | Class Action Notice Administrator |
| Subject: | Notice of Class Action re Travel Guard Insurance |

---



United States District Court for the
Northern District of California

*Miller et al. v. Travel Guard Group, Inc. et al.*,
Case No. 21-cv-09751-TLT

# Class Action Settlement Notice Re: Travel Guard Insurance

## Authorized by the U.S. District Court

**YOU MAY BE ENTITLED TO BENEFITS UNDER A CLASS ACTION SETTLEMENT RELATING TO ASSISTANCE FEES INCLUDED IN TRAVEL GUARD PLANS.**

**Class Member Identification Number:  [Class Member Identification Number]**

- This class action settlement will affect your rights even if you do not claim your benefits.

- Travel Guard has agreed to pay a total Settlement Amount of $23,997,500, from which Cash Payments may be made to affected Settlement Class Members.

- To receive a Cash Payment, you must submit a Claim Form by [DATE].

- You have the right to exclude yourself from the Settlement, but must do so by [DATE].

- In these Actions, Plaintiffs allege that Travel Guard charges more than it is legally or fairly allowed to charge for its travel insurance plans. Travel Guard disputes Plaintiffs' allegations.

- The Settlement relates only to the price you paid for each Travel Guard Plan.  The Settlement will not change your insurance coverages or your claims for benefits.

1

**EXHIBIT C**

**Visit [www.TravelFeeSettlement.com](www.TravelFeeSettlement.com) to learn about the Settlement, your options, and important dates.**

A federal court authorized this notice; it is not a solicitation from a lawyer.

Questions? Visit **www.TravelFeeSettlement.com** or call toll-free [phone number].

*Unsubscribe*

# Exhibit D

**EXHIBIT D**

# NOTICE OF CLASS ACTION SETTLEMENT RE: TRAVEL GUARD INSURANCE

*Miller v. Travel Guard Group. Inc.*, Case No. 21-cv-09751 (N.D. Cal.)

## You may be entitled to a cash payment from a class action settlement.

**For more information visit www.TravelFeeSettlement.com**

Administrator for
Travel Guard Settlement
1650 Arch Street, Suite 2210
Philadelphia, PA 19103

First-Class
Mail
US Postage
Paid
Permit #___

Postal Service: Please do not mark barcode

Class Member ID: «Class Member ID»
«First1» «Last1»
«C/O»
«Addr1»  «Addr2»
«City», «St»  «Zip»

**EXHIBIT D**

**WHY AM I RECEIVING THIS NOTICE?** Travel Guard's records indicate you may be a member of the class whose claims will be resolved by this Settlement. Visit **www.TravelFeeSettlement.com** for more information. A federal court authorized this notice; it is not a solicitation from a lawyer.

**WHAT IS THE CASE ABOUT?** Plaintiffs allege that Travel Guard charges more than it is legally or fairly allowed to charge for its travel insurance plans. Travel Guard disputes Plaintiffs' allegations.

**HOW DO I GET A CASH PAYMENT?** To get a Cash Payment, you must submit a simple Claim Form, either online at **www.TravelFeeSettlement.com**, or by mailing it to the Settlement Administrator at: Travel Guard Settlement Administrator, 1650 Arch Street, Suite 2210, Philadelphia, PA 19103. Your Claim Form must be submitted online or postmarked to the Settlement Administrator by 11:59 p.m. Pacific Time on **[DATE]**. If you submit a Valid Claim and the Court approves the Settlement, your Cash Payment will depend on the total amount of Assistance Fees you paid. The Net Settlement Fund will be distributed among Authorized Claimants in proportion to the amount of Assistance Fees paid by each Authorized Claimant.

**WHAT ARE MY OPTIONS?** You may submit a Claim Form for a Cash Payment, opt out of the Settlement, object to the Settlement, or do nothing. To receive a Cash Payment, you must submit a Claim Form. To opt out, you must submit an exclusion request. If you opt out of the Settlement, you may pursue a separate lawsuit, but you will receive no Cash Payment. If you do not opt out, you give up your right to bring a separate lawsuit. To object to the Settlement, your written objection must include all the required objection information. See **www.TravelFeeSettlement.com**.

Claim Forms and opt-out requests must be either postmarked or submitted online by **[DATE]**. Objections must be filed with the Court or postmarked by **[DATE]**. **Do Nothing** and you will not receive a Cash Payment and you will release claims against Defendants that relate to the allegations in the Actions.

**For more information visit www.TravelFeeSettlement.com or call the Administrator at [number].**