**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Rajiv V. Thairani (State Bar No. 344390)
rajiv@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

Stephen M. Raab (*pro hac vice*)
stephen@gutridesafier.com
305 Broadway, 7th Floor
New York, NY 10007
Telephone: (415) 639-9090 x109

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAMIKA MILLER, JULIANNE CHUANROONG, and STEPHANIE ALLEN on behalf of themselves, the general public, and those similarly situated,<br><br>        Plaintiffs,<br><br>  v.<br><br>TRAVEL GUARD GROUP, INC., AIG TRAVEL, INC., and NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,<br><br>        Defendants. | CASE NO. 3:21-cv-09751-TLT<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FOR AWARDS OF ATTORNEYS' FEES, COSTS, AND REPRESENTATIVE AWARDS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br><u>MOTION HEARING</u><br> DATE:  October 1, 2024<br> TIME:  2:00 P.M.<br> CTRM:  9 (19th Floor)<br><br>Honorable Trina L. Thompson |

# TABLE OF CONTENTS

I.    INTRODUCTION OF ISSUES TO BE DECIDED ........................................................... 1

II.   BRIEF SUMMARY OF SETTLEMENT ........................................................................ 2

III.  LEGAL STANDARDS ................................................................................................... 3

IV.   ARGUMENT .................................................................................................................. 4

      A.    The Settlement Is Fair, Adequate, and Reasonable. .................................................. 4

      B.    The Administrator Provided the Best Notice Practical, It's Plan Should Be
            Confirmed, and Its Expenses Should Be Approved. .................................................. 7

      C.    Class Members' Response Is Overwhelmingly Positive. ........................................... 9

      D.    CAFA Notice Was Provided ...................................................................................... 9

      E.    The Settlement Class Includes Both California and Washington Purchasers. ....... 10

      F.    The Court Should Award Attorneys' Fees and Costs. .............................................. 14

            1.    Class Counsel's Requested Fee Is a Reasonable Percentage of the Total
                  Benefit Made Available to the Class. ........................................................... 14

            2.    As a Cross-Check, Class Counsel's Requested Fee Is Also Reasonable
                  When Using the Lodestar Approach. ............................................................ 16

            3.    Class Counsel Requests an Award of Its Expenses. .................................... 21

      G.    The Court Should Approve Service Awards. ........................................................... 21

      H.    The Objections Should Be Overruled. ..................................................................... 22

V.    CONCLUSION ............................................................................................................. 23

## TABLE OF AUTHORITIES

### CASES

*Allen v. Similasan Corp.*, No. 12-cv-00376-BAS-JLB, 2017 U.S. Dist. LEXIS 56333 (S.D. Cal. Apr. 12, 2017) .......................................................................... 11

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ...................................... 13

*Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) .................. 14

*Bolton v. U.S. Nursing Corp.*, No. 12-cv-4466-LB, U.S. Dist. LEXIS 150299 (N.D. Cal. Oct. 18, 2013 ......................................................................................... 16

*Broomfield v. Craft Brew All, Inc.*, No. 17-cv-01027-BLF, 2020 U.S. Dist. LEXIS 74801 (N.D. Cal. Feb. 5, 2020) ................................................................... 9

*Cazares v. Saenz*, 256 Cal. Rptr. 209 (Cal. Ct. App. 1989) ................................. 20

*Churchill Vill., L.L.C. v. GE*, 361 F.3d 566 (9th Cir. 2004) ................................... 9

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1269 (9th Cir. 1992) .......................... 4

*Corzine v. Whirlpool Corp.*, No. 15-cv-05764-BLF, 2019 U.S. Dist. LEXIS 223341 (N.D. Cal. Dec. 31, 2019) ............................................................................ 9

*Cunha v. Chico Produce*, No. 17-cv-00597-JST, 2021 U.S. Dist. LEXIS 148406 (N.D. Cal. Feb. 16, 2021) ........................................................................... 21

*Curtis-Bauer v. Morgan Stanley & Co., Inc* No. 06-cv-3903-TEH, 2008 U.S. Dist. LEXIS 85028 (N.D. Cal. Oct. 22, 2008) ........................................................ 7

*Davis v. Yelp, Inc.*, No. 18-cv-00400-EMC, 2022 U.S. Dist. LEXIS 131628 (N.D. Cal. July 25, 2022) ......................................................................................... 6

*Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326 (N.D. Cal. 2014) ...................... 19

*Edenborough v. ADT, LLC*, No. 16-cv-02233-JST, 2017 U.S. Dist. LEXIS 170896 (N.D. Cal. Oct. 16, 2017) .............................................................................. 5

*Farrell v. Bank of Am. Corp., N.A.*, 827 F. App'x 628 (9th Cir. 2020) ................. 16

*Glob. Indus. Inv. Ltd. v. 1955 Capital Fund I GP LLC*, No. 21-cv-08924-HSG, 2023 U.S. Dist. LEXIS 173343 (N.D. Cal. Sep. 27, 2023) ................................... 19

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ..................... 3, 9, 22, 23

*Harris v. Marhoefer*, 24 F.3d 16 (9th Cir. 1994) ................................................. 21

*Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 U.S. Dist. LEXIS 213045 (N.D. Cal. Dec. 17, 2018) .............................................................................. 4

*Herrera v. Wells Fargo Bank, Nat'l Ass'n*, No. 8:18-cv-00332-JVS-MRW, 2021 U.S. Dist. LEXIS 221364 (C.D. Cal. Nov. 16, 2021) ............................................. 22

*Hesse v. Sprint Corp.*, 598 F.3d 581 (9th Cir. 2010) ........................................... 14

*Hessefort v. Super Micro Comput., Inc.*, No. 18-cv-00838-JST, 2023 U.S. Dist. LEXIS 198353 (N.D. Cal. May 5, 2023) .............................................................. 19

*In re Activision Sec. Litig.*, 723 F.Supp. 1373 (N.D. Cal. 1989) .......................... 16

*In re Animation Workers Antitrust Litig.*, No. 14-cv-4062-LHK, 2016 U.S. Dist. LEXIS 156720 (N.D. Cal. Nov. 11, 2016) ............................................................. 19

*In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299 (N.D. Cal. 2018) ........... 9, 14

*In re Apple Inc. Device Performance Litig.*, 50 F.4th 769 (9th Cir. 2022) ............. 4

*In re Apple Iphone 4 Prods. Liab. Litig.*, No. 5:10-md-2188 RMW, 2012 U.S. Dist. LEXIS 113876 (N.D. Cal. Aug. 10, 2012) ................................................ 22

*In re Macbook Keyboard Litig.*, No. 5:18-cv-02813-EJD, 2022 U.S. Dist. LEXIS 214066 (N.D. Cal. Nov. 28, 2022) ................................................................. 6

*In re MacBook Keyboard Litig.*, No. 5:18-cv-02813-EJD, 2023 U.S. Dist. LEXIS 92063 (N.D. Cal. May 25, 2023) ............................................................ 15, 21

*In re MyFord Touch Consumer Litig.*, No. 13-cv-03072-EMC, 2019 U.S. Dist. LEXIS 53356 (N.D. Cal. Mar. 28, 2019) ............................................................ 7

*In re Netflix Privacy Litig.*, No. 5:11-CV-00379 EJD, 2013 U.S. Dist. LEXIS 37286 (N.D. Cal. Mar. 18, 2013) ...................................................................... 5

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015) ..................................... 9

