UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAMIKA MILLER, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>TRAVEL GUARD GROUP, INC., et al.,<br><br>Defendants. | Case No. 21-cv-09751-TLT<br><br>**ORDER GRANTING AS MODIFIED MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND RELATED AWARDS**<br><br>Re: Dkt. No. 185 |

The Court previously granted a motion for preliminary approval of the Class Action Settlement between Plaintiffs Tamika Miller, Julianne Chuanroong, and Stephanie Allen (collectively, "Plaintiffs") and Defendants Travel Guard Group, Inc., AIG Travel, Inc., and National Union Fire Insurance Company of Pittsburgh, PA (collectively, "Defendants"). *See* ECF 182. As directed by the Court's preliminary approval order, on July 9, 2024, Plaintiffs filed their motion for final settlement approval and for awards of attorneys' fees, costs, and representative awards. ECF 185. The Court held a hearing and took arguments from the parties and from objectors on October 1, 2024. ECF 195.

The Court continued the motion until December 10, 2024, to permit Plaintiffs to provide supplemental detail for their requests. ECF 197. Plaintiffs filed a supplemental brief with updated and transparent requests. ECF 201, 206. The Court found this matter appropriate for resolution without oral argument and took it under submission. *See* Civil L.R. 7(1)(b) (authorizing courts to dispense with oral argument on any motion except where an oral hearing is required by statute).

Having considered the motion briefing, the terms of the Settlement Agreement, the objections and response thereto, the arguments of counsel, and the other matters on file in this action,

the Court **GRANTS** the motion for final approval. The Court finds the settlement fair, adequate, and reasonable. Provisional appointments of the class representative(s) and class counsel are confirmed.

The Court **GRANTS AS MODIFIED** the motion for attorneys' fees, costs, and representative awards. The Court **ORDERS** that class counsel shall be paid $7,199,250 (30% of total settlement) in attorneys' fees and $236,475.58 in litigation costs, the class administrator shall be paid $824,821.90, and class representative and named plaintiffs Tamika Miller, Julianne Chuanroong, and Stephanie Allen shall each be paid $5,000 (in total $15,000) incentive award.

**I.    BACKGROUND**

   **A.    Procedural History**

Plaintiffs filed the putative class action complaint on December 17, 2021, against defendants Travel Guard Group, Inc., AIG Travel, Inc., American International Group, Inc. ("AIG"), and National Union Fire Insurance Company of Pittsburg, Pennsylvania. The pleadings allege that defendants included a discretionary "Assistance Fee" in addition to the regulated insurance premium as part of the total cost of Travel Guard insurance plans. Plaintiff's amended complaint alleges claims for unfair business practices under California Business and Professions Code § 17200 et seq. ("UCL"); false advertising under California Business and Professions code § 17500 et seq. ("FAL"); fraud/deceit/misrepresentation; violation of Washington's Consumer Protection Act under Revised Code of Washington 19.86.010 et seq. ("CPA"); and breach of the duty of good faith.

The parties reached a settlement prior to class certification with the assistance of an experienced mediator Robert A. Meyer. The Settlement Agreement, attached hereto as Exhibit A, defines the class as:

> The Settlement-Notice Class: All Persons, except Excluded Persons, who purchased at least one Qualifying Travel Guard Plan from December 17, 2017, through and including January 18, 2024.

("the Settlement Class"). The proposed class here combines the classes from *Miller v. Travel Guard Grp.*, 21-cv-09751 (N.D. Cal.) and *Allen v. Travel Guard Grp.*, 22-cv-06005 (W.D. Wash.). In its preliminary approval order, the Court conditionally certified the Settlement Class and provisionally appointed Gutride Safier LLP as Class Counsel, Plaintiffs Tamika Miller, Julianne Chuanroong, and

1   Stephanie Allen as class representatives, and Angeion Group LLC as the class administrator. ECF

2   182, at 6.