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 2672 CRB (JSC), 2017 U.S. Dist. LEXIS 39115, 2017 WL 1047834 (N.D. Cal. Mar. 17, 2017) ...................................................................................... 19

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291 (9th Cir. 1994) .................. 19, 20

*Kelly v. Wengler*, 822 F.3d 1085 (9th Cir. 2016) ..................................................................... 17

*Ketchum v. Moses*, 17 P.3d 735 (Cal. 2001) ............................................................................. 20

*Klem v. Wash. Mut. Bank*, 176 Wash. 2d 771 (2013) ............................................................... 12

*Laffitte v. Robert Half Internat'l Inc.*, 376 P.3d 672 (Cal. 2016) ........................................ 17, 20

*Lealao v. Beneficial Cal., Inc.*, 97 Cal. Rptr. 2d 797 (Cal. Ct. App. 2000) ............................. 17

*Martin v. Toyota Motor Credit Corp.*, No. 2:20-cv-10518 JVS (MRW), 2022 U.S. Dist. LEXIS 208358 (C.D. Cal. Nov. 15, 2022) ...................................................... 20

*Massey v. Star Nursing, Inc.*, No. 21-cv-01482-EJD, 2023 U.S. Dist. LEXIS 30679 (N.D. Cal. Feb. 23, 2023) ................................................................... 21, 22

*May v. Honeywell Int'l, Inc.*, 331 F. App'x 526 (9th Cir. 2009) .............................................. 12

*McMorrow v. Mondelez Int'l, Inc.*, No. 17-cv-02327-BAS-JLB, 2022 U.S. Dist. LEXIS 66016 (S.D. Cal. Apr. 8, 2022) ...................................................... 11, 12

*Miguel-Sanchez v. Mesa Packing, LLC*, No. 20-cv-00823-VKD, 2021 U.S. Dist. LEXIS 202330 (N.D. Cal. Oct. 20, 2021) .............................................. 21

*Nevarez v. Forty Niners Football Co., LLC*, 474 F. Supp. 3d 1041 (N.D. Cal. 2020) .................................................................................................................. 21

*Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010) ............................................................. 17

*Rodman v. Safeway Inc.*, No. 11-cv-03003-JST, 2018 U.S. Dist. LEXIS 143867 (N.D. Cal. Aug. 22, 2018) ................................................................................ 19

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) ..................................................... 6

*Roes v. SFBSC Mgmt., LLC*, 944 F.3d 1035 (9th Cir. 2019) ...................................................... 4

*Ross v. Trex Co.*, 2013 U.S. Dist. LEXIS 177718 (N.D. Cal. Dec. 16, 2013) .......................... 22

*Satchell v. Fed. Express Corp.*, No. C03-2659 SI, 2007 U.S. Dist. LEXIS 99066 (N.D. Cal. Apr. 13, 2007) ...................................................................................... 5

*Sypherd v. Lazy Dog Rests., LLC*, No. 5:20-cv-00921-FLA (KKx), 2023 U.S. Dist. LEXIS 23257 (C.D. Cal. Feb. 10, 2023) ....................................................... 15

*United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403 (9th Cir. 1990) .................. 18

*Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482 (E.D. Cal. 2010) ................................ 14

*Vianu v. AT&T Mobility LLC*, No. 19-cv-03602-LB, 2022 U.S. Dist. LEXIS
203520 (N.D. Cal. Nov. 8, 2022).................................................................................. 7

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002)................................... 15, 17

*Zepeda v. PayPal, Inc.*, No. 10-cv-02500-SBA, 2017 U.S. Dist. LEXIS 43672
(N.D. Cal. March 24, 2017) ........................................................................................ 9

## STATUTES

28 U.S.C. § 1715(d) ......................................................................................................... 10

## RULES

Fed. R. Civ. P. 23 ....................................................................................................... 1, 3, 7

Fed. R. Civ. P. 23(c)(2)(B) ............................................................................................... 8

Fed. R. Civ. P. 23(e)(1) ..................................................................................................... 8

Fed. R. Civ. P. 23(e)(2)...................................................................................................... 4

**NOTICE OF MOTION**

**PLEASE TAKE NOTICE THAT** on October 1, 2024, or as soon thereafter as the matter may be heard by the Honorable Trina L. Thompson of the United States District Court for the Northern District of California, located in Courtroom 9 at 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiffs Tamika Miller, Julianne Chuanroong, and Stephanie Allen, by and through their undersigned counsel of record, will and hereby do move, for entry of an order:

(1)    granting final approval to the Settlement and entering judgment thereon;

(2)    requiring the Settlement Administrator to pay all Valid Claims made by Authorized Claimants as set forth in the Settlement Agreement;

(3)    awarding an Incentive Award in the amount of $5,000 to each Plaintiff; and

(4)    awarding Attorneys' Fees and Expenses to Class Counsel.

This Motion is based on Federal Rule of Civil Procedure 23, this Notice of Motion, the supporting Memorandum of Points and Authorities, the Declarations of Seth Safier and Steven Weisbrot, and the pleadings and papers on file in this action (including Plaintiffs' previously filed Motion for Approval of Class Action Settlement), and any other matter of which this Court may take notice.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION OF ISSUES TO BE DECIDED**

Following the Court's preliminary approval of this Settlement, the Notice Plan is successfully being implemented. Angeion, the Settlement Administrator, has provided direct notice to millions of Class Members by emails, postcards, and a settlement website. As of July 9, 2024, 172,448 Claim Forms have been submitted and only 254 exclusions and two objections have been received. Both objections are without merit. The first objector complains that the Settlement fails to address an issue that is outside the scope of this litigation (Defendants' purported failure to provide full refunds of travel purchases in certain circumstances), but the Settlement does not concern such disputes and does not release Defendants from such claims. The second objector argues that the Court should reject *any* settlement, force the parties to trial,

and enter a broad injunction against Defendants. (He also resides in Poland and might not be a member of the Class, as it is limited to California and Washington purchasers.) Objections that seek some other deal or no deal at all, are invariably overruled.

Angeion is also beginning a social media campaign to supplement the email and postcard notices it sent, which should spawn additional claims. The responses to date, together with the information and arguments in Plaintiffs' motion for approval (ECF Nos. 173-174), confirm that the Settlement is fair, adequate, and reasonable. Angeion will provide updated reports after the deadline for claims, exclusions, and objections has passed, and Class Counsel will respond to any objections by filing a reply in support of this Motion.

Plaintiffs and Class Counsel also seek approval of an award of Attorneys' Fees equal to 30% of the Settlement Amount, actual costs incurred, and an Incentive Award of $5,000 for each Class Representative.[1]

## II.    BRIEF SUMMARY OF SETTLEMENT

The full Settlement Agreement (ECF No. 173-2 ("Agmt.")) was submitted with Plaintiffs' Motion for Approval. In sum, after extensive discovery, class certification, and multiple mediation sessions, Defendants agreed to settle Plaintiffs' claims in this case, as well as the claims in a similar case pending in the Western District of Washington,[2] by (1) paying $23,997,500 into a common fund for the benefit of Settlement Class Members, and (2) agreeing to clearly inform all purchasers of Travel Guard Plans in the future that the price for a Travel Guard Plan includes the travel insurance premium and an additional fee for non-insurance travel assistance services ("Assistance Fee"). The Net Settlement Fund will be allocated as Cash Payments to Authorized Claimants in proportion to the Assistance Fees they paid. Agmt. ¶ 6.1. This Settlement provides substantial benefits to the California and Washington consumers who

---

[1]    The Settlement would also provide payments (equal to the lowest Incentive Award approved for a Plaintiff) to two Proposed Intervenors who requested to intervene in the *Miller* Action to protect the interests of California purchasers of Travel Guard Plans and who produced documents and appeared for depositions in the *Miller* Action. ECF No. 173-2 ("Agmt.") ¶ 11.6; ECF No. 174-3 ¶¶ 16-17.