### B. Terms of Settlement

Under the terms of the Settlement Agreement, Defendants will pay $23,997,500.00 into a common settlement fund, without admitting liability. This amount includes attorneys' fees and costs, the cost of class notices and settlement administration, the class representative's service award, and taxes and tax expenses. Defendants will also agree to clearly inform all purchasers of Travel Guard Plans in the future that the price for a Travel Guard Plan includes the travel insurance premium and an additional fee for non-insurance travel assistance services. The common settlement fund has accrued $276,962.06 in interest which will also be distributed.

#### 1. Attorneys' Fees and Costs

Under the Settlement Agreement, Plaintiff's counsel seeks $7,199,250.00 in attorneys' fees and $236,475.58 in litigation costs. The common settlement fund also includes a provision for $450,000.00 in initial settlement administration costs; and up to $5,000 to be paid to named plaintiffs Tamika Miller, Julianne Chuanroong, and Stephanie Allen as an incentive award in exchange for a general release of all claims against defendant. In the final settlement, Plaintiffs requests adjusted amount of $824,821.90 to be paid to the class administrator.

#### 2. Class Relief

After inclusion of interest accrued and deductions from the common fund for fees, costs, and service incentive awards, approximately $15,998,914.60 will remain to be distributed among the participating class members. Class members will be paid proportionally to the Assistance Fees they paid. Dividing this amount across the 246,539 participating class members yields an average recovery of approximately **$64.89 per class member**. The Agreement provides that no amount will revert to defendant.

Defendants will also agree to clearly inform all purchasers of Travel Guard Plans in the future that the price for a Travel Guard Plan includes the travel insurance premium and an additional fee for non-insurance travel assistance services.

### 3. Cy Pres/Remainder

The Settlement Agreement provides that after claims submission and distribution of fees, expenses, and awards, the Net Settlement Fund will be distributed to class members who received cash payments in an amount to be determined. However, any funding left over will be paid to the *cy pres* recipient, Travelers Aid International.

### C.    Class Notice and Claims Administration

The Settlement Agreement is being administered by Angeion Group LLC. Following the Court's preliminary approval and conditional certification of the settlement, the Class Administrator Angeion reviewed the 15,618,855 records provided and merged records where it was evident that the plans were purchased by the same person (i.e., records with the same exact name and email address).

Beginning on May 7, 2024, Angeion caused the Email Notice to be sent to the 10,211,318 valid email addresses on the Notice List. Of the emails sent, 9,279,825 were delivered, and 931,493 were unable to be delivered. The 931,493 records whose Email Notice could not be delivered were subjected to a reverse lookup in an attempt to identify an updated email address based on the data points available (i.e., name and prior email address). The reverse lookup search identified 194,845 updated email addresses. Angeion updated the Notice List with these updated email addresses. On May 23, 2024, Angeion caused the Email Notice to be sent to the 194,845 valid email addresses identified from this reverse lookup. Of the emails sent, 166,733 were delivered, and 28,112 could not be delivered. As a result of above-described efforts, a total of 9,446,558 Email Notices were delivered to the 10,687,524 unique merged records, representing a deliverability rate of approximately 88.4% for the unique merged records with email addresses.

Beginning on June 4, 2024, Angeion caused a reminder email notice (the "Reminder Email Notice") to be sent to the 9,317,520 email addresses to which the initial Email Notice had been delivered and which were not already associated with a submitted claim, exclusion request, or request to unsubscribe from receiving future email notifications. In total, 8,988,208 Reminder Email Notices were delivered, and 329,312 could not be delivered. Prior to the claims filing deadline, Angeion caused a second reminder email notice to be sent to all Class Members whose prior Email

4

Notices were deliverable, and which are not already associated with a submitted claim, exclusion request, or request to unsubscribe from receiving email notices.