[2]    *Allen v. Travel Guard Group, Inc. et al.*, No. 3:22-cv-06005 (W.D. Wa.).

purchased travel insurance from Defendants during the Class Period (who are still unaware that they were charged more than the approved rates for Defendants' travel insurance), and to the many more millions of consumers nationwide who will purchase travel insurance from Defendants in the future, who will now be in a better position to decide whether to pay Assistance Fees. In light of the risks of continued litigation, the Settlement is an excellent result for Settlement Class Members.

Any funds remaining after the initial distribution of Cash Payments to Authorized Claimants, payment of Attorneys' Fees and Expenses, Incentive Awards, payments to Proposed Intervenors, Notice and Administration Expenses, and Taxes and Tax Expenses, will not revert to Defendants but will be paid to Authorized Claimants in a supplemental redistribution or donated *cy pres* to Travelers Aid International. Agmt. ¶ 8.3.

## III.   LEGAL STANDARDS

Rule 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). Under Ninth Circuit precedent, the district court must balance a number of factors including:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Id.* Recent amendments to Rule 23 similarly require the district court to consider whether:

(A)   the class representatives and class counsel have adequately represented the class;

(B)   the proposal was negotiated at arm's length;

(C)   the relief provided for the class is adequate, taking into account:

    (i)   the costs, risks, and delay of trial and appeal;

    (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii)   the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv)   any agreement required to be identified under Rule 23(e)(3); and

(D)   the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The Court should apply "the framework set forth in Rule 23, while continuing to draw guidance from the Ninth Circuit's factors and relevant precedent." *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 U.S. Dist. LEXIS 213045, at *13-14 (N.D. Cal. Dec. 17, 2018). The Ninth Circuit has held that strong judicial policy favors the settlement of class actions. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1269, 1276 (9th Cir. 1992).

If settlement occurs before class certification, "approval requires a higher standard of fairness and a more probing inquiry than may normally be required." *Roes v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048 (9th Cir. 2019) (quotations omitted); *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 783 (9th Cir. 2022) (no presumption that settlement is fair and reasonable). The Court must look for evidence of collusion, including whether: (1) Class Counsel will receive a disproportionate amount of the Settlement; (2) there is a "clear sailing" agreement; and (3) unclaimed funds revert to Defendants. *Roes*, 944 F.3d at 1049. Under Rule 23(e) and this District's Procedural Guidance for Class Action Settlements ("District Guidelines"), detailed scrutiny of proposed class settlements occurs at preliminary approval, where the Court must examine numerous factors, find it will likely approve the settlement, and certify a class for settlement and notice purposes.

## IV.    ARGUMENT

### A.    The Settlement Is Fair, Adequate, and Reasonable.

At preliminary approval, Plaintiffs demonstrated that the Settlement satisfies the relevant factors under the Federal Rules and Ninth Circuit law, and that it was procured without collusion. ECF Nos. 173-174. This Court agreed, preliminarily finding after a rigorous analysis that the Settlement satisfied all of the Rule 23(e)(2) factors and that it was likely to be approved. ECF No. 182 at 4-6. The Court also determined that the requirements for class certification were met and conditionally certified the Class for settlement purposes. *Id.* The rationale for approving the Settlement remains the same, and Plaintiffs now move for final approval of the Settlement.

Before agreeing to the Settlement, the Parties vigorously litigated their positions in the Actions and conducted a thorough investigation of the facts and law relating to the matters in the

Actions. ECF No. 174-3 ¶¶ 2-35, 37-39.[3] Plaintiffs' counsel has successfully represented numerous certified classes, involving a variety of claims, in state and federal courts throughout the country, and has effectively represented the Settlement Class's interests in the Actions. *Id.* ¶¶ 2-33 & Ex. 2 (ECF No. 173-3). The Plaintiffs have no conflicts of interest with Settlement Class Members and have invested significant time and resources to the Actions. *Id.* ¶¶ 16-17, 70. The Parties negotiated the proposed settlement in good faith over multiple sessions with two independent, experienced mediators, Robert Meyer and Judge Jay C. Gandhi (Ret.). *Id.* ¶ 30. "The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Satchell v. Fed. Express Corp.*, No. C03-2659 SI, 2007 U.S. Dist. LEXIS 99066, at *17 (N.D. Cal. Apr. 13, 2007); *see also Edenborough v. ADT, LLC*, No. 16-cv-02233-JST, 2017 U.S. Dist. LEXIS 170896, at *25 (N.D. Cal. Oct. 16, 2017) (settlement was non-collusive where it followed considerable discovery and two separate days of mediation before an experienced mediator).

Although Plaintiffs and their counsel had confidence in Plaintiffs' claims, a favorable outcome was not assured. *Id.* ¶¶ 37-38. Defendants vigorously deny Plaintiffs' allegations and theories, moved to partially decertify the previously certified class,[4] moved for summary judgment, and filed two appeals. *Id.* ¶¶ 7-11, 23-24, 26-27. If litigation were to continue, there is no assurance that the Plaintiffs would prevail, or, even if they did, that they would be able to obtain an award of restitution significantly more than achieved here.

For example, Defendants argue that their assistance services provide valuable benefits to consumers distinct from, but appropriately bundled with, travel insurance, and that the Assistance Fees are not a sham, an agent's fee, or insurance premium (as Plaintiffs allege). ECF No. 153 at 4-8, 16-25. Defendants further argue that California and Washington regulators are

---

[3]   Plaintiffs cite herein to the sealed version of the Declaration of Seth A. Safier in Support of Approval of Class Settlement (ECF No. 174-3), which has only a few, limited redactions. The public version is ECF No. 173-1.

[4]   *See In re Netflix Privacy Litig.*, No. 5:11-CV-00379 EJD, 2013 U.S. Dist. LEXIS 37286, at *15-16 (N.D. Cal. Mar. 18, 2013) ("The notion that a district court could decertify a class at any time is one that weighs in favor of settlement.") (internal citation omitted).

well aware of Defendants' practice of bundling insurance and assistance services into a single product, have approved the forms and filings by which Defendants do so, and have taken no regulatory or legislative action indicating disapproval of such practices, while many states expressly approve the practice. *Id.* at 9-10, 18-19. Defendants argue that the Regulatory Settlement Agreement they entered with California, Washington, and other state insurance departments conclusively establishes that their practices are lawful and fair. *Id.* at 10-11, 19. And Defendants further argue that they are entitled to dismissal of or summary judgment in their favor on Plaintiffs' claims under the doctrine of equitable abstention or the primary jurisdiction doctrine, given the role and function of the state insurance departments in this area. *Id.* at 13-16. The outcome of these disputes is uncertain because there are few direct precedents on Plaintiffs' theories that the charges should be deemed unlawful agent's fees or an unfair practice in the transaction of insurance, under either California or Washington law. Finally, Defendants argue that a substantial portion of the Settlement Class must resolve their claims through arbitration. Plaintiffs could have lost this issue too, and a portion of the Settlement Class may not have been entitled to any recovery.