Of the 1,240,966 parent records in the Notice List which did not receive an initial Email Notice (because of issues with validity and/or delivery, as noted above), 388,599 had a valid mailing address. On June 5, 2024, Angeion caused the Postcard Notice to be mailed to those 388,599 mailing addresses in the Notice List via USPS first class mail, postage prepaid. As of November 11, 2024, a total of 80,343 Postcard Notices were returned by the USPS as undeliverable without a forwarding address. Angeion conducted address verification searches ("skip traces") to locate updated addresses for these records. The skip trace efforts identified updated addresses for 55,836 unique merged records. Angeion updated the Notice List and re-mailed Postcard Notices to the 55,836 updated addresses. Of the re-mailed Postcard Notices, 5,107 have been returned by the USPS a second time.

On July 10, 2024, Angeion commenced a media advertising campaign comprised of social media advertising via Facebook, Instagram, X and Reddit, and a paid search campaign via Google. The social media advertising consisted of two campaigns, (1) the direct, targeted social media notice will be implemented by uploading known Class Member email addresses directly to Facebook and Instagram. If any of the email addresses are used as the primary log-on email address for these platforms, Angeion contacted those specific Class Members on a one-to-one basis via internet ads displayed on these platforms; and (2) an interest-based approach which focuses on the interests that users exhibit while on the social media platforms Facebook, Instagram, X, and Reddit, to target advertisements to individuals most likely to be Class Members. The media notice delivered a total of 7,399,899 impressions.

On May 7, 2024, Angeion established the following website dedicated to this Settlement: www.TravelFeeSettlement.com ("Settlement Website"). The Settlement Website contains online portals whereby Class Members may securely submit a Claim Form or opt-out of the settlement. The Website also has a portal where potential Class Members can look up their login information by submitting their Travel Guard Policy Number and their last name. Additionally, the Notice, Claim Form, Opt-out Form, Settlement Agreement, Preliminary Approval Order, and other settlement related documents are available to review or download. The Settlement Website also has

a "Frequently Asked Questions" page which provides answers to common inquiries about the Settlement to anyone who visits the website, and a "Contact Us" page which provides potential Class Members with the mailing address, phone number and email address to contact the Settlement Administrator or Class Counsel.

On May 7, 2024, Angeion also established the following toll-free hotline dedicated to this Settlement to further apprise Class Members of their rights and options in the Settlement: 1-888-255-2501. The toll-free hotline utilizes an interactive voice response ("IVR") system to provide potential Class Members with responses to frequently asked questions and provides essential information regarding the Settlement. The hotline is accessible 24 hours a day, 7 days a week. Additionally, potential Class Members can leave a voicemail via the toll-free hotline to request that a copy of the Notice or Claim Form be mailed to them.

Class members were given until August 13, 2024, to object to or exclude themselves from the Settlement Agreement. Out of estimated 9 million total class members, 355 persons filed timely requests to opt out of the Settlement Class and 3 persons filed objections.

A total of 299,991 claims were received by the administrator, of which 246,539 were accepted as valid.

## II.     FINAL APPROVAL OF SETTLEMENT

### A.     Legal Standard

A court may approve a proposed class action settlement of a certified class only "after a hearing and on finding that it is fair, reasonable, and adequate," and that it meets the requirements for class certification. Fed. R. Civ. P. 23(e)(2). In reviewing the proposed settlement, a court need not address whether the settlement is ideal or the best outcome, but only whether the settlement is fair, free of collusion, and consistent with plaintiff's fiduciary obligations to the class. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). The *Hanlon* court identified the following factors relevant to assessing a settlement proposal: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceeding; (6) the experience and views of counsel; (7) the presence

of a government participant; and (8) the reaction of class members to the proposed settlement. *Id.* at 1026 (citation omitted); *see also Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

Settlements that occur before formal class certification also "require a higher standard of fairness." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). In reviewing such settlements, in addition to considering the above factors, a court also must ensure that "the settlement is not the product of collusion among the negotiating parties*." In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011).

**B.   Analysis**

**1.   The Settlement Class Meets the Prerequisites for Certification**

As the Court found in its order granting preliminary approval and conditional certification of the settlement class herein, the prerequisites of Rule 23 have been satisfied purposes of certification of the Settlement Class. *See* ECF 185.