Even assuming Plaintiffs established Defendants' liability, the range of potential recovery at trial is sharply disputed. *See* ECF No. 174-2 at 11-13 (explaining the disputes about potential recovery and that the Settlement Amount represents a substantial percentage of the potential recovery) (public version at ECF No. 173). In any scenario, the Settlement represents an excellent result given the risks of continued litigation, and it well exceeds results approved in other cases in this District. *See, e.g., Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (finding a settlement for cash benefits representing approximately ten percent of potential damages, with no evidence of collusion, is "fair and reasonable no matter how you slice it"); *In re Macbook Keyboard Litig.*, No. 5:18-cv-02813-EJD, 2022 U.S. Dist. LEXIS 214066, at *13-14 (N.D. Cal. Nov. 28, 2022) (finding a settlement representing approximately 9% to 28% of the total estimated damages "falls within the typical range of recovery in class action settlements"); *Davis v. Yelp, Inc.*, No. 18-cv-00400-EMC, 2022 U.S. Dist. LEXIS 131628, at *7 (N.D. Cal. July 25, 2022) (approving a $22.25 million proposed settlement that was 12.4% of maximum

damages under plaintiff's estimate and 44.5% of maximum damages under defendants' estimate); *In re MyFord Touch Consumer Litig.*, No. 13-cv-03072-EMC, 2019 U.S. Dist. LEXIS 53356, at *31-32 (N.D. Cal. Mar. 28, 2019) (approving settlement representing approximately 6% of maximum recovery). Moreover, as a result of the Settlement, Authorized Claimants may receive a multiple of the Assistance Fees they each paid. These substantial per-claimant benefits strongly support the reasonableness of the Settlement. *See Vianu v. AT&T Mobility LLC*, No. 19-cv-03602-LB, 2022 U.S. Dist. LEXIS 203520, at *15 (N.D. Cal. Nov. 8, 2022) (finding a common fund settlement provided "good value" where valid claimants received about eight or nine percent of the average total fees charged to their accounts over the class period).

In sum, the proposed Settlement provides the Settlement Class with an outstanding opportunity to obtain significant relief at this stage in the litigation, while abrogating the risks that might prevent the Class from obtaining any relief. *See Curtis-Bauer v. Morgan Stanley & Co., Inc.*, No. 06-cv-3903-TEH, 2008 U.S. Dist. LEXIS 85028, at *13 (N.D. Cal. Oct. 22, 2008) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class."). The Settlement meets all the criteria for approval under Rule 23 of the Federal Rules of Civil Procedure and the Northern District's Procedural Guidance for Class Action Settlement ("District Guidelines"). Accordingly, Plaintiffs respectfully request that the Court find that the Settlement satisfies Rule 23, grant final approval, award Class Counsel fees and expenses, and award Plaintiffs service awards.

**B.    The Administrator Provided the Best Notice Practical, It's Plan Should Be Confirmed, and Its Expenses Should Be Approved.**

In accordance with the notice plan that the Court approved in its Preliminary Approval Order (ECF No. 182 at 7) ("Notice Plan"), Angeion is executing a plan that is the "best notice that is practicable under the circumstances," (Fed. R. Civ. P. 23(c)(2)(B)), and "in a reasonable manner to all Class Members who would be bound by the proposal" (Fed. R. Civ. P. 23(e)(1)).

From the data provided, Angeion developed an initial notice list of over 10 million transaction records (merging only those records with an exact match of both name and email

address). Weisbrot Decl. ¶¶ 7-8. From there, it delivered about 9.4 million initial Email Notices and about 362,920 Postcard Notices to Class Members. *Id.* ¶¶ 9-13, 16-20. Thus, approximately 92% of the Class received actual, direct notice. *Id.* ¶ 20.

Angeion distributed a reminder notice by email, and will distribute a second reminder email. *Id.* ¶¶ 14-15. Angeion is also beginning a social media campaign to provide additional notice to Class Members. *Id.* ¶ 22. The social media notice program will reach Class Members whose email addresses are associated with a Facebook or Instagram account, and it will also reach individuals on Facebook, Instagram, X, and Reddit who, based on their interests, may be Class Members. *Id.*

Angeion also created a dedicated Settlement Website to inform Class Members about the Settlement (with key dates, the Long-Form Notice, Settlement Agreement, Amended Complaint, Plaintiffs' Motion for Approval, Preliminary Approval Order, and answers to frequently asked questions) and to provide options to file a claim or opt out online or download printable versions of the Claim Form and Opt-Out Form. *Id*. ¶ 23. The Settlement Website has received over one million page views as of July 9. *Id.* ¶ 24. Angeion also established a toll-free hotline that has received over 3,700 calls. *Id*. ¶ 26. Class Counsel reviewed, tested, and requested changes to the Settlement Website before it went live, including improving the clarity and operation of the claim forms and documents. Safier 7/9/24 Decl. ¶ 3. Class Counsel also have handled calls, emails, and text messages from Class Members who asked about the Settlement or were in need of assistance to submit claims. *Id.*

The initial motion papers filed in connection with the Settlement and Plaintiffs' application for Attorneys' Fees and Expenses and Incentive Awards were placed on the Settlement Website after they were filed. Safier 7/9/24 Decl. ¶ 4. These motion papers and any future replies Plaintiffs submit in support of final approval will also be placed on the Settlement Website. *Id.*

As there is no alternative method of notice that would be practicable here or would be more likely to notify Class Members, the Notice Plan constitutes the best practicable notice to Class Members and complies with the requirements of due process.

**C.     Class Members' Response Is Overwhelmingly Positive.**

The Settlement has been well received by the Class. Angeion has received 172,448 claim forms to date. *Id.* ¶ 27. Further, only 254 Class Members (less than a *hundredth of a percent*) opted out, and only two have objected to date. Weisbrot Decl. ¶¶ 29-30.

In a consumer case such as this, a claims rate of over 2%, with few opt-outs and objections, is a positive response, is in line with other similar settlements, and weighs strongly in favor of final approval. *See, e.g., In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944-45 (9th Cir. 2015) (affirming approval where less than 3.4% of large consumer class filed claims); *Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming settlement approval where only 45 of 90,000 class members objected and 500 opted out); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 459 (low number of objectors and opt-outs showed that settlement was "fair, adequate and reasonable"); *Hanlon*, 150 F.3d at 1026-27 (upholding approval where only 0.1% of the class opted out and only a few objected); *Broomfield v. Craft Brew All, Inc.*, No. 17-cv-01027-BLF, 2020 U.S. Dist. LEXIS 74801, at *19-20 (N.D. Cal. Feb. 5, 2020) (approving settlement with response rate of "about two percent"); *Corzine v. Whirlpool Corp.*, No. 15-cv-05764-BLF, 2019 U.S. Dist. LEXIS 223341, at *17-18 (N.D. Cal. Dec. 31, 2019) (approving settlement where only 1.7% of the class submitted claims, 18 objected and 199 requested exclusion (representing 0.017% of the products sold)); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 320-22 (N.D. Cal. 2018) (finding that there was a positive response to the settlement where about 1.8% of class members submitted claims, only 28 class members objected, and only 406 class members (about 0.0005% of the Class) opted out); *Zepeda v. PayPal, Inc.*, No. 10-cv-02500-SBA, 2017 U.S. Dist. LEXIS 43672, at *48-50 (N.D. Cal. March 24, 2017) (finding the Class's reaction "overwhelmingly positive" where there was a 2.8% claims rate with few objections).