**2.   Adequacy of Notice and Class Administration Expenses**

A court must "direct notice [of a proposed class settlement] in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). "The class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982). Adequate notice requires: (i) the best notice practicable; (ii) reasonably calculated, under the circumstances, to apprise the Class members of the proposed settlement and of their right to object or to exclude themselves as provided in the settlement agreement; (iii) reasonable and constitute due, adequate, and sufficient notice to all persons entitled to receive notice; and (iv) meet all applicable requirements of due process and any other applicable requirements under federal law. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

1    The Court found the parties' proposed notice procedures provided the best notice practicable and reasonably calculated to apprise Class members of the settlement and their rights to object or exclude themselves. ECF 182. Pursuant to those procedures, the Class Administrator sent email notices, reminder email notices, mail notices. ECF 185-2. The Class Administrator set up a settlement website, tool-free telephone support, and implemented targeted and interest based social media advertisements and paid search campaign claim stimulation efforts. The Class Administrator reports that 9,805,543 initial notices were delivered for a delivery rate of 92%.

Based upon the foregoing, the Court finds that the Settlement Class has been provided adequate notice. Plaintiffs are requesting $824,821.90 in class administration expenses. This amount far exceeds the approved amount of $450,000.00 from the preliminary approval. *See* ECF 182. However, given the extensive effort required to notify the estimated 9 million members of this class, the Court finds that this case is a rare occasion in which deviation from the preliminary approval is permissible. The Court **APPROVES** the **$824,821.90** in class administration expenses.

### 3. The Settlement is Fair and Reasonable

As the Court previously found in its order granting preliminary approval, the *Hanlon* factors indicate the settlement here is fair and reasonable and treats class members equitably relative to one another. ECF 182.

The reaction of the class was overwhelmingly positive. The Court received 3 objections (and 1 withdrawn objection) and 355 opt-outs as of the August 13, 2024 deadline. These objections and opt-outs constitute 0.00003% of estimated 9 million class members and 0.001% of the 246,539 participating class members. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036, 1043 (N.D. Cal. 2008) (citation omitted); *see also Churchill Vill.*, 361 F.3d at 577 (holding that approval of a settlement that received 45 objections (0.05%) and 500 opt-outs (0.56%) out of 90,000 class members was proper).

In its preliminary approval order, the Court approved the proposed plan of allocation. ECF 182. That plan is to allocate the net settlement fund as cash payments to authorized claimants in

8

proportion to the assistance fees paid. The Court finds the plan of allocation to be fair and reasonable and to treat class members equitably and therefore approves that plan of allocation.

### 4. Objections

Three individuals submitted objections—Mr. Surya Nauli, Mr. Michal J. Gajda, and Mr. Eric A. Issacson. *See* ECF 185, 187, 192. Another individual submitted an objection but subsequently withdrew the objection. The Court has considered all objections and overrules them for the reasons stated on the record at oral argument, and as further explained below. The Court addresses each objector's arguments in turn.

#### a. Objector Nauli

Objector Nauli filed objection indicating that he believes the settlement is too narrow in scope because it fails to provide full refunds to its claimants. Because this objection asks for refund of travel expenses in indeterminate circumstances that are not at issue in the litigation, the objection is overruled.

#### b. Objector Gajda

Objector Gajda filed objection indicating that he believes the settlement should also provide for injunctive relief. Because this objection asks for a broad injunction that is rebutted by Plaintiffs, this objection is overruled.

#### c. Objector Issacson

Objector Issacson filed objection indicating that he believes (1) the redaction of information does not permit class members to make intelligently informed decisions concerning the Settlement; (2) Class Counsel cannot adequately represent both California purchasers and Washington purchasers because there are irreconcilable differences between their claims; (3) the *Hanlon* factors weigh against approval; (4) the injunctive relief is illusory; (5) the *cy pres* is unwarranted; and (6) the incentive awards are impermissible. *See* ECF 187. Plaintiffs addressed each of Issacson's objections in the motion hearing on October 1, 2024. ECF 195. The Court overrules each of Objector Issacson's objections.