**D.     CAFA Notice Was Provided.**

Additionally, on February 2, 2024, Angeion served upon the Attorneys General of all states and territories and the Attorney General of the United States a notice of the Settlement. Weisbrot Decl. ¶ 6 & Ex. A. The California and Washington attorneys general offices reached

out to the parties for some additional information regarding the Settlement in February, which

counsel provided. Safier Decl. ¶ 5. No state officials have followed up with Plaintiffs' counsel

since that time with any additional questions. *Id.* The Final Approval Hearing, currently set for

October 1, 2024, is being held more than 90 days after the issuance of the CAFA notice, such

that the final approval order may be entered in accordance with CAFA's notice requirements if

the Court finds that all other requirements are met. 28 U.S.C. § 1715(d).

### E. The Settlement Class Includes Both California and Washington Purchasers.

In the *Miller* Action, the Court certified the following classes:

> All natural persons who, using a California address, purchased travel insurance from
> Defendants at any point from December 17, 2017, until the present, and who were
> charged a fee for Travel Guard's supposed assistance service on top of the applicable
> insurance premium rate Defendants were authorized to charge (the "Class").

> All Class members who purchased Defendants' travel insurance through a third-party
> travel retailer's online purchase path (the "Online Purchase Subclass" or "Subclass").

ECF No. 124 at 30.

This Settlement was reached before a motion for class certification was filed in the *Allen*

Action. In the *Allen* Action, Allen sought to represent a class of "All persons who purchased at

least one travel insurance policy from Defendants at any point from December 23, 2018, until

the present, and, for that purchase, provided a billing address in the State of Washington or where

the travel insurance policy identified the plan owner as having a Washington address," but

excluding "(a) Defendants and their officers, directors, employees, subsidiaries, and affiliates;

(b) all judges assigned to this case and any members of their immediate families; and (c) any

person for whom every travel insurance purchase satisfying the above criteria is disqualified

because the person already received a complete refund for the travel insurance purchase or

because Defendants opened and documented an assistance case in connection with the purchased

insurance plan." ECF No. 174-3 ¶ 25.

Because the Court already certified classes in this matter under Rule 23 (b)(3), "the only

information ordinarily necessary is whether the proposed settlement calls for any change in the

class certified, or of the claims, defenses, or issues regarding which certification was granted." Fed. R. Civ. P. 23, 2018 committee notes subdivision(e)(1).

Here, the Settlement Class differs from the previously certified classes in that the Settlement Class: (1) has an end date of January 18, 2024; (2) combines California and Washington purchasers of Travel Guard Plans into a single group; (3) excludes individuals who timely exclude themselves from the Class; and (4) establishes combined exclusions for (a) each and every presiding District Judge and Magistrate Judge in the Actions, Judge Gandhi (Ret.), Robert A. Meyer, and their staff, and their immediate family members; (b) the officers, directors, agents, servants, and current and former employees of Defendants who were employed by Defendants at any time on or after the start of the Class Period, and the immediate family members of such Persons; and (c) any Person who received a complete refund for each and every Qualifying Travel Guard Plan purchased by that Person.

Because the Settlement Class adds Washington purchasers to the class definition, and those purchasers' claims are based on the same facts and legal theories, the Court's previous determinations (regarding numerosity, commonality, adequacy, typicality, predominance, and superiority) are applicable to the Settlement Class. *See McMorrow v. Mondelez Int'l, Inc.*, No. 17-cv-02327-BAS-JLB, 2022 U.S. Dist. LEXIS 66016, at *7-8 (S.D. Cal. Apr. 8, 2022) ("Expansion of the class to include all purchasers nationwide as well as purchasers of additional products does not change the class certification analysis."); *Allen v. Similasan Corp.*, No. 12-cv-00376-BAS-JLB, 2017 U.S. Dist. LEXIS 56333, at *8-9 (S.D. Cal. Apr. 12, 2017) (concluding that expansion of the class to include all purchasers nationwide as well as purchasers of additional products did not change its prior certification analysis). In *Allen*, the new class was more numerous than the originally certified one, the representation was equally adequate, the defendant's conduct was uniform across the United States as well as across the wide variety of products, the claims and defenses of the representative parties were equally typical for the expanded class as for the original class, and the common questions of law or fact still predominated for the broader class, as they had for the originally certified class. *Id.*

Here, the Settlement Class is more numerous than the California-only class previously certified by the Court. *Compare* ECF No. 124 at 30 *and* Agmt. ¶ 2.57. Also, all of the Settlement Class Members' claims arise from the same common nucleus of facts and essentially the same legal theories that justified the Court's prior class certification order: that it was unlawful, unfair, and/or deceptive for Defendants to include Assistance Fees (supposedly for a "non-insurance" assistance service) in the price offered and charged to Settlement Class Members for each Travel Guard Plan. Agmt. ¶¶ 1.1-1.2, 1.4, 1.17; ECF No. 172 ("Am. Compl."); ECF No. 124 at 16-17; *McMorrow*, 2022 U.S. Dist. LEXIS 66016, at *7 (noting "Defendant's alleged misconduct . . . appears to be uniform across the United States" and thus "the nationwide class presents the same common questions of fact and law").[5] These common issues predominate over any individual issues for the reasons already explained by the Court. ECF No. 124 at 17-25; *see also McMorrow*, 2022 U.S. Dist. LEXIS 66016, at *7 (noting "the common questions of law or fact predominate" for the nationwide settlement class just as they did for the previously certified class).

Plaintiffs, like all Settlement Class Members, were presented offers for Travel Guard Plans that identified a single price for each offered plan, which included both the allocable insurance premium amount and Assistance Fee amount. Agmt. ¶¶ 1.1, 1.2, 1.17; Am. Compl. ¶¶ 27-34, 46-81. The Plaintiffs and all Settlement Class Members have allegedly been injured in the same way by the same course of conduct. Plaintiffs have no conflict, let alone an irreconcilable conflict, with other Settlement Class Members. Rather, they stand in the same shoes as all other Settlement Class Members, assert the same claims as other Settlement Class Members, and have a common interest in proving a common course of conduct and obtaining relief from Defendants. Plaintiffs and Class Counsel have vigorously and competently pursued the Settlement Class Members' claims. Class Counsel have extensive experience and expertise

---

[5]    Like California, Washington also prohibits insurers from charging premiums in excess of its filed rates. *See* RCW 48.19.040, 48.18.180. And, like California's UCL, Washington's consumer protection law ("CPA") also provides relief for unlawful, unfair, and deceptive practices. *See Klem v. Wash. Mut. Bank*, 176 Wash. 2d 771, 785-87, 295 P.3d 1179, 1186-87 (2013); *see also May v. Honeywell Int'l, Inc.*, 331 F. App'x 526, 529 (9th Cir. 2009) (noting that violations of Washington's Insurance Code constitute per se violations of the Washington CPA); RCW 19.86.170, 48.01.030.

in prosecuting complex class actions and in administering complex class action settlements. ECF No. 173-3. Accordingly, Plaintiffs and Class Counsel satisfy the requirements of typicality and adequacy. ECF No. 124 at 15-16.

The proposed class Settlement is superior to other available means for the fair and efficient resolution of the claims of the Settlement Class Members. Each individual Settlement Class Member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to show Defendants' liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Moreover, since the certification is to effectuate a settlement, the Court "need not inquire whether the case, if tried, would present intractable management problems." *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

The Court conditionally certified the Settlement Class after considering the expansion issues (ECF No. 182 at 4-5), and Plaintiffs now request confirmation of that certification for purposes of final approval. All the factors that supported the Court's prior conclusions remain true, and the Settlement Class should be certified.