As to Issacson's first objection, Class Members had access to unredacted versions of Plaintiffs' motion for preliminary approval upon signing the protective order in this case. Thus,

Isaacson had access to all the information in this case needed to evaluate the settlement. The objection is overruled.

As to Issacson's second and third objections, the Court finds that the claims of the Class members do not have such a fundamental conflict and that the *Hanlon* factors weight in favor of approval. These objections are overruled.

Issacson's fourth objection is overruled. As part of the Settlement, Defendants agreed to provide enhanced disclosures by informing consumers that the price for a Travel Guard Plan includes the travel insurance premium and an additional fee for non-insurance travel assistance services. The Court does not find this relief to be illusory.

Issacson's fifth objection as to *cy pres* distribution is also overruled. As the Ninth Circuit has explained "[t]he availability of cy pres as a mechanism to distribute unclaimed funds rests on the premise that class action settlements will sometimes have just that—unclaimed funds. A settlement is not fatally flawed solely because class members did not deplete the entirety of the settlement fund." *In re Easysaver Rewards Litig.*, 906 F.3d 747, 761 (9th Cir. 2018). Thus, Isaacson's contention that cy pres is only permissible if it is impossible to distribute more money to the class is incorrect. *Id.*

Finally, Issacson's sixth objection is overruled as he concedes that his argument goes against binding Ninth Circuit precedent on incentive awards. *See In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 785 (9th Cir. 2022).

### 5. Other Findings

On February 2, 2024, the Class Administrator served upon the Attorneys General of all states and territories and the Attorney General of the United States a notice of the Settlement. ECF 185-2, Weisbrot Decl. ¶ 6 & Ex. A. The California and Washington attorneys general offices reached out to the parties for some additional information regarding the Settlement in February, which counsel provided. ECF 185-1, Safier Decl. ¶ 5. No state officials have followed up with Plaintiffs' counsel since that time with any additional questions. *Id.* Notice occurred more than 90 days before the date of this order, as required by 28 U.S.C. § 1715(d).

**6. Certification is Granted and the Settlement is Approved**

After reviewing all the required factors, the Court finds the Settlement Agreement to be fair, reasonable, and adequate, and certification of the Settlement Class as defined therein to be proper. The following persons are excluded from the Settlement Class: "each and every presiding District Judge and Magistrate Judge in the Actions . . . and their staff, and their immediate family members . . . the officers, directors, agents, servants, and current and former employees of Defendants who were employed by Defendants at any time on or after the start of the Class Period, and the immediate family members of such Persons . . . [and] any Person who received a complete refund for each and every Qualifying Travel Guard Plan purchased by that Person," all persons who timely excluded themselves from the Settlement Class, as identified in Exhibit B hereto.

The cy pres recipient, Travelers Aid International, is **APPROVED**.

### III. MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE AWARDS

#### A. Attorneys' Fees

Attorneys' fees and costs may be awarded in a certified class action under Federal Rule of Civil Procedure 23(h). Such fees must be found "fair, reasonable, and adequate" in order to be approved. Fed. R. Civ. P. 23(e); *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003). To "avoid abdicating its responsibility to review the agreement for the protection of the class, a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement." *Id.* at 963. "[T]he members of the class retain an interest in assuring that the fees to be paid class counsel are not unreasonably high," since unreasonably high fees are a likely indicator that the class has obtained less monetary or injunctive relief than they might otherwise. *Id.* at 964.

Class counsel requests an attorneys' fee award of $7,199,250. Based on the detailed time records submitted by counsel, the attorneys' fees sought amount to approximately 30% of its lodestar. Defendants do not oppose the fee request.