The Released Claims are also consistent with the claims asserted in the Actions. The claims in the Actions are based on (a) Defendants' practice of automatically including Assistance Fees in the price of Travel Guard Plans, and/or (b) allegations that Defendants' offers were false or misleading with respect to the inclusion of Assistance Fees. *See* Agmt. ¶¶ 1.1-1.2, 1.4, 1.17. The Released Claims include all claims (under any theory or legal basis) "that arise out of or relate to the allegations that sales of Qualifying Travel Guard Plans were unlawful, unfair, falsely advertised, or deceptive with respect to the marketing, offering, solicitation, pricing, sale, accessibility, availability, and/or payment of Assistance Fees for the assistance services included in (a) the Qualifying Travel Guard Plans or (b) any regulatory filing seeking approval for the rates and forms for Qualifying Travel Guard Plans." *Id.* ¶ 2.48. The Released Claims expressly do not include any Settlement Class Member's (i) claim(s) for personal injury against Defendants or the Released Defendants; (ii) claim(s) for insurance coverage under any Travel Guard Plan or

relating to Defendants' failure to properly provide insurance coverage, to properly provide particular assistance benefits in a particular case, or to comply with applicable law in administering claims for insurance coverage or benefits; (iii) claim(s) arising from the purchase of any Travel Guard Plan after January 18, 2024; or (iv) right(s) to enforce this Agreement. *Id.* The Released Claims are thus properly broad enough to provide Defendants peace from the issues raised in the Actions but do not inhibit Settlement Class Members from bringing claims against Defendants that were not at issue in the Actions. *See In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 327 (N.D. Cal. 2018) (approving the release of "not only those claims alleged in the complaint, but also claims 'based on the identical factual predicate as that underlying the claims in the settled class action.'") (quoting *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010)).

## F.    The Court Should Award Attorneys' Fees and Costs.

Class Counsel have not yet received any compensation for their work on this litigation or for the out-of-pocket expenses they have incurred. Class Counsel expended thousands of hours investigating, litigating, and negotiating to reach a successful settlement. Plaintiffs request, upon final approval, an award of attorneys' fees in the amount of 30% of the Settlement Amount (or $7,199,250). Under Ninth Circuit standards, it is appropriate for a District Court to analyze an attorneys' fee request and issue an award either (1) as a percentage of the total benefit made available to the settlement class or (2) using the "lodestar" method. *See e.g., Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). Plaintiffs' fee request is reasonable under either of these approaches. Further, Plaintiffs request, upon final approval, an award of costs through final approval.

### 1.    Class Counsel's Requested Fee Is a Reasonable Percentage of the Total Benefit Made Available to the Class.

"The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark. However, . . . in 'most common fund cases, the award exceeds that benchmark." *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010); *see also In re MacBook Keyboard Litig.*, No. 5:18-cv-

02813-EJD, 2023 U.S. Dist. LEXIS 92063, at *42-43 (N.D. Cal. May 25, 2023) (awarding fees equal to 30% of the fund and noting multiple courts have done the same); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1377 (N.D. Cal. 1989) (explaining that an attorney fee award of 30% is appropriate in most common fund settlements). In deciding on a fee award, the Court must consider "all of the circumstances of the case" such as the results achieved, the risk undertaken by Class Counsel, benefits obtained beyond the Settlement Amount, and whether Class Counsel declined other work to pursue the Actions. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-49 (9th Cir. 2002) (affirming a 28% fee award). The Court may also consider the skill required and quality of the work. *Sypherd v. Lazy Dog Rests., LLC*, No. 5:20-cv-00921-FLA (KKx), 2023 U.S. Dist. LEXIS 23257, at *12-15 (C.D. Cal. Feb. 10, 2023).

In *Sypherd*, the court found it was reasonable to award fees equal to 30% of the fund where: (1) the $2.15M fund provided a benefit class members could not have obtained individually, particularly because it was unlikely they would have even discovered the practices at issue; (2) there were significant litigation risks given the lack of on-point authority, unique legal questions, defendant's motion for summary judgment, and dueling expert reports; (3) class counsel was very experienced with class actions and skillfully and earnestly litigated the case through discovery and several motions; and (4) class counsel litigated the case on a contingent basis. *Id.* Similarly, in *MacBook Keyboard*, the court awarded fees of 30% where (1) class counsel "achieved excellent results" by obtaining a fund representing between 9% and 28% of total estimated damages; (2) the multi-year class action against a major corporation was risky, particularly in light of potential decertification, trial, a battle of experts, and appeals; (3) the class benefited from the experience and skill of class counsel, as evidenced by class counsel's ability to prevail on motions to dismiss and to certify a class while litigating against highly qualified and experienced defense counsel; and (4) class counsel took the case on a contingency fee basis. 2023 U.S. Dist. LEXIS 92063, at *39-43.

All of the above factors justify an award of 30% in this case. The $23,997,500 Settlement Amount represents an excellent recovery, and it is highly unlikely that the Settlement Class Members would have even discovered Defendants' practice of embedding an unapproved

- 15 -

Assistance Fee in the price of Travel Guard Plans. Second, this litigation had more risk than the litigations in *Sypherd* and *Macbook Keyboard*, given: (a) the novel legal questions raised about the lawfulness, fairness, and deceptiveness of Defendants' practices; (b) Defendants' motions to dismiss, to compel arbitration in both Actions, to vacate an arbitration award, to stay the Actions pending appeals, to partially decertify the certified class; to exclude Plaintiffs' experts, and for summary judgment; (c) dueling expert reports on multiple fronts; (d) arbitration proceedings; and (e) multiple appeals. Third, Class Counsel is very experienced with class actions, has obtained many of the key precedents applicable in consumer cases in the Ninth Circuit (both at the trial-court and appellate levels), prevailed on almost all the motions in the Actions, obtained extensive discovery (including responses to over 180 written discovery requests, hundreds of thousands of pages of documents, and nine depositions), evaluated voluminous and complex insurance filings and financial records, consulted with experts, obtained class certification prior to settlement, and accomplished all of this while litigating against highly skilled and experienced defense counsel. ECF No. 174-3 ¶¶ 2-34. Fourth, Class Counsel bore considerable risk in litigating this case wholly on a contingent basis and advancing all costs. *Id.* ¶¶ 49-50. Fifth, during the pendency of the Actions, Class Counsel turned away other work. *Id.*

### 2.     As a Cross-Check, Class Counsel's Requested Fee Is Also Reasonable When Using the Lodestar Approach.

The Court is not obligated to perform a cross-check on Class Counsel's lodestar when evaluating the percentage of the fund to be awarded as fees. *Farrell v. Bank of Am. Corp., N.A.*, 827 F. App'x 628, 630 (9th Cir. 2020) (affirming district court's decision to use percentage-of-recovery to calculate fees without performing lodestar cross-check). Indeed, "[i]n a common fund case, a lodestar method does not necessarily achieve the stated purposes of proportionality, predictability and protection of the class and can encourage unjustified work and protracting the litigation." *Bolton v. U.S. Nursing Corp.*, No. 12-cv-4466-LB, 2013 U.S. Dist. LEXIS 150299, at *13 (N.D. Cal. Oct. 18, 2013) (citing *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989)). Nevertheless, should the Court elect to utilize a lodestar cross-check, Class Counsel's fee here is likewise eminently reasonable.