The Court analyzes an attorneys' fee request based on either the "lodestar" method or a percentage of the total settlement fund made available to the class, including costs, fees, and injunctive relief. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). The Ninth

1    Circuit encourages courts to use another method as a cross-check to avoid a "mechanical or
2    formulaic approach that results in an unreasonable reward." *In re Bluetooth*, 654 F.3d at 944–45
3    (citing *Vizcaino*, 290 F.3d at 1050–51.)

4    Under the lodestar approach, a court multiplies the number of hours reasonably expended
5    by the reasonable hourly rate. *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016) ("[A] court
6    calculates the lodestar figure by multiplying the number of hours reasonably expended on a case by
7    a reasonable hourly rate. A reasonable hourly rate is ordinarily the 'prevailing market rate [] in the
8    relevant community.'"). Under the percentage-of-the-fund method, courts in the Ninth Circuit
9    "typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing
10   adequate explanation in the record of any 'special circumstances' justifying a departure." *In re
11   Bluetooth*, 654 F.3d at 942 (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301,
12   1311 (9th Cir. 1990)). The benchmark should be adjusted when the percentage recovery would be
13   "either too small or too large in light of the hours devoted to the case or other relevant factors." *Six
14   (6) Mexican Workers*, 904 F.2d at 1311. When using the percentage-of-recovery method, courts
15   consider a number of factors, including whether class counsel " 'achieved exceptional results for
16   the class,' whether the case was risky for class counsel, whether counsel's performance 'generated
17   benefits beyond the cash settlement fund,' the market rate for the particular field of law (in some
18   circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration,
19   foregoing other work), and whether the case was handled on a contingency basis." *In re Online
20   DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir. 2015) (quoting *Vizcaino*, 290 F.3d at
21   1047-50. "[T]he most critical factor [in determining appropriate attorney's fee awards] is the degree
22   of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).

23   No objector has challenged any of the counsel's hours or rates.

24   Using the percentage of recovery method, the Court finds the attorneys' fees sought to be
25   reasonable. The Court has also considered a cross-check using the lodestar method.

26   The lodestar figure is 3950.3 hours at $1,252.09 per hour for a total of $4,946,143.50.
27   Plaintiffs claim hourly rates that are commensurate with their experience and with the legal market
28   in this district. The cross-check lodestar multiplier is 1.46.

1    Applying the percentage of recovery method, the parties determined the total settlement value to be $23,997,500.00. The attorneys' fees requested would come to 30.0% of this total. This amount is greater the 25.0% benchmark. In support of their award Plaintiffs have summarized the extensive procedural history of the case. *See* ECF 201, at 9-14. In this case, Plaintiff filed Complaint on December 17, 2021. ECF 1. Parties briefed motion to compel arbitration (ECF 19), motion to dismiss (ECF 20), motion to vacate arbitration award and opposing motion to confirm arbitration award and lift stay (ECF 69), motion to intervene (ECF 82), motion to certify class and related Daubert motions (ECF 84, 99, 100), motion to limit class period and for approval of notice plan (ECF 138), motion for Confirmation of Scope of Class Certification Order or, in the alternative, Partial Decertification (ECF 141), motions for summary judgment (ECF 153, 157), and Daubert motions (ECF 152, 155, 156). The parties notified the Court on December 7, 2023 that a settlement had been reached and that a Memorandum of Understanding needed to be completed. ECF 163. Thereafter, all efforts were focused on the details of the settlement including the filing of an amended complaint. Plaintiff filed a Motion for Settlement and Preliminary Approval on January 24, 2024. ECF 173. Given the extensive number of motions filed in this case, this is a rare case in which attorneys' fees beyond the 25% benchmark may be reasonable. The Court **APPROVES** the requested **attorneys' fee of $7,199,250** (30% of the total settlement value).

B.   **Costs Award**

Class counsel is entitled to reimbursement of reasonable out-of-pocket expenses. Fed. R. Civ. P. 23(h); *see Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (holding that attorneys may recover reasonable expenses that would typically be billed to paying clients in non-contingency matters). Costs compensable under Rule 23(h) include "nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Here, class counsel seeks reimbursement for litigation expenses, and provides records documenting those expenses, in the amount of $236,475.58. The Court finds this amount reasonable, fair, and adequate. The Court **APPROVES** the requested reimbursement of **$236,475.58**.