Under the lodestar approach, "[t]he lodestar (or touchstone) is produced by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate." *Lealao v. Beneficial Cal., Inc.*, 97 Cal. Rptr. 2d 797, 803 (Cal. Ct. App. 2000); *see also Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016) ("[A] court calculates the lodestar figure by multiplying the number of hours reasonably expended on a case by a reasonable hourly rate. A reasonable hourly rate is ordinarily the 'prevailing market rate [] in the relevant community.'") (alteration in original) (internal citation omitted) (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010)). Once the court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative "multiplier" to take into account a variety of other factors, "including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented." *Laffitte v. Robert Half Internat'l Inc.*, 376 P.3d 672, 677 (Cal. 2016); *see also Vizcaino*, 290 F.3d at 1051 n.6 (affirming a multiplier of 3.65 and noting that multipliers of one to four are frequently awarded).

Class Counsel's updated lodestar, as of July 2024, is approximately $4.7 million. Safier 7/9/24 Decl. ¶ 6. Class Counsel's efforts to date include, without limitation: (1) significant pre-filing investigation; (2) drafting and filing the class action complaints; (3) drafting and filing case management conference statements and case management stipulations; (4) drafting discovery requests and responses; (5) meeting-and-conferring with Defendants' counsel regarding the scope of discovery, the sufficiency of discovery responses and production, deposition notices, the retention of electronic documents, Defendants' searches for electronically stored information, the terms and scope of a stipulated protective order, the terms and scope of a stipulated electronically stored information order, and the timing of production; (6) reviewing voluminous documents produced by Defendants; (7) preparing Plaintiffs' and Proposed Intervenors' document productions; (8) preparing Plaintiffs and Proposed Intervenors for depositions and defending them at depositions; (9) conducting depositions of Defendants and their employees; (10) researching, engaging, and consulting with experts; (11) working with experts on their expert reports; (12) preparing Plaintiffs' experts for depositions and defending those depositions; (13) preparing oppositions to Defendants' motions to compel arbitrations in

the Actions; (14) participating in arbitration regarding the arbitrability of Plaintiff Miller's claims; (15) preparing multiple filings regarding the parties' cross-motions to confirm or vacate the arbitration award; (16) preparing Plaintiffs' motion for class certification and supporting documents and reply; (17) analyzing Defendants' expert reports; (18) deposing Defendants' experts; (19) preparing Plaintiffs' motion for partial summary judgment and supporting documents; (20) preparing motions to exclude certain testimony of Defendants' experts; (21) preparing oppositions to Defendants' motion for summary judgment and motion to exclude expert testimony; (22) analyzing Defendants' appellate briefs and beginning preparation of answering briefs; (23) drafting mediation statements and participating in three mediation sessions; (24) negotiating and drafting the Settlement Agreement and Notice Plan along with corresponding documents, including the notice forms; and (25) drafting this motion for approval and supporting documents, including a proposed preliminary approval order and a proposed final judgment. ECF No. 174-3 ¶¶ 2-32. Before the Final Approval Hearing, Class Counsel's ongoing efforts will also include, without limitation: (26) reviewing and responding to correspondence from Settlement-Notice Class Members; (27) supervising the work of the Settlement Administrator; (28) researching and drafting a reply memorandum and opposing objections, if any; and (29) appearing at the Final Approval Hearing and any further scheduled appearances.

Class Counsel calculated their lodestar using their regular 2024 billing rates, which for the attorneys involved range from $870 to $1410 per hour and for the paralegals range from $305 to $420 per hour. *Id.* ¶¶ 51-53. Class Counsel are graduates of top law schools (including Yale, Harvard, and NYU), and the principal work was performed by lawyers with 10 or more years of experience.[6] *Id.* ¶ 66 & Ex. 2. These hourly rates are below market rates in San Francisco for attorneys of Class Counsel's background and experience. *Id.* ¶ 67.[7] Additionally, the rates

---

[6]    Some of Class Counsel also previously worked for top defense firms; had they remained at those firms their rates would be even higher than they are currently. ECF No. 174-3 ¶ 67.

[7]    "Affidavits of the plaintiff'[s] attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiff'[s] attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

charged by Class Counsel have been deemed reasonable in connection with the approval of their fee applications in at least a dozen recent matters. *Id.* ¶¶ 53-65. Courts in other cases over the past several years have also approved similar fees charged by other firms. *See, e.g., Glob. Indus. Inv. Ltd. v. 1955 Capital Fund I GP LLC*, No. 21-cv-08924-HSG, 2023 U.S. Dist. LEXIS 173343, at *12 (N.D. Cal. Sep. 27, 2023) (granting fees, minus certain work, at hourly rates between $1,085 and $1,650 for counsel and partners and between $645 and $960 for associates); *Hessefort v. Super Micro Comput., Inc.*, No. 18-cv-00838-JST, 2023 U.S. Dist. LEXIS 198353, at *25 (N.D. Cal. May 5, 2023) (approving rates from $770 to $1,350 for partners or of counsel attorneys); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 2672 CRB (JSC), 2017 U.S. Dist. LEXIS 39115, 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (approving reasonable rates of up to $1600 for partners, $790 for associates, and $490 for paralegals); *In re Animation Workers Antitrust Litig.*, No. 14-cv-4062-LHK, 2016 U.S. Dist. LEXIS 156720, at *20-21 (N.D. Cal. Nov. 11, 2016) (approving hourly rates of senior attorneys of between $845 and $1,200).

These rates are the 2024 rates charged by Class Counsel, which is appropriate given the deferred and contingent nature of counsel's compensation. *See In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1305 (9th Cir. 1994) ("The district court has discretion to compensate delay in payment in one of two ways: (1) by applying the attorneys' current rates to all hours billed during the course of litigation; or (2) by using the attorneys' historical rates and adding a prime rate enhancement.").

The requested fee currently equates to a modest 1.5 multiplier, and will be even lower once Class Counsel's additional work in conjunction with the Settlement through final approval is included. This is well within the normal range of multipliers in common fund cases; indeed, it is on the very low end for a common fund settlement of this magnitude. *See Rodman v. Safeway Inc.*, No. 11-cv-03003-JST, 2018 U.S. Dist. LEXIS 143867, at *16 (N.D. Cal. Aug. 22, 2018) (noting multipliers of one to four times the lodestar are common and awarding fees equal to 28% of the common fund, which represented a multiplier of approximately 1.75 of the lodestar); *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 334 (N.D. Cal. 2014) ("A 2.83 multiplier falls within

the Ninth Circuit's presumptively acceptable range of 1.0–4.0."). The multiplier is further justified by "the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented." *Laffitte*, 376 P.3d at 677. Each of these factors justifies a multiplier here.

Class Counsel has achieved an exceptional result, has provided an extremely high quality of legal representation to the Settlement Class, confronted and developed novel and complex legal and factual issues, and bore considerable risk in litigating this case wholly on a contingent basis and advancing all costs.

Since Class Counsel's work is primarily focused on contingent-fee class action cases, it does not get paid in every case. Frequently, it gets nothing or is awarded fees equal to only a small percentage of the amount it had worked. Where a plaintiff's firm does succeed, therefore, it is appropriate to award a multiplier, to compensate for the risks the firm regularly undertakes. As the California Supreme Court has explained:

> A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions. If he is paid no more, competent counsel will be reluctant to accept fee award cases.

*Ketchum v. Moses*, 17 P.3d 735, 742 (Cal. 2001) (internal quotation marks and citation omitted); *see also Cazares v. Saenz*, 256 Cal. Rptr. 209, 214 (Cal. Ct. App. 1989) ("[I]n theory, a contingent fee in a case with a 50 percent chance of success should be twice the amount of a non-contingent fee for the same case."); *In re: Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d at 1299 ("It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases.").