### C. Incentive Award

The district court must evaluate named plaintiff's requested award using relevant factors including "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton*, 327 F.3d at 977. "Such awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-959 (9th Cir. 2009). The Ninth Circuit has emphasized that district courts must "scrutiniz[e] all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1163 (9th Cir. 2013).

Here, Plaintiffs Tamika Miller, Julianne Chuanroong, and Stephanie Allen took on substantial risk, most importantly the risk of publicity and notoriety. ECF No. 174-3 ¶ 70. They also searched their personal records for responsive documents, assisted with responses to written discovery, and communicated many times with counsel, and the California Plaintiffs and Proposed Intervenors attended deposition preparation sessions and appeared for depositions. *Id.* ¶¶ 16-17, 70. Plaintiffs also remained actively involved in the Actions prior to and after settlement, even though their individual damages were relatively modest. *Id.* Plaintiffs and Proposed Intervenors are also agreeing to broader releases than other Settlement Class Members. Agmt. ¶¶ 2.3, 13.3. Because the laws are not self-enforcing, it is appropriate to give incentives to those who come forward with little to gain and at personal risk and who work to achieve a settlement that confers substantial benefits on others. Thus, the Court **APPROVES** the requested **$5,000** incentive award payment each for Plaintiffs **Tamika Miller**, **Julianne Chuanroong**, and **Stephanie Allen**.

Plaintiffs also request $5,000 incentive award payments to two proposed intervenors who previously requested to intervene in this case. Plaintiffs contend that these proposed intervenors should receive incentive awards because they produced documents and prepared for depositions. ECF 185, at 2 n.2. The Court notes that such a request is highly irregular considering that these proposed intervenors never intervened in this case. While the proposed intervenors may have

1  responded to document requests and prepared for depositions, they ultimately did not take on the
2  risk of publicity and notoriety. The Court finds that proposed intervenors are not entitled to incentive
3  awards and Plaintiffs do not cite to any caselaw which suggests to the contrary. Accordingly, the
4  Court **DENIES** request for $5,000 incentive award payment for the two proposed intervenors.

## IV.   CONCLUSION

Based upon the foregoing, the motion for final approval of class settlement is **GRANTED**. The motion for attorneys' fees, costs, and service awards is **GRANTED AS MODIFIED**. Amounts are fair and reasonable as negotiated with the assistance of mediator Robert A. Meyer. Class Counsel is awarded **$7,199,250** in attorneys' fees and **$236,475.58** in litigation costs. Angeion Group, LLC is awarded **$824,821.90** in settlement administration costs. Plaintiffs Tamika Miller, Julianne Chuanroong, and Stephanie Allen are granted incentive awards of **$5,000.00** each.

Without affecting the finality of this order in any way, the Court retains jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation and enforcement of this order and the Settlement.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that final judgment is **ENTERED** in accordance with the terms of the Settlement, the Order Granting Preliminary Approval of Class Action Settlement filed on April 9, 2024 (ECF 182), and this order. This document will constitute a final judgment (and a separate document constituting the judgment) for purposes of Rule 58, Federal Rules of Civil Procedure.

The proposed order is hereby adopted, except as modified herein. ECF 185-3.

//
//
//
//
//

The parties shall file a post-distribution accounting in accordance with this District's Procedural Guidance for Class Action Settlements no later than **May 15, 2025**, at 3:00 p.m. via video conference.

The Court **SETS** a compliance deadline on **August 14, 2025,** on the Court's 2:00 p.m. calendar via video conference to verify timely filing of the post-distribution accounting.

This Order resolves ECF 185.

**IT IS SO ORDERED.**

Dated: December 9, 2024

_____
TRINA L. THOMPSON
United States District Judge

16