Finally, Class Counsel reached a settlement before class certification in the *Allen* Action and thus should be rewarded for its efficiency (and the concomitant savings to the judicial system). *See Martin v. Toyota Motor Credit Corp.*, No. 2:20-cv-10518 JVS (MRW), 2022 U.S. Dist. LEXIS 208358, at *42 (C.D. Cal. Nov. 15, 2022) (awarding fees equivalent to a 6.33 multiplier and noting "Class Counsel should not be punished for efficiently litigating this action

1    and achieving a settlement before billing more hours.") (internal quotation marks and citation

2    omitted).

3              **3.    Class Counsel Requests an Award of Its Expenses.**

4              Class Counsel requests that, in addition to reasonable attorneys' fees, the Court grant its

5    application for reimbursement of out-of-pocket expenses incurred by Class Counsel in

6    connection with the prosecution of this litigation ($244,716.05 recorded to date, plus any

7    additional costs paid or incurred through Final Approval). Safier 7/9/24 Decl. ¶¶ 8-9; *see also*

8    *Miguel-Sanchez v. Mesa Packing, LLC*, No. 20-cv-00823-VKD, 2021 U.S. Dist. LEXIS 202330,

9    at *33 (N.D. Cal. Oct. 20, 2021) (approving expenses identified in itemized list). An attorney is

10   entitled to "recover as part of the award of attorney's fees those out-of-pocket that would

11   normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994)

12   (internal quotation marks and citation omitted).

13             **G.    The Court Should Approve Service Awards.**

14             "Because the laws are not self-enforcing, it is appropriate to give incentives to those who

15   come forward with little to gain and at personal risk and who work to achieve a settlement that

16   confers substantial benefits on others." *Massey v. Star Nursing, Inc.*, No. 21-cv-01482-EJD,

17   2023 U.S. Dist. LEXIS 30679, at *23 (N.D. Cal. Feb. 23, 2023). Accordingly, this Court should

18   approve a $5,000 Incentive Award to each Plaintiff, which is a presumptively reasonable amount

19   for a service award in the Ninth Circuit. *See In re MacBook Keyboard Litig.*, 2023 U.S. Dist.

20   LEXIS 92063, at *47; *Cunha v. Chico Produce*, No. 17-cv-00597-JST, 2021 U.S. Dist. LEXIS

21   148406, at *13 (N.D. Cal. Feb. 16, 2021); *Dixon v. Cushman & Wakefield W., Inc.*, No. 18-cv-

22   05813-JSC, 2022 U.S. Dist. LEXIS 73512, at *40 (N.D. Cal. Apr. 21, 2022); *Nevarez v. Forty*

23   *Niners Football Co., LLC*, 474 F. Supp. 3d 1041, 1048 (N.D. Cal. 2020) (approving service

24   awards of $5,000 to three plaintiffs where the total of $15,000 was less than 1% of the $24

25   million settlement fund). In deciding whether to approve such an award, a court may consider:

26   the financial or reputational risk undertaken by Plaintiffs in bringing the action, the amount of

27   time and effort Plaintiffs expended in pursuing the litigation to protect the interests of the

28

Settlement Class, and the degree to which the Settlement Class has benefitted from those actions. *Massey*, 2023 U.S. Dist. LEXIS 30679, at *22.

Plaintiffs took on substantial risk, most importantly the risk of publicity and notoriety. ECF No. 174-3 ¶ 70. They also searched their personal records for responsive documents, assisted with responses to written discovery, and communicated many times with counsel, and the California Plaintiffs and Proposed Intervenors attended deposition preparation sessions and appeared for depositions. *Id.* ¶¶ 16-17, 70. Plaintiffs also remained actively involved in the Actions prior to and after settlement, even though their individual damages were relatively modest. *Id.* Plaintiffs and Proposed Intervenors are also agreeing to broader releases than other Settlement Class Members. Agmt. ¶¶ 2.3, 13.3; *Massey*, 2023 U.S. Dist. LEXIS 30679, at *23 ("Plaintiff entered into a global release broader than the release applicable to other class members."). In sum, they devoted substantial time and effort pursuing this litigation, including working with counsel, and obtained substantial benefits for absent class members while personally bearing the burdens and risks associated with a failed case—i.e., time, potential costs, and potential negative public sentiment.

### H.     The Objections Should Be Overruled.

"Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027 (9th Cir. 1998). Accordingly, "without more, objections seeking a 'better' result are not sufficient to overturn a settlement agreement." *In re Apple Iphone 4 Prods. Liab. Litig.*, No. 5:10-md-2188 RMW, 2012 U.S. Dist. LEXIS 113876, at *9 (N.D. Cal. Aug. 10, 2012); *see also Herrera v. Wells Fargo Bank, Nat'l Ass'n*, No. 8:18-cv-00332-JVS-MRW, 2021 U.S. Dist. LEXIS 221364, at *23 (C.D. Cal. Nov. 16, 2021) (finding that "generalized objections based on personal preferences do not call into question the adequacy of the settlement for the class"); *Ross v. Trex Co.*, 2013 U.S. Dist. LEXIS 177718, at *13 (N.D. Cal. Dec. 16, 2013) (overruling objection the settlement could have been better by providing different or additional relief). Furthermore, if any objector believed that

"his or her personal claim was being sacrificed for the greater good . . . they had the right to opt-out of the class." *Hanlon*, 150 F.3d at 1027.

The two objectors to date do not identify any particular unfairness in the Settlement. Instead, one (Mr. Gajda) categorically objects to any settlement, demanding not only that Plaintiffs proceed to trial but that they prevail and obtain a broad injunction against Defendants. Weisbrot Decl. Ex. I. (Also, as Mr. Gajda resides in Poland, Class Counsel is investigating whether he is actually a member of the Settlement Class.) The other objector (Mr. Nauli) wants the Settlement to require Defendants to provide refunds of travel expenses in indeterminate circumstances (*id.*), even though insurance claims were not at issue in the litigation and are expressly excluded from the Settlement (and the releases included in the Settlement) (*see* Agmt. ¶ 2.48). Moreover, each objector still has the right to opt-out and pursue, for example, more injunctive relief on their own. Indeed, Mr. Nauli need not even opt out because the relief he wants is not released by this Settlement. There is no justification for denying a settlement worth millions of dollars to hundreds of thousands of claimants because two individuals want something more or different. Such objections do not address the relevant issues and should be overruled. Class Counsel will reply to any further issues that might be raised by the deadline for objections.

## V.    CONCLUSION

For the reasons set forth in herein and in Plaintiffs' Motion for Approval (ECF Nos. 173, 174), Plaintiffs and Class Counsel respectfully request that this Court enter final judgment approving the Settlement, certifying the Class, confirming the appointment of Class Counsel and the Class Representatives, Awarding Fees, Costs and Representative Payments, and adopting the terms of the Settlement Agreement.

Dated: July 9, 2024

**GUTRIDE SAFIER LLP**

*/s/ Stephen M. Raab*
Seth A. Safier (State Bar No. 197427)
  seth@gutridesafier.com
Rajiv V. Thairani (State Bar No. 344390)
  rajiv@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile:  (415) 449-6469

**GUTRIDE SAFIER LLP**
Stephen M. Raab (appearing *pro hac vice*)
  stephen@gutridesafier.com
305 Broadway, 7th Floor
New York, NY 10007
Telephone: (415) 639-9090 x109

*Attorneys for Plaintiffs*